WILLIAM S. BRODY (SBN: 136136)
BRIAN T. HARVEY (SBN: 238991)
BUCHALTER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Fax: (213) 896-0400
Email: wbrody@buchalter.com

Attorneys for
Austin Financial Services, Inc.

**FILED & ENTERED**

**OCT 12 2017**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bryant    DEPUTY CLERK

**CHANGES MADE BY COURT**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>POINT.360, a California corporation,<br><br>            Debtor and Debtor in<br>            Possession. | Case No. 2:17-bk-22432-WB<br><br>Chapter: 11<br><br>**ORDER GRANTING MOTION FOR INTERIM USE OF CASH COLLATERAL**<br><br>Date:       October 12, 2017<br>Time:      2:00 p.m.<br>Ctrm.:     1375 |

The Court having considered the motion filed by Point.360, a California corporation ("Debtor") to use cash collateral [ECF #2] ("Motion"), and good cause appearing, hereby ORDERS as follows:

1.      The Motion is approved on an interim basis.[1]

2.      <u>Authorization to Use Cash Collateral</u>. Debtor is authorized to use the cash collateral of Austin Financial Services, Inc. ("Austin") on an interim basis, as follows:

2.1      <u>Expiration Date</u>. Debtor is authorized to use cash collateral and Austin shall provide Debtor access to the cash collateral during the period (the "Operative

---

[1] Unless defined herein, defined terms used in this Order shall have the same meaning set forth in the Motion.

Period") commencing on October 10, 2017 (the "Petition Date") and terminating on the earlier of any of the following dates (the "Expiration Date"):  (a) October 27, 2017, or such further date as agreed to by Austin in writing and approved by the Court, or (b) the date of the occurrence of an Event of Default (as defined herein).

2.2    Budget.  Debtor is authorized to use cash collateral solely to pay the expenses set forth on the budget attached hereto as Exhibit A (the "Budget"), to the extent actually incurred by Debtor for its business operations and not to exceed the amounts set forth in the Budget by more than five percent (5%) in the aggregate.  Such Budget may be amended or extended only by written agreement of Debtor and Austin.

2.3    Restricted Use.  The cash collateral shall not be used for any purpose relating to or in furtherance of an Adverse Lender Action, including without limitation the payment of professional fees relating to such matters.  "Adverse Lender Action" means (a) any assertion, claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter: (i) challenging the legality, validity, or enforceability of the LSA, (ii) challenging the legality, validity, priority or enforceability, or seeking to invalidate, set aside, avoid or subordinate, in whole or in part, any prepetition lien in the collateral granted under the LSA, or (iii) seeking to prevent, hinder or delay the assertion or enforcement by Austin of any right, remedy, claim, benefit or privilege of, or lien or interest in favor of Austin in its collateral or realization upon any of its collateral.

3.    Adequate Protection.

3.1    Postpetition Lien Granting.  Austin is granted, effective as of the Petition Date, a "replacement lien" pursuant to sections 361 and 363(e) (a "Postpetition Lien") in all prepetition and postpetition assets in which and to the extent Debtor holds an interest, whether tangible or intangible, whether by contract or operation of law, and including all profits and proceeds thereof (collectively, the "Postpetition Collateral" and together with Austin's prepetition collateral, the "Collateral"), but only to the extent there is a diminution in value of Austin's prepetition collateral, whether from the use of cash collateral or otherwise during the Operative Period; provided, however, the Postpetition

1    Collateral does not include any claim or cause of action arising under sections 502(d), 542,

2    544, 547, 548, 550, or 551, and any recoveries thereof (collectively, "Avoidance Claims"),

3    but does include claims and causes of action arising under section 549 and any recoveries

4    thereof and the proceeds realized by the Estate from the assumption and assignment, or

5    rejection, of any executory contract or unexpired lease under section 365.

