**Lewis R. Landau** (CA Bar No. 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888) 822-4340
*Email: Lew@Landaunet.com*

Attorney for Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>Point.360, a California corporation,<br>dba DVDs on the Run, Inc.<br>dba Digital Film Labs<br>dba International Video Conversions, Inc.<br>dba Modern VideoFilm<br>dba Movie Q<br>dba Visual Sound Closed Captioning Services<br>dba Eden FX<br><br>　　　　　　　Debtor.<br><br>Debtor's EIN: 01-0893376<br>Address: 2701 Media Center Drive<br>　　　　　Los Angeles, CA 90065 | Case No.: 2:17-bk-22432 WB<br>Chapter 11<br><br>**SUPPLEMENTAL DECLARATION OF HAIG S. BAGERDJIAN IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Date:　　February 1, 2018<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 1375; Judge Brand<br>　　　　　U.S. Bankruptcy Court<br>　　　　　255 E. Temple Street, 13th Floor<br>　　　　　Los Angeles, CA 90012 |

# DECLARATION OF HAIG S. BAGERDJIAN

I, Haig S. Bagerdjian, do hereby declare:

1.  I am the president of Point.360, a California corporation ("Point.360" or "Debtor") and I have personal knowledge of the facts set forth herein. I offer this declaration in further support of the Debtor's motion [ECF # 111] ("Motion") for prevailing party attorney's fees against Medley Capital Corporation and Medley Opportunity Fund II LP (collectively "Medley").

2.  The Debtor's business relationship with Medley arose in connection with the Debtor's entry into the Sale Agreement Pursuant to Article 9 of the Uniform Commercial Code ("Purchase Agreement") under which the Debtor acquired the assets of Modern VideoFilm, Inc. ("MVF"). A true and correct copy of the Purchase Agreement is attached at bates pages 45-105 of the Motion. As set forth in the Purchase Agreement, the Debtor acquired the "Purchased Assets" of MVF [¶ 1.1] and in exchange issued stock and warrants to the "Lenders" [¶ 1.3].

3.  Pursuant to the Purchase Agreement, Medley Capital Corporation ("MCC") was the "Seller" in MCC's capacity as administrative agent and collateral agent for "Lenders" that included Medley Opportunity Fund II, LP.

4.  The Debtor was first alerted to a potential MVF transaction when reading the October 22, 2014 Deadline Hollywood article attached hereto as Exhibit 1. Thereafter, Alan Steel ("Steel"), Debtor's CFO, contacted Scott Avila ("Avila") (identified in the Deadline Hollywood article as a principal of Deloitte CRG) to inquire whether there was a business opportunity with MVF. Avila stated that he was just beginning the project and needed more time to evaluate how MVF and Point.360 might work together.

5.  Thereafter, Kevin McFarlane ("McFarlane"), Managing Director of Deloitte Corporate Finance LLC, contacted the Debtor to set up a meeting to discuss MVF. In December 2014, I attended an introductory meeting with McFarlane at Point.360's headquarters at 2701 Media Center Drive, Los Angeles, CA 90065 to discuss the MVF opportunity.

6.      On March 19, 2015 McFarlane provided a first draft of a deal term sheet to me, a true and correct copy of which is attached as Exhibit 2, along with the cover email I received from McFarlane.

7.      On March 26, 2015 a meeting was held at Deloitte's Los Angeles suite at 555 West 5th Street, Suite 2700, Los Angeles, California 90013 to discuss the proposed MVF term sheet and transaction. The meeting was attended by McFarlane, Avila (of Deloitte and CEO of MVF), Cooper Crouse (director of Deloitte CRG and president of MVF), James Feeley III (senior managing director of Medley Capital Corporation) ("Feeley"), Richard Craybas (principal of Medley Capital Corporation) ("Craybas"), Preston Massey of Congruent Credit Opportunities Fund II, LP (one of the "Lenders"), Steel and me, along with several other Deloitte staff.

