1

**Lewis R. Landau** (SBN 143391)
**Attorney-at-Law**
22287 Mulholland Hwy., # 318
Calabasas, California 91302
Voice & Fax: (888)822-4340
*Email: lew@landaunet.com*

2

3

4

5

6

Attorneys for Point.360, a California corporation,
Debtor and Debtor-in-Possession

7

8

### UNITED STATES BANKRUPTCY COURT

9

### CENTRAL DISTRICT OF CALIFORNIA

10

### LOS ANGELES DIVISION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| In re<br><br>Point.360, a California corporation,<br><br>Debtor | Case No.: 2:17-bk-22432 WB<br><br>In a Case Under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.)<br><br>**DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED CHAPTER 11 PLAN [WITH MINOR MODIFICATIONS 12/10/18]**<br><br>**Disclosure Statement Hearing**<br><br>Date:        November 8, 2018<br>Time:        10:00 a.m.<br>Place:       Courtroom 1375; Judge Brand<br>             U.S. Bankruptcy Court<br>             255 E. Temple Street, 13th Floor<br>             Los Angeles, CA 90012<br><br>**Plan Confirmation Status Hearing**<br><br>Date:        January 29, 2019<br>Time:        2:00 p.m.<br>Place:       Courtroom 1375; Judge Brand<br>             U.S. Bankruptcy Court<br>             255 E. Temple Street, 13th Floor<br>             Los Angeles, CA 90012 |

–1–

# TABLE OF CONTENTS

**I. INTRODUCTION** ................................................................................................ **2**

**A. Purpose of This Document and Exhibits.** ......................................................... **2**

**B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.** ...... **4**
   1. Time and Place of the Confirmation Hearing. ................................................. 5
   2. Deadline For Voting For or Against the Plan. ................................................. 5
   3. Deadline For Objecting to the Confirmation of the Plan. ............................... 5
   4. Identity of Person to Contact for More Information Regarding the Plan. ......... 5

**C. Disclaimer.** ....................................................................................................... **5**

**II. BACKGROUND** ................................................................................................. **6**

**A. Description and History of the Debtor's Business.** ........................................... **6**

**B. Principals/Affiliates of Debtor's Business.** ....................................................... **7**

**C. Management of the Debtor Before and After the Bankruptcy.** ........................... **9**

**D. Events Leading to Chapter 11 Filing.** ............................................................... **12**

**E. Significant Events During the Bankruptcy.** ...................................................... **13**
   1. Bankruptcy Proceedings. ............................................................................. 13
   2. Other Legal Proceedings. ............................................................................. 16
   3. Actual and Projected Recovery of Preferential or Fraudulent Transfers. ......... 17
   4. Procedures Implemented to Resolve Financial Problems. ............................... 18
   5. Current and Historical Financial Conditions. ................................................. 19

**III. SUMMARY OF THE PLAN OF REORGANIZATION** ........................................ **19**

**A. What Creditors and Interest Holders Will Receive Under The Proposed Plan.** ... **19**

**B. Unclassified Claims.** .......................................................................................... **19**
   1. Administrative Expenses. .............................................................................. 20
   2. Priority Tax Claims. ...................................................................................... 21
   3. Creditors' Administrative Expense Claims ..................................................... 21

**C. Classified Claims and Interests.** ........................................................................ **22**
   1. Classes of Secured Claims. ........................................................................... 22
   2. Classes of Priority Unsecured Claims. ........................................................... 23
   3. Classes of General Unsecured Claims. ........................................................... 24
   4. Class(es) of Interest Holders. ........................................................................ 26

**D. Means of Effectuating the Plan.** ........................................................................ **26**
   1. Funding for the Plan. .................................................................................... 26
   2. Post-confirmation Management. .................................................................... 27
   3. Disbursing Agent. ........................................................................................ 28

**E. Risk Factors.** ..................................................................................................... **28**

**F.    Other Provisions of the Plan.** ................................................................................. **29**
   1.    Executory Contracts and Unexpired Leases. ................................................. 29
   2.    Changes in Rates Subject to Regulatory Commission Approval. .................... 30
   3.    Retention of Jurisdiction. .............................................................................. 30

**G.    Tax Consequences of Plan.** ................................................................................... **30**

**IV. CONFIRMATION REQUIREMENTS AND PROCEDURES** ............................. **30**

**A.    Who May Vote or Object.** ...................................................................................... **31**
   1.    Who May Object to Confirmation of the Plan. ............................................... 31
   2.    Who May Vote to Accept/Reject the Plan. ..................................................... 31
   3.    Who is Not Entitled to Vote. .......................................................................... 32
   4.    Who Can Vote in More Than One Class. ........................................................ 32
   5.    Votes Necessary to Confirm the Plan. ............................................................ 33
   6.    Votes Necessary for a Class to Accept the Plan. ............................................ 33
   7.    Treatment of Nonaccepting Classes. .............................................................. 33
   8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es). ...... 33

**B.    Liquidation Analysis.** ............................................................................................ **34**

**C.    Feasibility.** .............................................................................................................. **35**

**V. EFFECT OF CONFIRMATION OF PLAN** ........................................................... **36**

**A.    Discharge.** ............................................................................................................... **36**

**B.    Revesting of Property in the Debtor.** .................................................................... **36**

**C.    Modification of Plan.** ............................................................................................. **36**

**D.    Post-Confirmation Status Report.** ........................................................................ **37**

**E.    Post-Confirmation Conversion/Dismissal.** ........................................................... **37**

**F.    Final Decree.** .......................................................................................................... **38**

# I.

## INTRODUCTION

Point.360, a California corporation ("Debtor") is the Debtor in a Chapter 11 bankruptcy case.  On October 10, 2017, the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court") under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq.  Chapter 11 allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

The Proponent seeks to accomplish payments under the Plan by paying creditors from revenues generated by future operations and sales of certain assets.  **A critical condition for Plan confirmation is that the Debtor obtains authority to sell the surplus MVF PPE (as defined herein) with proceeds paid to general unsecured creditors before paying Medley in full.  On January 29, 2019, there will be a hearing before the Bankruptcy Court regarding this issue. If the Debtor is not authorized by the Bankruptcy Court to sell the MVF PPE, the Plan cannot be confirmed as currently proposed and the Debtor may be required to resolicit acceptances of the plan.**  The Effective Date of the proposed Plan is the later of **February 28, 2019** or the 15th day after entry of a Court order confirming the Plan, providing no stay of effectiveness thereof is in effect.  If a stay of effectiveness is then in effect, the Plan becomes effective when such stay is terminated.

## A.    Purpose of This Document and Exhibits.

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.  The following important exhibits are attached hereto:

**Exhibit 1:**    Claims listings by plan class.

**Exhibit 2:**    Cash flow projections for the term of the Plan.

**Exhibit 3:**    Prepetition balance sheets and statements of operations.

**Exhibit 4:**    Liquidation analysis, including Debtor's Schedule A/B.

**Exhibit 5:**    Statement of Financial Affairs Part 2(3), (4) re prepetition transfers.

**Exhibit 6:**    Treatment of executory contracts and leases.

**Exhibit 7:**    Surplus Property, Plant & Equipment ("PPE") inventory valuation.

**Exhibit 8:**    Declaration of Haig S. Bagerdjian in support of this Disclosure Statement.

In summary, the Plan proposes the following treatments for all the Debtor's creditors, equity security holders and executory leases and contracts from and after the Plan Effective Date:

| CLASS | DESCRIPTION | IMPAIRMENT | TREATMENT |
|---|---|---|---|
| Unclassified | Administrative Claims | Unimpaired. | Paid in full on Effective Date. |
| Unclassified | Priority Tax Claims: LA County TTC/ IRS, FTB Cty Orange | Unimpaired. | Statutory treatment over 5 years from petition date/ Paid on Effective Date |
| Class 1 | Austin Financial Services, Inc. | Unimpaired. | Contract rights unaltered, defaults, if any, cured. |
| Class 2 | Medley Capital Corporation Medley Opportunity Fund II, LP | Unimpaired. | Contract rights unaltered, defaults, if any, cured. |
| Class 3 | Priority Employee Claims; See Disclosure Statement Exhibit 1. | Impaired. | Paid in full on Effective Date. |
| Class 4 | UnitedHealth Priority Employee Benefit Plan Claim | Impaired. | Paid in full over 6 months from Effective Date, including from a pro rata share of Medley Litigation proceeds (if any). |
| Class 5 | SAG-AFTRA and SAG-AFTRA Health Fund and AFTRA Retirement Fund Priority Claims | Impaired. | Paid $5,000 monthly from and after the Effective Date until paid in full on 8/1/19, including from a pro rata share of Medley Litigation proceeds (if any). |
| Class 6 | General Unsecured Creditors; See Disclosure Statement Exhibit 1. | Impaired. | Paid over 36 months at $25,000 per month plus proceeds of asset sales within six (6) months of Effective Date (subject to approval by the Bankruptcy Court that the Debtor is permitted to sell the MVF PPE and use the proceeds to pay general unsecured creditors) and a share of Medley Litigation proceeds (if any) paid *pro rata*. Paid between 89% and 100% depending on results of asset sales. |
| Class 7 | Convenience Class of Claims equal to, less than or reduced to $2,500 | Impaired. | Paid 75% on the Effective Date in full satisfaction of such claims. |
| Class 8 | Wilcon Holdings, LLC aka Crown Castle Fiber | Impaired. | Satisfied per Court approved Settlement Agreement. |
| Class 9 | Equity Interests | Impaired. | Equity interests, including stock, options and warrants, are cancelled, but allowed common stock holders receive a *pro rata* junior distribution of net Medley Litigation proceeds, if any, after payment in full of all senior claims. |
| Unclassified | Executory Leases and Contracts | Assumed. | See Disclosure Statement Exhibit 6. |

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.    Time and Place of the Confirmation Hearing.**

The hearing where the Court will determine whether or not to confirm the Plan will take place on the date set forth in the accompanying notice, once set, in Courtroom 1375, 13th Floor, 255 E. Temple Street, Los Angeles, CA 90012.  At this time, a Plan confirmation status hearing is set for January 29, 2018 at 2:00 p.m.  On January 29, 2018, the Bankruptcy Court will determine whether the Debtor is authorized to sell the surplus MVF PPE (as defined herein) with proceeds paid to general unsecured creditors before paying Medley in full.

**2.    Deadline For Voting For or Against the Plan.**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Lewis R. Landau, Attorney at Law, 22287 Mulholland Hwy., # 318, Calabasas, California 91302.

Your ballot must be received by the date set forth in the accompanying notice or it will not be counted.

**3.    Deadline For Objecting to the Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Court and served upon Lewis R. Landau, Attorney at Law, 22287 Mulholland Hwy., # 318, Calabasas, California 91302 by the date set forth in the accompanying notice.

**4.    Identity of Person to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact Lewis R. Landau, Attorney at Law, 22287 Mulholland Hwy., # 318, Calabasas, California 91302; email: Lew@Landaunet.com; voice and fax: (888)822-4340.

**C.    Disclaimer.**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records.  The information contained in this Disclosure Statement is provided by the Debtor.  The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

On January 29, 2018, there will be a hearing before the Bankruptcy Court with respect to the Debtors proposal to sell the surplus MVF PPE with proceeds paid to general unsecured creditors before paying Medley in full. If the Debtor is not authorized by the Bankruptcy Court to sell the MVF PPE, the Plan cannot be confirmed and the Debtor will be required to resolicit acceptances of any other plan.

## II.

## BACKGROUND

### A.    Description and History of the Debtor's Business.

Point.360 (the "Company," "Point.360" or the "Debtor") is a California corporation, originally founded in 1990 to provide video duplication and related services. The current California corporate entity was formed on April 16, 2007 as "New 360", a subsidiary of Point.360. Concurrent with a subsequent merger between the Company and DG FastChannel, the Company contributed its post-production assets and operations to New 360, at which time each Point.360 shareholder received one share of New 360 for each share held of the old Point.360. New 360's name was changed back to "Point.360" immediately after the transaction on August 10, 2007.

The Company expanded its services using resources from internal growth and a 1997 initial public offering of its common stock to eventually include high definition and standard definition digital mastering, data conversion, video and film asset management, distribution and other services to owners, producers and distributors of entertainment and advertising content. The Company provides the services necessary to edit, master, reformat, convert, archive and ultimately distribute its clients' film and video content, including television programming feature films and movie trailers. The Company's interconnected facilities provide service coverage to all major U.S. media centers. Clients include major motion picture studios and independent producers.

As described in further detail in section II(D) herein, in July 2015 the Company completed the purchase of assets formerly owned by Modern VideoFilm, Inc. ("MVF") by issuing shares of its common stock and warrants to purchase MVF's assets. As the result of the transaction, the

Company added post-production service capabilities and expanded its client base comprising major studios, broadcast networks, cable outlets, streaming media companies, independent producers and others.

The Company currently operates from two post production and administrative office locations: (1) 2701 Media Center Drive, Los Angeles, California ("Media Center"); and (2) 1122 and 1133 North Hollywood Way, Burbank, California ("HWAY").  A facility formerly operating as of the petition date at 2300 Empire Avenue, Suite 100, Burbank, California ("Empire") is now closed.  Each location is electronically tied to the other and serves the same customer base. Production equipment consists of tape duplication, editing, encoding, standards conversion, and other machinery.  Skilled personnel are required to efficiently run the equipment and handle customer requirements.  While the two locations are not the same, an order received at one location may be fulfilled at the "sister" facility to use resources in the most efficient manner.

Typically, a feature film or television show or related material will be submitted to a facility by a motion picture studio, independent producer, advertising agency, or corporation for processing and distribution.  A common sales force markets the Company's capabilities for both facilities.  Once an order is received, the local customer service representative determines the most cost-effective way to perform the services considering geographical logistics and facility capabilities.

Debtor is a public company with securities registered under the Securities Exchange Act of 1934.  Debtor has 12,704,506 shares of its common stock outstanding.

**B.    Principals/Affiliates of Debtor's Business.**

The Debtor's principals and affiliates are as follows:

In August 2000, Haig Bagerdjian became an independent member of the Company's Board of Directors. Mr. Bagerdjian became Chairman of the Board in September 2001 and was appointed President and Chief Executive Officer in October 2002. Beginning in 2000, Mr. Bagerdjian purchased shares of the Company's common stock in public and private transactions, eventually becoming the majority shareholder of the Company.

In October 2016, the Company sold to HWAY LLC, a California limited liability company ("HWAY"), all of its right, title and interest in and to the Company's Hollywood Way real estate (the "HWAY Property"). Concurrently, the Company leased the HWAY Property from HWAY. Mr. Bagerdjian holds a 99% membership interest in HWAY. Pursuant to the purchase agreement, the Company sold the HWAY Property to HWAY for a purchase price of $9.8 million in cash. The Company received approximately $4.8 million in cash after payment of approximately $4.6 million of mortgage indebtedness related to the HWAY Property, approximately $0.3 million paid to HWAY for a security deposit and rent under the lease agreement, and other closing costs.

Under the lease agreement, the Company will continue to occupy the HWAY Property for an initial term of 11 years, commencing on October 11, 2016. The Lease may be extended for two five-year options; however, such options may not be exercised if (i) the Company is sold to another person, or (ii) if Mr. Bagerdjian and/or his affiliates cease to be a controlling shareholder of the Company. The term of the lease expires on October 31, 2027, unless it is extended under the Company's option rights. The monthly base rent under the lease was $65,644 which base rent is subject to an annual increase of 3%. The Company is responsible for paying utilities, operating expenses and real estate taxes.

In connection with the sale and leaseback, the Company's Board of Directors established a special committee (the "Special Committee") consisting of independent and disinterested directors. The Special Committee was granted the power and authority to (i) evaluate the terms of the sale and leaseback and (ii) negotiate the sale and leaseback documentation with Mr. Bagerdjian. As part of that process, the Special Committee considered market information that the Company obtained through the Company's efforts to sell the HWAY Property. The Special Committee engaged independent legal counsel and advisors for purposes of evaluating and negotiating the sale and leaseback with Mr. Bagerdjian. Prior to closing, the sale and leaseback documentation was approved by both the Special Committee and the Board of Directors.

**C.    Management of the Debtor Before and After the Bankruptcy.**

The Debtor's President and Chief Executive Officer is Haig S. Bagerdjian.    Mr. Bagerdjian became Chairman of the Board in September 2001, was appointed President and Chief Executive Officer in October 2002, and was appointed Chief Financial Officer in February 2017.    Mr. Bagerdjian was Executive Vice President of Syncor International Corporation, a leading provider of radiopharmaceuticals, comprehensive nuclear pharmacy services and medical imaging services, from 1991 to 2002.    From 1987 to 1991, he served in several executive level positions at Calmark Holding Corporation.    He also was General Counsel for American Adventure, Inc., which was a subsidiary of Calmark Holding.    Mr. Bagerdjian received a J.D. from Harvard Law School and is admitted to the State Bar of California.    Mr. Bagerdjian is a director of Innodata-Isogen, Inc.

The Debtor's other members of its board of directors are: Sam P. Bell, J.R. DeLang, Gregory Hutchins and G. Samuel Oki.

Debtor's management personnel are as follows:

**Brian Ehrlich EVP, Operations and Sales**

Brian Ehrlich started his career in the entertainment industry as an assistant recording engineer at Capitol Records in Hollywood, California. During his time at Capitol he worked with the likes of Frank Sinatra, B.B. King, Natalie Cole, The Brian Setzer Orchestra, Bono, Tony Bennett, and many others. After his time in the music business, Brian migrated to the post-production industry as a Mixing Engineer at the first all-digital facility in the world, called Pacific Ocean Post (POP). During his time at POP Brian cut his post production teeth mixing and editing sound for commercials, documentaries, feature films, and television shows. It was at POP that Brian started restoring feature film sound for Paramount and MGM, working on such titles as Chinatown and Shane, amongst many others. Brian was recruited to start a sound restoration division for Todd-AO Sound (later Ascent Media/Deluxe). In his 5 years at Todd-AO Brian restored hundreds of films for MGM, Paramount, Disney, and Sony. In 1999 Brian decided it was time to start his own company. He secured a five year contract with MGM to handle a large sound restoration project, and Sound Solution, LLC was born. Brian served as the CEO and Managing

Partner at Sound Solutions from 1999 until 2005, where he oversaw the restoration and creation of sound for more than 500 feature films.  In 2005 Point.360 acquired the company from Brian and his partners. Brian stayed on at Point.360 as the Executive Director of Audio Services until 2007, when he became the General Manager of the Burbank facility. During his tenure as GM, Brian was able to facilitate the development of accelerated file delivery with ABC Studios/Marvel, and in the final season of the blockbuster TV show Lost, Point.360 successfully delivered localized files to over 65 countries within an hour of the domestic broadcast. In 2010 Brian was promoted to SVP of Operations, overseeing the operations for all Point.360 facilities. In his role overseeing operations, Brian successfully spearheaded the initiative to add Text Localization and Script Services as an offering. In 2012 revenue was added to the list of Brian's responsibilities as he was promoted to EVP of Operations and Sales. In 2015 Brian and his team were able to attain Netflix Preferred Vendor status for Master Quality Control, and have since been added as a Gold Tier Netflix Post-production Partner (NP3) for Creative Services Picture and Sound.

**John Schweizer, VP, Corporate Controller**

John Schweizer is the Company's Vice President and Corporate Controller, and has been with Point.360 since January 2001.  Mr. Schweizer served at Sr. Financial Analyst at Above Commerce, Inc. from 1999 to 2000.  From 1996 to 1999, Mr. Schweizer served a Business Manager and Director of Financial Reporting for El Camino Resources, Inc.  Mr. Schweizer held licenses with the Securities and Exchange Commission during his service at Merrill Lynch from 1995 to 1996, and holds a Bachelor of Arts Degree in Business Administration from the University of California at Berkeley.

