1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WINSTON & STRAWN LLP
JUSTIN E. RAWLINS (SBN: 209915)
jrawlins@winston.com
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700; Facsimile: (213) 615-1750

CAREY D. SCHREIBER (admitted *pro hac vice*)
cschreiber@winston.com
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700; Facsimile: (212) 294-4700
Counsel for Medley Capital Corporation
and Medley Opportunity Fund II LP

**Sulmeyer**Kupetz
A Professional Corporation
DAVID S. KUPETZ (SBN: 125062)
dkupetz@sulmeyerlaw.com
333 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071-1543
Telephone: (213) 626-2311; Facsimile: (213) 629-4520
Counsel for Visual Data Media Services, Inc.

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>Point.360, a California corporation,<br><br>      Debtor. | Case No.: 2:17-bk-22432 WB<br><br>Chapter 11 Case<br><br>**PLAN OF REORGANIZATION JOINTLY PROPOSED BY MEDLEY CAPITAL CORPORATION, MEDLEY OPPORTUNITY FUND II LP AND VISUAL DATA MEDIA SERVICES, INC. [WITH MINOR MODIFICATIONS 2/21/19]**<br><br>**<u>Medley/VDMS Disclosure Statement Hearing</u>**<br>Date:     February 28, 2019<br>Time:    2:00 p.m. (PST)<br>Place:   Courtroom 1375; Judge Brand<br>           U.S. Bankruptcy Court<br>           255 E. Temple Street, 13th Floor<br>           Los Angeles, CA 90012<br><br>**<u>Medley/VDMS Plan Confirmation Hearing</u>**<br>Date:     [To Be Set]<br>Time:    [To Be Set]<br>Place:   Courtroom 1375; Judge Brand<br>           U.S. Bankruptcy Court<br>           255 E. Temple Street, 13th Floor<br>           Los Angeles, CA 90012 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. SUMMARY OF THE MEDLEY/VDMS PLAN ................................................ 2

    A.    What Creditors and Interest Holders Will Receive Under the
           Medley/VDMS Plan. ................................................................................ 2

    B.    Unclassified Claims. ........................................................................... 2
           1.    Administrative Expenses. ........................................................ 3
           2.    Priority Tax Claims. ............................................................... 4
           3.    Creditors' Administrative Expense Claims ............................ 5

    C.    Classified Claims and Interests. ......................................................... 6
           1.    Classes of Secured Claims. ..................................................... 6
           2.    Classes of Priority Unsecured Claims. .................................... 8
           3.    Classes of General Unsecured Claims. .................................... 9
           4.    Class(es) of Interest Holders. ................................................ 11

    D.    Means of Effectuating the Medley/VDMS Plan. ............................... 11
           1.    Funding for the Medley/VDMS Plan and Transfer of Title to the
                 Debtor's Assets. ..................................................................... 11
           1.    General Medley/VDMS Plan Matters. .................................. 12

    E.    Other Provisions of the Medley/VDMS Plan. .................................. 17
           1.    Executory Contracts and Unexpired Leases. ......................... 17
           2.    Changes in Rates Subject to Regulatory Commission Approval. .............. 18
           3.    Retention of Jurisdiction. ...................................................... 18

III. EFFECT OF CONFIRMATION OF THE MEDLEY/VDMS PLAN ................... 18

    A.    Binding Effect. ................................................................................. 18

    B.    Discharge. ......................................................................................... 18

    C.    Release of Liens. .............................................................................. 19

    D.    Waiver of Statutory Limitations on Releases. ................................... 19

    E.    Injunction Related to Releases. ........................................................ 19

    F.    Modification of the Medley/VDMS Plan. ........................................ 19

    G.    Post-Confirmation Status Report. ..................................................... 20

    H.    Post-Confirmation Conversion/Dismissal. ........................................ 20

    I.    Final Decree. .................................................................................... 21

## I.

## INTRODUCTION

Point.360, a California corporation (the "Debtor"), is the debtor in a Chapter 11 bankruptcy case. On October 10, 2017 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court") under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"). The Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. The plan of reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. On December 10, 2018, the Debtor filed *Debtor's Second Amended Chapter 11 Plan of Reorganization [With Minor Modifications]* [Docket No. 438] (the "Debtor's Plan") and *Debtor's Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan [With Minor Modifications]* [Docket No. 439] (the "Debtor's Disclosure Statement"). The Debtor's Disclosure Statement was approved by the Bankruptcy Court on December 13, 2018 (the "Debtor's Disclosure Statement Approval Order"), and the Debtor purportedly solicited the Debtor's Plan on December 17, 2018. See Docket Nos. 433 and 452.[1]

Medley Capital Corporation ("MCC"), Medley Opportunity Fund II LP ("MOF" and, together with MCC, collectively, "Medley") and Visual Data Media Services, Inc. ("VDMS") are jointly proposing the plan sent to you in the same envelope as this document (the "Medley/VDMS Plan"). Medley and VDMS are jointly defined herein as the "Medley/VDMS Plan Proponents."

---

[1] On December 14, 2018, Medley filed *Medley Capital Corporation and Medley Opportunity Fund II LP's Objection and Reservation of Rights to Debtor's Proposed Order Approving Second Amended Disclosure Statement and Scheduling Plan Confirmation Status Hearing and Related Deadlines* [Docket No. 446]. As set forth therein, among other things, Medley respectfully submits that because the Debtor is flouting the Court's directives and misleading the Court, (a) the Debtor's Disclosure Statement Approval Order should be vacated, (b) the Court should deny approval of the Debtor's Disclosure Statement until the Debtor complies with the Court's instruction to prepare the Required Budget (as defined in Medley's objection), provide the Required Budget to Medley and attach the Required Budget as an exhibit to the Debtor's Disclosure Statement and (c) the Court should authorize the solicitation of the Medley/VDMS Plan.

Accompanying this document is the Disclosure Statement describing the Medley/VDMS Plan (the "Medley/VDMS Disclosure Statement") which has been approved by the Court, and which is provided to help you understand the Medley/VDMS Plan. **The Bankruptcy Court may approve the Medley/VDMS Plan or the Debtor's Plan; it may not approve both.** ***CAPITALIZED TERMS USED AND NOT OTHERWISE DEFINED HEREIN SHALL HAVE THE MEANING SET FORTH IN SCHEDULE 1 HERETO.***

The Medley/VDMS Plan seeks to accomplish a sale of all assets of the Debtor's estate (the "Estate Assets") to VDMS. The Medley/VDMS Plan is being funded by VDMS. The Medley/VDMS Plan is supported by Medley. The Medley/VDMS Plan (i) results in the complete satisfaction of Medley's prepetition secured loan and Medley's Administrative Claims, (ii) resolves all litigation among Medley and the Debtor, (iii) results in the payment in full of all creditors upon the Effective Date of the Medley/VDMS Plan except for Medley (which has agreed to a discounted pay off) and general unsecured creditors (i.e., class 6), (iv) results in the cash payment to all general unsecured creditors of an estimated 50% of their Allowed Claims after resolution of such claims as soon as practicable following the Effective Date, as set forth herein, (v) is not subject to or conditioned upon the subsequent sale by VDMS of any of the Estate Assets, and (vi) involves the payment of an estimated $8,816,578 of new cash into the Debtor's estate by VDMS.

## II.

## SUMMARY OF THE MEDLEY/VDMS PLAN

**A.    What Creditors and Interest Holders Will Receive Under the Medley/VDMS Plan.**

As required by the Code, the Medley/VDMS Plan classifies claims and interests in various classes according to their right to priority. The Medley/VDMS Plan states whether each class of claims or interests is impaired or unimpaired. The Medley/VDMS Plan provides the treatment each class will receive.