6        3.2    Postpetition Lien Priority.  The Postpetition Lien in favor of Austin shall be

7    senior in priority to any and all prepetition and postpetition claims, rights, liens and

8    interests; provided, however, the Postpetition Lien is (a) only subject and immediately

9    junior in priority to certain liens and interests, whether in favor of Medley Capital

10    Corporation ("Medley") or other secured parties, existing as of the Petition Date in the

11    Postpetition Collateral only to the extent that such liens and interests are and continue (i)

12    not to be otherwise junior or subordinated in priority, whether under section 510 or by

13    contract, at law or in equity, as to any lien in favor of Austin, (ii) to be valid, properly

14    perfected, and enforceable, (iii) secure obligations that remain outstanding and valid and

15    not otherwise avoided or satisfied, (iv) not to be subject to any claims, counterclaims,

16    defenses, setoffs, recoupment, or deduction, and (v) not to be subject to avoidance or

17    subordination pursuant to any provisions of the Bankruptcy Code or any other applicable

18    law, and (b) first and senior in priority, and not be subject or subordinate to any lien or

19    interest that is avoided and preserved for the benefit of Debtor or its estate under section

20    551.

21        3.3    Postpetition Lien Perfection.  This order shall constitute sufficient and

22    conclusive evidence of the granting, attachment, priority, perfection, and validity of the

23    Postpetition Lien, effective as of the date and time of entry of this order, without any

24    further act required under federal, state, or local law requiring notice, filing, registration,

25    recording, possession or other act to validate or perfect a security interest or lien, including

26    without limitation deposit account control agreements, merchant payment agreements,

27    merchant payment direction letters, cash transport agreements, and such other agreements

28    with any party possessing or asserting an interest in the Postpetition Collateral.

3.4     Section 507(b) Priority.  Austin shall have an allowed super priority

administrative claim of the kind and priority, to the extent applicable, under sections

503(b) and 507(b).

3.5     Sufficiency of Adequate Protection.  Austin and Medley do not concede

that the adequate protection provided herein constitutes sufficient adequate protection of

its interests, and its rights are reserved to seek any further or different adequate protection

of its interest in its prepetition collateral.

4.     Reporting.  Debtor shall timely provide Austin and Medley with (a)(i) a current

accounts receivable ledger, (ii) a current accounts payable ledger and (iii) a monthly report

comparing actual collections and expenditures (by expense category) on a cash basis to those set

forth in the Budget (a "Reconciliation Report") to be delivered to Austin and Medley not later

than 15 days after the conclusion of each month in which Debtor uses cash collateral, (b) an

accrual-based profit and loss statement and balance sheet for Debtor to be delivered to Austin and

Medley within 5 days of the entry of this order, (c) all reporting and other information as required

under the LSA, (d) all documents and information submitted by Debtor to the United States

Trustee, and (e) upon the reasonable request of Austin and Medley, such other information

pertaining to Debtor' operations, financial affairs, and the Collateral, including but not limited to

bills, invoices, bank statements, cancelled checks, and receipts.

5.     Access to Collateral.  Upon the request of Austin or Medley, Debtor shall permit

Austin or Medley, respectively, reasonable access to the Collateral and Debtor's books and

records to conduct inspections and audits.

6.     Insurance.  Debtor shall maintain at all times casualty and loss insurance coverage

of the Collateral in compliance with the United States Trustee Guidelines and in an amount

acceptable to Austin to sufficiently protect Austin's and Medley's interests in the Collateral, if

any.  Debtor shall deliver proof of such insurance to Austin within 5 days of the entry of this

order.

7.     Events of Default.  An Event of Default under this order shall occur upon any of

the following events:  (a) a breach or failure to comply with any term, covenant, representation,

1   warranty or requirement of this order; (b) the granting in favor of any party other than Austin of a

2   security interest in or lien upon any property of Debtor or Debtor's estate or a claim against

3   Debtor having priority senior or pari passu with the security interests, liens or claims in favor of

4   Austin, except to the extent that such party had a security interest in or lien upon property of

5   Debtor on the Petition Date which had priority senior or pari passu with the security interests,

6   liens or claims of Austin existing on the Petition Date; (c) entry of an order converting this case to

7   a case under chapter 7 of the Bankruptcy Code; (d) entry of an order appointing a trustee in this

8   case; (e) entry of an order granting relief in favor of any other party (including lessors and

9   landlords) that includes enabling such party to exercise state law or contractual rights and

10  remedies with respect to certain asset or assets of Debtor that could have a material adverse effect

11  on Debtor, their business and/or other assets, or (f) any stay, reversal, vacation or rescission of the

12  terms of this order.