8.      Between the March 26, 2015 meeting and April 29, 2016 there were multiple conference calls with these and other related participants to discuss the MVF deal.

9.      On April 29, 2015 a meeting regarding sale terms was held at Medley's New York suite at 375 Park Avenue, 33rd Floor, New York, New York, 10152. I attended this meeting along with Steel, Avila, Feeley, Craybas and Dale Hersey of Medley.

10.      In May 2015, a dinner meeting was held at the Peninsula Hotel in Beverly Hills, California to further negotiate the transaction. I attended this meeting along with Steel, Feeley and Avila.

11.      Afterward, transactional documentation was circulated and negotiated primarily among counsel for the parties. The Debtor as buyer was represented by TroyGould, PC in Los Angeles and Medley as Seller was represented by Proskauer Rose LLP in Boston, Massachusetts. The notice clause in the Purchase Agreement and Term Loan Agreement correctly identifies the counsel for each party.

12.      The Purchase Agreement was executed by the parties and signatures were exchanged in counterpart by counsel. I signed on behalf of the Debtor at TroyGould, PC's Los Angeles office.

13. The closing condition of delivering the Purchased Assets occurred in Los Angeles. Per Purchase Agreement ¶ 5.4(a)(i), the Seller conveyed the Purchased Assets and the Debtor took immediate possession of the Purchased Assets all of which were physically located in Los Angeles, California.

14. The transaction closed on July 8, 2015.

15. Pursuant to Purchase Agreement ¶ 2.8, Deloitte was identified "as a finder, broker or other intermediary on behalf of Seller in connection with th[e] Agreement." I believe that Deloitte acted as Medley's agent in the MVF sale transaction, which included the financing Medley provided through the Medley Term Loan Agreement ("TLA").

16. The Medley TLA and the Purchase Agreement are integrated transactions. The TLA was a seller covenant under ¶ 4.10 of the Purchase Agreement: "Term Loan. Upon the Closing, ***Seller*** shall agree to provide Buyer a five-year, $6,000,000 term loan, pursuant to the Term Loan Agreement ("Term Loan Agreement")" (emphasis added). Similarly, closing the Purchase Agreement was a closing loan condition per ¶ 5(c) of the TLA: "The transactions contemplated under the ***Sale Agreement*** Pursuant to Article 9 of the Uniform Commercial Code, of even date herewith, ***between the parties hereto*** (the "*Sale Agreement*"), shall have closed." (emphasis added). Thus, the TLA evidences ***seller financing*** that was integral to the Purchase Agreement transaction. The Debtor would not have entered into the Purchase Agreement without the TLA financing.

17. The Debtor is a California corporation with its headquarters located since 2012 at 2701 Media Center Drive, Los Angeles, CA 90065. The Debtor has no business operations outside of California, although Debtor uses the services of independent contractors located outside California and sells its services to customer located outside California.

18. A true and accurate schedule of interest payments made on the Medley TLA is attached as Exhibit 3. Payments are made to U.S Bank in North Carolina. Since June, 2016 accrued interest has been and will be paid "in kind" and accrued under the TLA.

19. Medley Capital Corporation and Medley Opportunity Fund II LP are both organized under the laws of the State of Delaware.

20. The Purchase Agreement contains a California choice of law clause in ¶ 8.13.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 11th day of January 2018 at Los Angeles, California.

Haig S. Bagerdjian

# EXHIBIT 1

◉ "Article Only"
◯ "Article with Comments"
◯ "Comments Only"    🖨 Print

# Modern VideoFilm Under New Management As Corporate Restructuring Veterans Step In

By David Robb *on* Oct 22, 2014 2:13 pm



Deloitte Corporate Restructuring Group, which specializes in reorganizing troubled companies, has taken over day-to-day operation of Modern VideoFilm. Scott Avila, a principal of Deloitte CRG, has been named CEO of the postproduction facility. He replaces Moshe Barkat, the company's founder, who was ousted as CEO and President by the board of directors in September. Cooper Crouse, a director of Deloitte CRG, has been named President of Modern Video/Film.