**Dave Weathers, EVP, Business Development**

Dave Weathers graduated from UCLA in 1985, where he majored in motion picture and television. Dave started working at Marvel Productions as an assistant editor, and was promoted to run that division two years later managing 30 editors. In 1989 Dave started at Glen Glenn Sound as a Sound Supervisor, working with Steven Bochco, David Kelley, and Arron Spelling. In 1994 Dave founded Miles o' Fun, a sound editorial company, and grew revenues to more than

13 million dollars. In 2001 Dave sold Miles o' Fun to Technicolor, where he stayed on as the President of Sound Services. During his tenure Dave participated in multiple acquisitions, and was able to grow the business to 35 million dollars. In 2016 Dave went on to become EVP of all Post-production Picture and Sound, in which he oversaw P/L responsibility of more than 180 million dollars. In 2013 Dave started 12 Stories Productions where he wrote and directed 10 short films, as well as developing 20 other feature films and broadcast pilots. In 2016 Dave joined Point.360's senior management team to help develop and grow the post-production finishing business, which has included the identification and recruiting of talent for several of the growing post-production team's roster.

### David Tuszynski, General Manger – Point.360 Media Center

In 1991 David Tuszynski joined VDI Inc. (a predecessor of Point.360). David was promoted to an operations manager by 1994. Ultimately VDI was acquired by Point.360, and in 1999 David was promoted to General Manager of the Westside facility. David held that position until his departure in 2002, where he joined Modern VideoFilm as a General Manager at their WSI facility. In 2005 David returned to Point.360 as an Operations Manager, and within 18 months was promoted to Director of Operations. In 2007 David was promoted to his current role as General Manager, Media Center.  Dave is responsible for the overall management and well-being of the facility, and the 3 diverse profit centers that operate within that facility.

### Jeff Brink, General Manger – Point.360 Burbank

Jeff Brink has spent the past twenty three years in post-production with his experience concentrated in technical operations and administrative management roles.  Jeff started at Point.360's predecessor as a video tape operator, and has steadily risen through the ranks as an Operations Manager in nearly every discipline. In 2010 Jeff was promoted to General Manager of the Burbank facility, where he has successfully led a team of talented people. In his tenure as GM, Jeff has implemented a hiring and training program for entry-level employees.

### Walt Bigelow, VP, Engineering

Walt Bigelow has more than 22 years of experience in post-production engineering. Walt started as a staff engineer at Varitel Video San Francisco in 1996, and continued with the

–11–

company through its eventual acquisition by Modern VideoFilm. In 2016 Walt was promoted by Point.360 to VP, Engineering where he has successfully led a diverse team of engineers. Walt is an expert in network infrastructure & security, video systems, color science, and storage area networks.

**D.    Events Leading to Chapter 11 Filing.**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

Debtor had suffered pre-tax losses of $1.2 million in 2013, and $2.7 million in 2014, based upon substantially lesser sales than MVF.  In December 2014, Debtor's existing lender cancelled the availability of funds under Debtor's revolving credit facility due to the Debtor's failure to meet its financial covenants.  Additionally, due to the Debtor's failure to meet financial covenants in the past, and uncertainty regarding the Debtor's ability to meet new covenant requirements, Debtor was required to classify the balance owed for its mortgage debt and capital leases as a current liability in its consolidated balance sheet as of December 31, 2014, and in its Form 10-Q for the quarterly period ended December 31, 2014.

Debtor intended for the MVF acquisition to add two unique lines of business to augment Debtor's existing businesses and strengthen and synergize the existing business lines by combining operations and optimizing cost efficiencies.

On July 8, 2015, Debtor and Medley executed and closed on the "Sale Agreement Pursuant to Article 9 of the Uniform Commercial Code" ("the Sale Agreement") and the related "Term Loan Agreement" ("TLA") and Security Agreement.

Pursuant to the Sale Agreement, Debtor paid no cash to Medley.  Rather, Medley obtained 2,000,000 shares and 800,000 warrants in Debtor.  Pursuant to the Sale Agreement, Debtor granted Medley two (2) seats on Debtor's expanded seven-person board.  Additionally, pursuant to the Sale Agreement, Debtor agreed to make employment offers to *all* existing employees of MVF in substantially similar roles and with the same annual salary, and to pay certain PTO, sparing Defendants potential state and federal WARN Act liability.  As a result of closing on the transaction, Debtor's bi-weekly employee payroll increased from $485,532 ($12,623.832 annually) to $1,276,272 ($33,183.072 annually), a nearly three-fold increase.

The Sale Agreement provided that, upon the closing of the Sales Agreement, Medley was obligated to provide Point.360 with a $6 million five-year term loan.  The Debtor and Medley entered into the TLA and Security Agreement.  Section 2 of the TLA provided that interest, at the election of the Debtor, could be capitalized and added to the principal amount due at the end of the term.

As of the closing date of the MVF transaction on July 8, 2015, Debtor's total unsecured debt (excluding its capital leases, term loans and line of credit – which were secured by Debtor's fixed assets and/or accounts receivable -- and including accrued vacation for Debtor's employees) was less than $745,000.  As detailed in this Disclosure Statement, on the date Debtor filed its petition for relief under Chapter 11, that figure had increased nearly six-fold to $4,235,547.

On March 31, 2016, less than nine months after the closing on the Sale Agreement, TLA and Security Agreement, the Medley designees on the Debtor's Board of Directors resigned. Debtor will assign standing to prosecute claims against Medley to the Creditors' Committee for prosecution if the Committee elects to do so.

While Debtor was working toward profitability in 2017, Debtor received a 3-day notice to pay rent or quit for its Media Center facility on October 6, 2017.  Debtor also settled an unlawful detainer filed by REEP related to the Empire facility resulting in REEP's claim for $915,996.90. *See* POC # 55.  The Debtor intends to retain the Media Center facility as a component of the reorganized business and assume the Media Center lease under the Plan.  Consequently, Debtor was required to file its chapter 11 petition on October 10, 2017 to maintain its core operating facilities and implement its reorganization plan through the chapter 11 process.

**E.    Significant Events During the Bankruptcy.**

**1.    Bankruptcy Proceedings.**

The following is a history of significant events which have occurred in the case:

From a business operations standpoint, Debtor's post-petition period was dominated by the need to preserve and maintain customer and employee relationships impacted by the chapter 11 filing and concurrently fully close and transition operations from its Empire facility without disrupting workflow.  The transition out of Empire required substantial technical service work

regarding computer network and server equipment.  Debtor completed its transition out of the Empire facility as needed to preserve its opportunity to resolve the REEP claim.

In addition to business burdens, Debtor duly addressed all legal issues arising from filing its chapter 11 case.  After filing its voluntary chapter 11 petition on October 10, 2017, Debtor filed first day motions to facilitate continued operations, including a motion to use Austin Financial Service, Inc's ("Austin") cash collateral and pay prepetition payroll to approximately 250 employees.  The cash collateral motion was granted on an interim basis and prepetition payroll authorized per orders entered October 12, 2017.  *See* ECF #s 13 and 14.  Debtor continued authorized use of cash collateral through a final order entered December 19, 2017.  *See* ECF # 94.

During the period of cash collateral usage, Debtor negotiated a substantial Debtor in Possession financing facility ("DIP Financing") with Austin.  DIP Financing was critical to support and strengthen Debtor's continuing operations through October 2018 and convey confidence in Debtor's business operations to customers, vendors and employees.  On November 22, 2017 Debtor moved to approve the DIP Financing.  The DIP Financing was approved per order entered December 22, 2017.  *See* ECF # 101.  The DIP Financing matures on October 31, 2018 and a six (6) month extension of the facility is anticipated.

Medley moved for adequate protection with an initial hearing set for January 11, 2018.  The matter was continued to February 7, 2018.  The Court entered its order on the Medley adequate protection motion on April 30, 2018.

A claims bar date was set for January 31, 2018 and 79 claims have been filed to date, with certain claims withdrawn or amended.  The Debtor's significant liabilities, disputed and undisputed, are summarized as follows:

1. Medley: not less than $6,572,764.28, plus allowed post-petition accruals.

2. Austin: $2,475,676.48.

3. REEP: $915,996.90 (settled as of 10/4/18 and reduced to $15,996.90).

4. General unsecured creditors: approximately $1.66 million [with disputed; see Exhibit 1].

5. HWAY, LLC: $803,923.13.

–14–

Debtor has also retained the following professionals:  Lewis R. Landau as general bankruptcy counsel.  *See* ECF # 58.  TroyGould, LLP as special transactional counsel.  *See* ECF # 148.  McCabe & Hogan, P.C. as special litigation counsel.  GlassRatner Advisory & Capital Group, LLP as financial consultant and expert witness.  *See* ECF # 170.  *See* ECF # 171.  Holthouse Carlin & Van Trigt LLP as accountants for tax returns.  *See* ECF # 209.  MICOR Analytics as appraiser.  *See* ECF # 218.

Finally, Debtor negotiated resolution of various executory contract issues with creditors.  Debtor obtained approval of motions to assume insurance premium finance and payroll services contracts with AFCO Acceptance Corporation ("AFCO") [ECF # 40] and ADP, LLC ("ADP") [ECF # 100], respectively.  Debtor also obtained stipulations for 90-day extensions of time to assume or reject real property leases pursuant to 11 U.S.C. § 365(d)(4) with lessors LEAFS Properties, L.P. ("LEAFS") regarding the Media Center facility and HWAY, LLC (an affiliate of Mr. Bagerdjian) for the Hollywood Way facility.  *See* ECF #s 131, 172.  These real property leases are now being assumed under the Plan.  *See* Disclosure Statement Exhibit 6.

Debtor has also completed two important plan related settlements.  The first is with REEP-OFC 2300 Empire CA, LLC ("REEP") concerning REEP's $915,996.90 claim, the approval of which reduced that claim to $15,996.90 in exchange for the Debtor's sale to REEP of various PPE that remained at the Empire site after Debtor vacated.  *See* ECF # 365.

The second is with Wilcon Operations, LLC ("Wilcon") concerning Wilcon's prepetition contracts for datacenter, fiber and colocation professional services and Wilcon's claims for unpaid administrative expenses.  The closure of the REEP Empire facility resulted in substantially reduced demand for services under the Wilcon contracts.  Consequently, the Debtor and Wilcon negotiated changes to the Wilcon Contracts that reduce the services provided to reflect market rate for comparable services.  Debtor's monthly service charge is reduced from $51,299.34 to $26,500 (plus taxes) as of February 1, 2018 provided Debtor extended the term of the Wilcon contracts to 36 months from February 1, 2018.  Debtor wired $353,026.97 to Wilcon on September 6, 2018 to cure post-petition amounts due through September 30, 2018 which reduced the Debtor's post-petition contract rate accrual for Wilcon services from a claim of $545,710.92

to $353,026.76, a savings of $192,683.95.  Moreover, the settlement with Wilcon provided terms for the repayment of the Wilcon claim for prepetition amounts due of $124,644.01 that are set forth as Wilcon's class 8 plan treatment.  Most importantly, the Wilcon settlement maintain continuity for a critical service provided to maintain connectivity among the Debtor's facilities. The Debtor cannot operate without high speed, high bandwidth, data connectivity for the large video and data files Debtor moves among its facilitates and to clients.

In the interim time between filing the Debtor's original Disclosure Statement and Plan on May 8, 2018, Medley and Deloitte Corporate Finance LLC and Deloitte Transactions and Business Analytics, LLP (collectively, "Deloitte") entered into a Court approved stipulation to standstill on their disputes within the case and in related adversary proceeding number 2:18-ap-01141 WB in favor of a voluntary mediation conference.  Judge Kwan mediated the parties' disputes on August 15, 2018 but the disputes were not settled and the mediation ended on that date.

Debtor moved for and obtained extensions of Debtor's plan proposal and acceptance exclusivity periods.  Debtor's plan exclusivity periods have now expired as of October 5, 2018.

Debtor is in full compliance with all of its duties under 11 U.S.C. §§ 521, 1106 and 1107 and all applicable guidelines of the Office of the United States Trustee, including all Monthly Operating Reports.

**2.    Other Legal Proceedings.**

The Debtor's other legal proceedings are as follows:

Debtor's only prepetition litigation matters pending as of the chapter 11 filing date were the REEP unlawful detainer action and a collection by ACCO Engineering Systems, Inc. ("ACCO").  The REEP action was resolved through stipulated judgment and the ACCO matter is stayed and the subject of ACCO's claim # 46 filed in the bankruptcy case.  Debtor disputes ACCO's claim.

Debtor will assign standing to the Creditors' Committee before or at Plan confirmation to prosecute claims against Medley if the Committee elects to do so.

Debtor has also claimed an interest in approximately $4 million in settlement proceeds of certain commercial tort claims against Deloitte and Managease, Inc. that are subject to dispute in the Modern VideoFilm, Inc. chapter 11 case (case number 8:18-bk-11792-MW).  MVF moved for relief from stay to continue pursuing matters related to the proceeds.  Debtor contents that such claims and proceeds were assigned to the Debtor within the July 8, 2015 Medley Sale Agreement because Medley took a security interest in the commercial tort claims just before July 8, 2015.  MVF and Medley dispute Debtor's claim.  The matter is currently *sub judice* and the availability of any proceeds to be recovered therefrom is uncertain.  If any such proceeds are recovered, such proceeds will contribute to payment of general unsecured creditors under the Plan ("MVF Proceeds").

**3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers.**

Per the Debtor's Statement of Financial Affairs, the Debtor has identified prepetition transfers as set forth in Exhibit 5 hereto.  Gross prepetition transfers on account of antecedent debt in the 90-days preceding the petition date total $923,303, excluding Austin Financial Services, Inc., United Healthcare and Leafs Properties, LP. (Debtor does not believe the foregoing entities are subject to preference recovery).  Debtor's position on these transfers is as follows:

1.      Debtor analyzed the accounts of creditors receiving transfers totaling over $15,000 during the 90-day period.  Debtor does not believe it is cost effective to pursue preference recoveries for transfers not exceeding $15,000 due to the cost versus benefit of doing so.

2.      There were 15 creditors receiving transfers exceeding $15,000 during the 90-day preference period.  Of these 15 transferees, three (3) clearly received payments within ordinary business terms, leaving 12 creditors receiving transfers totaling $394,979 during the preference period. Debtor believes that the 12 creditors receiving transfers totaling $394,979 would assert ordinary course and new value defenses to recovery.  Assuming a 50% recovery rate and $100,000 in litigation expenses, Debtor may net approximately $100,000 from the pursuit of such actions.

3.      Based on the foregoing, and based on Debtor's anticipation of paying claims in full over the Plan term.

Debtor will not pursue avoidance actions against prepetition creditors under the Plan. Notwithstanding the foregoing, Debtor reserves and may pursue any claims against Medley, to the extent not assigned to the Committee as set forth in the Plan.

**4.      Procedures Implemented to Resolve Financial Problems.**

After the initial disappointing results of the MVF acquisition, Debtor initiated a business plan to reduce expenses and reestablish profitability.  The significant changes to Debtor's operations were as follows:

a.      Debtor eliminated approximately 100,000 square feet of rental space by vacating its Santa Monica, Glendale and Empire (second floor) facilities in 2015.

b.      Debtor further reduced rent and associated expenses by closing its 37,930-foot Empire facility (first floor).  Rent and CAM charges at this facility were approximately $200,000 monthly.  Debtor entered a prepetition stipulation with REEP to vacate the facility by December 4, 2017 and did not incur post-petition rent during the period prior to December 4, 2017 if Debtor vacated by that date.  Debtor met the vacate deadline but continued to store certain equipment at the facility per agreement with REEP. Debtor has now fully vacated the Empire facility and concluded a settlement with REEP reducing REEP's claim to $15,996.90.

c.      A Reduction in Force (RIF) has been completed reducing Debtor's employee headcount from 261 to 196.  The RIF will result in annual cost savings of $3.3 million in salary and benefits.  The reduction represents 17.5% of the Debtor's total salaries and benefits.

d.      The projections contemplate that the Media Center facility will be abandoned at lease maturity in March 2021.  The Debtor will relocate into a smaller and less expensive facility. The current rent for the Media Center facility is $145,000 per month   These projections reduce the monthly lease costs by $100,000 in April 2021.

e.      Additional information regarding recent changes in financial performance is contained in notes to the Exhibit 2 pro forma projections.

As a result of the right-sizing of the Debtor's operating expenses in concert with a continuation of the current revenue run rate, significant profitability can be attained again.

A significant component of recovery for unsecured creditors is the Debtor's liquidation of surplus MVF PPE which Debtor contends can be liquidated and paid to unsecured creditors as released from Medley's security interest under the express terms of Debtor's agreements with Medley. Debtor has obtained a valuation of such surplus PPE attached hereto as Exhibit 7. The valuation estimates a high net recovery of $915,000 and low net recovery of $537,000 from the liquidation of the MVF PPE. Debtor estimates recovering the midpoint of these estimates or approximately $750,000 which will materially reduce the claims of general unsecured creditors.

**5.    Current and Historical Financial Conditions.**

Financial statements reflecting Debtor's pre-petition and post-petition operations are attached hereto as Exhibit 3. Exhibit 3 includes prepetition and post-petition balance sheets and statements of operations through September 30, 2018. Operating projections for the term of the Plan are attached as Exhibit 2.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

**A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan.**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B.    Unclassified Claims.**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

## 1.    Administrative Expenses.

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(2).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  The following chart lists all of the Debtor's anticipated unpaid 507(a)(2) administrative claims for chapter 11 professionals, the Bankruptcy Court clerk's office and the Office of the United States Trustee and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Lewis R. Landau Attorney at Law | $TBD ($150,000 estimated unpaid as of 11/1/18) | Paid in Full on Effective Date |
| Brinkman Portillo Ronk, APC Committee Counsel | $TBD ($150,000 estimated unpaid as of 11/1/18) | Paid in Full on Effective Date |
| GlassRatner Advisory & Capital Group; Financial Advisor | $TBD ($50,000 estimated unpaid as of 11/1/18) | Paid in Full on Effective Date |
| Daniel P. Hogan Attorney at Law Special Litigation Counsel | $TBD ($19,000 estimated unpaid as of 11/1/18) | Paid in Full on Effective Date |
| TroyGould, P.C. Special Transactional Counsel | $TBD ($6,000 estimated unpaid as of 11/1/18) | Paid in Full on Effective Date |
| Clerk's Office Fees & Miscellaneous | $TBD | Paid in Full on Effective Date |
| Office of the U.S. Trustee Fees | Current | Paid in Full on Effective Date |
| | TOTAL TBD ($375,000 estimated) | |

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay certain administrative claims on the Effective Date of the Plan in amounts to be determined.  As indicated elsewhere in this Disclosure Statement, Debtor will have a sufficient amount of cash on hand on the Effective Date of the Plan.  The source of this cash will be proceeds in the Debtor's accounts.