**B.    Unclassified Claims.**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Medley/VDMS Plan because they

are automatically entitled to specific treatment provided for them in the Code. As such, the Medley/VDMS Plan Proponents have not placed the following claims in a class.

### 1. Administrative Expenses.

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(2). The Code requires that all administrative claims be paid on the Effective Date of the Medley/VDMS Plan, unless a particular claimant agrees to a different treatment. The following chart lists all of the Debtor's anticipated unpaid 507(a)(2) administrative claims for chapter 11 professionals, the Bankruptcy Court clerk's office and the Office of the United States Trustee and their treatment under the Medley/VDMS Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Lewis R. Landau Attorney at Law; Debtor's Counsel | $TBD ($150,000 estimated unpaid as of 11/1/18) | Paid in full in cash from the Medley/VDMS Plan Fund on the later of the Effective Date and the date of entry of a Court order allowing such fees and expenses to the extent such fees and expenses have not been paid pursuant to any Final Order of the Bankruptcy Court (including, but not limited to, any fees of a Professional held back) from the Medley/VDMS Plan Fund. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses (whether or not paid pursuant to an order granting interim allowance), then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim. |
| Brinkman Portillo Ronk, APC Committee Counsel | $TBD ($150,000 estimated unpaid as of 11/1/18) | |
| GlassRatner Advisory & Capital Group; Financial Advisor | $TBD ($50,000 estimated unpaid as of 11/1/18) | |
| Daniel P. Hogan Attorney at Law; Special Litigation Counsel to the Debtor | $TBD ($19,000 estimated unpaid as of 11/1/18) | |
| TroyGould, P.C.; Special Transactional Counsel to the Debtor | $TBD ($6,000 estimated unpaid as of 11/1/18) | |
| Clerk's Office Fees | $TBD | Paid in full in cash on the Effective Date from the Medley/VDMS Plan Fund. |
| Office of the U.S. Trustee Fees | Current | Paid in full in cash on the Effective Date from the Medley/VDMS Plan Fund and, thereafter, pending the entry of a final decree closing this case, additional U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in full from the Medley/VDMS Plan |

3

| | | |
|---|---|---|
| | | Fund.  The additional amount to be paid following distribution to creditors is estimated at $90,000 (this amount is not included in the total estimated Effective Date obligations since it will be paid later). |
| | TOTAL TBD ($375,000 estimated) | |

**Court Approval of Fees Required:**

The Bankruptcy Court must rule on all fees listed in this chart before the fees will be owed.  For all Professional Fees except Clerk's Office fees and U.S. Trustee's fees, the Professional in question must file and serve a properly noticed fee application, and the Court must rule on the application.  Only the amount of Professional Fees allowed by the Court on a final basis pursuant to a Final Order will be owed and required to be paid under this Medley/VDMS Plan.

As indicated above, the Debtor will need to pay certain claims on the Effective Date of the Medley/VDMS Plan in cash in amounts to be determined.  On the Effective Date, the Medley/VDMS Plan Fund will be funded by VDMS with cash in the amount of $2,401,591.  Based upon the Debtor's projections, the Medley/VDMS Plan Fund will have a sufficient amount of cash on hand on the Effective Date of the Medley/VDMS Plan to pay the allowed Professional Fees in full in cash.  The Medley/VDMS Plan Proponents reserve all rights to object to the allowance of any such Professional Fees.

**2.    Priority Tax Claims.**

Priority tax claims are certain unsecured income, employment and other taxes described by Code section 507(a)(8).  The Code requires that each holder of such a Code section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the petition date with interest at the most favorable rate offered to other creditors in the Medley/VDMS Plan.

The following chart lists all of the Debtor's Code section 507(a)(8) priority tax claims and their treatment under the Medley/VDMS Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| • Name = | | • Pymt interval:  Single |
| • Los Angeles County TTC | $148,219.54 (Proof of Claim No. 7-2) | • Pymt amt/interval:  Paid in full in cash from the Medley/VDMS Plan Fund. |
| • Type of tax = Property | | • Begin date:  Effective Date |
| | | • End date:  Effective Date |
| • Date tax assessed= 10/27/17 | | • Interest Rate % = N/A |
| | | • Total Payout Amount  = 100% |

| Description | Amount Owed | Treatment |
|---|---|---|
| • Names = | | • Pymt interval:  = Single |
| • IRS | $1,000 | • Pymt amt/interval:   Paid in full in cash from the Medley/VDMS Plan Fund. |
| • FTB | $800 | |
| • County of Orange | $1,802.80 | |
| • Type of tax = Misc. | | • Begin date: Effective Date |
| | | • End date:  Effective Date |
| • Date tax assessed = Misc. | | • Interest Rate % = N/A |
| | | • Total Payout Amount = 100% |

### 3.    Creditors' Administrative Expense Claims

Creditors may assert administrative priority expense claims arising from, e.g., their post-petition services provided to the Debtor under Code section 503(b).  Such expenses may include rent, utilities, and insurance, among other items.

Medley asserts Administrative Claims against the Debtor including, without limitation: (a) an Administrative Claim against the Debtor as a result of the failure of adequate protection under the Medley Adequate Protection Order; and (b) an Administrative Claim against the Debtor for Obligations (as defined in the Term Loan Agreement) owing under the Term Loan Agreement, including accrued and unpaid interest, fees and expenses (including legal fees and expenses) and indemnification obligations.  As set forth herein, Medley has agreed to release its Administrative Claims in connection with confirmation of the Medley/VDMS Plan.

**Administrative Claims Bar Date**:  The last day to file a request for payment of Administrative Claims, other than those set forth in section II(B)(1) above, is set forth in the notice of the Medley/VDMS Plan Confirmation Hearing accompanying the Medley/VDMS Disclosure Statement.  The Code requires that all administrative claims be paid in full in cash on

the Effective Date of the Medley/VDMS Plan, unless a particular claimant agrees to a different treatment. All allowed Administrative Expense Claims will be paid in full in cash on the Effective Date from the Medley/VDMS Plan Fund. The Medley/VDMS Plan Proponents reserve all rights to object to the allowance of any such Administrative Expense Claims.

**C.     Classified Claims and Interests.**

    **1.     Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the estate. The Debtor's secured creditors are identified below, other than purported equipment leases that may constitute financing transactions with nominal lease end purchase options. These purported equipment lease claims are listed on Exhibit 6 to the Debtor's Disclosure Statement and Exhibit 5 to the Medley/VDMS Disclosure Statement. VDMS shall assume the purported equipment leases through the confirmation process, while reserving the right to seek recharacterization of such purported equipment leases in the event of any dispute concerning the Debtor's title to the assets subject to such purported equipment leases. *See*, §II.E.1).