13      8.    Notice of Default.  Upon the occurrence of an Event of Default, Austin shall give

14  written notice of default (a "Notice of Default") via email, facsimile or overnight mail to (a)

15  Debtor and (b) counsel for Debtor.

16      9.    Consequences Upon Notice of Default.  Upon Debtor's failure to cure an Event of

17  Default within 5 days after the delivery of the Notice of Default, Austin shall be entitled to

18  schedule a hearing on shortened notice to (i) request a determination from the Court that an Event

19  of Default has occurred and was not timely cured and (ii) seek an order granting Austin relief

20  from the automatic stay to exercise any and all rights and remedies with respect to the Collateral.

21  If the Court finds that an Event of Default occurred and was not timely cured, Debtor shall be

22  prohibited from any further use of cash collateral absent further order of the Court.

23      10.   Retention of Rights.  Notwithstanding the occurrence of an Event of Default or

24  Expiration Date, Austin and Medley shall retain all rights, interests, liens, privileges, claims and

25  protections pursuant to this order.  Notwithstanding the occurrence of an Event of Default or

26  Expiration Date, all of the rights, remedies, benefits and protections in favor of Austin and

27  Medley pursuant to this order shall survive such event.

28

11.     <u>Limited Relief from Automatic Stay to Effectuate Order</u>.  The automatic stay provisions of section 362 and any other restriction or injunction imposed by an order of the Court or by law shall be modified and vacated to the extent necessary to permit Austin to perform any act authorized or permitted under this order and the 14-day stay described by Bankruptcy Rule 4001(a)(3) is waived.

12.     <u>Power to Waive Rights; Duties to Third Parties</u>.  Austin or Medley shall be able to waive any interest, claim, right, remedy or privilege in its favor (a "Lender Right") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce any Lender Right, as applicable.  Any waiver by Austin or Medley of any Lender Right shall not be or constitute a continuing waiver.  A delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Austin or Medley to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by Debtor, any obligor or any other person or entity to Austin or Medley.

13.     <u>Reservation of Rights</u>.  This order is in addition to and without prejudice to the interests, claims, rights, remedies, and privileges under the Bankruptcy Code, applicable documents or agreements, or law, in favor of Austin or Medley, including without limitation rights to seek further, different, or additional adequate protection, to seek relief from the automatic stay, to seek an injunction, to not consent to or oppose any request for further use of cash collateral or granting of any interest in any of the Collateral or priority in favor of any other party, to object to any sale of assets, to object to the allowance and/or payment of compensation of professionals or other persons or entities seeking compensation or reimbursement from Debtor's bankruptcy estate, and to pursue all non-bankruptcy claims, rights and remedies.

///

///

///

///

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**ORDER GRANTING MOTION FOR INTERIM USE OF CASH COLLATERAL**

BN 31180685v1

14. <u>Final Hearing and Response Dates</u>.  A final hearing on the Motion shall be held on October 31, 2017, at 2:00 p.m. before this Court.  Objections and replies shall be filed and served in accordance with local court rules.