Avila and Crouse's previous job for Deloitte CRG, a subsidiary of the giant professional services and accounting firm Deloitte Touche Tohmatsu Ltd, was to manage the affairs of the financially distressed Culver Studios before its sale to Hackman Capital Partners this year. Roxanna Sassanian, a former financial officer at the Culver Studios, has been named

**007**

Modern Video/Film's CFO, replacing the ousted Hugh Miller.

Asked about Deloitte CRG, Avila told Deadline: "I can't comment on that. I'm an officer of Modern Video/Film. That's what I can comment on."

Deloitte CRG's website says that it is "a nationally recognized team of professionals specializing in providing in-depth advisory and interim management services to companies and their stakeholders" – the key word here being "interim."

Avila's profile on the Deloitte CRG website notes that he is a "seasoned Modern VideoFilm restructuring professional" who "helps operationally and financially distressed organizations through out-of-court restructuring and Chapter 11 reorganizations."

A spokesperson said Modern VideoFilm is "definitely not" filing for bankruptcy.

Under its new management, the company said in a press release, "Modern VideoFilm will seek to broaden its ties to studio clients, independent producers and content distributors, and work more closely with them to implement new workflows, production technologies and modes of media distribution."

Avila said in a statement: "We want to partner with our clients to better meet their needs today and in the future," "With the media landscape changing rapidly, we need to be a nimble, forward-thinking company. We are excited about our future."

Although the company's top two officers have been replaced, several longtime executives remain onboard, including Bill Watt, President of Digital Media Services; Mark Smirnoff, President of Creative Services; and Jon Johnson, EVP Sales, who will all be taking on additional managerial and operational responsibilities.

Modern VideoFilm, which has provided postproduction and distribution services to the film and TV industry for more than 33 years, employs more than 500 artists, engineers, producers, technicians, client representatives and support personnel at its facilities in Burbank, Glendale, Santa Monica and Arizona.

The company has worked on high-profile film and TV shows including *Avatar*, *Modern Family*, *Game Of Thrones*, *The Walking Dead, Sons Of Anarchy, House Of Cards, Falling Skies, How I Met Your Mother, The Grand Budapest Hotel, The Descendants, There Will Be Blood* and Best Picture Oscar winner *Slumdog Millionaire*.

This article was printed from http://deadline.com/2014/10/modern-videofilm-deloitte-corporate-restructuring-scott-avila-857916/

*009*

# EXHIBIT 2

**Attachments:**     Project Montage Draft Term Sheet v_1.doc


**From:** McFarlane, Kevin D (US - Los Angeles) [mailto:kemcfarlane@DELOITTE.com]
**Sent:** Thursday, March 19, 2015 3:08 PM
**To:** Alan Steel
**Cc:** Haig Bagerdjian; Scott Avila
**Subject:** RE: Deal structure outline

Alan,

See attached as per your request.  Obviously, this is a first draft but does set forth the basis for the discussion next week.

Best,

Kevin


**Kevin McFarlane**
Managing Director
Deloitte Corporate Finance LLC
555 West 5th Street
Suite 2700
Los Angeles, CA 90013

Tel:  +1 213 553 1423
kemcfarlane@deloitte.com
www.investmentbanking.deloitte.com



This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and any disclosure, copying, or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.

v.E.1


**From:** Alan Steel [mailto:asteel@POINT360.com]
**Sent:** Thursday, March 19, 2015 2:23 PM
**To:** McFarlane, Kevin D (US - Los Angeles); Scott Avila
**Cc:** Haig Bagerdjian
**Subject:** Deal structure outline

Kevin and Scott,

Anything you can share with us yet?