**2.    Priority Tax Claims.**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the petition date with interest at the most favorable rate offered to other creditors in the Plan.  The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| • Name= | | • Pymt interval: = 48 monthly installments | |
| • Los Angeles County TTC | $148,219.54 (POC 7-2) | • Pymt amt/interval: | = $4,354 |
| • Type of tax = Property | | • Begin date: | Effective Date |
| | | • End date: | 10/1/22 |
| • Date tax assessed= 10/27/17 | | • Interest Rate % | = 18% |
| | | • Total Payout Amount | = 100% |
| **Description** | **Amount Owed** | **Treatment** | |
| • Names = | | • Pymt interval: = Single | |
| • IRS | $1,000 | • Pymt amt/interval: | = In full |
| • FTB | $800 | | |
| • County of Orange | $1,802.80 | | |
| • Type of tax = Misc. | | • Begin date: | Effective Date |
| | | • End date: | Same |
| • Date tax assessed= Misc. | | • Interest Rate % | = N/A |
| | | • Total Payout Amount | = 100% |

**3.    Creditors' Administrative Expense Claims**

Creditors may assert administrative priority expense claims arising from, e.g., their post-petition services provided to the Debtor under Code Section 503(b).  Such expenses may include rent, utilities, and insurance, among other items.  **Administrative Claims bar date**:  The last day to file a request for payment of Administrative Expense Claims, other than those set forth in section II(B)(1) above, is set forth in the notice of the Plan confirmation hearing accompanying this Disclosure Statement.  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

## C.    Classified Claims and Interests.

### 1.    Classes of Secured Claims.

Secured claims are claims secured by liens on property of the estate.   The Debtor's secured creditors are identified below, other than purported equipment leases that may constitute financing transactions with nominal lease end purchase options.   These purported equipment lease claims are listed on Exhibit 6 to the Disclosure Statement.   Debtors shall assume purported equipment leases through the confirmation process, while reserving the right to seek recharacterization of such purported equipment leases in the event of any dispute concerning the Debtor's title to the assets subject to such purported equipment leases.   *See*, § III(F)(1).

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1 | Secured claim of: Austin Financial Services, Inc. | No | • Pymt interval = Per Loan Agreement |
| | • Name= Austin Financial Services, Inc. | | • Pymt amt/interval = Per Loan Agreement |
| | • Collateral description = All Assets | | • Balloon pymt = Maturity 10/31/18 [six month extensions of maturity anticipated] |
| | • Collateral value = Varies per operations; fully secured. | | • Begin date = Effective Date. |
| | • Priority of security int. = 1. | | • End date = Same |
| | • Principal owed = $2,475,676.48 per POC 34. | | • Interest rate % = 0% |
| | • Pre-pet. Arrearage amount = $0 | | • Total payout = Per contract. |
| | • Post-pet. Arrearage amount = $0 | | • Treatment of Lien = Unimpaired per 11 U.S.C. § 1124(1) and (2). |
| | • Total claim amount = $2,475,676.48 per POC 34, subject to post-petition changes in account status. | | *Note:* **To the extent that Austin Financial Services, Inc. does not agree to continue financing post-confirmation, the existing DIP facility requires payment in full on the Effective Date of the Plan.  At this time, Austin Financial Services, Inc. has not committed to exit financing and the existing DIP facility requires payment in full on the Effective Date of the Plan.** |

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2 | Secured claims of:<br>Medley Capital Corporation<br>Medley Opportunity Fund II, LP | No | • Pymt interval = Per Term Loan Agreement and related Loan Documents. |
| | • Name= Collectively Medley | | • Pymt amt/interval = Per Term Loan Agreement and related Loan Documents. |
| | • Collateral description = All assets excluding accounts and real estate | | • Balloon pymt = Maturity 7/8/20 |
| | • Collateral value = Fully secured. | | • Begin date = Effective Date. |
| | • Priority of security int. = 2. | | • End date = Same |
| | • Principal owed = $6,000,000 per POCs 72, 73 | | • Interest rate % = Per contract. |
| | • Pre-pet. Arrearage amount = $0 [PIK interest accrual] | | • Total payout = Per contract. |
| | • Post-pet. Arrearage amount = $0 [PIK interest accrual] | | • Treatment of Lien = Unimpaired per 11 U.S.C. § 1124(1) and (2). |
| | • Total secured claim amount = $ 6,572,764.28 plus allowed post-petition accruals. | | |

## 2. Classes of Priority Unsecured Claims.

Certain priority claims that are referred to in Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim unless such creditor agrees to alternate treatment.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.  The Debtor's priority unsecured claims are listed on Exhibit 1 to the Disclosure Statement.

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | Priority Wages, Commissions, Salary Claims Per § 507(a)(4) | Yes | Payment Interval = 1. |
| | Total amount of claims = $92,685.13<br>See Disclosure Statement Ex 1. | | Payment amt/interval = All allowed priority claims per 11 U.S.C. § 507(a)(4) shall be paid in full on the Effective Date. |
| | | | Begin Date =   Effective Date. |
| | | | End date =      Effective Date. |
| | | | Interest Rate:  None. |
| | | | Total Payout = 100%. |

| Class | Description | Impaired (Y/N) | Treatment |
|-------|-------------|----------------|-----------|
| 4 | UnitedHealth Insurance Company; Priority Employee Benefit Plan Per § 507(a)(5) | Yes | Payment Interval = 6 monthly installments.<br>• Any default under the terms of the Plan concerning the repayment of UnitedHealthcare's claims shall be deemed to be a default under the terms of the Group Policy under Enrolling Group No. 910300. |
| | Total amount of claims = $142,152.77 per POC 33-2 | | Payment amt/interval = $24,669.34 months 1 to 5 with balance due in month 6, plus pro rata share of proceeds of Medley Litigation, if any, until paid in full. |
| | | | Begin Date = Effective Date. |
| | | | End date = August 1, 2019. |
| | | | Interest Rate:  5% |
| | | | Total Payout = 100% |

| Class | Description | Impaired (Y/N) | Treatment |
|-------|-------------|----------------|-----------|
| 5 | SAG-AFTRA and SAG-AFTRA Health Fund and AFTRA Retirement Fund Priority Claims Per § 507(a)(5) | Yes | Payment Interval = $5,000 monthly installments. |
| | Total amount of claims = $37,466.75 per POCs 57-1 and 58-1 | | Payment amt/interval = $5,000 month, plus pro rata share of proceeds of Medley Litigation, if any, until paid in full. |
| | | | Begin Date = Effective Date. |
| | | | End date = August 1, 2019. |
| | | | Interest Rate:  N/A |
| | | | Total Payout = 100% |

**3.    Classes of General Unsecured Claims.**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the classes containing all of Debtor's general unsecured claims:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 6 | Allowed General Unsecured Claims identified in Disclosure Statement Exhibit 1. | Yes | Payment Interval = 36 monthly installments plus proceeds of MVF asset sales within six months of Effective Date (subject to approval by the Court that the Debtor is permitted to sell the MVF PPE and use the proceeds to pay general unsecured creditors ) and pro rata share of net Medley Litigation proceeds, if any, until paid in full. *See* means for effectuating plan. |
| | Total amount of claims: $1,699,695.01 which includes $163,506.24 disputed | | Payment amt/interval = $25,000 monthly distribution paid pro rata from and after the Effective Date plus net proceeds of MVF PPE sale (subject to approval by the Court that the Debtor is permitted to sell the MVF PPE and use the proceeds to pay general unsecured creditors), MVF Proceeds and net Medley Litigation proceeds, if any. |
| | | | Begin date =          Effective Date |
| | | | End date =          February 1, 2022 |
| | | | Interest rate: Federal Judgment Rate in Effect as of Confirmation Hearing. |
| | | | Total payout = 89% to 100% |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 7 | Convenience Class of unsecured claims less than or reducing to $2,500. | Yes | Payment Interval = single 75% payment on Effective Date. |
| | Total amount of claims = Approx. $52,467 [excluding voluntarily reduced claims.] | | Payment amt/interval = Single payment of 75% of face amount of allowed claim. |
| | | | Begin date = Effective Date. |
| | | | End date = Single lump sum payment on Effective Date. |
| | | | Interest rate: Not applicable. |
| | | | Total payout = 75% on Effective Date. |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | |
| 8 | Wilcon Holdings, LLC aka Crown Castle Fiber | Yes | Payment Interval = Per Settlement Agreement at $10,387 per month. |
| | Total amount of claims = $124,274.69 per Settlement | | Payment amt/interval = Per Settlement Agreement at $10,387 per month. |
| | | | Begin date =    Per Settlement. |
| | | | End date =    Per Settlement. |
| | | | Interest rate:    Not applicable. |
| | | | Total payout = 100% |

**4.      Class(es) of Interest Holders.**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 9 | Equity Security Holders | Yes | All equity security interests, including stock, options and warrants, are cancelled on the Effective Date. Holders of allowed equity interests for common stock as of the Effective Date shall receive a proportionate share of any net Medley Litigation proceeds after full satisfaction of class 5 general unsecured claims, if any. |

**D.      Means of Effectuating the Plan.**

**1.      Funding for the Plan.**

The Plan will be funded by the following and will be implemented pursuant to the following steps:

1.      On the Effective Date, property of the estate will revest in the Debtor.

2.      The Debtor shall manage and operate its business generally in accordance with the projections attached as Disclosure Statement Exhibit 2.

3.      The Debtor shall make all Effective Date and subsequent fixed and recurring payments set forth in the Plan.

4.      At or before the Effective Date, Debtor shall assign standing to prosecute any claims against Medley ("Medley Litigation") to the Creditors' Committee and the Committee may settle, compromise, dismiss or otherwise dispose of such claims subject to Bankruptcy Court approval. Any net proceeds recovered from the Medley Litigation shall be paid first to priority claims until paid in full and then all general unsecured creditors *pro rata* until paid in full and

then to former allowed equity security holders *pro rata* according to their percentage stock ownership in the Debtor as of the Effective Date. The Committee shall remain in effect pending the resolution of any Medley Litigation. If the Committee does not accept such claims, the Committee will terminate on the Effective Date and the Medley Litigation claims will remain vested in the post-confirmation Debtor.

5.    Within six (6) months of the Effective Date, Debtor shall have completed the sale of surplus MVF assets listed in Exhibit 7 to the Disclosure Statement (the "MVF PPE"). To the extent permitted by the Court to sell the MVF PPE and pay the proceeds to anyone other than Medley, net proceeds received by Debtor from such sale(s) shall be distributed as set forth herein, first to fully satisfy priority claims and then to general unsecured creditors.

6.    On the Effective Date, Debtor shall cancel all outstanding equity securities, including stock, options and warrants, and complete such regulatory requirements to delist Debtor's securities from the public market.

7.    Debtor shall authorize and issue 5,000,000 shares of common stock to HWAY, LLC in full satisfaction of Debtor's $803,923.13 cure obligation for assumption of the HWAY, LLC lease. Mr. Bagerdjian holds a 99% membership interest in HWAY.

8.    Any distribution made by the Debtor that remains unclaimed and outstanding for more than ninety (90) days after issuance shall be cancelled, and any such property shall revest in the Debtor.

9.    The Debtor will not issue, nor will there be, any shares of non-voting securities of the Debtor, in accordance with 11 U.S.C. § 1123(a)(6).

10.    The Court will retain jurisdiction over the post confirmation estate until such estate is fully administered and a final decree is entered.

**2.    Post-confirmation Management.**

The Debtor will be revested with all property of the estate and shall manage all post-confirmation affairs. Post-confirmation management will remain unchanged. *See* Disclosure Statement § II(C).

3.        **Disbursing Agent.**

The Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The disbursing agent shall serve without bond and shall receive no additional compensation for distribution services rendered pursuant to the Plan.

**E.      Risk Factors.**

The proposed Plan has the following risks: The primary risk is that the Court determines that the Debtor is not authorized to sell the MVF PPE and use the proceeds to pay general unsecured creditors.  A second risk is that the revenues necessary to fund the plan are not achieved due to general economic conditions and market factors.  A third risk is the sale proceeds received upon the liquidation of the MVF PPE necessary to fund unsecured creditor distributions are less than anticipated.  A fourth risk is that Austin has not committed to exit financing and there is a risk that it does not commit to exit financing and the Debtor is required to pay the DIP Facility in full on the Effective Date.  A risk is that the maturity of Medley's secured claim occurs on July 8, 2020 and the Debtor cannot demonstrate that it will have sufficient liquidity to pay Medley in full in cash on this date.  Finally, the Debtor risks that the Court finds that the Plan is otherwise not confirmable for reasons that may be raised prior to or at the Confirmation Hearing.

The Debtor does not believe that these risks prevent Plan confirmation because the projections are feasible, the MVF PPE recovery is based on an expert's valuation and the Debtor's anticipated financial performance would support an enterprise valuation making the Debtor creditworthy, with positive EBITDA sufficient to secure a new term loan.  Medley asserts that these risks prevent Plan confirmation because, among other reasons, the Plan is not confirmable, the projections are not feasible and the Debtor's anticipated financial performance does not support an enterprise valuation making the Debtor creditworthy, with positive EBITDA sufficient to secure a new term loan.

**F.    Other Provisions of the Plan.**

    **1.    Executory Contracts and Unexpired Leases.**

        **a.    Assumptions.**

On the Effective Date, Debtor's "executory" contracts and unexpired leases identified in Exhibit 6 to this Disclosure Statement will be assumed (i.e., cured and reinstated) as obligations of the reorganized Debtor.  Pursuant to 11 U.S.C. § 1123(b)(2), the plan constitutes a motion to assume such executory contracts and leases, pursuant to the requirements of 11 U.S.C. § 365. Debtor shall pay the cure payments or issue stock as identified in Exhibit 6 to the Disclosure Statement on the Effective Date of the Plan, unless otherwise agreed to by the Debtor and such contract or lease counterparty.

Any objection to Debtor's proposed cure payment shall be filed as an objection to Plan confirmation.   Confirmation of Debtor's Plan shall constitute adequate assurance of future performance under any such assumed contract or lease.   The order confirming the Plan will constitute an order approving assumption of executory contracts and unexpired leases as set forth herein.

        **b.    Rejections and Ride Through.**

There are no unexpired leases or executory contracts to be rejected.   Any and all executory contracts not otherwise assumed shall ride through the Plan process and remain in effect and unimpaired by the Plan, unless otherwise expressly assumed or rejected under the plan or by separate motion.

The Debtor was party to now expired collective bargaining agreements ("CBAs") with the Screen Actors Guild – American Federal of Television and Radio Artists ("SAG-AFTRA").  The parties have discussed new agreements, but none have been executed.  Nonetheless, the Debtor has continuing obligations to make contributions to the SAG-AFTRA Health Fund and AFTRA Retirement Fund on behalf of its employees represented by SAG-AFTRA.  Debtor intends to make those contributions in the ordinary course.  In this respect, the CBAs ride through the Plan confirmation process.

**2.** **Changes in Rates Subject to Regulatory Commission Approval.**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**3.** **Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

**G.** **Tax Consequences of Plan.**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtors tax liability:  None.

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.   The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.   Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

**A.      Who May Vote or Object.**

**1.      Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

**2.      Who May Vote to Accept/Reject the Plan.**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a.      What Is an Allowed Claim/Interest.**

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING PROOFS OF CLAIMS WAS **JANUARY 31, 2018**.  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.  All claims are specified in the classification section of this disclosure statement and in Exhibit 1 hereto.  Any plan distribution that would otherwise be paid to a claimant holding a claim subject to objection as of the Effective Date of the Plan shall be reserved pending entry of a final order on such objection.

### b.    What Is an Impaired Claim/Interest.

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 3, 4, 5, 6, 7, 8 and 9 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote.

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class.

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**5.        Votes Necessary to Confirm the Plan.**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cramdown on non-accepting classes, as discussed later in section IV(A)(8).

**6.        Votes Necessary for a Class to Accept the Plan.**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

**7.        Treatment of Nonaccepting Classes.**

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as a cramdown.  The Code allows the Plan to be crammed down on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 11 U.S.C. §1129(a)(8) and if the Plan does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

**8.        Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes 6, 7 and 9 if these classes do not vote to accept the Plan.  Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes: 3, 4, 5 and 8 because priority claims must accept treatment other than payment in full on the Effective date and the Plan incorporates settlements with the creditors in class 8 that the Debtor intends to perform.  AS A RESULT, IF ANY OF THESE CLASSES DO NOT VOTE TO ACCEPT THE PLAN, THE PLAN WILL NOT BE CONFIRMED.

**B.      Liquidation Analysis.**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons:  The plan pays allowed creditors either in full or the liquidation value of all assets of the chapter 11 estate, unless they consent otherwise.

Attached hereto as Exhibit 4, in balance sheet format, is Debtor's liquidation analysis proving that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.  This information is provided by the Debtor.  Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION AS OF CONFIRMATION[1] |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax and Non-Tax Claims | 100% | 100% |
| Class 1 = AFS | Unimpaired | 100% |
| Class 2 = Medley | Unimpaired | 18.5%[2] |
| Class 3 = Priority Wage | 100% | 100% |
| Class 4 = UnitedHealth | 100% | 31% to 54% |
| Class 5 = SAG-AFTRA Etc. | 100% | 31% to 54% |
| Class 6 = General Unsecured | 89% to 100% | 0% to nominal |
| Class 7 = Convenience class | 75% | 0% to nominal |
| Class 8 = Wilcon | Per Settlement 100% | 0% to nominal |
| Class 9 = Equity Interests | Cancelled | 0% |

## C.    Feasibility.

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.   The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date (projected to 3/1/19): | $ 100,000 |
| Line of credit available | $ 1,217,223 |
| **To Pay:**  Administrative claims of Professionals | -$ 375,000 |
| **To Pay:**  Misc. Administrative Expenses and Fees (contingency) | -$ 50,000 |
| **To Pay:**  Other Plan Payments due on Effective Date | -$ 420,050 |
| Cash + LOC available after paying these amounts ................................................. | $ 472,173 |

---

[1] Please refer to the Point.360 Liquidation Analysis
[2] Estimated as ((Liquidation Value of PP&E + Deposits)/(Total Medley Claims))

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $ 98,906 | Cash in DIP Account now [as of September 30, 2018] |
| $1,094 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| | |
| N/A | Capital Contributions |
| $0 | Other |
| $ 100,000 | **Total** [*excludes availability on line of credit*] |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.  Attached to the Disclosure Statement as Exhibit 2 are cash flow projections for the term of the Plan showing the Plan is feasible.  Exhibit 2 includes notes and detailed assumptions regarding the feasibility of the proposed Plan.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    Discharge.**

This Plan provides that the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, as specified in 11 U.S.C. § 1141.  The terms of the Plan will bind all creditors and parties in interest to the provisions thereof.

**B.    Revesting of Property in the Debtor.**

Except as provided in Section V(E) and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan.**

The Proponent of the Plan may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.      Post-Confirmation Status Report.**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

The reorganized debtor's post-confirmation status reports shall reflect all income and disbursements for each quarter or portion thereof while the case remains open, and the reorganized debtor shall timely pay U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6).

**E.      Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

1    **F.**      **Final Decree.**

2          Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

3 Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall

4 file a motion with the Court to obtain a final decree to close the case.