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1 | Secured claim of: Austin Financial Services, Inc. | No | A. Pymt interval = Paid in full in cash by VDMS on the Effective Date unless the class 1 claim holder and VDMS agree to the contrary. |
| | • Name= Austin Financial Services, Inc. | | |
| | • Collateral description = All Assets | | |
| | • Collateral value = Varies per operations; fully secured. | | |
| | • Priority of security int. = 1. | | |
| | • Principal owed = $2,475,676.48 per Proof of Claim No. 34. | | |
| | • Pre-pet. Arrearage amount = $0 | | • Total payout = Per contract. |
| | • Post-pet. Arrearage amount = $0 | | • Treatment of Lien = Unimpaired per Code section 1124(1) and (2). |
| | • Total claim amount = $2,475,676.48 per Proof of Claim No. 34, subject to post-petition changes in account status. | | |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 2 | Secured claims of: Medley Capital Corporation Medley Opportunity Fund II, LP | Yes | A. In full settlement and satisfaction of all of Medley's claims against the Debtor, including all of Medley's class 2 claims and otherwise, Medley shall receive the following from VDMS on the Effective Date: <br> i. $3.5 million of cash to be paid by VDMS on the Effective Date; <br> ii. Up to $100,000 to pay for the fees incurred by Medley's counsel related to confirmation of the Medley/VDMS Plan; <br> iii. Warrants to acquire up to 10% of the equity of VDMS in form and substance acceptable to both Medley and VDMS; and <br> iv. Medley (together with all of its successors, assigns, and representatives) will receive a release from VDMS of any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities whether direct, derivative, or otherwise, of the Debtor and the Debtor's estate against Medley (all of which Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities whether direct, derivative, or otherwise, of the Debtor and the Debtor's estate against Medley are being acquired by VDMS from the Debtor on the Effective Date under the Medley/VDMS Plan). <br> B. An allowed unsecured deficiency claim as of the Effective Date calculated as follows:  $2,500,000 (made up of $6,000,000 minus $3,500,000 payment), plus prepetition and postpetition accrued and unpaid interest, plus accrued and unpaid legal fees to date (as same will be calculated on the Effective Date, the "Medley Deficiency Claim"). As set forth below, Medley will have an interest on account of such claim in the Medley/VDMS Plan Trust which shall be administered by Medley or its designee. |

| | | | |
|---|---|---|---|
| • Principal owed = $6,000,000 per Proof of Claim Nos. 72-2, 73-2 | | | |
| • Pre-pet. Arrearage amount = $572,764.28 per Proof of Claim Nos. 72-2, 73-2 | | | |
| • Post-pet. Arrearage amount = not less than $949,366.10 (estimated through February 28, 2019, at the contractual default rate, using a 3-month LIBOR forward curve from Bloomberg as of September 28, 2018 to determine the 3-month LIBOR rates beyond December, 31, 2018). | | | |
| • Total secured claim amount = not less than $6,572,764.28 plus post-petition accruals. | | | |

**2.    Classes of Priority Unsecured Claims.**

Certain priority claims that are referred to in Code sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim unless such creditor agrees to alternate treatment. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims. The Debtor's priority unsecured claims are listed on Exhibit 1 to the Debtor's Disclosure Statement and Exhibit 1 to the Medley/VDMS Disclosure Statement.

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | Priority Wages, Commissions, Salary Claims Per § 507(a)(4) | No | Payment Interval = All allowed priority claims per Code section 507(a)(4) shall be paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
| | Total amount of claims = $92,685.13 See Debtor's Disclosure Statement Ex 1 and Medley/VDMS Disclosure Statement Ex 1. | | Begin Date = Effective Date. End date = Effective Date. Interest Rate: None Total Payout = 100%. |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 4 | UnitedHealth Insurance Company; Priority Employee Benefit Plan Per § 507(a)(5) | No | Payment Interval = All allowed priority claims per Code section 507(a)(5) shall be paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
| | Total amount of claims = $142,152.77 per Proof of Claim No. 33-2 | | Begin Date = Effective Date. End date = Effective Date. Interest Rate: None Total Payout = 100%. |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 5 | SAG-AFTRA and SAG-AFTRA Health Fund and AFTRA Retirement Fund Priority Claims Per § 507(a)(5) | No | Payment Interval = All allowed priority claims per Code section 507(a)(5) shall be paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
| | Total amount of claims = $37,466.75 per Proof of Claim Nos. 57-1 and 58-1 | | Begin Date = Effective Date. End date = Effective Date. Interest Rate: None Total Payout = 100%. |

3.    **Classes of General Unsecured Claims.**

General unsecured claims are unsecured claims not entitled to priority under Code section 507(a). The following chart identifies this Medley/VDMS Plan's treatment of the classes containing all of Debtor's general unsecured claims:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 6 | Allowed General Unsecured Claims identified in Debtor's Disclosure Statement Exhibit 1 and Medley/VDMS Disclosure Statement Exhibit 1 plus the allowed rejection damage claim of the HWAY Landlord. | Yes | Payment Interval = In full settlement and satisfaction of their class 6 claims, each holder of an allowed class 6 claim will receive (A) a pro rata cash distribution from the funds remaining in the Medley/VDMS Plan Fund after payment in full of all (i) allowed administrative claims, (ii) allowed priority tax claims, (iii) allowed class 3, 4, 5 and 7 claims and (iv) U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) incurred through the date of distribution to holders of allowed class 6 claims. This pro rata distribution will be made to the holders of allowed class 6 claims after the deadline to file rejection damage claims from Rejected |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| | | | Contracts has passed and all disputed class 6 claims have been resolved to Final Order and (B) their share of the Medley/VDMS Plan Trust. Based upon the information provided by the Debtor, the Medley/VDMS Plan Proponents estimate that the distributions to holders of allowed class 6 claims from the Medley/VDMS Plan Fund will result in the payment of cash to each holder of an allowed class 6 claim equal to approximately 50% of the amount of each allowed class 6 claim. Holders of allowed class 6 claims will not receive any other distribution under the Medley/VDMS Plan. If any money is left in the Medley/VDMS Plan Fund after each holder of an allowed class 6 claim has received 50% of the amount of its allowed class 6 claim, such excess funds shall be returned to VDMS given that the Medley/VDMS Plan provides for a recovery of up to 50%. The payment to the holders of allowed class 6 claims from the Medley/VDMS Plan Fund will be made as soon as practicable following the Effective Date. |
| | Total estimated amount of class 6 claims: $3,117,075 which includes $163,506.24 disputed per the Debtor's Disclosure Statement plus an estimated total rejection damage claim in favor of the HWAY Landlord of approximately $1,417,380 (recognizing that the HWAY Landlord has a state law requirement to attempt to mitigate its damage claim by attempting to find a replacement tenant and the HWAY Landlord's security deposit of approximately $197,902 will be retained by the HWAY Landlord as an offset against the HWAY Landlord's rejection damage claim). | | End date = N/A Interest rate: None. Total payout = Estimated 50% based upon the information provided by the Debtor. |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 7 | Convenience Class of unsecured claims less than or reducing to $2,500. | No | Payment Interval = All allowed class 7 claims shall be paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
| | Total amount of claims = Approx. $52,467 [excluding voluntarily reduced claims.] | | |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 8 | Wilcon Holdings, LLC aka Crown Castle Fiber | No | Payment Interval = Satisfied per Court approved settlement agreement. |
| | Total amount of claims = $124,274.69 per Settlement | | |

4.    **Class(es) of Interest Holders.**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following chart identifies the Medley/VDMS Plan's treatment of the class of interest holders:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 9 | Equity Security Holders | Yes | All equity security interests, including stock, options and warrants, are cancelled on the Effective Date. Equity Interest holders will not receive any distribution under the Medley/VDMS Plan. |

**D.    Means of Effectuating the Medley/VDMS Plan.**

1.    **Funding for the Medley/VDMS Plan and Transfer of Title to the Debtor's Assets.**

All creditor payments under the Medley/VDMS Plan will be funded directly by VDMS (including through amounts VDMS is funding into the Medley/VDMS Plan Fund) coupled with the Debtor's cash on hand which will become the property of VDMS on the Effective Date.  In exchange for VDMS funding such payments and all other obligations undertaken by VDMS under the Medley/VDMS Plan, on the Effective Date, title to all assets of the Debtor and the Debtor's estate shall be deemed irrevocably sold, assigned and transferred to VDMS in

1  accordance with Code section 1123(b)(4) free and clear of all liens, claims, interests and

2  encumbrances against the Debtor, the Debtor's estate and assets of the Debtor and the Debtor's

3  estate. VDMS will make all payments it is required to make by the Medley/VDMS Plan on the

4  Effective Date directly to the various creditors and thereafter will administer the Medley/VDMS

5  Plan Fund and make all payments required by the Medley/VDMS Plan from the Medley/VDMS

6  Plan Fund directly to the various creditors. As a result, VDMS will be serving as the disbursing

7  agent under the Medley/VDMS Plan. VDMS reserves the right to retain a third-party disbursing

8  agent to make such Medley/VDMS Plan disbursements, with VDMS to pay for the costs of any

9  such third-party disbursing agent.