*15.    Debtor shall serve a copy of this order and notice of the final hearing on the Motion on all parties entitled to notice thereof on October 13, 2017.*

###

Date: October 12, 2017

Julia W. Brand
United States Bankruptcy Judge

**ORDER GRANTING MOTION FOR INTERIM USE OF CASH COLLATERAL**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 31180685v1

| Week | 0 | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| Week ending | 10/13/2017 | 10/20/2017 | 10/27/2017 | 11/3/2017 | 11/10/2017 | 11/17/2017 |
| **Operating Cash-In** | 3 days only | | | | | |
| Revenues-Cash collections From Accounts Receivable | $ 285,000 | $ 398,599 | $ 398,599 | $ 398,599 | $ 401,786 | $ 401,786 |
| Non-Insider Collections (sublease-rents and services provided to 3rd prty | $ 102,140 | $ 37,595 | $ 102,140 | $ - | $ 102,140 | $ 37,595 |
| Total Collections | $ 387,140 | $ 436,195 | $ 500,739 | $ 398,599 | $ 503,925 | $ 439,381 |
| Total cash-in | $ 387,140 | $ 436,195 | $ 500,739 | $ 398,599 | $ 503,925 | $ 439,381 |
| **Operating Cash-out** | | | | | | |
| Vendor Payments | $ - | $ (50,335) | $ (77,128) | $ (172,128) | $ (68,197) | $ (68,197) |
| Freelance Contractor payments | $ - | $ (93,000) | $ (40,127) | $ (3,000) | $ (40,127) | $ (93,000) |
| Non-Insider Payroll Payments | $ (472,605) | $ - | $ (453,563) | $ - | $ (434,520) | $ - |
| Insider Payroll Payments | $ (13,415) | $ - | $ (13,415) | $ - | $ (13,415) | $ - |
| 401k payments | $ (23,000) | $ - | $ (23,000) | $ - | $ (23,000) | $ - |
| Rent Payments | $ - | $ - | $ - | $ (182,000) | $ - | $ - |
| Total Cash out | $ (509,021) | $ (143,335) | $ (607,233) | $ (357,128) | $ (579,260) | $ (161,197) |
| **Net Operating Cashflow** | **$ (121,881)** | **$ 292,859** | **$ (106,494)** | **$ 41,471** | **$ (75,334)** | **$ 278,184** |
| **Non-Operating cash in (out)** | | | | | | |
| Line of Credit Drawdowns | $ - | $ - | $ - | $ - | $ - | $ - |
| RIF Expense: | $ - | $ (4,444) | $ (4,444) | $ (4,444) | $ (4,444) | $ (4,444) |
| Capital Expenditures | $ - | $ (12,500) | $ (54,500) | $ (12,500) | $ (12,500) | $ (12,500) |
| Tenant Improvements | $ - | $ (12,500) | $ (12,500) | $ (17,500) | $ (12,500) | $ (17,500) |
| Debt Repayments | $ - | $ - | $ - | $ - | $ - | $ - |
| C11 Administration expenses | | | | | | |
| Toal Non-Operating cash out | $ - | $ (29,444) | $ (71,444) | $ (34,444) | $ (29,444) | $ (34,444) |
| Net Cashflow (outflow) for the Period | $ (121,881) | $ 263,415 | $ (177,939) | $ 7,027 | $ (104,779) | $ 243,739 |
| Beginning Cash | $ 125,000 | $ 3,119 | $ 266,534 | $ 88,595 | $ 95,622 | $ (9,157) |
| **Ending Cash** | **$ 3,119** | **$ 266,534** | **$ 88,595** | **$ 95,622** | **$ (9,157)** | **$ 234,582** |