**Alan Steel**
Executive Vice President, Finance and Administration and Chief Financial Officer

T (818) 565-1444
C (323) 206-1558
E asteel@point360.com
www.point360.com

Point.360 • 2701 Media Center Dr • Los Angeles, CA • 90065

2

*012*

**Project [Montage]**
**Draft Non-Binding Term Sheet**
**March ____, 2015**

This Term Sheet sets forth the proposed terms of a possible acquisition transaction whereby [Point 360, a -_____] corporation would (a) acquire certain assets of Modern VideoFilm, Inc. and its direct and indirect subsidiaries (collectively, "MVF") from [Medley Capital Corporation ("Medley"), in its capacity as collateral agent], pursuant to Article 9 of the New York Uniform Commerical Code, and (b) assume certain contractual and other liabilities of MVF. Collectively these events are referred to as the "Transaction". This Term Sheet is not intended by the parties to be binding now or at any point in time in the future. The parties acknowledge that this Term Sheet does not set forth all of the material terms of the proposed Transaction and the parties must complete negotiations on the points set forth in this Term Sheet as well as on points well beyond the scope of this Term Sheet. Accordingly, any binding obligations of the parties with respect to the Transaction shall be evidenced only by definitive agreements executed by the parties to the Transaction. This Term Sheet shall be deemed a settlement communication subject to Rule 408 of the Federal Rules of Evidence.

| | | |
|---|---|---|
| 1. | **Form of Transaction** | • An acquisition of specified business assets of MVF that constitute collateral of the Lenders (through Medley as collateral agent) pursuant to that certain Guaranty and Security Agreement dated as of September 25, 2012 and all corresponding assets and businesses owned and operated by MVF to the extent not encumbered by the Lenders' liens . The Transaction would be effected by a private foreclosure sale by Medley pursuant to Article 9 of the UCC and, to the extent necessary, an asset sale of any unencumbered assets by MVF, in each case to [Point] (either directly or indirectly through a newly-formed, wholly-owned subsidiary of [Point] ("Newco")). |
| | | • Upon the consummation of the Transaction, [Point] would remain a U.S. public company. |
| 2. | **Consideration; Trading Restrictions** | • In connection with the Transaction, [Point] would pay consideration to consisting of cash [amount TBD] and fully registered common stock of [Point] [and options?]. Subject to the next bullet point, the shares of common stock would be freely tradable under the Securities and Exchange Commission rules. |
| | | • The Lenders receiving [Point] stock in the Transaction will enter into agreements that restrict their ability to trade the shares on the open market for a period of [xxx] days from the closing. In addition, upon the termination of the trading restriction, in order to maintain the integrity of the [Point] trading market, [Lenders] would be permitted to sell in any calendar quarter no more than [xx[% of the total number of shares of [Point] originally issued to [Lenders]. |
| | | • MVF employees who are "insiders" receiving [Point] stock in the Transaction will be subject to [Point]'s insider trading policies and black out periods. |
| 3. | **Offer Price** | Upon consummation of the Transaction, the [Lenders] shareholders [and optionholders] would hold a total of [xx]% of the equity capitalization of [Point] on a fully-diluted basis (measured using treasury stock method) and the [Point] shareholders and optionholders would hold the remaining [xx]% of the equity capitalization of [Point] on a fully diluted basis. [Treatment of Options, as necessary]. |

| | | |
|---|---|---|
| 4. | **Employee Options** | Neither party will "cash out" any options in anticipation of, or as a result, of the contemplated Transaction.  It is expected that [Point]'s board will evaluate an option package for the new management team after consummation of the Transaction. |
| 5. | **Registration** | • As part of the Transaction, [Point] common stock to be issued in the Transaction [shall be registered with the SEC] prior to closing. |
| 6. | **Board Representation** | • Upon closing the Transaction, [Point] shall have a [xx]-member Board of Directors (the "Board"), as follows: |

> [x] Board members selected by [Lenders], which shall include [insert names]

> [x] board members selected by [Point], which shall include [insert names]

- At the time that [Lenders] or their affiliated companies no longer hold at least [10%] of the outstanding shares of [Point], [Lenders] would forfeit their right to appoint these [x] Board members.