5 Dated:  December 10, 2018            **Respectfully submitted,**

6

7                              **Lewis R. Landau**
                             **Attorney-at-Law**

8

9                              By */s/ Lewis R. Landau*
                             Lewis R. Landau

10                              Attorneys for Point.360, a California Corporation,
                             Debtor and Debtor-in-Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**039**

Claims top Level Summary

| | Summary of Agreed to Claims by Class | | Priority | | Unsecured |
|---|---|---|---|---|---|
| Secured (austin and Medley) | $ | 9,007,267.11 | | | |
| Priority Other Claimed on POC | $ | 142,152.77 | $ | 142,152.77 | |
| Priority Wage | $ | 92,685.13 | $ | 92,685.13 | |
| Sag/Aftra retirement fund-Priority | $ | 37,468.75 | $ | 37,468.75 | |
| Priority Tax | $ | 151,822.34 | $ | 151,822.34 | |
| Unsecured Tax | $ | - | | $ | - |
| General Unsecured | $ | 1,669,695.01 | | $ | 1,669,695.01 |
| Wilcon | | 124274.69 | | | |
| Unsecured  Directors/insiders | $ | 803,926.13 | | $ | 803,926.13 |
| Leases | $ | 185,902.65 | | | |
| total | $ | 12,215,194.58 | $ | 424,128.99 | $ | 2,473,621.14 |

| | | | | | |
|---|---|---|---|---|---|
| General Unsecured - Disputed, included above) | $ | (163,506.24) | | $ | (163,506.24) |

**Class 3**

**Priority Employee Claims**

| Name | priority | Claim paid at 100% |
|---|---|---|
| Employee-name redacted for privacy | $ 2,729.80 | $ 2,729.80 |
| Employee-name redacted for privacy | $ 1,496.21 | $ 1,496.21 |
| Employee-name redacted for privacy | $ 586.43 | $ 586.43 |
| Employee-name redacted for privacy | $ 12,665.13 | $ 12,665.13 |
| Employee-name redacted for privacy | $ 689.85 | $ 689.85 |
| Employee-name redacted for privacy | $ 209.16 | $ 209.16 |
| Employee-name redacted for privacy | $ 12,850.00 | $ 12,850.00 |
| Employee-name redacted for privacy | $ 2,327.79 | $ 2,327.79 |
| Employee-name redacted for privacy | $ 8,670.88 | $ 8,670.88 |
| Employee-name redacted for privacy | $ 564.38 | $ 564.38 |
| Employee-name redacted for privacy | $ 359.04 | $ 359.04 |
| Employee-name redacted for privacy | $ 2,091.48 | $ 2,091.48 |
| Employee-name redacted for privacy | $ 3,110.02 | $ 3,110.02 |
| Employee-name redacted for privacy | $ 430.95 | $ 430.95 |
| Employee-name redacted for privacy | $ 344.22 | $ 344.22 |
| Employee-name redacted for privacy | $ 1,164.29 | $ 1,164.29 |
| Employee-name redacted for privacy | $ 1,006.16 | $ 1,006.16 |
| Employee-name redacted for privacy | $ 411.45 | $ 411.45 |
| Employee-name redacted for privacy | $ 8,149.81 | $ 8,149.81 |
| Employee-name redacted for privacy | $ 722.16 | $ 722.16 |
| Employee-name redacted for privacy | $ 1,173.15 | $ 1,173.15 |
| Employee-name redacted for privacy | $ 203.40 | $ 203.40 |
| Employee-name redacted for privacy | $ 2,388.00 | $ 2,388.00 |
| Employee-name redacted for privacy | $ 332.88 | $ 332.88 |
| Employee-name redacted for privacy | $ 1,590.72 | $ 1,590.72 |
| Employee-name redacted for privacy | $ 4,678.75 | $ 4,678.75 |
| Employee-name redacted for privacy | $ 784.10 | $ 784.10 |
| Employee-name redacted for privacy | $ 6,070.26 | $ 6,070.26 |
| Employee-name redacted for privacy | $ 1,179.23 | $ 1,179.23 |
| Employee-name redacted for privacy | $ 284.85 | $ 284.85 |
| Employee-name redacted for privacy | $ 523.60 | $ 523.60 |
| Employee-name redacted for privacy | $ 332.64 | $ 332.64 |
| Employee-name redacted for privacy | $ 1,761.38 | $ 1,761.38 |
| Employee-name redacted for privacy | $ 4,067.61 | $ 4,067.61 |
| Employee-name redacted for privacy | $ 1,220.40 | $ 1,220.40 |
| Employee-name redacted for privacy | $ 190.50 | $ 190.50 |
| Employee-name redacted for privacy | $ 3,864.00 | $ 3,864.00 |
| Employee-name redacted for privacy | $ 16.32 | $ 16.32 |
| Employee-name redacted for privacy | $ 602.35 | $ 602.35 |
| Employee-name redacted for privacy | $ 841.78 | $ 841.78 |
| | $ 92,685.13 | $ 92,685.13 |

**Class 6**
**General Unsecured Creditors**

| UNSECURED CREDITOR | Disputed | | Claim |
|---|---|---|---|
| ACCO ENGINEERED SYSTEMS | Disputed | $ | 40,467.68 |
| ADP, INC. | | $ | 13,469.88 |
| ADVANCED DIGITAL TECH., INC | | $ | 8,668.90 |
| AFCO | | $ | 38,877.64 |
| ALT SYSTEMS | Disputed | $ | 56,102.80 |
| AMERICAN EXPRESS | | $ | 47,376.70 |
| AMERICAN STOCK TRANSFER & TRUST CO., INC | | $ | 3,920.00 |
| APPLEONE EMPLOYMENT SERVICES | | $ | 7,080.06 |
| AT&T MOBILITY | | $ | 3,119.64 |
| ATSBAHA, DAVID | | $ | 5,247.00 |
| AUDIO INTERVISUAL DESIGN, INC. | | $ | 23,536.04 |
| BAUMANN, JOHN S. | | $ | 4,700.00 |
| BELL, SAM P. | | $ | 30,375.00 |
| BLUE SHIELD OF CALIFORNIA(Calif.Physicians Service) | | $ | 186,141.94 |
| BURBANK WATER AND POWER | | $ | 20,189.12 |
| CABRAL,STELLA MARIE | | $ | 2,960.00 |
| CDW DIRECT, LLC | | $ | 2,636.58 |
| CIGNA | Disputed | $ | 23,354.72 |
| DAYSTROM TECHNOLOGY GROUP | | $ | 4,938.50 |
| DELANG, J. R. | | $ | 28,250.00 |
| DELL MARKETING L.P. | | $ | 5,790.16 |
| DIGITAL MEDIA SERVICES, INC. | | $ | 4,498.82 |
| DIGITAL RIVER, INC. | | $ | 4,198.92 |
| FEDERAL EXPRESS | | $ | 3,350.14 |
| FRONTLINE, LLC | | $ | 9,600.00 |
| HARBOR CENTER PARTNERS | | $ | 14,558.62 |
| HEMAR, ROUSSO & HEALD, LLP | | $ | 4,075.00 |
| HKG, LLP | | $ | 8,300.00 |
| HUTCHINS, GREGORY | | $ | 18,250.00 |
| IBM | | $ | 15,425.00 |
| INGRAM ENTERTAINMENT, INC. | | $ | 2,633.57 |
| INTERLINE BRANDS INC. | | $ | 4,812.09 |
| INTERNAL REVENUE SERVICE | | $ | 32,451.90 |
| IVB MEDIA SERVICES, INC. | | $ | 13,047.80 |
| LA MEDIA TECH CENTER OWNERS ASSOC. | | $ | 34,794.56 |
| LAW OFFICES OF SAM CHANDRA, APC | | $ | 14,705.95 |
| LDP ASSOCIATES, INC. | | $ | 4,700.00 |
| LINCOLN FINANCIAL GROUP | | $ | 8,187.25 |
| LIU & LIU LLP | | $ | 4,600.00 |
| MCCABE & HOGAN, PC | | $ | 2,593.50 |
| MEDIA DISTRIBUTORS | | $ | 3,994.10 |
| MEDIA STORAGE GROUP | | $ | 96,776.30 |
| MERIT PROFILES | | $ | 2,708.00 |
| MESSENGERS & DISTRIBUTION | | $ | 16,532.70 |
| METLIFE - GROUP BENEFITS | | $ | 18,641.65 |
| NETCENTRA, INC. | | $ | 6,055.10 |
| OFFICE SOLUTIONS | | $ | 2,829.10 |
| OKI, G. SAMUEL | | $ | 24,750.00 |
| OZ LAW GROUP, INC. | | $ | 3,253.00 |
| PARKING NETWORK | | $ | 21,447.00 |
| PEDROZA GROUP, INC. | | $ | 2,661.80 |
| PRASAD GLOBAL MEDIA SERVICES LLC | | $ | 18,000.00 |

**Class 6**
**General Unsecured Creditors**

| UNSECURED CREDITOR | Disputed | | Claim |
|---|---|---|---|
| REEP-2300 EMPIIRE CA LLC | | $ | 15,996.90 |
| RHYS TILLEY'S UNOCAL 76 | | $ | 7,875.26 |
| SAMY'S CAMERA | | $ | 11,400.00 |
| SCENIC EXPRESSIONS, INC. | | $ | 18,900.00 |
| SCRIPTZ | | $ | 4,786.00 |
| SFERA LAB LLC | | $ | 96,295.72 |
| SIGNIANT, INC. | | $ | 60,000.00 |
| SINGER LEWAK LLP | | $ | 22,875.00 |
| SOHONET, INC. | | $ | 48,062.80 |
| SONY ELECTRONICS INC (P360) | | $ | 51,987.36 |
| SUB-TECHS LOCALIZATION SERVICES | | $ | 88,007.05 |
| SUPPLYWORKS | | $ | 4,557.08 |
| SWITCH, THE (beer Enterprises) | | $ | 26,887.31 |
| TELEPACIFIC COMMUNICATIONS | | $ | 9,632.77 |
| TROY GOULD PC | | $ | 74,020.38 |
| ULINE | | $ | 6,258.46 |
| UNIVERSAL CITY STUDIOS LLC | | $ | 6,360.50 |
| VISION SERVICE PLAN | | $ | 5,643.06 |
| WRI WEST GATE SOUTH LP | | $ | 14,644.85 |
| ZAUN GLASS COMPANY, INC. | | $ | 2,922.00 |
| ZAYO GROUP | | $ | 67,964.28 |
| ZENITH INSURANCE COMPANY | | $ | 10,017.00 |

## Convenience Class of Creditors
### Class

| ------------------------------------------- | Agreed Claim | 75% |
|---|---|---|
| RAB PRINTING SOLUTIONS | $ 2,386.75 | $ 1,790.06 |
| TALX CORPORATION | $ 2,370.60 | $ 1,777.95 |
| GOLDEN STATE LOCK & SAFE SERVICE | $ 2,145.06 | $ 1,608.80 |
| PITNEY BOWES, INC | $ 1,961.04 | $ 1,470.78 |
| NAGADOI, MASHASHI | $ 1,789.50 | $ 1,342.13 |
| WASTE MANAGEMENT - SUN VALLEY | $ 1,764.47 | $ 1,323.35 |
| RED HAWK FIRE & SECURITY LLC | $ 1,745.00 | $ 1,308.75 |
| MONTANEZ ELECTRIC INC | $ 1,736.00 | $ 1,302.00 |
| ALLIED ROOFING & WATERPROOFING | $ 1,475.00 | $ 1,106.25 |
| WEATHERITE CORPORATION | $ 1,475.00 | $ 1,106.25 |
| PR NEWSWIRE, INC. | $ 1,457.25 | $ 1,092.94 |
| BRUCE'S ENTERTAINMENT & MEDIA SOLUTIONS | $ 1,420.25 | $ 1,065.19 |
| FAIR, AUDREY | $ 1,406.25 | $ 1,054.69 |
| MILLS, HANS PETER | $ 1,346.25 | $ 1,009.69 |
| TUNGSTEN NETWORK, INC. | $ 1,290.00 | $ 967.50 |
| FIRST CHOICE SERVICES | $ 1,223.57 | $ 917.68 |
| ATLAS SPECIALTY LIGHTING | $ 1,208.00 | $ 906.00 |
| GREEN, VIRGINIA FAYE | $ 1,192.00 | $ 894.00 |
| STERNS, NAOMI | $ 1,176.00 | $ 882.00 |
| PRADEEP, ABHIJIT | $ 1,082.00 | $ 811.50 |
| TESWARE & BRYAN DEVINE & CO. | $ 1,041.74 | $ 781.31 |
| HYLMO, KAREN ANNIKA | $ 950.25 | $ 712.69 |
| WAGEWORKS, INC. | $ 927.50 | $ 695.63 |
| SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT | $ 884.02 | $ 663.02 |
| MONOPRICE | $ 882.57 | $ 661.93 |
| SMART & FINAL, INC | $ 829.06 | $ 621.80 |
| ITD PRINT SOLUTIONS | $ 792.07 | $ 594.05 |
| GRAY, KARYN ANDREA | $ 748.75 | $ 561.56 |
| PUMPMAN | $ 735.00 | $ 551.25 |
| STORINO, SABRINA | $ 700.00 | $ 525.00 |
| STORAGECONTAINER.COM | $ 693.00 | $ 519.75 |
| PARADISO SUBTITLING, INC. | $ 690.75 | $ 518.06 |
| DUN & BRADSTREET | $ 666.66 | $ 500.00 |
| SHRED-IT USA | $ 647.22 | $ 485.42 |
| ANTONIO FARRE PRODUCTIONS LLC | $ 625.00 | $ 468.75 |
| THYSSEN KRUPP ELEVATOR CORP. | $ 598.94 | $ 449.21 |
| RAM AIR ENGINEERING, INC. | $ 565.64 | $ 424.23 |
| MILLS TECHNIQUE, INC. | $ 517.56 | $ 388.17 |
| ZOYSTER OFFICE PRODUCTS | $ 511.33 | $ 383.50 |
| HULA POST PRODUCTION | $ 500.00 | $ 375.00 |
| KIM, SUN MIN | $ 468.00 | $ 351.00 |
| TEAC AMERICA, INC. | $ 463.79 | $ 347.84 |
| HOME DEPOT/GECF | $ 443.39 | $ 332.54 |
| ROY, SANDRINE | $ 429.25 | $ 321.94 |
| ARKENA INC | $ 400.00 | $ 300.00 |
| LEGEND | $ 378.49 | $ 283.87 |
| CINTAS CORPORATION | $ 368.06 | $ 276.05 |
| SDC CONSULTING, INC. | $ 300.00 | $ 225.00 |
| ROOSE, PATRICK | $ 294.50 | $ 220.88 |
| CANON SOLUTIONS AMERICA, INC. | $ 287.86 | $ 215.90 |
| UNITED PARCEL SERVICE | $ 273.98 | $ 205.49 |
| PCM SALES | $ 252.71 | $ 189.53 |
| CATALINA PAINT | $ 247.27 | $ 185.45 |

## Class 7
## Convenience Class of Creditors

| ----------------------------------------- | | Agreed Claim | | 75% |
|---|---|---|---|---|
| BITTREE, INC | $ | 150.90 | $ | 113.18 |
| DIRECTV | $ | 131.98 | $ | 98.99 |
| WESTERN BAGEL BAKING CORP. | $ | 127.28 | $ | 95.46 |
| SPECTRUM BUSINESS | $ | 119.41 | $ | 89.56 |
| DONNELLAN, KRISTINA | $ | 108.75 | $ | 81.56 |
| McCALLA COMPANY | $ | 103.48 | $ | 77.61 |
| ARBOL, EUGENIA | $ | 103.00 | $ | 77.25 |
| AGENTS AND CORPORATIONS, INC. | $ | 99.00 | $ | 74.25 |
| SECURITY SIGNAL DEVICES | $ | 93.90 | $ | 70.43 |
| KELLY, SIMON RICHARD | $ | 88.00 | $ | 66.00 |
| PONTICELLI, LIUBOV | $ | 69.00 | $ | 51.75 |
| EBERHARDT, DIANE | $ | 67.50 | $ | 50.63 |
| GRAY, JOHN THOMAS | $ | 63.00 | $ | 47.25 |
| GONZALEZ, MARIA A. | $ | 60.00 | $ | 45.00 |
| GAS COMPANY, THE | $ | 54.73 | $ | 41.05 |
| EMILIEN, EDDY | $ | 53.75 | $ | 40.31 |
| TURNER, NICOLE | $ | 46.68 | $ | 35.01 |
| FRAISSINET, KEITH | $ | 44.00 | $ | 33.00 |
| PROTECTION ONE ALARM MONITORING | $ | 36.04 | $ | 27.03 |
| CONNEX INTERNATIONAL, INC. | $ | 35.00 | $ | 26.25 |
| BELL, ERIC ANDREW | $ | 33.00 | $ | 24.75 |
| TOLME, AINO | $ | 7.50 | $ | 5.63 |
| KNAI, TORBJORN | $ | 3.75 | $ | 2.81 |
| MARTIN, ERENDIRA TORRES | $ | 3.00 | $ | 2.25 |
| **Total** | **$** | **52,467.00** | **$** | **39,350.25** |