10  **1.  General Medley/VDMS Plan Matters.**

11  1.  On the Effective Date, any and all Claims, obligations, suits, judgments, damages,

12  demands, debts, rights, Causes of Action, losses, or liabilities whether direct, derivative, or

13  otherwise, of the Debtor and the Debtor's estate against Medley and any of its successors,

14  assigns, and representatives, and all standing of the Debtor and the Debtor's estate to pursue any

15  and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action,

16  losses, or liabilities against Medley and any of its successors, assigns, and representatives whether

17  directly, derivatively, or otherwise, will be irrevocably assigned to VDMS, and, pursuant to its

18  agreement with Medley, will be automatically released without further action by any party.

19  2.  On the Effective Date, all of the Debtor's rights, title and interest in the MVF

20  Commercial Tort Claim Matter shall be irrevocably assigned to the Medley/VDMS Plan Trust,

21  which shall be administered by Medley or its designee and standing to assert such MVF

22  Commercial Tort Claim Matter shall be granted thereto. In the event there is a Final Order of the

23  Court sustaining the Debtor's objection and finding that such claims and proceeds were assigned

24  to the Debtor pursuant to the UCC Sale Agreement, the proceeds of the MVF Commercial Tort

25  Claim Matter, if any, upon receipt by the Medley/VDMS Plan Trust will be distributed in the

26  following order: (i) first, to Medley on account of the Medley Deficiency Claim until Medley

27  receives the same percentage recovery on account of the Medley Deficiency Claim that holders of

28  allowed class 6 claims recover from the Medley/VDMS Plan Fund; and (ii) second, shared ratably

among (A) holders of allowed class 6 claims on account of the remaining unpaid portion of such claims and (B) Medley on account of the remaining unpaid portion of the Medley Deficiency Claim. In the event there is a Final Order of the Court in favor of MVF holding that such claims and proceeds were ***not*** assigned to the Debtor pursuant to the UCC Sale Agreement and that such claims and proceeds belong to MVF, the Medley Deficiency Claim will be deemed to be waived.

3.    On the Effective Date, all Avoidance Actions will be deemed irrevocably assigned to VDMS, and, following the Effective Date, VDMS will be the sole party with standing to pursue any such Avoidance Actions.

4.    The Creditors' Committee will terminate on the Effective Date.

5.    On the Effective Date, all outstanding equity securities, including stock, options and warrants, shall be deemed cancelled.

6.    On the Effective Date, all causes of action against Mr. Haig Bagerdjian and HWAY will be deemed irrevocably assigned to VDMS, and, following the Effective Date, VDMS will be the sole party with standing to pursue any such causes of action. If the HWAY Landlord does not object to the four-month vacate schedule proposed by VDMS below, on the Effective Date, the HWAY Landlord and Mr. Bagerdjian will be deemed released from any and all claims the Debtor and the Debtor's estate may have against them.

7.    Any distribution made by VDMS, either directly or from the Medley/VDMS Plan Fund, that remains unclaimed and outstanding for more than ninety (90) days after issuance shall be cancelled, and any such property shall be retained by VDMS.

8.    Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims under the Medley/VDMS Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

9.    The Debtor will not issue, nor will there be, any shares of non-voting securities of the Debtor, in accordance with Code section 1123(a)(6).

10.    Objections to claims against the Debtor shall be filed no later than thirty (30) days following the Effective Date.

11.    VDMS currently anticipates employing all or substantially all of the Debtor's employees following the Effective Date, with the exception of the Debtor's CEO. Accordingly, VDMS does not believe there will be any basis for the assertion of a WARN claim. Further, VDMS does not anticipate that any material claims for paid time off will be asserted.

12.    VDMS has determined that it desires to fund a recovery to general unsecured creditors as part of the Medley/VDMS Plan. However, VDMS is unwilling to fund more than a 50% recovery to general unsecured creditors. Accordingly, Medley, as part of its treatment under the Medley/VDMS Plan, has agreed not to seek to recover from the Medley/VDMS Plan Fund on account of the Medley Deficiency Claim which results in a materially larger recovery for holders of allowed class 6 general unsecured claims.

13.    The Bankruptcy Court will retain jurisdiction over the post-confirmation estate until such estate is fully administered and a final decree is entered.

**2.    VDMS.**

VDMS is a leading global entertainment media and technology services business based in Los Angeles, which began operations in 1995 and is organized as a California S Corporation. Services provided by VDMS include:

Digital Media Services (i.e., Transcoding, encoding, data management, data transfer)

Editing

Language Services (i.e., Subtitling and voice dubbing)

Closed Captioning

Quality Control, and

Audio/ Foley Stages

VDMS has locations around the world, including: Burbank, CA (HQ); London, UK; and Bangalore, India.

Customers of VDMS include global leaders in: Cable TV, Broadcast TV, and Online Streaming.

### 3.   Post-Confirmation Board and Management.

The Board and Management of VDMS will remain unchanged following the Effective Date.  The sole member of the VDMS Board of Directors is John Trautman, who is also the CEO of VDMS.  Below is a summary of the VDMS management team:

- **John Trautman, CEO** - For 33 years as an Executive, John has honed his technical and creative skills to cultivate and internationally expand Visual Data into a premier content localization and digital distribution company.  With a strong background in post-production and an acute knowledge in finance, technology and executive level management, he has been able to grow the company to $35 million dollars in revenue. John also operates as the company's CFO and continues to advance Visual Data into the future, managing offices in Burbank, London and Bangalore.

- **Symon Roue, Managing Director -** Seasoned Media Services Entrepreneur for over 15 years. Created two media services starts ups and eventually acquired a media services company in London. Led the search, finance and acquisition of the company. Has doubled revenues and tripled profits in 6 years. Led our company to a majority acquisition by Visual Data Media Services. Skilled at Higher level strategic vision for the company, manage finance and cash flow with Finance Director. Goals are to continue growing the company globally and create shareholder value.

- **Kim Lawrence, EVP-Client Operations -** A seasoned industry executive with extensive practical knowledge of media transformation and post production processes. Kim began her career in the industry in 1994 at Vidfilm in London, before moving to the States to head up Global Account Management of the Walt Disney Account for Technicolor in Los Angeles. Kim joined Visual Data as VP of Client Services, in 2011, and spent 2 years developing and training the Client Services Team. Kim took over the running of Sales Team in 2013, and currently leads the organization's customer facing departments as EVP of Client Operations.

- **Steve Spear, SVP-Operations -** 20-year Post Production professional specializing in technical operations, workflow management, systems technology and organizational

leadership. He joined Visual Data in May of 2011 after nearly an 11- year stint at Ascent Media, where he managed a $23 million global Disney account, served as a New Technology advisor to the executive team and spent his final 2 years as VP. Operations. Steve's primary role today is to ensure Visual Data's Operations departments are profitable, manufactures a high-quality product and delivers on time. and building and analyzing metrics to provide better visibility over Visual Data's profitability and productivity and developing strategies for facility systems integration.