| | 6 11/24/2017 | 7 12/1/2017 | 8 12/8/2017 | 9 12/15/2017 | 10 12/22/2017 | 11 12/29/2017 | 12 1/5/2018 | 13 1/12/2018 | Total Weeks 1 to 13 |
|---|---|---|---|---|---|---|---|---|---|
| $ | 401,786 | $ 401,786 | $ 409,856 | $ 409,856 | $ 409,856 | $ 409,856 | $ 409,856 | $ 409,856 | $ 5,547,076 |
| $ | 102,140 | $ - | $ 102,140 | $ 37,595 | $ 102,140 | $ - | $ 102,140 | $ 37,595 | $ 865,358 |
| $ | 503,925 | $ 401,786 | $ 511,995 | $ 447,451 | $ 511,995 | $ 409,856 | $ 511,995 | $ 447,451 | $ 6,412,434 |
| $ | 503,925 | $ 401,786 | $ 511,995 | $ 447,451 | $ 511,995 | $ 409,856 | $ 511,995 | $ 447,451 | $ 5,964,982 |
| $ | (68,197) | $ (163,197) | $ (68,197) | $ (68,197) | $ (68,197) | $ (163,197) | $ (68,197) | $ (68,197) | $ (1,171,563) |
| $ | (40,127) | $ (3,000) | $ (40,127) | $ (93,000) | $ (40,127) | $ (3,000) | $ (40,127) | $ (40,127) | $ (568,889) |
| $ | (415,478) | $ - | $ (438,047) | $ - | $ (438,047) | $ - | $ (438,047) | $ - | $ (3,090,306) |
| $ | (13,415) | $ - | $ (13,415) | $ - | $ (13,415) | $ - | $ (13,415) | $ - | $ (93,908) |
| $ | (23,000) | $ - | $ (23,000) | $ - | $ (23,000) | $ - | $ (23,000) | $ (23,000) | $ (184,000) |
| $ | - | $ (182,000) | $ - | $ - | $ - | $ - | $ (226,203) | $ - | $ (590,203) |
| $ | (560,217) | $ (348,197) | $ (582,786) | $ (161,197) | $ (582,786) | $ (166,197) | $ (808,989) | $ (131,324) | $ (5,567,544) |
| $ | (56,292) | $ 53,588 | $ (70,791) | $ 286,254 | $ (70,791) | $ 243,659 | $ (296,994) | $ 316,127 | $ 397,438 |
| $ | - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| $ | (4,444) | $ (4,444) | $ (4,444) | $ (4,444) | $ (4,444) | $ (4,444) | $ (4,444) | $ - | $ (53,333) |
| $ | (54,500) | $ (12,500) | $ (12,500) | $ - | $ - | $ - | $ - | $ - | $ (184,000) |
| $ | (12,500) | $ (12,500) | $ (12,500) | $ - | $ - | $ - | $ - | $ - | $ (110,000) |
| $ | - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| $ | (71,444) | $ (29,444) | $ (29,444) | $ (4,444) | $ (4,444) | $ (4,444) | $ (4,444) | $ - | $ (338,444) |
| $ | (127,736) | $ 24,144 | $ (100,235) | $ 281,810 | $ (75,235) | $ 239,214 | $ (301,438) | $ 316,127 | 366,232 |
| $ | 234,582 | $ 106,846 | $ 130,990 | $ 30,755 | $ 312,564 | $ 237,329 | $ 476,543 | $ 175,105 | $ 125,000 |
| $ | 106,846 | $ 130,990 | $ 30,755 | $ 312,564 | $ 237,329 | $ 476,543 | $ 175,105 | $ 491,232 | $ 491,232 |

**Key assumptions and Ending cash position**

Point 360 has proposed an aggressive cost reduction and site consolidation plan to generate $366k in new cashflow during this initial 13 week restructuring period.  This 13 week cashflow is prepared on a cash basis from management's projections.  The cash basis closely approximates accrual based revenue and expenses.

**Cash-In: Primarily** collections on Invoiced Sales from services. Average days sales outstanding is historically consistent at 58 days with a beginning and ending Accounts receivable balance of $3.7Million.  As sales are generated, they are  advanced by Austin at 85% of invoice value, less certain adjustments for ineligible receivables.  Additional opportunity exists with the sale of the Vault business lactated at Media center (Est. net cash approx. $1.5 million)

**Cash-out:** Primarily of i)vendor payments for current purchases and services, generally COD or 5 to 30 day terms; and ii) Payroll, paid 1 week in arrears bi-weekly. During the 13 week period the accounts payable balance is projected to remain flat.

Ending cash position:  Improves to $491K from an initial position of $125k.

Air Conditioning Repair - $84k for HWAY, $10k for Media Center.