- [Need for independent board members?]. [not sure this is necessary but TBD]

- This Board structure shall remain in place for a minimum of [24] months after the Closing date.

| | | |
|---|---|---|
| 7. | **Management** | Positions to be determined, but expect substantive leadership positions to be mutually agreed by Lenders and [Point] |
| 8. | **Headquarters** | As a public company, the named principal place of business would be [TBD]. |
| 9. | **Representations and Warranties** | • Customary representations and warranties for a private foreclosure transaction of the size, scope and complexity contemplated.  Operational representations and warranties (including [accounting and financial statements], undisclosed liabilities, litigation, intellectual property, etc.)  shall survive for a period of [xx] months after closing.  Certain other representations and warranties (including tax, environmental and employment/ERISA) would survive until the applicable statute of limitations has passed.  Certain fundamental representations and warranties (due authority, due incorporation, capitalization, ownership) shall survive indefinitely. |

- A number of [Point] shares equal in value to US$xx,000,000  (approximately [5]% of each party's implied value) will be placed in a third party escrow at closing and will be held in escrow for a period of [x] months.  Such escrow account shall be used to satisfy potential claims under the representations and warranties.  Any claims for fraud, accounting, and tax issues, as well as specifically negotiated items resulting from due diligence, will not be capped at this escrow amount.

| | | |
|---|---|---|
| 10. | **Pre-Closing Covenants** | • During the period between the signing of the definitive agreements and the closing of the Transaction, each of MVF and [Point] shall continue to conduct their respective businesses in the ordinary course and will refrain from (except as otherwise agreed among [Point] and Lenders) taking certain actions, including the incurrence of additional debt, changing of the capital structure of either company, sale, lease or license of material assets, etc. |

- In addition, each party shall use their best efforts to take all actions necessary to ensure the Transaction is consummated as expeditiously as possible.

| | | |
|---|---|---|
| 11. | **Principal Conditions to Signing of Definitive Agreements** | The execution of the definitive agreement would occur only after satisfaction of the following, among other conditions:<br><br>• satisfactory completion of due diligence;<br><br>• satisfactory negotiation of definitive documentation; and<br><br>• [Point] [MVF] and [Medley] board approvals |
| 12. | **Principal Conditions to Closing of Transaction** | The closing of the Transaction would occur only after completion of the following, among other conditions:<br><br>• approval of the Transaction by [Point] and [Lenders] shareholders;<br><br>• no material adverse effect on MVF;<br><br>• delivery of closing documentation, including secured party bill of sale |
| 13. | **Termination Rights** | • The parties shall be entitled to terminate the definitive agreement under the following conditions:<br><br>  • mutual agreement of the parties;<br><br>  • the stockholders of [Point] fail to approve the Transaction;<br><br>  • the Transaction is not consummated by [xx] months from execution of the definitive agreement (the "Outside Date"); and<br><br>  • a material breach of the representations and warranties of the other party. |
| 14. | **Governing Law** | The Transaction will be governed by the laws of the United States, State of New York.  Venue for any disputes will be courts within the State of New York. |
| 15. | **Timing** | [Lenders], [Point] and their respective legal and financial advisers are prepared to invest the necessary resources to expeditiously complete due diligence and negotiate all definitive agreements. |