# EXHIBIT 2

Point.360
Forecasted Balance Sheet

| | Forecast Oct-18 | Forecast Nov-18 | Forecast Dec-18 | Forecast Jan-19 | Forecast Feb-19 | Forecast Mar-19 | Forecast Apr-19 | Forecast May-19 | Forecast Jun-19 | Forecast Jun-20 | Forecast Jun-21 | Forecast Jun-22 | Forecast Jun-23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | | | |
| Cash | | | | | | | | | | | | | |
| Accounts Receivable | 100,000 | 100,000 | 100,000 | 100,000 | 98,540 | 94,682 | 93,824 | 92,667 | 92,109 | 658,856 | 71,527 | 61,236 | 55,233 |
| Allowance for Bad Debts | 3,469,041 | 3,769,041 | 3,788,219 | 3,245,753 | 3,969,041 | 4,010,685 | 3,969,041 | 3,788,219 | 3,245,753 | 3,687,521 | 3,761,272 | 3,856,497 | 3,913,227 |
| Accounts Receivable, Net | (196,285) | (198,620) | (200,956) | (203,292) | (205,627) | (207,963) | (210,299) | (212,634) | (214,970) | (236,525) | (258,610) | (280,936) | (303,810) |
| | 3,272,756 | 3,570,421 | 3,587,263 | 3,042,462 | 3,763,414 | 3,822,722 | 3,758,742 | 3,575,585 | 3,030,783 | 3,450,996 | 3,502,761 | 3,555,561 | 3,609,417 |
| Other Receivables | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 |
| Inventory | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Prepaid Expenses | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 | 238,268 |
| Prepaid Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Deferred Income Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Current Assets** | 3,786,024 | 4,083,689 | 4,100,531 | 3,555,730 | 4,272,222 | 4,310,072 | 4,265,834 | 4,081,820 | 3,536,160 | 4,512,850 | 3,987,556 | 4,030,065 | 4,077,918 |
| Property, Plant & Equipment | 63,377,938 | 63,397,938 | 63,397,938 | 63,237,938 | 63,277,938 | 63,337,938 | 63,357,938 | 63,397,938 | 63,417,938 | 64,187,938 | 64,687,938 | 65,687,938 | 66,437,938 |
| Accumulated Depreciation | (60,936,811) | (60,843,811) | (61,130,811) | (61,070,811) | (61,184,811) | (61,311,811) | (61,438,811) | (61,565,811) | (61,692,811) | (62,532,811) | (63,122,811) | (64,212,811) | (65,052,811) |
| Property, Plant & Equipment, net | 2,441,127 | 2,554,127 | 2,267,127 | 2,188,127 | 2,093,127 | 2,006,127 | 1,919,127 | 1,832,127 | 1,745,127 | 1,655,127 | 1,565,127 | 1,475,127 | 1,385,127 |
| Deposits & Other | 813,929 | 813,929 | 813,929 | 813,929 | 813,929 | 813,929 | 813,929 | 813,929 | 813,929 | 813,929 | 563,929 | 563,929 | 563,929 |
| Deferred Income Taxes - LT | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 |
| Goodwill, net | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Intangibles, net | 141,666 | 136,458 | 131,250 | 126,041 | 120,833 | 115,625 | 110,416 | 105,208 | 100,000 | 75,000 | 50,000 | 25,000 | 0 |
| Investment in Acquisitions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Assets** | 7,601,789 | 7,807,246 | 7,731,880 | 7,094,870 | 7,719,154 | 7,685,396 | 7,528,349 | 7,252,127 | 6,614,259 | 7,485,949 | 6,585,655 | 6,513,164 | 6,446,017 |
| **Liabilities and Shareholders' Equity** | | | | | | | | | | | | | |
| Accounts Payable | 3,583,113 | 3,623,726 | 3,762,339 | 3,901,952 | 3,414,980 | 3,365,479 | 3,296,999 | 3,226,659 | 3,157,248 | 2,742,565 | 2,390,318 | 2,163,071 | 2,112,364 |
| Accrued Wages & Benefits | 1,175,000 | 1,175,000 | 1,175,000 | 1,175,000 | 1,082,315 | 1,082,315 | 1,082,315 | 1,082,315 | 1,082,315 | 1,082,315 | 1,082,315 | 1,082,315 | 1,082,315 |
| Accrued Expenses - Other | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 | 148,759 |
| Revolving Line of Credit (see Revolver Schedule) | 1,732,127 | 1,712,070 | 1,443,436 | 916,172 | 1,963,942 | 1,628,712 | 1,445,339 | 1,156,103 | 742,278 | 316,551 | 1,805,831 | 315,300 | 316,551 |
| Curr. Portion of Notes Payable | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Curr. portion of cap. leases | 518 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Income Taxes Payable | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 | 419,043 |
| Other Current Liabilities | 735,349 | 752,887 | 761,706 | 770,525 | 779,344 | 788,163 | 796,982 | 805,801 | | | | | |
| **Total Current Liabilities** | 7,793,909 | 7,821,666 | 7,710,464 | 7,322,632 | 7,819,474 | 7,423,652 | 7,179,608 | 6,828,961 | 6,385,444 | 5,304,311 | 6,863,723 | 5,251,772 | 4,211,601 |
| Deferred Tax Liability | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Long Term Debt | 58,982 | 56,617 | 54,332 | 52,047 | | | | | | | | | |
| Derivative Valuation Liability | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Long term notes payable | 7,156,073 | 7,189,430 | 7,243,285 | 7,297,703 | 7,352,510 | 7,407,708 | 7,463,300 | 7,519,288 | 7,575,676 | 8,284,356 | 4,500,000 | 3,956,246 | 2,209,693 |
| Other Long Term Liabilities | 1,451,205 | 1,409,542 | 424,188 | 1,367,879 | 1,326,216 | 1,284,553 | 1,242,980 | 1,201,227 | 1,117,961 | 1,076,238 | 576,282 | 76,326 | 0 |
| **Total Long Term Liabilities** | 8,666,180 | 8,655,589 | 8,665,496 | 8,675,966 | 8,637,063 | 8,650,598 | 8,664,527 | 8,678,852 | 8,693,577 | 9,360,774 | 5,076,282 | 4,032,572 | 2,209,693 |
| **Total Liabilities** | 16,439,989 | 16,477,255 | 16,366,960 | 15,998,598 | 16,456,537 | 16,074,251 | 15,844,215 | 15,049,021 | 15,049,021 | 14,665,085 | 11,940,005 | 9,284,344 | 6,426,294 |
| **Stockholders' Equity** | | | | | | | | | | | | | |
| Capital Stock | 35,508,688 | 35,508,688 | 35,526,153 | 35,526,153 | 35,526,153 | 35,526,153 | 35,577,142 | 35,577,142 | 35,628,131 | 35,628,131 | 36,036,043 | 36,239,999 | 36,443,955 |
| Retained Earnings | (44,585,340) | (44,585,340) | (44,585,340) | (44,585,340) | (44,585,340) | (44,585,340) | (44,585,340) | (44,585,340) | (44,585,340) | (44,065,892) | (43,011,222) | (41,190,392) | (39,011,179) |
| Current Earnings | 428,452 | 406,643 | 424,108 | 155,459 | 321,804 | 321,282 | 692,331 | 692,331 | 69,544,70 | 522,440 | (6,830,830) | 2,579,213 | 2,508,947 |
| **Total Stockholders' Equity** | (8,838,200) | (8,670,009) | (8,635,080) | (8,903,728) | (8,737,383) | (8,388,855) | (8,315,865) | (8,388,855) | (8,434,762) | (7,179,136) | (5,354,350) | (2,771,180) | 19,337 |
| **Total Liabilities & Stockholders' Equity** | 7,601,790 | 7,807,246 | 7,731,880 | 7,094,870 | 7,719,154 | 7,685,396 | 7,528,350 | 7,252,126 | 6,614,260 | 7,485,950 | 6,585,655 | 6,513,164 | 6,446,017 |

# Point.360
## Forecasted Income Statement

| | Oct-18 Forecast | Oct-18 % | Nov-18 Forecast | Nov-18 % | Dec-18 Forecast | Dec-18 % | Jan-19 Forecast | Jan-19 % | Feb-19 Forecast | Feb-19 % | Mar-19 Forecast | Mar-19 % | Apr-19 Forecast | Apr-19 % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUE | 2,195,000 | 100.0 | 2,195,000 | 100.0 | 2,095,000 | 100.0 | 1,795,000 | 100.0 | 2,195,000 | 100.0 | 2,395,000 | 100.0 | 2,195,000 | 100.0 |
| TOTAL COST OF SERVICES | 1,229,367 | 56.0 | 1,202,534 | 54.8 | 1,206,265 | 57.6 | 1,146,960 | 63.9 | 1,198,867 | 54.6 | 1,215,570 | 50.8 | 1,200,428 | 54.7 |
| GROSS MARGIN | 965,633 | 44.0 | 992,466 | 45.2 | 888,735 | 42.4 | 648,040 | 36.1 | 996,133 | 45.4 | 1,179,430 | 49.2 | 994,572 | 45.3 |
| **SELLING EXPENSES:** | | | | | | | | | | | | | | |
| Sales Personnel Costs | 55,000 | 2.5 | 55,000 | 2.5 | 55,000 | 2.6 | 55,000 | 3.1 | 55,000 | 2.5 | 55,000 | 2.3 | 55,000 | 2.5 |
| Travel & Entertainment | 4,900 | 0.2 | 4,900 | 0.2 | 4,900 | 0.2 | 4,900 | 0.3 | 4,900 | 0.2 | 4,900 | 0.2 | 4,900 | 0.2 |
| Advertising & Promo | 50 | 0.0 | 50 | 0.0 | 50 | 0.0 | 50 | 0.0 | 50 | 0.0 | 50 | 0.0 | 50 | 0.0 |
| Bad Debt Expense | 2,336 | 0.1 | 2,336 | 0.1 | 2,336 | 0.1 | 2,336 | 0.1 | 2,336 | 0.1 | 2,336 | 0.1 | 2,336 | 0.1 |
| **GENERAL & ADMIN COSTS:** | | | | | | | | | | | | | | |
| Admin Personnel Costs | 450,000 | 20.5 | 450,000 | 20.5 | 450,000 | 21.5 | 457,000 | 25.5 | 457,000 | 20.8 | 457,000 | 19.1 | 457,000 | 20.8 |
| Supplies | 9,000 | 0.4 | 9,000 | 0.4 | 9,000 | 0.4 | 9,000 | 0.5 | 9,000 | 0.4 | 9,000 | 0.4 | 9,000 | 0.4 |
| Professional Fees | 25,000 | 1.1 | 25,000 | 1.1 | 25,000 | 1.2 | 25,000 | 1.4 | 25,000 | 1.1 | 25,000 | 1.0 | 25,000 | 1.1 |
| Facility Costs | 87,000 | 4.0 | 87,000 | 4.0 | 87,000 | 4.2 | 87,000 | 4.8 | 87,000 | 4.0 | 87,000 | 3.6 | 87,000 | 4.0 |
| Other Indirect | 215,000 | 9.8 | 125,000 | 5.7 | 173,000 | 8.3 | 215,000 | 12.0 | 125,000 | 5.7 | 173,000 | 7.2 | 215,000 | 9.8 |
| Depreciation | 57,000 | 2.6 | 57,000 | 2.6 | 57,000 | 2.7 | 57,000 | 3.2 | 57,000 | 2.6 | 57,000 | 2.4 | 57,000 | 2.6 |
| Amortization | 5,208 | 0.2 | 5,208 | 0.2 | 5,208 | 0.2 | 5,208 | 0.3 | 5,208 | 0.2 | 5,208 | 0.2 | 5,208 | 0.2 |
| DIRECT SELLING, GEN. & ADMIN | 910,494 | 41.5 | 820,494 | 37.4 | 868,494 | 41.5 | 917,494 | 51.1 | 827,494 | 37.7 | 875,494 | 36.6 | 917,494 | 41.8 |
| OPERATING INCOME | 55,139 | 2.5 | 171,973 | 7.8 | 20,241 | 1.0 | (269,453) | (15.0) | 168,640 | 7.7 | 303,936 | 12.7 | 77,079 | 3.5 |
| EBITDA | 252,110 | 11.5 | 368,944 | 16.8 | 217,212 | 10.4 | (72,482) | (4.0) | 365,611 | 16.7 | 500,907 | 20.9 | 274,050 | 12.5 |

048

**Point.360**

**Forecasted Income Statement**

| | FYE 2019 12 MONTHS | | FYE 2020 12 MONTHS | | FYE 2021 12 MONTHS | | FYE 2022 12 MONTHS | | FYE 2023 12 MONTHS | |
|---|---|---|---|---|---|---|---|---|---|---|
| | *Forecast* | *%* | *Forecast* | *%* | *Forecast* | *%* | *Forecast* | *%* | *Forecast* | *%* |
| **REVENUE** | 24,471,731 | 100.0 | 24,961,166 | 100.0 | 25,460,389 | 100.0 | 25,969,597 | 100.0 | 26,488,989 | 100.0 |
| **TOTAL COST OF SERVICES** | 14,243,940 | 58.2 | 14,271,704 | 57.2 | 14,305,139 | 56.2 | 13,859,241 | 53.4 | 14,124,426 | 53.3 |
| **GROSS MARGIN** | 10,227,790 | 41.8 | 10,689,461 | 42.8 | 11,155,250 | 43.8 | 12,110,355 | 46.6 | 12,364,563 | 46.7 |
| **SELLING EXPENSES:** | | | | | | | | | | |
| Sales Personnel Costs | 658,206 | 2.7 | 671,370 | 2.7 | 684,798 | 2.7 | 698,493 | 2.7 | 712,463 | 2.7 |
| Travel & Entertainment | 56,313 | 0.2 | 57,439 | 0.2 | 58,588 | 0.2 | 59,760 | 0.2 | 60,955 | 0.2 |
| Advertising & Promo | 1,950 | 0.0 | 1,989 | 0.0 | 2,029 | 0.0 | 2,069 | 0.0 | 2,111 | 0.0 |
| Bad Debt Expense | 21,132 | 0.1 | 21,555 | 0.1 | 21,986 | 0.1 | 22,425 | 0.1 | 22,874 | 0.1 |
| **GENERAL & ADMIN COSTS:** | | | | | | | | | | |
| Admin Personnel Costs | 5,412,169 | 22.1 | 5,520,412 | 22.1 | 5,630,821 | 22.1 | 5,743,437 | 22.1 | 5,858,306 | 22.1 |
| Supplies | 107,170 | 0.4 | 109,313 | 0.4 | 111,500 | 0.4 | 113,730 | 0.4 | 116,004 | 0.4 |
| Professional Fees | 439,604 | 1.8 | 448,396 | 1.8 | 457,364 | 1.8 | 466,511 | 1.8 | 475,842 | 1.8 |
| Facility Costs | 1,041,441 | 4.3 | 1,062,270 | 4.3 | 1,023,515 | 4.0 | 863,986 | 3.3 | 881,265 | 3.3 |
| Other Indirect | 2,039,779 | 8.3 | 1,679,779 | 6.7 | 1,713,375 | 6.7 | 1,747,642 | 6.7 | 1,782,595 | 6.7 |
| Depreciation | 685,729 | 2.8 | 240,000 | 1.0 | 240,000 | 0.9 | 240,000 | 0.9 | 240,000 | 0.9 |
| Amortization | 62,496 | 0.3 | 25,000 | 0.1 | 25,500 | 0.1 | 25,000 | 0.1 | 25,000 | 0.1 |
| **DIRECT SELLING, GEN. & ADMIN** | 10,525,990 | 43.0 | 9,837,524 | 39.4 | 9,969,474 | 39.2 | 9,983,054 | 38.4 | 10,177,415 | 38.4 |
| **OPERATING INCOME** | (298,199) | (1.2) | 851,937 | 3.4 | 1,185,776 | 4.7 | 2,127,302 | 8.2 | 2,187,148 | 8.3 |
| **EBITDA** | 2,769,792 | 11.3 | 2,596,396 | 10.4 | 2,855,735 | 11.2 | 3,571,761 | 13.8 | 3,631,607 | 13.7 |

**049**

Point.360

## Cash Feasibility Analysis

| | FY2019 | | | | | | | | | FY 2020 | FY 2021 | FY 2022 | FY 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Oct-18 | Nov-18 | Dec-18 | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jun-20 | Jun-21 | Jun-22 | Jun-23 |
| Beginning Cash | 98,906 | 100,000 | 100,000 | 100,000 | 100,000 | 95,540 | 94,682 | 93,824 | 92,987 | 92,109 | 656,586 | 71,527 | 61,236 |
| Change in Cash | 1,094 | | | | (4,460) | (858) | (858) | (857) | (878) | (855) | (587,059) | (10,291) | (6,003) |
| End Cash | 100,000 | 100,000 | 100,000 | 100,000 | 95,540 | 94,682 | 93,824 | 92,987 | 92,109 | 656,586 | 71,527 | 61,236 | 55,233 |
| | | | | | | | | | | | | | |
| Total Plan Costs | 150,843 | 53,326 | 51,822 | 137,677 | 674,510 | 88,122 | 175,421 | 82,959 | 79,298 | 461,076 | 8,749,648 | 359,818 | 69,968 |
| Austin LOC Availability | 471,738 | 708,545 | 991,035 | 1,126,368 | 601,173 | 980,941 | 1,119,776 | 1,278,368 | 1,300,262 | 2,361,717 | 609,170 | 2,154,052 | 2,208,238 |
| Amount Paid (Down) / (Drawn) On Revolver | 175,289 | 20,057 | 266,634 | 527,264 | (1,047,770) | 335,230 | 183,373 | 289,236 | 413,825 | 742,278 | (1,806,631) | 1,490,531 | (1,281) |
| | | | | | | | | | | | | | |
| **Austin Revolver Schedule** | | | | | | | | | | | | | |
| Accounts Receivable | 3,463.0 | 3,769.0 | 3,788.2 | 3,245.8 | 3,969.0 | 4,030.7 | 3,969.0 | 3,788.2 | 3,246.8 | 3,687.5 | 3,761.3 | 3,836.5 | 3,913.2 |
| Ineligible Accounts Receivable | 419.7 | 419.7 | 419.7 | 419.7 | 419.7 | 418.709 | 418.709 | 418.709 | 418.709 | 418.709 | 418.709 | 418.709 | 418.709 |
| Eligible Accounts Receivable | 3,043.3 | 3,350.3 | 3,369.5 | 2,827.0 | 3,550.332 | 3,611.976 | 3,550.332 | 3,369.510 | 2,827.044 | 3,268.812 | 3,342.562 | 3,417.786 | 3,494.510 |
| Less 15% discount | 2,592.8 | 2,847.8 | 2,864.1 | 2,403.0 | 3,070.179 | 3,070.179 | 3,017.782 | 2,864.084 | 2,402.880 | 2,778.490 | 2,841.178 | 2,905.120 | 2,970.340 |
| Austin Revolver (at 85%, Max $3M) [1] | 2,203.9 | 2,420.6 | 2,434.5 | 2,042.5 | 2,606.653 | 2,606.653 | 2,565.115 | 2,434.471 | 2,042.980 | 2,361.717 | 2,415.001 | 2,465.302 | 2,524.789 |
| Outstanding Revolving Line of Credit | 1,732.1 | 1,712.1 | 1,443.4 | 916.2 | 1,965.842 | 1,628.712 | 1,445.339 | 1,156.103 | 742.278 | 315.300 | 1,806.831 | 315.300 | 316.581 |
| Austin LOC Availability | 471,738 | 708,545 | 991,035 | 1,126,368 | 601,173 | 980,941 | 1,119,776 | 1,278,368 | 1,300,262 | 2,361,717 | 609,170 | 2,154,052 | 2,208,238 |
| Cash + Austin LOC Availability | 571,738 | 808,545 | 1,091,035 | 1,226,368 | 696,713 | 1,075,623 | 1,213,600 | 1,371,355 | 1,392,371 | 3,020,303 | 680,697 | 2,215,288 | 2,263,471 |
| | | | | | | | | | | | | | |
| New Term Loan Balance | | | | | | | | | | 4,500,000 | | 3,996,246 | 2,209,429 |

## Plan Payments Schedule

| | Oct-18 | Nov-18 | Dec-18 | Jan-19 | Feb-19 | Mar-19 | Apr-19 | May-19 | Jun-19 | Jun-20 | Jun-21 | Jun-22 | Jun-23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Unclassified Claims** | | | | | | | | | | | | | |
| 1. Administrative Expenses | 25,000 | 25,000 | 25,000 | 25,000 | 250,000 | 25,000 | | | | | | | |
| 2. Priority Tax Claims | | | | | 7,957 | 4,354 | 4,354 | 4,354 | 4,354 | 52,247 | 52,247 | 52,247 | |
| 3. Leases [3] | | | | | 204,481 | | | | | | | | |
| 4. US Trustee Fee | 90,000 | 90,000 | | 90,000 | | 90,000 | | | | | | | |
| | | | | | | | | | | | | | |
| **1. Classes of Secured and Undersecured Claims** | | | | | | | | | | | | | |
| Class 1 = Austin Interest Expense | 18,956 | 17,939 | 16,435 | 12,230 | 15,001 | 18,712 | 16,011 | 13,549 | 9,887 | 46,352 | 112,864 | 132,571 | |
| Class 2 = Medley [2] | | | | | | | | | | | 8,284,536 | | |
| | | | | | | | | | | | | | |
| **2. Classes of Priority Unsecured Claims** | | | | | | | | | | | | | |
| Class 3 = Priority Wages, Commissions, Salary Claims | | | | | 92,685 | | | | | | | | |
| Class 4 = UnitedHealth Insurance Company | | | | | 24,669 | 24,669 | 24,669 | 24,669 | 24,669 | 18,806 | | | |
| Class 5 = SAG-AFTRA | | | | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 12,469 | | | |
| | | | | | | | | | | | | | |
| **3. Classes of General Unsecured Claims** | | | | | | | | | | | | | |
| Class 6 = Allowed General Unsecured Claims | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 300,000 | 300,000 | 175,000 | |
| Class 7 = Convenience Class | | | | | 39,350 | | | | | | | | |
| Class 8 = Wilcon Holdings, LLC | 16,887 | 10,387 | 10,387 | 10,387 | 10,387 | 10,387 | 10,387 | 10,387 | 10,387 | 31,161 | | | |
| | | | | | | | | | | | | | |
| **4. Class(es) of Interest Holders** | | | | | | | | | | | | | |
| Class 9 = Equity Security Holders | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Total Plan Costs** | 150,843 | 53,326 | 51,822 | 137,677 | 674,510 | 88,122 | 175,421 | 82,959 | 79,298 | 461,076 | 8,749,648 | 359,818 | |

[1] The Austin Agreement caps the revolving line at the lesser of 85% of eligible Accounts Receivable or $3M.
[2] Medley debt will be refinanced from the Austin Revolver and a term loan for $26.85M at 8% based on a projected $2.6M EBITDA.
[3] Some of the leases have already been partially cured before the effective date. The correct amount for the leases is $214,492.50.