- **Simon Constable, SVP-Language Services -** An operations executive with over 20 years of media industry experience. He has experience of working in global posts based in Europe, Asia and the US. Responsibilities have ranged from broadcast channel playout, feature and television post production and media services. He is currently working to grow worldwide access service such as subtitling, captioning and audio description.

- **Robin Phelps, VP-Finance -** Responsible for the Accounting and Finance functions of the company, she has been working in the entertainment industry for 10 years. Her previous experience includes audit and tax accounting for a public firm, as well as various corporate accounting positions at Lexmark International, a global technology company.

**4.    Disbursing Agent.**

As explained above, VDMS shall act as the disbursing agent under the Medley/VDMS Plan for the purpose of making all distributions provided for under the Medley/VDMS Plan. VDMS shall serve as the disbursing agent under the Medley/VDMS Plan without bond and shall receive no additional compensation for distribution services rendered pursuant to the Medley/VDMS Plan. As further explained above, VDMS reserves the right to retain a third-party disbursing agent to make such Medley/VDMS Plan disbursements, with VDMS to pay for the costs of any such third-party disbursing agent.

E.    **Other Provisions of the Medley/VDMS Plan.**

    1.    **Executory Contracts and Unexpired Leases.**

        a.    **Assumptions.**

On the Effective Date, the Debtor's unexpired real property lease for the Media Center Facility (the "Media Center Lease") shall be deemed assumed by the Debtor and assigned to VDMS. VDMS shall be obligated to perform all of the Debtor's remaining obligations under the Media Center Lease, and VDMS shall receive all of the benefits and rights of the Debtor under the Media Center Lease.    Pursuant to Code section 1123(b)(2), the Medley/VDMS Plan constitutes a motion to assume and assign to VDMS the Media Center Lease pursuant to the requirements of Code section 365. The Medley/VDMS Plan provides for payment in full in cash of an estimated cure payment in the amount of $152,461.00. Any objection by the Media Center Landlord to the Debtor's proposed cure payment for the Media Center Lease shall be filed as an objection to the confirmation of the Medley/VDMS Plan. Confirmation of the Medley/VDMS Plan shall constitute adequate assurance of future performance under the Media Center Lease. The Confirmation Order will constitute an order approving the Debtor's assumption and assignment to VDMS of the Media Center Lease. While VDMS does not currently intend to take an assignment of any of the Debtor's other unexpired leases or executory contracts, VDMS reserves the right to file with the Court not later than ten days prior to the Medley/VDMS Plan Confirmation Hearing a schedule of any and all such additional unexpired leases and/or executory contracts that VDMS elects to take an assignment of ("Additional Assumed Contracts"), recognizing that VDMS will be required to pay any cure payments owing under any such Additional Assumed Contracts.

        b.    **Rejections.**

On the Effective Date, all of the Debtor's unexpired leases and executory contracts other than the Media Center Lease and any Additional Assumed Contracts (the "Rejected Contracts") shall be deemed rejected effective as of the Effective Date. Pursuant to Code section 1123(b)(2), the Medley/VDMS Plan constitutes a motion to reject all of the Rejected Contracts pursuant to the requirements of Code section 365. All counter-parties to all such Rejected Contracts shall

1  have until the date that is thirty days following the Effective Date to file any rejection damage

2  claims that they wish to assert against the Debtor's estate.  While the HWAY Lease will be

3  deemed rejected as of the Effective Date, notwithstanding anything herein to the contrary, VDMS

4  shall have until the date that is four months following the Effective Date to vacate the HWAY

5  Property, which VDMS estimates as a necessary period of time for VDMS to be able to remove

6  all of the property located at the HWAY Property.  On the Effective Date, VDMS shall deliver to

7  the HWAY Landlord a cash payment equal to four months of rent so that there is no risk

8  whatsoever of the rent being paid.  During this four-month period, VDMS shall provide the

9  HWAY Landlord with reasonable access to the HWAY Property during business hours on not

10  less than twenty-four hours' notice to VDMS so that the HWAY Landlord can show the HWAY

11  Property to any new prospective tenants.

12  **2.    Changes in Rates Subject to Regulatory Commission Approval.**

13  This Debtor is not subject to governmental regulatory commission approval of its rates.

14  **3.    Retention of Jurisdiction.**

15  The Bankruptcy Court will retain jurisdiction to the extent provided by law.

16  **III.**

17  **EFFECT OF CONFIRMATION OF THE MEDLEY/VDMS PLAN**

18  **A.    Binding Effect.**

19  Except as otherwise provided in Code section 1141(d)(3), and subject to the occurrence of

20  the Effective Date, on and after the entry of the Confirmation Order, the provisions of the

21  Medley/VDMS Plan shall bind every holder of a Claim against or Interest in the Debtor and inure

22  to the benefit of and be binding on such holder's respective successors and assigns, regardless of

23  whether the Claim or Interest of such holder is impaired under the Medley/VDMS Plan and

24  whether such holder has accepted the Medley/VDMS Plan.

25  **B.    Discharge.**

26  This Medley/VDMS Plan provides that the Debtor shall be discharged of liability for

27  payment of debts incurred before confirmation of the Medley/VDMS Plan, as specified in Code

28

1    section 1141. The terms of the Medley/VDMS Plan will bind all creditors and parties in interest

2    to the provisions thereof.

3    **C.    Release of Liens.**

4    Except as otherwise specifically provided in the Medley/VDMS Plan or in any contract,

5    instrument, release, or other agreement or document created pursuant to the Medley/VDMS Plan,

6    on the Effective Date and concurrently with the applicable distributions made pursuant to the

7    Medley/VDMS Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the

8    secured claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens,

9    pledges, or other security interests against any property of the estate shall be fully released and

10   discharged, without any further approval or order of the Bankruptcy Court and without any action

11   or filing being required to be made by the Debtor.

12   **D.    Waiver of Statutory Limitations on Releases.**

13   The releases contained in the Medley/VDMS Plan are effective regardless of whether

14   those released matters are presently known, unknown, suspected or unsuspected, foreseen or

15   unforeseen.

16   **E.    Injunction Related to Releases.**

17   The Confirmation Order shall permanently enjoin the commencement or prosecution by

18   any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations,

19   suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released

20   pursuant to the Medley/VDMS Plan, including the Claims, obligations, suits, judgments,

21   damages, demands, debts, rights, Causes of Action, and liabilities of the Debtor and the Debtor's

22   estate against Medley and any of its successors, assigns, and representatives, whether direct,

23   derivative, or otherwise, released on the Effective Date as set forth in this Medley/VDMS Plan.

24   **F.    Modification of the Medley/VDMS Plan.**

25   The Medley/VDMS Plan Proponents may modify the Medley/VDMS Plan at any time

26   before confirmation. However, the Court may require a new disclosure statement and/or revoting

27   on the Medley/VDMS Plan.

28

The Medley/VDMS Plan Proponents may also seek to modify the Medley/VDMS Plan at any time after confirmation only if (1) the Medley/VDMS Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**G.    Post-Confirmation Status Report.**

Within 120 days of the entry of the Confirmation Order, the Medley/VDMS Plan Proponents shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Medley/VDMS Plan. The status report shall be served on the United States Trustee, the Creditors' Committee, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities until a final decree is entered closing this case. U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid from the Medley/VDMS Plan Fund pending the entry of a final decree closing this case.

**H.    Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss this case under Code section 1112(b), after the Medley/VDMS Plan is confirmed, if there is a default in performing the Medley/VDMS Plan. If the Court orders this case converted to Chapter 7 after the Medley/VDMS Plan is confirmed, then all of the proceeds from the sale, transfer and assignment of the assets of this estate to VDMS under the Medley/VDMS Plan that has not been disbursed pursuant to the Medley/VDMS Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Confirmation Order if the Confirmation Order was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation of the Medley/VDMS Plan within 180 days after the entry of the Confirmation Order.