# EXHIBIT 3

**Point.360**
**Schedule of Cash Payments to Medley**
**Interest Expense Only**

| Period | Amount | Date Paid | Check/Wire Transfer |
|---|---|---|---|
| Jul-15 | 3,840.04 | 7/30/2015 | Wire Transfer |
| Aug-15 | 5,422.24 | 8/26/2015 | Wire Transfer |
| Sep-15 | 5,274.17 | 9/25/2015 | Wire Transfer |
| Oct-15 | 9,314.17 | 10/26/2015 | Wire Transfer |
| Nov-15 | 9,834.07 | 11/30/2015 | Wire Transfer |
| Dec-15 | 14,966.47 | 12/24/2015 | Wire Transfer |
| Jan-16 | 20,003.62 | 1/28/2016 | Wire Transfer |
| Feb-16 | 20,581.87 | 2/26/2016 | Wire Transfer |
| Mar-16 | 28,567.79 | 3/28/2016 | Wire Transfer |
| Apr-16 | 30,575.59 | 4/29/2016 | Wire Transfer |
| May-16 | 32,076.90 | 5/31/2016 | Wire Transfer |
| Jun-16 | 33,365.25 | 6/30/2016 | Wire Transfer |

Total Paid    213,822.18

**Wiring Instructions:**
**Currency: USD**
**Instructions: Remit Payment**
**Beneficiary Name: U.S. Bank as Paying Agent for Medley Capital as Admin Agent**
**Beneficiary Address: 214 N. Tryon Street 26th Floor Charlotte, NC 28202**
**Primary Bank Name: U.S. Bank as Paying Agent for Medley Capital as Admin Agent**
**Primary ABA Number: 091000022**
**Account Name: Corporate Trust Agency Services**
**Account Number: 104790617633**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

22287 Mulholland Hwy., # 318
Calabasas, CA 91302

A true and correct copy of the foregoing document entitled (*specify*): _____
 SUPPLEMENTAL DECLARATION OF HAIG S. BAGERDJIAN IN SUPPORT OF MOTION FOR ATTORNEY'S FEES
 AND COSTS
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On (*date*) 01/11/2018      , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)   01/11/2018     , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

 Judge Brand, US Bankruptcy Court, 255 E Temple Street, Suite 1382, Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/11/2018 | Lewis R. Landau | /s/ Lewis R. Landau |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

| | | |
|---|---|---|
| In re: Point.360, a California corporation | | CHAPTER: 11 |
| | Debtor(s). | CASE NUMBER: 2:17-bk-22432 WB |

**ADDITIONAL SERVICE INFORMATION (if needed):**

NEF Service List (category I):

William S Brody on behalf of Creditor Austin Financial Services, Inc.
wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com

Sara Chenetz on behalf of Interested Party Sara L. Chenetz
schenetz@perkinscoie.com, dlax@perkinscoie.com;cmallahi@perkinscoie.com

Peter A Davidson on behalf of Interested Party Courtesy NEF
pdavidson@ecjlaw.com, lpekrul@ecjlaw.com

Brian T Harvey on behalf of Creditor Austin Financial Services, Inc.
bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com

Lewis R Landau on behalf of Debtor Point.360, a California Corporation
Lew@Landaunet.com

Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)
alvin.mar@usdoj.gov

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Shane J Moses on behalf of Interested Party Courtesy NEF
smoses@ml-sf.com, csnell@ml-sf.com

Justin E Rawlins on behalf of Creditor Medley Capital Corporation
jrawlins@winston.com, docketla@winston.com

Justin E Rawlins on behalf of Creditor Medley Opportunity Fund II LP
jrawlins@winston.com, docketla@winston.com

Andrea C Rosati on behalf of Creditor LEAFS LP
andrea@fsgjlaw.com, linh@fsgjlaw.com

Lisa Seabron on behalf of Creditor WRI West Gate South, L.P.
lseabron@weingarten.com

Ronald A Spinner on behalf of Creditor Softitler dba Deluxe Localization Sfera
spinner@millercanfield.com

Arvin Tseng on behalf of Creditor TROY / GOULD PC
atseng@troygould.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Latonia Williams on behalf of Creditor UnitedHealthcare Insurance Company
lwilliams@goodwin.com, bankruptcy@goodwin.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1