050

## NOTES TO EXHIBIT 2

**REVENUES:**

Point.360's revised forecast calls for FYE2019 sales of $24.5 million, which represents a $1.9 million (7.2%) reduction from its 5/8/2018 forecast of $26.4 million. There are six customers/revenue sources that have experienced lower than expected sales volume since the Company's May-2018 projections, and the Company expects this trend to continue through FYE2019. These revenue source reductions are as follows:

- Client A -            $400,000
- Client B -            $300,000
- Client C -            $400,000
- Client D -            $100,000
- Client E -            $300,000
- Client F -            $400,000
- **Total Reduction:    $1,900,000**

To provide additional context to the FYE2019 forecasted sales reduction, note the following:

- Client A utilizes Point 360's Quality Control services. Sales have dropped due to additional vendors being added to their vendor base, yielding less volume to Point.360. Client A has also reduced its pricing.
- Point.360's Visual Sound division traditionally had additional "Special Projects" from Client B in Localization Services which added $0.3m-$0.4m annually. Point.360 has not been engaged in a project of this nature in almost a year. We believe that Client B has taken this work in house.
- Client C has been a $0.6m-$0.7m annual revenue account for Point.360 for many years in Content Servicing. Point.360 was informed it was not awarded an RFP to continue its traditional services for Client C, due to Point.360's lack of presence in the UK.
- Client D is a Content Servicing client and appears to be shifting some of Point.360's work to another vendor. Point.360 is looking at salvaging this account, but we currently have no new current orders.
- Client E currently utilizes Point 360's Content Servicing but has seen volume erosion, as Client E now in-sources some of the traditional file manufacturing and distribution. Point.360 has seen a significant revenue drop in the trailing 12 months, with no visibility if this work will return to the Company.
- Client F has seen a sales drop for the same reason as Client E, principally in-sourcing. Point.360 also had additional revenue at Client F from its Feature Film department, in the way of deliverables. This is no longer a revenue source for the Company.

However, the Debtor's financial performance for Aug-Oct 2018 was positive and provides considerable reinforcement of the Debtor's projections. Note the following:

| | Month -   Aug-18 | | Month -   Sep-18 | | Month -   Oct-18 | | **Total** | |
|---|---|---|---|---|---|---|---|---|
| | *Actual* | *%* | *Actual* | *%* | *Estimate* | *%* | *Aug to Oct 2018* | |
| | ---------- | ----- | ---------- | ----- | ---------- | ----- | | |
| **REVENUE** | 2,108,979 | 100.0 | 1,775,974 | 100.0 | 2,250,000 | 100.0 | 6,134,953 | 100.0 |
| **Adj. EBITDA:** | 239,179 | 11.3 | 35,798 | 2.0 | 320,573 | 14.2 | 595,550 | 9.7 |

**EXPENSES:**

Point.360's revised forecast included with the First Amended Disclosure Statement anticipates additional annual FYE 2019 cost reductions totaling $1.9 million, compared to the 5/8/2018 Original Disclosure Statement. The primary cost reductions and changes are as follows:

- Wages and Benefits/Personnel – this expense is forecasted to be lower by $600K on an annualized basis. The Company has executed various operational efficiencies, and has been able to further reduce headcount.

**051**

Note that actual personnel costs in Sept 2018 of $392K, are approximately $100K below the $492K expense in June 2018.

- Facility Costs – this reduction is forecasted to be lower than originally stated by approximately $700K. The Company is realizing lower network connectivity expenses, and was able to vacate one of its storage facilities. This facility consolidation also reduces utilities, building maintenance, and real property tax expenses. Note that actual administrative facility costs in Sept 2018 of $61K are substantially lower than the monthly facility costs in fiscal year 2018. Last fiscal year's facility costs ranged from $84K to over $100K/month in Apr-June 2018.

- Outside Services Expenses – the Company expects these expenses to decline by approximately $0.9 million in FYE2019. The Company is now using new localization software, which is much more efficient and cost-friendly. Additionally, the sales volume for Visual Sound has a large outside services cost component – and with lower than expected sales in this division, the Company expects lower outside services expense.

- Reduction Offsets – the First Amended Disclosure Statement shows an increase in projected professional fees of approximately $300K, as a result of legal and consulting fees associated with the continued Company's bankruptcy proceedings.

HISTORICAL EXPENSE REDUCTIONS FROM 10/11/2017 TO 10/11/2018:

- A reduction in force of 65 employees has been completed over the past year, reducing total headcount from 261 to 196 – resulting in an annual payroll and benefit expense reduction of $3.3 million.

- Annual facility costs have been reduced over the past year by $2.2 million, as a result of the Company's exit of its former Empire location as well as one of its storage facilities. Additionally, the Company was able to negotiate a favorable renewal with its telecommunications provider, yielding an additional $300K of annualized savings.

- Outside services costs have been reduced by approximately $900K due to the Company's implementation of new localization software, as described above.

# EXHIBIT 3

**Point.360**

Historical P&Ls 2012-2017

| | FYE 2012 | % | FYE 2013 | % | FYE 2014 | % | FYE 2015 | % | FYE 2016 | % | FYE 2017 | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | 34,959,514 | 100.0 | 30,936,633 | 100.0 | 25,733,013 | 100.0 | 21,580,683 | 100.0 | 37,570,428 | 100.0 | 27,807,076 | 100.0 |
| **COST OF GOODS SOLD:** | | | | | | | | | | | | |
| Material Cost | 1,941,216 | 5.6 | 1,510,181 | 4.9 | 1,254,181 | 4.9 | 867,293 | 4.0 | 1,023,517 | 2.7 | 620,945 | 2.2 |
| Wages & Benefits | 13,104,765 | 37.5 | 13,159,338 | 42.5 | 10,746,842 | 41.8 | 9,061,715 | 42.0 | 19,885,575 | 52.9 | 14,453,028 | 52.0 |
| Production Equipment | 861,537 | 2.5 | 712,241 | 2.3 | 623,292 | 2.4 | 461,044 | 2.1 | 1,396,493 | 3.7 | 678,158 | 2.4 |
| Delivery Costs | 717,929 | 2.1 | 583,894 | 1.9 | 473,777 | 1.8 | 280,945 | 1.3 | 486,352 | 1.3 | 244,877 | 0.9 |
| Outside Services | 416,937 | 1.2 | 680,785 | 2.2 | 926,671 | 3.6 | 858,783 | 4.0 | 1,413,346 | 3.8 | 1,594,914 | 5.7 |
| Facility Costs | 2,799,793 | 8.0 | 2,050,176 | 6.6 | 2,140,353 | 8.3 | 1,932,752 | 9.0 | 3,859,902 | 10.3 | 4,248,339 | 15.3 |
| Allocations (non-corporate) | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Depreciation | 2,221,594 | 6.4 | 1,722,149 | 5.6 | 1,181,979 | 4.6 | 743,659 | 3.4 | 1,179,380 | 3.1 | 1,141,024 | 4.1 |
| **TOTAL COST OF SERVICES** | 22,063,771 | 63.1 | 20,418,764 | 66.0 | 17,347,094 | 67.4 | 14,206,190 | 65.8 | 29,244,565 | 77.8 | 22,981,285 | 82.6 |
| **GROSS MARGIN** | 12,895,743 | 36.9 | 10,517,869 | 34.0 | 8,385,919 | 32.6 | 7,374,493 | 34.2 | 8,325,864 | 22.2 | 4,825,791 | 17.4 |
| **SELLING EXPENSES:** | | | | | | | | | | | | |
| Sales Personnel Costs | 732,192 | 2.1 | 687,373 | 2.2 | 779,958 | 3.0 | 603,168 | 2.8 | 1,461,342 | 3.9 | 876,905 | 3.2 |
| Travel & Entertainment | 83,671 | 0.2 | 105,973 | 0.3 | 108,097 | 0.4 | 89,056 | 0.4 | 122,299 | 0.3 | 70,028 | 0.3 |
| Advertising & Promo | 71,381 | 0.2 | 43,187 | 0.1 | 38,708 | 0.2 | 64,314 | 0.3 | 10,856 | 0.0 | 9,594 | 0.0 |
| Bad Debt Expense | 38,351 | 0.1 | 34,651 | 0.1 | (95,522) | (0.4) | 24,168 | 0.1 | 42,540 | 0.1 | 37,191 | 0.1 |
| Allocations (sales pools) | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| **GENERAL & ADMIN COSTS:** | | | | | | | | | | | | |
| Admin Personnel Costs | 5,778,504 | 16.5 | 5,876,989 | 19.0 | 5,544,331 | 21.5 | 5,352,551 | 24.8 | 9,750,111 | 26.0 | 7,580,139 | 27.3 |
| Supplies | 530,907 | 1.5 | 794,085 | 2.6 | 519,603 | 2.0 | 233,690 | 1.1 | 323,161 | 0.9 | 271,546 | 1.0 |
| Professional Fees | 472,483 | 1.4 | 438,329 | 1.4 | 418,445 | 1.6 | 437,547 | 2.0 | 660,818 | 1.8 | 558,598 | 2.0 |
| Facility Costs | 2,074,401 | 5.9 | 1,787,884 | 5.8 | 1,828,112 | 7.1 | 1,522,090 | 7.1 | 1,878,158 | 5.0 | 2,047,796 | 7.4 |
| Other Indirect | 1,575,639 | 4.5 | 1,530,156 | 4.9 | 1,535,125 | 6.0 | 1,382,686 | 6.4 | 1,988,586 | 5.3 | 2,290,126 | 8.2 |
| Allocations (non-corporate) | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Depreciation | 712,338 | 2.0 | 682,914 | 2.2 | 659,120 | 2.6 | 619,786 | 2.9 | 934,493 | 2.5 | 952,221 | 3.4 |
| Amortization | 3,955 | 0.0 | 221 | 0.0 | 0 | 0.0 | 0 | 0.0 | 62,500 | 0.2 | 62,500 | 0.2 |
| **DIRECT SELLING, GEN. & ADMIN** | 12,073,823 | 34.5 | 11,981,763 | 38.7 | 11,335,976 | 44.1 | 10,329,056 | 47.9 | 17,234,864 | 45.9 | 14,756,645 | 53.1 |
| **OP INC BEFORE CORP ALLOCATION** | 821,921 | 2.4 | (1,463,894) | (4.7) | (2,950,057) | (11.5) | (2,954,563) | (13.7) | (8,909,000) | (23.7) | (9,930,853) | (35.7) |
| **Corp Allocation** | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| **OPERATING INCOME** | 821,921 | 2.4 | (1,463,894) | (4.7) | (2,950,057) | (11.5) | (2,954,563) | (13.7) | (8,909,000) | (23.7) | (9,930,853) | (35.7) |
| Interest (Income) | (19,990) | (0.1) | 0 | 0.0 | 47 | 0.0 | 0 | 0.0 | (13) | 0.0 | 0 | 0.0 |
| Interest Expense | 833,974 | 2.4 | 393,948 | 1.3 | 285,386 | 1.1 | 255,628 | 1.2 | 544,620 | 1.4 | 628,750 | 2.3 |
| Derivative Change | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Other (Income) Expense | (439,660) | (1.3) | (647,601) | (2.1) | (587,887) | (2.3) | (324,574) | (1.5) | (4,986,075) | (13.3) | (831,987) | (3.0) |
| Income Taxes | 0 | 0.0 | 23,353 | 0.1 | 2,448 | 0.0 | 0 | 0.0 | (2,709,280) | (7.2) | 0 | 0.0 |
| **TOTAL OTHER (INCOME)/EXPENSE** | 374,325 | 1.1 | (230,301) | (0.7) | (300,007) | (1.2) | (68,946) | (0.3) | (7,150,748) | (19.0) | (203,237) | (0.7) |
| **NET INCOME (LOSS)** | 447,596 | 1.3 | (1,233,593) | (4.0) | (2,650,050) | (10.3) | (2,885,617) | (13.4) | (1,758,252) | (4.7) | (9,727,617) | (35.0) |
| **EBITDA** | 4,199,467 | 12.0 | 1,588,992 | 5.1 | (521,070) | (2.0) | (1,266,544) | (5.9) | (1,746,552) | (4.6) | (6,943,122) | (25.0) |

## Point.360

Historical Balance Sheets FYE 2015-2017

| | 12 mos ended Jun-15 | 12 mos ended Jun-16 | 12 mos ended Jun-17 |
|---|---:|---:|---:|
| **Assets** | $  - | $  - | $  - |
| **Cash** | $ 22,331 | $  - | $ 54,044 |
| **Accounts Receivable** | $ 3,316,092 | $ 5,022,398 | $ 4,391,976 |
| **Allowance for Bad Debts** | $ (248,795) | $ (293,133) | $ (305,577) |
| Accounts Receivable, Net | $ 3,067,297 | $ 4,729,265 | $ 4,086,400 |
| | | | $  - |
| **Other Receivables** | $ 127,236 | $ 178,549 | $ 29,470 |
| **Inventory** | $ 135,263 | $ 127,101 | $ 112,194 |
| **Prepaid Expenses** | $ 187,080 | $ 318,994 | $ 173,556 |
| **Prepaid Income Taxes** | $  - | $  - | $  - |
| **Deferred Income Taxes** | $  - | $  - | $  - |
| Total Current Assets | $ 3,539,207 | $ 5,402,680 | $ 4,455,664 |
| | | | $  - |
| | | | $  - |
| **Property, Plant & Equipment** | $ 65,203,799 | $ 71,890,105 | $ 63,774,403 |
| **Accumulated Depreciation** | $ (55,977,752) | $ (57,965,744) | $ (59,113,750) |
| Property, Plant & Equipment, net | $ 9,226,048 | $ 13,924,361 | $ 4,660,653 |
| | | | $  - |
| **Deposits & Other** | $ 614,466 | $ 927,314 | $ 1,046,165 |
| **Deferred Income Taxes - LT** | $  - | $ 419,043 | $ 419,043 |
| **Goodwill, net** | $  - | $  - | $  - |
| **Other intangibles, net** | $  - | $ 287,500 | $ 225,000 |
| **Investment in Acquisitions** | $  - | $  - | $  - |
| Total Assets | $ 13,379,721 | $ 20,960,898 | $ 10,806,525 |
| | $  - | $  - | |
| | $  - | $  - | |
| **Liabilities and Shareholders' Equity** | $  - | $  - | |
| **Accounts Payable** | $ 713,668 | $ 837,356 | $ 2,305,495 |
| **Accrued Wages & Benefits** | $ 972,238 | $ 2,057,303 | $ 1,541,700 |
| **Accrued Expenses - Other** | $ 25,781 | $ 187,831 | $ 73,199 |
| **Revolving Line of Credit** | $ 123,527 | $ 425,423 | $ 2,145,650 |
| **Curr. Portion of Notes Payable** | $ 4,937,900 | $ 4,716,800 | $  - |
| **Curr. portion of cap. leases** | $ 55,301 | $ 101,897 | $ 79,802 |
| **Income Taxes Payables** | $  - | $ 419,043 | $ 419,043 |
| **Other Current Liabilities** | $ 387,110 | $ 387,110 | $ 586,266 |
| Total Current Liabilities | $ 7,215,525 | $ 9,132,764 | $ 7,151,154 |
| | $  - | $  - | |
| **Deferred Tax Liability** | $  - | $  - | $  - |
| **Long Term cap. leases** | $ 87,820 | $ 78,780 | $ 114,043 |
| **Derivative Valuation Liability** | $  - | $  - | $  - |
| **Long term notes payable** | $  - | $ 5,868,000 | $ 6,338,120 |
| **Other Long Term Liabilities** | $ 1,838,771 | $ 1,451,661 | $ 2,117,817 |
| Total Long Term Liabilities | $ 1,926,591 | $ 7,398,442 | $ 8,569,980 |
| Total Liabilities | $ 9,142,116 | $ 16,531,206 | $ 15,721,134 |
| | $  - | $  - | |
| **Stockholders' Equity** | $  - | $  - | |
| **Capital Stock** | $ 32,889,916 | $ 34,840,255 | $ 35,223,570 |
| **Distributions** | $  - | $  - | $  - |
| **Retained Earnings** | $ (25,766,694) | $ (28,652,311) | $ (30,410,563) |
| **Current Earnings** | $ (2,885,617) | $ (1,758,252) | $ (9,727,617) |
| Total Stockholders' Equity | $ 4,237,605 | $ 4,429,692 | $ (4,914,609) |
| Total Liabilities & Stockholders' Equity | $ 13,379,721 | $ 20,960,898 | $ 10,806,525 |

# EXHIBIT 4

**056**

**Point.360**

**Liquidation Analysis**

At Feb. 28, 2019

**Assets**

| | 2/28/2019 Est. Book Value (Unaudited) | | Estimated Recovery % | | Estimated Proceeds $ | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Cash | $ 95,540 | [1] | 100% | 100% | $ 95,540 | $ 95,540 |
| **Accounts Receivable:** | | | | | | |
| Accounts Receivable Net of Doubtful Accounts | 3,763,414 | [2] | 70% | 80% | 2,634,390 | 3,010,731 |
| Austin Secured Note | 1,963,942 | | | | 1,963,942 | 1,963,942 |
| **Accounts Receivable Equity** | | | | | **670,448** | **1,046,789** |
| Other Receivables | 125,000 | [3] | 80% | 100% | 100,000 | 125,000 |
| Inventory | 50,000 | [4] | 50% | 70% | 25,000 | 35,000 |
| Prepaid Expenses | 238,268 | [5] | 0% | 20% | - | 47,654 |
| **Secured Claims** | | | | | | |
| Medley-Disputed | 6,500,000 | [15] | | | | |
| Property, Plant & Equipment-Medley collateral | 726,034 | [6] | 0% | 0% | - | - |
| Deposits-Medley Collateral | 200,000 | [7] | 0% | 0% | - | - |
| Deferred Income Taxes - LT | 419,043 | [8] | 0% | 0% | - | - |
| Intangible Assets | 120,833 | [9] | 0% | 20% | - | 24,167 |
| **Total Proceeds Available for Distribution** | | | | | $ 890,988 | $ 1,374,149 |

**Chapter 7 Administrative Claims**

| | | | | | Low | High |
|---|---|---|---|---|---|---|
| Trustee Fees | | [10] | | | 108,648 | 123,143 |
| Trustee's Counsel and Related | | [11] | | | 100,000 | 200,000 |
| Rent and Storage | | [12] | | | 400,000 | 500,000 |
| Wind-Down and Professional Fees | | | 5.00% | 10.00% | 44,549 | 137,415 |
| Contingency | | | 5.00% | 5.00% | 44,549 | 68,707 |
| Total Liquidation Costs | | | | | 697,747 | 1,029,265 |
| **Net Proceeds Available to Creditors** | | | | | $ 193,241 | $ 344,884 |

**Estimated Recovery to Creditors:**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Priority Claims** | | | | | | |
| Professional Fees | $ 250,000 | | | | | |
| Priority Wages | $ 92,685 | | | | | |
| Priority Taxes | $ 151,822 | | | | | |
| Capital Leases | $ 52,000 | | | | | |
| SAG AFTRA Retirement Fund | $ 37,469 | | | | | |
| United HealthCare | $ 142,153 | | | | | |
| **Total Priority Claims** | $ 726,129 | | | | 726,129 | 726,129 |
| **Net Proceeds to Unsecured Creditors** | | | | | $ (532,888) | $ (381,245) |
| **Unsecured Claims** | | | | | | |
| Unsecured Claims | $ 1,669,695 | [7, 13] | | | | |
| Medley Chapter 7 Deficiency Claim | $ 5,573,966 | [15] | | | | |
| **Total Unsecured Claims** | $ 7,243,661 | [14] | | | 0.0% | 0.0% |

[1] Cash reflected in Debtor's projections as of Feb. 28, 2019.

[2] These percentages are based upon a review of the detailed aging balances and management's assessment of the potential collectability.

[3] Other receivables consist of receivables not directly related to products sold. Includes elevator sub-lease, Beachwood payroll receivable and Sony rebate receivable.

[4] Inventory consists of raw, work-in-progress and finished goods. The recovery range is based primarily on the Micor inventory appraisal report, with appropriate discounts.

[5] Prepaids are primarily prepaid service contracts and are believed to be only minimally recoverable.