DocuSign Envelope ID: 274DF048-F8B6-48E0-868E-BB6BCA99DD76

**I.    Final Decree.**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Debtor shall file a motion with the Court to obtain a final decree to close this case.

Dated:  February 21, 2019          **WINSTON & STRAWN LLP**

                                    By:  /s/ Justin E. Rawlins
                                         Justin E. Rawlins
                                         Counsel for Medley Capital Corporation
                                         and Medley Opportunity Fund II LP

Dated:  February 21, 2019          **MEDLEY CAPITAL CORPORATION**
                                   a Delaware corporation

                                        By: MCC Advisors LLC,
                                        a Delaware limited liability company
                                        its investment manager

                                        By: *Richard Allorto*
                                        Name: Richard T. Allorto, Jr.
                                        Title: Chief Financial Officer

Dated:  February 21, 2019          **MEDLEY OPPORTUNITY FUND II LP**
                                   a Delaware limited partnership

                                        By: MOF II Management LLC,
                                        a Delaware limited liability company,
                                        its investment manager

                                        By: *Richard Allorto*
                                        Name: Richard T. Allorto, Jr.
                                        Title: Chief Financial Officer

Dated:  February 21, 2019          **Sulmeyer**Kupetz
                                   A Professional Corporation

                                   By:  /s/ David S. Kupetz
                                        David S. Kupetz
                                        Counsel for Visual Data Media Services, Inc.

Dated:  February 21, 2019          **VISUAL DATA MEDIA SERVICES, INC.**

                                   By:  _____

                                   Its:  _____

21

1    **I.    Final Decree.**

2        Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

3    Debtor shall file a motion with the Court to obtain a final decree to close this case.

4
    Dated:  February 21, 2019             **WINSTON & STRAWN LLP**

5
6                                By:  /s/ Justin E. Rawlins

7                                    Justin E. Rawlins
                                Counsel for Medley Capital Corporation

8                                    and Medley Opportunity Fund II LP

9        Dated:  February 21, 2019             **MEDLEY CAPITAL CORPORATION**
                          a Delaware corporation

10
11                                   By: MCC Advisors LLC,
                                a Delaware limited liability company

12                                   its investment manager

13                                   By:_____
                                Name: Richard T. Allorto, Jr.

14                                   Title: Chief Financial Officer

15       Dated:  February 21, 2019             **MEDLEY OPPORTUNITY FUND II LP**
                          a Delaware limited partnership

16
17                                     By: MOF II Management LLC,
                                  a Delaware limited liability company,

18                                   its investment manager

19                                   By:_____
                                Name: Richard T. Allorto, Jr.

20                                   Title: Chief Financial Officer

21       Dated:  February 21, 2019             **Sulmeyer**Kupetz
                          A Professional Corporation

22
23                               By:  /s/ David S. Kupetz

24                                   David S. Kupetz
                                Counsel for Visual Data Media Services, Inc.

25       Dated:  February 21, 2019             **VISUAL DATA MEDIA SERVICES, INC.**

26                               By:_____

27                               Its:  CEO

28

# SCHEDULE 1

## Schedule 1

Capitalized terms not defined in the Medley/VDMS Plan have the meanings ascribed to them below:

1.      **"Administrative Claim"** means a Claim for costs and expenses of administration of the Debtor's estate that is allowable under 28 U.S.C. § 1930 or pursuant to Code sections 503(b), 507(a)(2), 507(b) or 1114(e)(2), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving and operating the Debtor's estate; (b) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business after the Petition Date, including for wages, salaries or commissions for services, and payments for goods and other services and leased premises to the extent such indebtedness or obligations provided a benefit to the Debtor's estate; (c) U.S. Trustee Fees; and (d) Professional Fee Claims.

2.      **"Administrative Claim Bar Date"** means the date set forth in the notice of the Medley/VDMS Plan confirmation hearing.

3.      **"Allowed"** means, with respect to any Claim, except as otherwise provided in the Medley/VDMS Plan:  (a) a Claim that is evidenced by a Proof of Claim filed by the Bar Date or the Administrative Claim Bar Date; (b) a Claim that is listed in the Schedules in an amount greater than zero ($0) and as not contingent, not unliquidated and not disputed, and for which no Proof of Claim, as applicable, has been timely filed; or (c) a Claim Allowed pursuant to the Medley/VDMS Plan or a Final Order of the Bankruptcy Court; provided, however, that with respect to a Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Medley/VDMS Plan, the Code, the Bankruptcy Rules or the Bankruptcy Court, or, if such an objection is so interposed, the Claim shall have been Allowed by a Final Order.   Except as otherwise specified in the Medley/VDMS Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claim, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtor may hold against the holder thereof, to the extent such Claim may be offset, recouped or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely filed and for which no Final Order has been entered Allowing such Claim, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or any action, approval or order of the Bankruptcy Court.  For the avoidance of doubt: (x) a Proof of Claim filed after the Bar Date or a Claim asserted after the Administrative Claim Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent the entry of a Final Order Allowing such late-filed Claim and (y) the Debtor may affirmatively determine to deem unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable nonbankruptcy law.  "Allow" and "Allowing" shall have correlative meanings.

4.      **"Assets"** means all of the Debtor's assets.

22

5.    **"Austin"** means Austin Financial Services, Inc. in its capacity as (a) a prepetition secured lender and (b) the DIP Facility Lender.

6.    **"Avoidance Action"** means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to (a) any applicable Code section, including Code sections 502(d), 506, 510, 542, 544, 545, 547–553 and 724(a), or (b) similar or related state or federal statutes and common law, including fraudulent transfer laws.

7.    **"Code"** means the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

8.    **"Bankruptcy Court"** means the Bankruptcy Court for the Central District of California, Los Angeles Division.

9.    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

10.    **"Bar Date"** means, collectively, the dates established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must be filed.

11.    **"Bar Date Order"** means the *Order Setting Bar Date* [Docket No. 85].

12.    **"Causes of Action"** means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity or pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to Code section 362 or Code chapter 5; (d) any claims or defenses, including fraud, mistake, duress and usury, and any other defenses set forth in Code section 558; and (e) any Avoidance Action.

13.    **"Chapter 11 Case"** means Case No. 17-22432 filed by the Debtor in the Bankruptcy Court.

14.    **"Claim"** means any claim (as such term is defined in Code section 101(5)) against the Debtor or its estate.

15.    **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Medley/VDMS Plan pursuant to Code section 1129.

16.    **"DIP Facility"** means the debtor-in-possession financing under Code section 364 that the Bankruptcy Court approved for the Debtor in the Chapter 11 Case.

17.    **"DIP Facility Lender"** means the Lender (as defined in the DIP Facility) under the DIP Facility.

18.    **"Effective Date"** means the date that is the first business day after the Confirmation Order is entered on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived by Medley/VDMS Plan Proponents, (b) no stay of the Confirmation Order is in effect and (c) Medley/VDMS Plan Proponents declares the Medley/VDMS Plan effective. Unless otherwise stated in the Medley/VDMS Plan, any action to be taken on the Effective Date may be taken on the Effective Date or as soon as reasonably practicable thereafter.

19.    **"Entity"** has the meaning set forth in Code section 101(15).

20.    **"Final Order"** means an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Case which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment. The susceptibility of a Claim to a challenge under Code section 502(j) shall not render a Final Order not a Final Order.

21.    **"General Unsecured Claim"** means any Claim against the Debtor that is not an Administrative Claim, a Secured Claim, a Priority Tax Claim or a Priority Unsecured Claim.

22.    **"Governmental Unit"** has the meaning set forth in Code section 101(27).