[6] This analysis assumes that the PP&E secures Medley's note. It further assumes that no equity would flow from Medley's collateral to the other creditors in liquidation. The value shown is derived from an appraisal report dated Aug. 15, 2018

[7] This analysis assumes that the value of the Deposits in a liquidation scenario is sharply reduced based on the likelihood of landlord offsets for lease defaults.

[8] Deferred Tax asset is assumed to have no liquidation value in the absence of future taxable income.

[9] Intangible assets include customer lists and trademarks which are believed to have little or no value in liquidation. Debtor owns art that may have some modest liquidation value.

[10] Trustee's fees based on value of assets to be liquidated and distributions to creditors.

[11] Trustee's legal counsel estimate.

[12] It is estimated that a Trustee would incur several months rent at the facilities prior to liquidating the various assets.

[13] The amount showing in this line does not include a Medley deficiency amount.

[14] This analysis does not take into account any Medley litigation claim.

[15] This analysis assumes that the Medley claims are not disallowed or subordinated.

**057**

## Point.360

**Class 6 General Unsecured**

| | Estimated Proceeds $ | | Estimated Recovery % | |
|---|---|---|---|---|
| | **High** | **Low** | **High** | **Low** |
| **Total Claims from Class 6** | $1,617,228 | $1,617,228 | | |
| **Post Effective Date Payout from Debtor's Operating Cash Flow** | | | | |
| Payment of $25,000 a month for 36 months | $900,000 | $900,000 | 56% | 56% |
| **Net Proceeds of Sale from Certain Assets [1]** | | | | |
| Gross Value | $1,243,132 | $729,787 | | |
| Unrecoverable assets (20%) | $248,626 | $145,957 | | |
| Liquidation Cost (8%) | $79,560 | $46,706 | | |
| Net Proceeds | $914,945 | $537,123 | 57% | 33% |
| **Total Recovery for Class 6** | **$1,617,228** | **$1,437,123** | **100%** | **89%** |

[1] Value obtained from James Minchella ASA appraisal

058

---

**Fill in this information to identify the case:**

Debtor name   **Point.360 a Califonia corporation**

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

Case number (if known)   **2:17-bk-22432-WB**

☐ Check if this is an amended filing

---

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

| Part 1: | Summary of Assets |
| --- | --- |

1. *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   **1a. Real property:**
   Copy line 88 from *Schedule A/B*..........................................................................    $    **954,383.00**

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*........................................................................    $    **7,859,289.41**

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*..........................................................................    $    **8,813,672.41**

| Part 2: | Summary of Liabilities |
| --- | --- |

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*....................    $    **9,007,267.11**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*........................................................    $    **0.00**

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*...............................    +$    **4,235,546.57**

4. Total liabilities ....................................................................................................
   Lines 2 + 3a + 3b     $    **13,242,813.68**

---

Software Copyright (c) 1996-2016 CIN Group - www.cincompass.com

**059**

**Fill in this information to identify the case:**

Debtor name **Point.360 a Califonia corporation**

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

Case number (if known) **2:17-bk-22432-WB**

☐ Check if this is an
amended filing

# Official Form 206A/B
# Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:        Cash and cash equivalents**

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
☒ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|
| 2.  **Cash on hand** | $129,209.88 |
| 2.  **Cash on hand** | $0.00 |
| 2.  **Cash on hand** | $100.00 |

3.  **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*
Name of institution (bank or brokerage firm)          Type of account          Last 4 digits of account number

4.  **Other cash equivalents** *(Identify all)*

5.  **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.                    $129,309.88

**Part 2:        Deposits and Prepayments**

6. Does the debtor have any deposits or prepayments?

☐ No. Go to Part 3.
☒ Yes Fill in the information below.

7.  **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

| 7.1.  **Various - See attached** | $243,486.23 |
|---|---|
| 7.2.  **see attached schedule** | $597,342.30 |

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

**060**

Debtor   **Point.360 a Califonia corporation**                     Case number *(If known)*   **2:17-bk-22432-WB**

Name

8.      **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
        Description, including name of holder of prepayment

9.      **Total of Part 2.**                                                           | $840,828.53 |

        Add lines 7 through 8. Copy the total to line 81.

| Part 3: | Accounts receivable |
| --- | --- |

**10. Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

11.     **Accounts receivable**

        11a. 90 days old or less:    **2,986,628.00**  –    **80,919.00**  = ....    **$2,905,709.00**

                              face amount           doubtful or uncollectible accounts

12.     **Total of Part 3.**                                                          | $2,905,709.00 |

        Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

| Part 4: | Investments |
| --- | --- |

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
| --- | --- |

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.  Go to Part 6.
■ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- | --- |
| 19. **Raw materials** **Tape Stock** | 9/30/2017 | $110,164.00 | lower of cost or | $110,164.00 |
| 20. **Work in progress** **Work in progress estimated at Oct 10, 2017** | | $20,430.00 | pro-rata, cost p | $20,430.00 |

21.     **Finished goods, including goods held for resale**

22.     **Other inventory or supplies**

23.     **Total of Part 5.**                                                          | $130,594.00 |

        Add lines 19 through 22.  Copy the total to line 84.

24.     **Is any of the property listed in Part 5 perishable?**
        ■ No
        ☐ Yes

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property                page 2

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

| Debtor | **Point.360 a Califonia corporation** | Case number *(If known)* | **2:17-bk-22432-WB** |
|---|---|---|---|
| | Name | | |

**25.  Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☑ No
☐ Yes. Book value _____  Valuation method _____  Current Value _____

**26.  Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
☑ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39.    Office furniture**<br>**Office Furniture** | **$226,254.00** | **net Book Value** | **$226,254.00** |
| **40.    Office fixtures** | | | |
| **41.    Office equipment, including all computer equipment and communication systems equipment and software**<br>**Computer Hardware** | **$105,750.00** | **net book value** | **$105,750.00** |
| **Computer Software** | **$174,399.00** | **net book value** | **$174,399.00** |
| **42.    Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles<br>    42.1.    **Collectible artwork included in**<br>    **purchase of the Modern Video assets** | **$121,296.00** | **GAAP cost alloca** | **$121,296.00** |

**43.    Total of Part 7.**
Add lines 39 through 42.  Copy the total to line 86.

| **$627,699.00** |
|---|

**44.    Is a depreciation schedule available for any of the property listed in Part 7?**
☐ No
☑ Yes

**45.    Has any of the property listed in Part 7 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

**062**

Debtor    **Point.360 a Califonia corporation**    Case number *(If known)*  **2:17-bk-22432-WB**
　　　　　Name

☐ No.  Go to Part 9.

■ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e.,<br>VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| **47.    Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1.    **Owned vehicles** | **$3,786.00** | net book value | **$3,786.00** |
| **48.    Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating<br>homes, personal watercraft, and fishing vessels | | | |
| **49.    Aircraft and accessories** | | | |
| **50.    Other machinery, fixtures, and equipment (excluding farm<br>machinery and equipment)**<br>**Machinery and Equipment** | **$2,668,229.00** | net book value | **$2,668,229.00** |
| **various various**<br>**Machinery & Equipment - Software** | **$0.00** | net book value | **$0.00** |
| **HD Telecine  -  Hi-Def audi visuals systems** | **$0.00** | net book value | **$0.00** |
| **various various**<br>**Capitalized Leases - GAAP Cost** | **$135,585.00** | at GAAP calculat | **$135,585.00** |

51.    **Total of Part 8.**                                                                                          **$2,807,600.00**

　　　　Add lines 47 through 50.  Copy the total to line 87.

52.    **Is a depreciation schedule available for any of the property listed in Part 8?**
　　　　☐ No
　　　　■ Yes

53.    **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
　　　　■ No
　　　　☐ Yes

Part 9:      **Real property**

54. **Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.

■ Yes Fill in the information below.

55.    **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of<br>property<br>Include street address or other<br>description such as Assessor<br>Parcel Number (APN), and type of<br>property (for example, acreage,<br>factory, warehouse, apartment or<br>office building, if available. | Nature and extent<br>of debtor's<br>interest in<br>property | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|---|

Official Form 206A/B                        Schedule A/B Assets - Real and Personal Property                        page 4

**063**

| Debtor | **Point.360 a Califonia corporation** | | Case number *(If known)* | **2:17-bk-22432-WB** |
|---|---|---|---|---|
| | Name | | | |

| | | | | |
|---|---|---|---|---|
| 55.1. | **2701 Media Center Dr, Los Angeles, CA 90065-1700 Leasehold interest-Lease #1** | | $0.00 | $0.00 |
| 55.2. | **2300 W Empire Ave # 100, Burbank, CA 91504-3399 Leasehold Interest-Lease #2** | | $0.00 | $0.00 |
| 55.3. | **1133 N Hollywood Way, Burbank, CA 91505-2528 Leasehold interest - Lease #3** | | $0.00 | $0.00 |
| 55.4. | **Lease hold improvements in Leases 1, 2 and 3** | $954,383.00 | net book value | $954,383.00 |

56. **Total of Part 9.**

   Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
   Copy the total to line 88.

   | $954,383.00 |
   |---|

57. **Is a depreciation schedule available for any of the property listed in Part 9?**
   ☐ No
   ■ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
   ■ No
   ☐ Yes

**Part 10:**    **Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61. **Internet domain names and websites** | | | |
| 62. **Licenses, franchises, and royalties** | | | |
| 63. **Customer lists, mailing lists, or other compilations** **customer relationships** | $143,750.00 | GAAP valuations | $143,750.00 |
| 64. **Other intangibles, or intellectual property** **Trade Names** | $65,625.00 | net book value | $65,625.00 |

| Debtor | **Point.360 a Califonia corporation** | Case number *(If known)* | **2:17-bk-22432-WB** |
|---|---|---|---|
| | Name | | |

65.   **Goodwill**

66.   **Total of Part 10.**                                                                                                $209,375.00

Add lines 60 through 65. Copy the total to line 89.

67.   **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107**?**
■ No
☐ Yes

68.   **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
☐ No
■ Yes

69.   **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 11: | **All other assets** |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

|  | **Current value of debtor's interest** |
|---|---|
| 71.   **Notes receivable** Description (include name of obligor) | |
| 72.   **Tax refunds and unused net operating losses (NOLs)** Description (for example, federal, state, local) | |
| 73.   **Interests in insurance policies or annuities** | **Key Man Life Policy** |
| 74.   **Causes of action against third parties (whether or not a lawsuit has been filed)** | **74 & 75** |
| 75.   **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | **See attachment. Value undetermined.** |
| 76.   **Trusts, equitable or future interests in property** | |
| 77.   **Other property of any kind not already listed** *Examples:* Season tickets, country club membership | |
| **See attached.** | **Undetermined** |

78.   **Total of Part 11.**                                                                                                $0.00

Add lines 71 through 77. Copy the total to line 90.

79.   **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
■ No
☐ Yes

---

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

**065**

Debtor   **Point.360 a Califonia corporation**                    Case number *(If known)*  **2:17-bk-22432-WB**
         Name

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $129,309.88 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $840,828.53 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $2,905,709.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $130,594.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $627,699.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $2,807,600.00 | |
| 88. **Real property.** *Copy line 56, Part 9*......................................................> | | $954,383.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $209,375.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $7,651,115.41 | + 91b.  $954,383.00 |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | $8,605,498.41 |

Software Copyright (c) 1996-2017 CIN Group - www.cincompass.com

**066**

**Point.360**
**Summary of Deposits**
**at 10/10/2017**

| Description | Name of Deposit Holder | Value |
|---|---|---|
| Media Center Real Property Lease Deposit | Leafs Properties | 250,000.00 |
| HWAYLease Deposit | HWAY, LLC | 197,902.00 |
| UPS Security Deposit | UPS | 970.00 |
| Parking Security Deposit | Westside Medical Park | 2,000.00 |
| Security Deposit | Tate & Partners | 350.00 |
| Landlord Security Deposit - MovieQ | WRI West Gate South LP-Security deposit | 4,500.00 |
| Landlord Security Deposit - MovieQ | Harbor Center Partners | 7,960.49 |
| Landlord Security Deposit - MovieQ | Price Reit Inc. The | 4,000.00 |
| Empire Lease Deposit | REEP-OFC 2300 EMPIRE CA LLC | 113,790.00 |
| Capital Lease Deposits | Jules & Associates | 12,354.94 |
| Utility Deposit | DWP | 200.00 |
| Utility Deposit | Gas Company | 700.00 |
| Utility Deposit | Southern California Edison | 630.00 |
| Insurance Binder Deposit | Lincoln Financial Group | 1,984.87 |

**Total Deposits:** **597,342.30**

**067**

**Point.360**
**Prepaid Expenses**
**at 10/10/2017**

| Description | Category | Prepaid Balance At 9/30/2017 |
|---|---|---|
| Adobe | General Service Contract | 89.97 |
| CDW Direct | General Service Contract | 629.47 |
| Daystrom | General Service Contract | 1,451.19 |
| Digital Film Technology | General Service Contract | 2,390.63 |
| Digital River | General Service Contract | 3,499.10 |
| Dolby Lab | General Service Contract | 4,166.67 |
| Dunn & Bradstreet | General Service Contract | 1,722.23 |
| Eplus | General Service Contract | 42,545.36 |
| GenArts | General Service Contract | 70.79 |
| Infotrac | General Service Contract | 130.00 |
| Keycode Media | General Service Contract | 7,314.00 |
| LDP Associates | General Service Contract | 6,425.00 |
| Plixer International | General Service Contract | 439.75 |
| Signiant | General Service Contract | 31,875.01 |
| Softchoice | General Service Contract | 2,026.76 |
| Tungsten | General Service Contract | 1,075.00 |
| OTC Markets Group | General Service Contract | 5,000.00 |
| GENWORTH | PREPAID INSURANCE | 2,595.83 |
| Los Angeles County Tax Collector | PERSONAL PROPERTY TAX | 127,480.97 |
| CITY OF LOS ANGELES | PREPAID BUSINESS LICENSE | 2,558.50 |
| **Total:** | | **243,486.23** |

Point. 360.
Sch A /B part 8
Question 47

**Point.360**
**Auto Listing**

MARSH

| No. | Vehicle Description Year, Make and Model | Garaging City and State | VIN/Serial No. |
|-----|------------------------------------------|-------------------------|----------------|
| 1 | 2008 Chevrolet E35C | Burbank, CA | 1GCHG35KX81181558 |
| 2 | 2011 Chevrolet E35C | Los Angeles, CA | 1GCZGUC4B1152296 |
| 3 | 2016 Toyota Highlander Limited | Los Angeles, CA | 5TDYKRFH3GS132577 |
| 4 | 2003 CHEVROLET SILVERADO TRUCK | Burbank, CA | 2GCEC19V131201299 |
| 5 | 2005 DODGE CARAVAN 2 | Burbank, CA | 1D46P25B95B429300 |
| 6 | 2007 MITSUBISHI FUSO FE140 | Burbank, CA | JL6BBG1S77K019887 |
| 7 | TOYOTA COROLLA 2009 NEW | Burbank, CA | JTDBL40E499092046 |
| 8 | 2010 FORD TRANSIT | Burbank, CA | NM0LS7DNXAT026639 |
| 9 | 2010 FORD TRANSIT | Burbank, CA | NM0LS7DN6AT026640 |
| 10 | 2005 FORD F150 SUPER CREW CAB | Burbank, CA | 1FTPW125X5KF07415 |

| No. | Vehicle Description Year, Make and Model | Loss Payee and/or Additional Insured | Address |
|-----|------------------------------------------|--------------------------------------|---------|
| 1 | 2011 Chevrolet E35C | Leased - Enterprise | 17210 South Main St., Unit LA693P Gardena, CA  90247 |
| 2 | 2016 Highlander Limited | Leased – Toyota of Orange | 1400 N. Tustin Ave., Orange, CA  92867 |
| | | | |

1

**Addendum**

2

**Part 11; Items 70, 74, 75**

3

**Other Assets:**

4

70.1, 74.1, 75.1:        Point.360 possesses a meritorious claim against: (1) an ex-project manager,

5

Jeanette Lynn Zepeda, for breach of duty of loyalty, tortious interference with prospective

6

economic relations, breach of contractual confidentiality obligations, (2) Zepeda's new employer,

Roundabout Entertainment, Inc., for aiding and abetting Zepeda's breach of duty of loyalty, unfair

7

business practices, unjust enrichment and conversion, and (3) other as yet unknown individuals for

similar claims, arising out of Zepeda's and Roundabout's orchestration of the mass departure of

8

Point.360's employees and accounts during the course of Zepeda's employment with Point.360.

Zepeda and Roundabout's actions caused Point.360 to suffer hundreds of thousands of dollars in

9

lost business and profits.

10

70.2, 74.2, 75.2:        Point.360 is investigating and fully reserves all rights, claims and defenses

11

arising from its acquisition of the assets of Modern VideoFilm ("MVF") in 2015.  On July 8,

2015, Point.360 acquired certain assets of MVF including, but not limited to, MVF's equipment,

12

inventory, and accounts receivable.  Point.360 concurrently entered into a Term Loan Agreement

with Medley Capital Corporation and Medley Opportunity Fund II, LP (collectively "Medley").

13

The Medley Term Loan Agreement is comprised of a five-year term loan facility in the amount of

14

$6,000,000, $1,000,000 of which was funded on the July 8, 2015 closing date. As of March 31,

2017, the Company had borrowed the $6,000,000 under the Medley Loan Agreement.  Debtor has

15

elected to pay interest as payment in kind ("PIK") as permitted by the Loan Agreement. The

outstanding principal balance and all accrued and unpaid interest on the Term Loan are due and

16

payable on July 8, 2020.  As further consideration for the MVF sale purchase transaction, the

Debtor issued 2,000,000 shares of common stock, and five-year warrants to purchase an aggregate

17

of 800,000 shares of common stock at an exercise price of $0.75 per share. As consideration for

the Medley Loan Agreement, the Debtor also issued warrants to Medley to purchase an aggregate

18

of 500,000 shares of common stock.

19

        The MVF transaction resulted in substantial and unanticipated operating losses requiring

that Debtor reorganize its financial affairs.  Point.360 entered into the MVF acquisition in reliance

20

on misleading information concerning MVF's profitability.  For example, Point.360 was given pro

forma projections showing $29 million in sales and $4.1 million in EBITDA for the 2015 - 2016

21

period.  Actual results after the MVF acquisition resulted in $15.6 million in sales and EBITDA of

negative $6.3 million.  This $10.4 million difference between projected and actual EBITDA for

22

2105 - 2016, which continued into the fiscal 2017 period, has resulted in Debtor's need for

financial reorganization.

23

        Claims by prior ownership related to the MVF sale were asserted in Los Angeles Superior

Court case number BC583437 captioned, Moshe Barkat and Modern VideoFilm Holdings, LLC

24

vs. Medley Capital Corporation; Medley Opportunity Fund II LLP; MCC Advisors, LLC; Deloitte

Transactions and Business Analytics, LLP A/K/A/ Deloitte CRG; Charles Sweet; Modern

25

VideoFilm, Inc. and Does 1 through 10 inclusive.  The facts, circumstances and claims set forth in

the Barkat complaint, among others, may give rise to claims held by Point.360 against some or all

26

of the same parties.

27

28

**070**

70.3, 74.3, 75.3:        Based, in part, upon Point.360's acquisition on Modern Video's claims and causes of action arising out of Modern Video's business operations, Point.360 possesses a meritorious claim against: (1) ex-Modern Video employees for misappropriation of trade secrets, breach of duty of loyalty and tortious interference with prospective economic relations, and (2) Visual Data for aiding and abetting the ex-employees' breach of duty of loyalty, unfair business practices, unjust enrichment and conversion.  The ex-employees and Visual Data's actions caused Modern Video and Point.360 to lose $8-10 million dollars in lost business.