23.    **"Interest"** means any equity security in the Debtor as defined in Code section 101(16), including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in the Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against the Debtor subject to subordination pursuant to Code section 510(b) arising from or related to any of the foregoing.

24.    **"Medley Adequate Protection Order"** means the *Order re: Medley's Motion for Adequate Protection of its Interests in Property* [Docket No. 220] (as supplemented by Docket No. 433).

25.    **"Medley Deficiency Claim"** means that certain allowed unsecured deficiency claim of Medley as of the Effective Date calculated as follows:   $2,500,000 (made up of $6,000,000 minus $3,500,000 payment), plus prepetition and postpetition accrued and unpaid interest, plus accrued and unpaid legal fees to date (as same will be calculated on the Effective Date).

26.    **"Medley/VDMS Plan Fund"** means that certain fund to be established and funded by VDMS on the Effective Date, with cash in the amount of $2,401,591, from which payment of allowed administrative, priority, and general unsecured claims will be made under the Medley/VDMS Plan. If any money is left in the Medley/VDMS Plan Fund after each holder of an allowed class 6 claim has received 50% of the amount of its allowed class 6 claim, such excess funds shall be returned to VDMS given that the Medley/VDMS Plan provides for a recovery by members of class 6 of up to 50%. VDMS will make all payments it is required to make by the Medley/VDMS Plan on, or as soon as practicable following, the Effective Date directly to the various creditors and thereafter will continue to administer the Medley/VDMS Plan Fund. As a result, VDMS will be serving as the disbursing agent under the Medley/VDMS Plan. VDMS reserves the right to retain a third-party disbursing agent to make such Medley/VDMS Plan disbursements, with VDMS to pay for the costs of any such third-party disbursing agent.

27.    **"Medley/VDMS Plan Trust"** means that certain trust in which, on the Effective Date, all of the Debtor's rights, title and interest in the MVF Commercial Tort Claim Matter shall be irrevocably assigned, which shall be administered by Medley or its designee, and standing to assert such MVF Commercial Tort Claim Matter shall be granted thereto. In the event there is a Final Order of the Court sustaining the Debtor's objection and finding that such claims and proceeds were assigned to the Debtor pursuant to the UCC Sale Agreement, the proceeds of the MVF Commercial Tort Claim Matter, if any, upon receipt by the Medley/VDMS Plan Trust will be distributed in the following order:  (i) first, to Medley on account of the Medley Deficiency Claim until Medley receives the same percentage recovery on account of the Medley Deficiency Claim that holders of allowed class 6 claims recover from the Medley/VDMS Plan Fund; and (ii) second, shared ratably among (A) holders of allowed class 6 claims on account of the remaining unpaid portion of such claims and (B) Medley on account of the remaining unpaid portion of the Medley Deficiency Claim. In the event there is a Final Order of the Court in favor of MVF holding that such claims and proceeds were **_not_** assigned to the Debtor pursuant to the UCC Sale Agreement and that such claims and proceeds belong to MVF, the Medley Deficiency Claim will be deemed to be waived.

28.    **"MVF Commercial Tort Claim Matter"** means the Debtor's alleged interest in approximately $4 million in settlement proceeds of certain commercial tort claims against Deloitte and Managease, Inc. that are subject to dispute in MVF's chapter 11 case pending in the United States Bankruptcy Court, Central District of California – Santa Ana Division (Case Number 8:18-bk-11792-MW). MVF sought relief from the automatic stay in the Chapter 11 Case to continue pursuing matters related to the proceeds. The Debtor filed an objection to MVF's motion [Docket No. 351], asserting, among other things, that such claims and proceeds were assigned to the Debtor pursuant to the UCC Sale Agreement. MVF and Medley filed responses disputing the Debtor's claim. *See* Docket Nos. 358 and 359. The matter is currently *sub judice* (under judicial consideration).

29.    **"Person"** has the meaning set forth in Code section 101(41).

30.    **"Petition Date"** means October 10, 2017.

31.    **"Professional"** means an Entity or Person retained pursuant to a Bankruptcy Court order in accordance with Code sections 327 or 1103 and to be compensated for services rendered and expenses incurred pursuant to Code sections 327, 328, 329, 330, 331, and 363.

32.    **"Professional Fee Claim"** means a claim under Code sections 327, 328, 330, 331, 503(b), 1103 or 1106 for compensation for professional services rendered or expenses incurred after the Petition Date and prior to the Effective Date on the Debtor's estate's behalf by a Professional duly employed and authorized by an order of the Bankruptcy Court; or a claim under Code section 503(b)(4) for reasonable compensation for professional services rendered by an attorney or accountant of an Entity or Person whose expenses are allowable under Code section 503(b)(3)(D) for making a substantial contribution to the Debtor's estate.

33.    **"Proof of Claim"** means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

34.    **"Priority Tax Claim"** means any Claim of a Governmental Unit of the kind specified in Code section 507(a)(8).

35.    **"Priority Unsecured Claim"** means a General Unsecured Claim that is entitled to priority in payment as specified in Code section 507(a)(3), (4), (5), (6), (7) or (9).

36.    **"Schedules"** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtor pursuant to Code section 521, as such schedules may be amended, modified, or supplemented from time to time.

37.    **"Secured"** means a Claim that is (a) secured by a lien on property in which the Debtor's estate has an interest, which lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Code section 553 or (b) Allowed pursuant to the Medley/VDMS Plan as a Secured Claim.

38.    **"Security"** has the meaning ascribed to such term in Code section 101(49).

39.    **"Term Loan Agreement"** means the Term Loan Agreement, dated as of July 8, 2015, among Medley and the Debtor (as amended, restated, supplemented or otherwise modified from time to time, and including all annexes, exhibits and schedules thereto).

40.    **"UCC Sale Agreement"** means that certain Sale Agreement Pursuant to Article 9 of the Uniform Commercial Code, dated as of July 8, 2015, among the Debtor, the MVF Agent (as defined therein) and Haig Bagerdjian.

41.    **"UCC Sale Transaction Documents"** mean collectively, (a) the UCC Sale Agreement, (b) a *General Assignment and Bill of Sale*, dated as of July 8, 2015, by MCC (in its capacity as MVF Agent for itself and the MVF Lenders), (c) a *Warrant to Purchase Shares of Common Stock of Point.360*, dated as of July 2015, by and between the Debtor and MCC (in its capacity as MVF Lender), (d) a *Warrant to Purchase Shares of Common Stock of Point.360*, dated as of July 2015, by and between the Debtor and MOF (in its capacity as MVF Lender), (e) a *Warrant to Purchase Shares of Common Stock of Point.360*, dated as of July 2015, by and between the Debtor and Congruent (in its capacity as MVF Lender), (f) a *Warrant to Purchase Shares of Common Stock of Point.360*, dated as of July 2015, by and between the Debtor and Main Street (in its capacity as MVF Lender), (g) a *Registration Rights Agreement*, dated as of July 8, 2015, by and among the Debtor, MCC (in its capacity as MVF Lender), MOF (in its capacity as MVF Lender), Main Street(in its capacity as MVF Lender) and Congruent (in its

1  capacity as MVF Lender), (h) a *Letter Agreement*, dated as of July 8, 2015, by and among MCC
2  (in its capacities as MVF Agent and MVF Lender), MOF (in its capacity as MVF Lender), Main
   Street (in its capacity as MVF Lender) and Congruent (in its capacity as MVF Lender), (i) a
3  *Landlord Waiver and Consent*, dated as of July 9, 2015, delivered by MCC (in its capacity as
   MVF Agent) to CA-Colorado Center, L.L.C. and (j) a *Landlord Waiver and Consent*, dated as of
4  July 9, 2015, delivered by MCC (in its capacity as MVF Agent) to Walt Disney World Co.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*):  **PLAN OF REORGANIZATION JOINTLY PROPOSED BY MEDLEY CAPITAL CORPORATION, MEDLEY OPPORTUNITY FUND II LP AND VISUAL DATA MEDIA SERVICES, INC. [WITH MINOR MODIFICATIONS 2/21/19]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 21, 2019 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 21, 2019 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Julia W. Brand
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Bin outside of Suite 1382
Los Angeles, CA 90012