-2-

**071**

# EXHIBIT 5

**072**

| Debtor | **Point.360 a Califonia corporation** | Case number *(if known)* | **2:17-bk-22432-WB** |

3. **Certain payments or transfers to creditors within 90 days before filing this case**
List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| 3.1. **Various see attached schedule for total** | **See attached schedule for totals by creditor for the last 90 ddays.** | **$2,954,951.85** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. **BELL, SAM P.** 2701 Media Center Dr Los Angeles, CA 90065-1700 director | 10/28/2016 | $12,125.00 | **Director fees, and expense reimbursement** |
| 4.2. **DELANG, J.R.** 2701 Media Center Dr Los Angeles, CA 90065-1700 Directors | 10/19/2016 | $10,250.00 | **director fees and expense reimbursement** |
| 4.3. **HUTCHINS, GREGORY** 2701 Media Center Dr Los Angeles, CA 90065-1700  Director | 10/19/2016 | $10,250.00 | **director fees and expense reimbursement** |
| 4.4. **OKI, G. SAMUEL** 2701 Media Center Dr Los Angeles, CA 90065-1700 director | 10/19/2016 | $11,250.00 | **Director fees and expense reimbursement** |
| 4.5. **HWAY LLC** 14140 Ventura Blvd Ste 201 Sherman Oaks, CA 91423-2750 landlord related party | various | $241,401.00 | **monthly rents for lease property** |
| 4.6. **Alan Steel** 2701 Media Center Dr Los Angeles, CA 90065-1700 former officer | various | $135,148.86 | **Salary and health insurance benefits of former officer to resignation date** |
| 4.7. **Haig Bagerdjian** 2701 Media Center Dr Los Angeles, CA 90065-1700 CEO, Chairman, Shareholder | various | $359,280.36 | **Salary Compensation, Health insurance benefits** |

5. **Repossessions, foreclosures, and returns**
List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

Point.360
Sofa
Part 2 #3.

| Paid To Name | Pay. Amount | Reason | ADDRESS |
|---|---|---|---|
| AUSTIN FINANCIAL SERVICES, INC. | 1,623,010.66 | Secured Debt | 11111 Santa Monica Blvd. #1000 Los Angeles, CA 90025-9823 |
| United Healthcare of California | 154,674.81 | Supplies& Services | DEPT. 6940  LOS ANGELES CA 90084-6940 |
| Leafs Properties LP | 142,155.35 | Supplies& Services | 1333 CAMINO DEL RIO S., # 310 SAN DIEGO CA 92108 |
| MEDIA STORAGE GROUP | 93,373.40 | Supplies& Services | 4804 LAUREL CANYON BLVD. PO BOX 703  VALLEY VILLAGE CA 91607-3717 |
| LA PAY | 71,323.44 | Supplies& Services | PO BOX 30808  LOS ANGELES CA 90030-0808 |
| BURBANK WATER AND POWER | 62,144.52 | Supplies& Services | P.O. BOX 631  BURBANK CA 91503-0631 |
| Zenith Insurance Company | 52,598.00 | Supplies& Services | FILE 50004  LOS ANGELES CA 90074-0004 |
| Lewis R.Landau Attorney at Law | 85,000.00 | Supplies& Services | 22287 MULHOLLAND HWY., #318 CALABASAS CA 91302 |
| SFERA STUDIOS LLC | 42,897.13 | Supplies& Services | PO BOX 749663 LOS ANGELES CA 90074-9663 |
| AFCO | 41,754.16 | Supplies& Services | DEPT LA 21315 PASADENA CA 91185-1315 |
| FPRS Depository Account | 39,095.12 | Supplies& Services | 60 Wall St, Mailstop NYC 60-2710 |
| Marsh USA, Inc | 38,877.64 | Supplies& Services | PO BOX 846015  DALLAS TX 75284-0615 |
| QUALITY SOUND WORKS, INC. | 36,982.00 | Supplies& Services | 26946 GARRET DRIVE CALABASAS CA 91301 |
| JULES AND ASSOCIATES, INC. | 29,248.29 | Supplies& Services | 515 S. FIGUEROA ST., SUITE 1900  LOS ANGELES CA 90071 |
| SCRIPTZ | 26,894.00 | Supplies& Services | 20362 FAIRWEATHER STREET  CANYON COUNTRY CA 91351 |
| CIGNA | 25,876.33 | Supplies& Services | 400 N. BRAND BOULEVARD 5TH FLOOR  GLENDALE CA 91203 |
| BANK OF THE WEST | 25,583.64 | Supplies& Services | 15165 VENTURA BLVD., SUITE 220  SHERMAN OAKS CA 91403 |
| SUB-TECHS LOCALIZATION SERVICES | 25,000.00 | Supplies& Services | 345 GULF STREAM WAY  COSTA MESA CA 92627 |
| EMPLOYMENT DEVELOPMENT DEPT. | 23,238.54 | Supplies& Services | PO BOX 989061 WEST SACRAMENTO CA 95798-9061 |
| MESSENGERS & DISTRIBUTION | 22,608.65 | Supplies& Services | PO BOX 11794  BURBANK CA 91510 |
| IVB MEDIA SERVICES, INC. | 21,712.53 | Supplies& Services | 5542 SATSUMA AVENUE NORTH HOLLYWOOD CA 91601 |
| AT&T MOBILITY | 17,460.05 | Supplies& Services | P.O. BOX 6463 CAROL STREAM IL 60197-6463 |
| TELEPACIFIC COMMUNICATIONS | 17,144.63 | Supplies& Services | P.O. BOX 509013 SAN DIEGO CA 92150-9013 |
| ATSBAHA, DAVID | 15,256.00 | Supplies& Services | 1600 N. SAN FERNANDO BLVD, APT. 103  BURBANK CA 91504 |
| Wilcon | 15,000.00 | Supplies& Services | 1801 CENTURY PARK EAST 16TH FL  LOS ANGELES CA 90067-2367 |
| CLOCKWORK CAPTIONS | 14,441.50 | Supplies& Services | 624 S. GRAND AVE., SUITE 2500  LOS ANGELES CA 90017 |
| TroyGould General Account | 15,000.00 | Supplies& Services | G1706, PURVA HIGHLANDS BANGALORE INDIA |
| PARKING NETWORK | 13,830.00 | Supplies& Services | 2300 EMPIRE AVE., SUITE 175  BURBANK CA 91504 |
| LINCOLN FINANCIAL GROUP | 13,713.35 | Supplies& Services | 1333 N. CALIFORNIA BLVD., SUITE 345  WALNUT CREEK CA 94596 |
| SFERA LABS LLC | 13,581.88 | Supplies& Services | PO BOX 749663 LOS ANGELES CA 90074-9663 |
| Caalope Communications SA DE CV | 13,200.00 | Supplies& Services | AV. INSURGENTES SUR 1160 201  COL. TLACOQUEMECATL DE VALLE 03200 BENITO MEXICO 03200 |
| SCENIC EXPRESSIONS, INC. | 13,069.35 | Supplies& Services | 8238 LANKERSHIM BLVD.  NORTH HOLLYWOOD CA 91605 |
| FRONTLINE, LLC | 10,971.00 | Supplies& Services | 270 S. FLOWER STREET  BURBANK CA 91502 |
| ADVANCED DIGITAL TECH., INC | 10,217.44 | Supplies& Services | 1225 WEST 190TH ST., SUITE 460  GARDENA CA 90248 |
| NeoGuard Labs France S.A.S | 9,500.00 | Supplies& Services | 10 AVENUE DU CHENE GERMAIN  CESSON SEVIGNE FRANCE 35510 |
| EHRLICH, LLC | 9,265.13 | Supplies& Services | 2701 Media Center Drive Los Angeles, CA 90065 |
| IVB Media Services, Inc. | 8,966.94 | Supplies& Services | 5542 SATSUMA AVENUE  NORTH HOLLYWOOD CA 91601 |
| VISION SERVICE PLAN | 8,472.63 | Supplies& Services | 3333 QUALITY DRIVE  RANCHO CORDOVA CA 95670 |
| FIRST CHOICE SERVICES | 7,939.59 | Supplies& Services | 10907 PAINTER AVE  SANTA FE SPRINGS CA 90670 |
| INTERNAL REVENUE SERVICE | 7,173.37 | Supplies& Services | PO BOX 71052  PHILADELPHIA PA 19176-6052 |
| HALLING/MESA LLP | 7,125.00 | Supplies& Services | 23586 CALABASAS ROAD, SUITE 200  CALABASAS CA 91302 |
| Analisis y Desarrollo en Sistemas | 6,975.70 | Supplies& Services | International |
| HEMAR, ROUSSO & HEALD, LLP | 6,520.08 | Supplies& Services | 15910 VENTURA BLVD, 12TH FLR  ENCINO CA 91436 |
| DOLBY LABORATORIES, INC. | 6,500.00 | Supplies& Services | 16841 COLLECTIONS CENTER DR.  CHICAGO IL 60693 |

2,954,991.85

These are the totals compiled from numerous detail payments by creditor for the previous 90 days, in excess of $6,425.

Copy of Disbursements.xlsx.xls  All Creditors >6425

11/1/2017 11:27 AM

074

# EXHIBIT 6

**UNEXPIRED LEASES TO BE ASSUMED**

| <u>LEASES</u> | <u>ARREARS/DMGS</u> | <u>METHODS OF CURE</u> |
|---|---|---|
| • Description = 2701 Media Center Drive, Los Angeles, CA 90065<br>• Lessor's name = LEAFS Properties, LP<br>• Lessee's name = Debtor<br>• Expiration date = 3/31/21 | • Default amt = $152,461.60 per POC 63-1<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring future performance = Plan confirmation |
| • Description = 1122 and 1133 North Hollywood Way, Burbank, CA 91505<br>• Lessor's name = HWAY, LLC<br>• Lessee's name = Debtor<br>• Expiration date = 10/31/27 | • Default amt = $803,926.13 per POC 48<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Satisfied by issuance of 5,000,000 shares constituting 100% of Debtor's new common stock on Effective Date.<br>• Means of assuring future performance = Plan confirmation |

**EXECUTORY CONTRACTS TO BE ASSUMED**

| __CONTRACT__ | __DEFAULT/DMGS__ | __METHODS OF CURE__ |
|---|---|---|
| • Description = Toyota Lease Trust (operating lease)<br>• Lessor's name = Toyota Financial<br>• Lessee's name = Debtor<br>• Expiration date = 2/25/2019 | • Default amt = $5,435.92<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring Performance = Plan confirmation |
| • Description =  Operating Lease (copiers)<br>• Lessor's name = De Lage Landen Financial Service<br>• Lessee's name = Debtor<br>• Expiration date = 11/29/2019 | • Default amt = $8,972.05<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring performance = Plan confirmation |
| • Contract description = Capital Leases<br>• Lessor's name = Jules & Associates<br>• Lessee's name = Debtor<br>• Expiration date = 11/2021 | • Default amt = $34,558.00<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring performance = Plan confirmation |
| • Contract description = Operating Lease<br>• Lessor's Name – Wells Fargo<br>• Lessee's name = Point.360<br>• Expiration date = 2/2019 | • Default amt = $13,064.93<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>Means of assuring performance = Plan confirmation |
| • Contract description:  UnitedHealthcare Insurance Company Group Policy under Group No. 910300<br>• Counterparty names:  UnitedHealthcare Insurance Company and Point.360<br>• Expiration date: Evergreen, subject to termination provisions in Article 5. | • $142,152.77 per Claim No. 33-2. | • Cure of pre-petition default per Plan Section II.C.2, and post-petition amounts to be paid in accordance with terms of contract. |

# EXHIBIT 7

18-002
Point.360

August 15, 2018

| Column1 | Sum of Sell High | Sum of Sell Low |
|---|---|---|
| Gross Sale | $1,243,132.00 | $729,787.00 |
| After Shrink 20% | $994,505.60 | $583,829.60 |
| After sell cost 8% | $914,945.15 | $537,123.23 |

The top line is the Gross recovery estimate.

The shrinkage deduction takes into account what amount of assets that will not be saleable due to condition or other issues.  This is reasonable and my be even optimistic due to the time asset have been offline in deep storage.

The after-sale cost account for the cost of moving money, advertising and listing assets but does not account for labor and move, assess, track, pack, and ship the sold assets

The complete MICOR report is available upon request to Debtor's counsel at lew@landaunet.com or this link:
https://www.dropbox.com/s/w3wm6yhyq9ov38b/MVF%20Surplus%20Asset%20Valuation%20Report.pdf?dl=0

Micor Analytics, Inc.
7538 St. Louis Ave.
Skokie, IL 60076

847-329-8590
www.micorana.com

079

# EXHIBIT 8

**DECLARATION OF HAIG S. BAGERDJIAN**

I, Haig S. Bagerdjian, do hereby declare:

1.    I am the president of Point.360, a California corporation ("Point.360" or "Debtor") and I have personal knowledge of the facts set forth herein.  I offer this declaration in support of the Debtor's Second Amended Disclosure Statement Describing Chapter 11 Plan filed December 10, 2018 ("Disclosure Statement").

2.    On October 10, 2017, the Debtor filed a voluntary chapter 11 petition.  The Debtor continues to manage and operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.  An Official Committee of Creditors Holding Unsecured Claims has been appointed in Debtor's case.

3.    I have reviewed the foregoing Second Amended Disclosure Statement and believe that all statements contained therein and exhibits thereto are true, correct and accurate and that Debtor can reasonably perform the proposed plan if confirmed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 10th day of December 2018 at Los Angeles, California.


*/s/ Haig S. Bagerdjian*
Haig S. Bagerdjian

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

22287 Mulholland Hwy., # 318
Calabasas, CA 91302

A true and correct copy of the foregoing document entitled (*specify*): _____
DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED CHAPTER 11
PLAN [WITH MINOR MODIFICATIONS 12/10/18]
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/10/2018_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  12/10/2018_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Judge Brand, US Bankruptcy Court, 255 E Temple Street, Suite 1382, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/10/2018 | Lewis R. Landau | /s/ Lewis R. Landau |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

**Ponit.360 NEF Service List:**

David E Ahdoot on behalf of Creditor AFTRA Retirement Fund dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com
David E Ahdoot on behalf of Creditor SAG-AFTRA dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com
David E Ahdoot on behalf of Creditor SAG-AFTRA Health Fund dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com
Daren Brinkman on behalf of Creditor Committee Official Committee Unsecured Creditors office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com
William S Brody on behalf of Creditor Austin Financial Services, Inc. wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com
Sara Chenetz on behalf of Interested Party Sara L. Chenetz schenetz@perkinscoie.com, dlax@perkinscoie.com;cmallahi@perkinscoie.com
Peter A Davidson on behalf of Interested Party Courtesy NEF pdavidson@ecjlaw.com, amatsuoka@ecjlaw.com
W. Jeffery Fulton on behalf of Creditor US Bank National Association jeff@jefffultonlaw.com, Yvonne@jefffultonlaw.com
Brian T Harvey on behalf of Creditor Austin Financial Services, Inc. bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com
Daniel P Hogan on behalf of Debtor Point.360, a California Corporation dhogan@mccabehogan.com, dhogan460@gmail.com
Daniel P Hogan on behalf of Defendant Deloitte Corporate Finance, LLC dhogan@mccabehogan.com, dhogan460@gmail.com
Daniel P Hogan on behalf of Defendant Deloitte Transactions and Business Analytics, LLP dhogan@mccabehogan.com, dhogan460@gmail.com
Daniel P Hogan on behalf of Defendant Medley Capital Corporation dhogan@mccabehogan.com, dhogan460@gmail.com
Daniel P Hogan on behalf of Defendant Medley Opportunity Fund II LP dhogan@mccabehogan.com, dhogan460@gmail.com
Daniel P Hogan on behalf of Plaintiff Point.360, a California Corporation dhogan@mccabehogan.com, dhogan460@gmail.com
Daniel P Hogan on behalf of Special Counsel Daniel P Hogan dhogan@mccabehogan.com, dhogan460@gmail.com
Garrick A Hollander on behalf of Interested Party Modern VideoFilm, Inc. ghollander@wcghlaw.com, pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com
William W Huckins on behalf of Creditor REEP-OFC 2300 Empire CA LLC whuckins@allenmatkins.com, clynch@allenmatkins.com
Robert A Julian on behalf of Defendant Deloitte Corporate Finance, LLC rjulian@winston.com, hhammon@winston.com
Robert A Julian on behalf of Defendant Deloitte Transactions and Business Analytics, LLP rjulian@winston.com, hhammon@winston.com
Robert A Julian on behalf of Defendant Medley Capital Corporation rjulian@winston.com, hammon@winston.com
Robert A Julian on behalf of Defendant Medley Opportunity Fund II LP rjulian@winston.com, hammon@winston.com
Robert A Julian on behalf of Plaintiff Point.360, a California Corporation rjulian@winston.com, hhammon@winston.com
Lance N Jurich on behalf of Defendant Deloitte Corporate Finance, LLC ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
Lance N Jurich on behalf of Defendant Deloitte Transactions and Business Analytics, LLP ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
Lance N Jurich on behalf of Defendant Medley Capital Corporation ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
Lance N Jurich on behalf of Defendant Medley Opportunity Fund II LP ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
Lance N Jurich on behalf of Plaintiff Point.360, a California Corporation ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
Lewis R Landau on behalf of Debtor Point.360, a California Corporation Lew@Landaunet.com
Lewis R Landau on behalf of Plaintiff Point.360, a California Corporation Lew@Landaunet.com
Alvin Mar on behalf of U.S. Trustee United States Trustee (LA) alvin.mar@usdoj.gov
David W. Meadows on behalf of Interested Party Courtesy NEF david@davidwmeadowslaw.com
Shane J Moses on behalf of Interested Party Courtesy NEF smoses@ml-sf.com, csnell@ml-sf.com
Austin P Nagel on behalf of Creditor Toyota Motor Credit Corporation, servicing agent for Toyota Lease Trust melissa@apnagellaw.com
Aleksandra Page on behalf of Creditor BB&T apage@ecf.inforuptcy.com
Sayuj Panicker on behalf of Interested Party Courtesy NEF spanicker@counsel.lacounty.gov
Laura J Portillo on behalf of Creditor Committee Official Committee Unsecured Creditors office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com
Justin E Rawlins on behalf of Creditor Medley Capital Corporation jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com
Justin E Rawlins on behalf of Creditor Medley Opportunity Fund II LP jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com
Vincent Renda on behalf of Creditor Leafs Properties, LP vr@rendalawoffices.com, ld@rendalawoffices.com
Michael B Reynolds on behalf of Creditor California Physicians' Service, dba Blue Shield of California mreynolds@swlaw.com, kcollins@swlaw.com
Kevin C Ronk on behalf of Creditor Committee Official Committee Unsecured Creditors Kevin@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com
Andrea C Rosati on behalf of Creditor LEAFS LP andrea@fsgjlaw.com, linh@fsgjlaw.com
Lisa Seabron on behalf of Creditor WRI West Gate South, L.P. lseabron@weingarten.com
Ronald A Spinner on behalf of Creditor Softitler dba Deluxe Localization Sfera spinner@millercanfield.com
Andrew Still on behalf of Creditor California Physicians' Service, dba Blue Shield of California astill@swlaw.com, kcollins@swlaw.com
Arvin Tseng on behalf of Creditor TROY / GOULD PC atseng@troygould.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Christopher B Wick on behalf of Creditor Crown Communication Inc. cwick@hahnlaw.com, lmay@hahnlaw.com
Latonia Williams on behalf of Creditor UnitedHealthcare Insurance Company lwilliams@goodwin.com, bankruptcy@goodwin.com
Gabe P Wright on behalf of Creditor Crown Communication Inc. GWRIGHT@hahnlaw.COM, mkanamori@hahnlaw.com