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 21, 2019 | Debbie A. Perez | /s/ Debbie A. Perez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

DAP\ 2659589v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

David E Ahdoot on behalf of Creditor AFTRA Retirement Fund
dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com

David E Ahdoot on behalf of Creditor SAG-AFTRA
dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com

David E Ahdoot on behalf of Creditor SAG-AFTRA Health Fund
dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com

Ron Bender on behalf of Interested Party Courtesy NEF
rb@lnbyb.com

Ron Bender on behalf of Interested Party Visual Data Media Services, Inc.
rb@lnbyb.com

Daren Brinkman on behalf of Creditor Committee Official Committee Unsecured Creditors
office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

Daren Brinkman on behalf of Creditor Committee Official Committee of Unsecured Creditors of Point.360, A California Corporation
office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

William S Brody on behalf of Creditor Austin Financial Services, Inc.
wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com

Sara Chenetz on behalf of Interested Party Sara L. Chenetz
schenetz@perkinscoie.com, dlax@perkinscoie.com;cmallahi@perkinscoie.com

Peter A Davidson on behalf of Interested Party Courtesy NEF
pdavidson@ecjlaw.com, amatsuoka@ecjlaw.com

W. Jeffery Fulton on behalf of Creditor US Bank National Association
jeff@jefffultonlaw.com, Yvonne@jefffultonlaw.com

Jeffrey F Gersh on behalf of Interested Party Visual Data Media Services, Inc.
jgersh@gershlegal.com,
hnapier@gershlegal.com;jsedivy@gershlegal.com;hcory@stubbsalderton.com;jgersh@stubbsalderton.com;jsedivy@stubbsalderton.com

Brian T Harvey on behalf of Creditor Austin Financial Services, Inc.
bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com

Daniel P Hogan on behalf of Debtor Point.360, a California Corporation
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Defendant Deloitte Corporate Finance, LLC
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Defendant Deloitte Transactions and Business Analytics, LLP
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Defendant Medley Capital Corporation
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Defendant Medley Opportunity Fund II LP
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Plaintiff Point.360, a California Corporation
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Special Counsel Daniel P Hogan
dhogan@mccabehogan.com, dhogan460@gmail.com

DAP\2659589v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          **F 9013-3.1.PROOF.SERVICE**

Garrick A Hollander on behalf of Interested Party Modern VideoFilm, Inc.
ghollander@wcghlaw.com, pj@wcghlaw.com;jmartinez@wcghlaw.com;Mcir@virtualparalegalservices.com

William W Huckins on behalf of Creditor REEP-OFC 2300 Empire CA LLC
whuckins@allenmatkins.com, clynch@allenmatkins.com

Robert A Julian on behalf of Defendant Deloitte Corporate Finance, LLC
rjulian@winston.com, hhammon@winston.com

Robert A Julian on behalf of Defendant Deloitte Transactions and Business Analytics, LLP
rjulian@winston.com, hhammon@winston.com

Robert A Julian on behalf of Defendant Medley Capital Corporation
rjulian@winston.com, hhammon@winston.com

Robert A Julian on behalf of Defendant Medley Opportunity Fund II LP
rjulian@winston.com, hhammon@winston.com

Robert A Julian on behalf of Plaintiff Point.360, a California Corporation
rjulian@winston.com, hhammon@winston.com

Lance N Jurich on behalf of Defendant Deloitte Corporate Finance, LLC
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

Lance N Jurich on behalf of Defendant Deloitte Transactions and Business Analytics, LLP
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

Lance N Jurich on behalf of Defendant Medley Capital Corporation
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

Lance N Jurich on behalf of Defendant Medley Opportunity Fund II LP
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

Lance N Jurich on behalf of Plaintiff Point.360, a California Corporation
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

David S Kupetz on behalf of Interested Party Visual Data Media Services, Inc.
dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com

Lewis R Landau on behalf of Debtor Point.360, a California Corporation
Lew@Landaunet.com

Lewis R Landau on behalf of Plaintiff Point.360, a California Corporation
Lew@Landaunet.com

Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)
alvin.mar@usdoj.gov

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Shane J Moses on behalf of Interested Party Courtesy NEF
sjm@moseslaw.co

Austin P Nagel on behalf of Creditor Toyota Motor Credit Corporation, servicing agent for Toyota Lease Trust
melissa@apnagellaw.com

Sean A OKeefe on behalf of Creditor HARBOR CENTER PARTNERS, L.P.
sokeefe@okeefelc.com, seanaokeefe@msn.com

Aleksandra Page on behalf of Creditor BB&T
apage@ecf.inforuptcy.com

Sayuj Panicker on behalf of Creditor Los Angeles County Treasurer and Tax Collector
spanicker@counsel.lacounty.gov

DAP\ 2659589v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    F 9013-3.1.PROOF.SERVICE

Sayuj Panicker on behalf of Interested Party Courtesy NEF
spanicker@counsel.lacounty.gov

Laura J Portillo on behalf of Creditor Committee Official Committee Unsecured Creditors
office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

Laura J Portillo on behalf of Creditor Committee Official Committee of Unsecured Creditors of Point.360, A California Corporation
office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

Justin E Rawlins on behalf of Creditor Medley Capital Corporation
jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com

Justin E Rawlins on behalf of Creditor Medley Opportunity Fund II LP
jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com

Justin E Rawlins on behalf of Defendant Medley Capital Corporation
jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com

Justin E Rawlins on behalf of Defendant Medley Opportunity Fund II LP
jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com

Vincent Renda on behalf of Creditor Leafs Properties, LP
vr@rendalawoffices.com, ld@rendalawoffices.com

Michael B Reynolds on behalf of Creditor California Physicians' Service, dba Blue Shield of California
mreynolds@swlaw.com, kcollins@swlaw.com

Jason E Rios on behalf of Interested Party CVF Capital Partners, Inc., Central Valley Fund III (SIBC), LP and Central Valley Fund II, LP
jrios@ffwplaw.com, scisneros@ffwplaw.com

Kevin C Ronk on behalf of Creditor Committee Official Committee Unsecured Creditors
Kevin@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

Andrea C Rosati on behalf of Creditor LEAFS LP
andrea@fsgjlaw.com, linh@fsgjlaw.com

Lisa Seabron on behalf of Creditor WRI West Gate South, L.P.
lseabron@weingarten.com

Ronald A Spinner on behalf of Creditor Softitler dba Deluxe Localization Sfera
spinner@millercanfield.com

Andrew Still on behalf of Creditor California Physicians' Service, dba Blue Shield of California
astill@swlaw.com, kcollins@swlaw.com

Arvin Tseng on behalf of Creditor TROY / GOULD PC
atseng@troygould.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Christopher B Wick on behalf of Creditor Crown Communication Inc.
cwick@hahnlaw.com, lmay@hahnlaw.com

Latonia Williams on behalf of Creditor UnitedHealthcare Insurance Company
lwilliams@goodwin.com, bankruptcy@goodwin.com

Gabe P Wright on behalf of Creditor Crown Communication Inc.
GWRIGHT@hahnlaw.COM, mkanamori@hahnlaw.com

DAP\ 2659589v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**