1    WINSTON & STRAWN LLP
JUSTIN E. RAWLINS (SBN: 209915)
2    jrawlins@winston.com
333 S. Grand Avenue, 38th Floor
3    Los Angeles, CA 90071-1543
Telephone: (213) 615-1700; Facsimile: (213) 615-1750
4

5    CAREY D. SCHREIBER (admitted *pro hac vice*)
cschreiber@winston.com
6    200 Park Avenue
New York, NY 10166-4193
7    Telephone: (212) 294-6700; Facsimile: (212) 294-4700
Counsel for Medley Capital Corporation and
8    Medley Opportunity Fund II LP

9    **Sulmeyer**Kupetz
A Professional Corporation
10    DAVID S. KUPETZ (SBN 125062)
dkupetz@sulmeyerlaw.com
11    333 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071-1543
12    Telephone: (213) 626-2311; Facsimile: (213) 629-4520
Counsel for Visual Data Media Services, Inc.

13

14    

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

15

| | |
|---|---|
| In re | Case No.: 2:17-bk-22432 WB |
| | Chapter 11 Case |
| Point.360, a California corporation, | |
|                  Debtor. | **DISCLOSURE STATEMENT DESCRIBING PLAN OF REORGANIZATION JOINTLY PROPOSED BY MEDLEY CAPITAL CORPORATION, MEDLEY OPPORTUNITY FUND II LP AND VISUAL DATA MEDIA SERVICES, INC. [WITH MINOR MODIFICATIONS 2/21/19]** |

**Medley/VDMS Disclosure Statement Hearing**

| | |
|---|---|
| Date: | February 28, 2019 |
| Time: | 2:00 p.m. (PST) |
| Place: | Courtroom 1375; Judge Brand |
| | U.S. Bankruptcy Court |
| | 255 E. Temple Street, 13th Floor |
| | Los Angeles, CA 90012 |

**Medley/VDMS Plan Confirmation Hearing**

| | |
|---|---|
| Date: | [To Be Set] |
| Time: | [To Be Set] |
| Place: | Courtroom 1375; Judge Brand |
| | U.S. Bankruptcy Court |
| | 255 E. Temple Street, 13th Floor |
| | Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ......................................................................................... 1

    A.    **Purpose of This Document and Exhibits**............................................ 2

    B.    **Deadlines for Voting and Objecting; Date of Medley/VDMS Plan Confirmation Hearing.** ............................................................... 6

        1.    Time and Place of the Confirmation Hearing. ............................. 6

        2.    Deadline for Voting For or Against the Medley/VDMS Plan. .................... 7

        3.    Deadline for Objecting to the Confirmation of the Medley/VDMS Plan.... 7

        4.    Identity of Persons to Contact for More Information Regarding the Medley/VDMS Plan. ............................................................. 7

    C.    **Disclaimer.** ............................................................................... 7

II. BACKGROUND ........................................................................................ 8

    A.    **Description and History of the Debtor's Business.** ......................... 8

    B.    **Principals/Affiliates of Debtor's Business.** ................................ 10

    C.    **Management of the Debtor Before and After the Bankruptcy.** ......... 11

    D.    **Events Leading to the Debtor's Chapter 11 Filing.** ....................... 14

    E.    **Significant Events During the Bankruptcy.** ................................ 18

        1.    Bankruptcy Proceedings. ....................................................... 18

        2.    Other Legal Proceedings. ...................................................... 21

        3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers... 22

        4.    Procedures Purportedly Implemented to Resolve Financial Problems. ..... 23

        5.    Current and Historical Financial Conditions. ............................. 24

III. SUMMARY OF THE MEDLEY/VDMS PLAN ........................................... 24

    A.    **What Creditors and Interest Holders Will Receive Under the Medley/VDMS Plan.** .............................................................. 24

    B.    **Unclassified Claims.** ............................................................... 24

        1.    Administrative Expenses.......................................................... 25

        2.    Priority Tax Claims. ............................................................... 26

        3.    Creditors' Administrative Expense Claims................................... 27

    C.    **Classified Claims and Interests.** ............................................... 28

        1.    Classes of Secured Claims. ..................................................... 28

        2.    Classes of Priority Unsecured Claims........................................ 30

        3.    Classes of General Unsecured Claims. ...................................... 31

        4.    Class(es) of Interest Holders. .................................................. 33

    D.    **Means of Effectuating the Medley/VDMS Plan.** ......................... 34

        1.    Funding for the Medley/VDMS Plan and Transfer of Title to the Debtor's Assets. ................................................................. 34

        2.    General Medley/VDMS Plan Matters.......................................... 35

i

|   |   |   |   |   |
| 3. | VDMS. | 37 |
| 4. | Post-Confirmation Board and Management. | 37 |
| 5. | Disbursing Agent. | 39 |

**E.    Risk Factors.** ................................................................................ **39**

**F.    Other Provisions of the Medley/VDMS Plan.** ................................ **40**

    1.    Executory Contracts and Unexpired Leases. ........................ 40

        a.    Assumptions. ........................................................... 40

        b.    Rejections. ............................................................... 41

    2.    Changes in Rates Subject to Regulatory Commission Approval. .............. 42

    3.    Retention of Jurisdiction. ...................................................... 42

**G.    Tax Consequences of Plan.** ............................................................ **42**

**IV. CONFIRMATION REQUIREMENTS AND PROCEDURES** ........................... **42**

**A.    Who May Vote or Object.** .............................................................. **43**

    1.    Who May Object to Confirmation of the Medley/VDMS Plan. ............... 43

    2.    Who May Vote to Accept/Reject the Medley/VDMS Plan. ................... 43

        a.    What Is an Allowed Claim/Interest. ..................... 43

        b.    What Is an Impaired Claim/Interest. ................... 44

    3.    Who is Not Entitled to Vote. ................................................. 44

    4.    Who Can Vote in More Than One Class. ............................... 45

    5.    Votes Necessary to Confirm the Medley/VDMS Plan. ............ 45

    6.    Votes Necessary for a Class to Accept the Medley/VDMS Plan. ............. 45

    7.    Treatment of Nonaccepting Classes. ..................................... 46

    8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es). 46

**B.    Liquidation Analysis.** .................................................................... **46**

**C.    Feasibility.** .................................................................................... **48**

**V. EFFECT OF CONFIRMATION OF THE MEDLEY/VDMS PLAN** ................. **50**

**A.    Binding Effect.** .............................................................................. **50**

**B.    Discharge.** ..................................................................................... **50**

**C.    Release of Liens.** ........................................................................... **51**

**D.    Waiver of Statutory Limitations on Releases.** ............................... **51**

**E.    Injunction Related to Releases.** ..................................................... **51**

**F.    Modification of the Medley/VDMS Plan.** ...................................... **52**

**G.    Post-Confirmation Status Report.** ................................................. **52**

**H.    Post-Confirmation Conversion/Dismissal.** .................................... **52**

**I.    Final Decree.** ................................................................................. **53**

# I.

## INTRODUCTION

Point.360, a California corporation (the "Company," "Point.360," or the "Debtor"), is the debtor in a Chapter 11 bankruptcy case. On October 10, 2017 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court") under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"). The Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. The plan of reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. On December 10, 2018, the Debtor filed *Debtor's Second Amended Chapter 11 Plan of Reorganization [With Minor Modifications]* [Docket No. 438] (the "Debtor's Plan") and *Debtor's Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan [With Minor Modifications]* [Docket No. 439] (the "Debtor's Disclosure Statement"). The Debtor's Disclosure Statement was approved by the Bankruptcy Court on December 13, 2018 (the "Debtor's Disclosure Statement Approval Order"), and the Debtor purportedly solicited the Debtor's Plan on December 17, 2018. *See* Docket Nos. 433 and 452.[1]

Medley Capital Corporation ("MCC"), Medley Opportunity Fund II LP ("MOF" and, together with MCC, collectively, "Medley") and Visual Data Media Services, Inc. ("VDMS") are jointly proposing the plan sent to you in the same envelope as this document (the "Medley/VDMS Plan"). Medley and VDMS are jointly defined herein as the "Medley/VDMS Plan Proponents."

---

[1] On December 14, 2018, Medley filed *Medley Capital Corporation and Medley Opportunity Fund II LP's Objection and Reservation of Rights to Debtor's Proposed Order Approving Second Amended Disclosure Statement and Scheduling Plan Confirmation Status Hearing and Related Deadlines* [Docket No. 446]. As set forth therein, among other things, Medley respectfully submits that because the Debtor is flouting the Court's directives and misleading the Court, (a) the Debtor's Disclosure Statement Approval Order should be vacated, (b) the Court should deny approval of the Debtor's Disclosure Statement until the Debtor complies with the Court's instruction to prepare the Required Budget (as defined in Medley's objection), provide the Required Budget to Medley and attach the Required Budget as an exhibit to the Debtor's Disclosure Statement and (c) the Court should authorize the solicitation of the Medley/VDMS Plan.

THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE MEDLEY/VDMS PLAN (THE "MEDLEY/VDMS DISCLOSURE STATEMENT"). **The Bankruptcy Court may approve the Medley/VDMS Plan or the Debtor's Plan; it may not approve both.** ***CAPITALIZED TERMS USED AND NOT OTHERWISE DEFINED SHALL HAVE THE MEANING SET FORTH IN THE MEDLEY/VDMS PLAN, INCLUDING SCHEDULE 1 THERETO.***

The Medley/VDMS Plan seeks to accomplish a sale of all assets of the Debtor's estate (the "Estate Assets") to VDMS. The Medley/VDMS Plan is being funded by VDMS. The Medley/VDMS Plan is supported by Medley. The Medley/VDMS Plan (i) results in the complete satisfaction of Medley's prepetition secured loan and Medley's Administrative Claims, (ii) resolves all litigation among Medley and the Debtor, (iii) results in the payment in full of all creditors upon the Effective Date of the Medley/VDMS Plan except for Medley (which has agreed to a discounted pay off) and general unsecured creditors (i.e., class 6), (iv) results in the cash payment to all general unsecured creditors of an estimated 50% of their Allowed Claims after resolution of such claims as soon as practicable following the Effective Date, as set forth herein,[2] (v) is not subject to or conditioned upon the subsequent sale by VDMS of any of the Estate Assets, and (vi) involves the payment of an estimated $8,816,578 of new cash into the Debtor's estate by VDMS.

**A.    Purpose of This Document and Exhibits.**

This Medley/VDMS Disclosure Statement summarizes what is in the Medley/VDMS Plan and tells you certain information relating to the Medley/VDMS Plan and the process the Court follows in determining whether or not to confirm the Medley/VDMS Plan. The following important exhibits are attached hereto:

---

[2] Such creditors will also receive an interest in the Medley/VDMS Plan Trust. Given the procedural posture and underlying assertions in the MVF Commercial Tort Claim Matter as set forth below, the Medley/VDMS Plan Proponents do not project that such creditors will receive any recovery on account of their interest in the Medley/VDMS Plan Trust.

**Exhibit 1:**    Claims listings by plan class.
**Exhibit 2:**    Prepetition balance sheets and statements of operations.
**Exhibit 3:**    Liquidation analysis, including Debtor's Schedule A/B.
**Exhibit 4:**    Statement of Financial Affairs Part 2(3), (4) re prepetition transfers.
**Exhibit 5:**    Treatment of executory contracts and leases.

In summary, the Medley/VDMS Plan proposes the following treatments for all the Debtor's creditors, equity security holders and executory leases and contracts from and after the Medley/VDMS Plan Effective Date:

| CLASS | DESCRIPTION | IMPAIRMENT | TREATMENT |
|---|---|---|---|
| Unclassified | Administrative Claims | Unimpaired. | Paid in full in cash from the Medley/VDMS Plan Fund on the later of the Effective Date and the date of entry of an order of the Court allowing such administrative claim. The Medley/VDMS Plan Fund will be funded on the Effective Date by VDMS with cash in the amount of $2,401,591. |
| Unclassified | Priority Tax Claims: LA County TTC/ IRS, FTB Cty Orange | Unimpaired. | Paid in full in cash from the Medley/VDMS Plan Fund on the later of the Effective Date and the date of entry of an order of the Court allowing such claims. |
| Class 1 | Austin Financial Services, Inc. | Unimpaired. | Paid in full in cash by VDMS on the Effective Date unless the class 1 claim holder and VDMS agree to the contrary. |
| Class 2 | Medley Capital Corporation Medley Opportunity Fund II, LP | Impaired. | Contract rights altered on the Effective Date as set forth in the Medley/VDMS Plan and as described below. |
| Class 3 | Priority Employee Claims; See Debtor's Disclosure Statement Exhibit 1 and Exhibit 1 hereto. | Unimpaired. | Paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
| Class 4 | UnitedHealth Priority Employee Benefit Plan Claim | Unimpaired. | Paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |

| Class 5 | SAG-AFTRA and SAG-AFTRA Health Fund and AFTRA Retirement Fund Priority Claims | Unimpaired. | Paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
|---|---|---|---|
| Class 6 | General Unsecured Creditors; See Debtor's Disclosure Statement Exhibit 1 and Exhibit 1 hereto. | Impaired. | In full settlement and satisfaction of their class 6 claims, each holder of an allowed class 6 claim will receive (A) a pro rata cash distribution from the funds remaining in the Medley/VDMS Plan Fund after payment in full of all (i) allowed administrative claims, (ii) allowed priority tax claims, (iii) allowed class 3, 4, 5 and 7 claims and (iv) U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) incurred through the date of distribution to the holders of allowed class 6 claims, and (B) their share of the Medley/VDMS Plan Trust as set forth below. This pro rata distribution will be made to the holders of allowed class 6 claims after the deadline to file rejection damage claims from Rejected Contracts has passed and all disputed class 6 claims have been resolved to Final Order.  Based upon the information provided by the Debtor,[3] the Medley/VDMS Plan Proponents estimate that the distributions to holders of allowed class 6 claims from the Medley/VDMS Plan Fund will result in the payment of cash to each holder of an allowed class 6 claim equal to approximately 50% of the amount of each allowed class 6 claim.[4]  Holders |

___

[3] As used herein, the information provided by the Debtor refers to the information as represented by the Debtor and approved by the Court as adequate disclosure pursuant to the Debtor's Disclosure Statement Approval Order.

[4] Given the procedural posture of the MVF Commercial Tort Claim Matter, the Medley/VDMS Plan Proponents do not project that such creditors will receive any recovery on account of their

| | | | |
|---|---|---|---|
| | | | of allowed class 6 claims will not receive any other distribution under the Medley/VDMS Plan. The payment to the holders of allowed class 6 claims from the Medley/VDMS Plan Fund will be made as soon as practicable following the Effective Date. VDMS believes that this payment will most likely be made less than ninety (90) days following the Effective Date. |
| Class 7 | Convenience Class of Claims equal to, less than or reduced to $2,500 | Unimpaired. | Paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
| Class 8 | Wilcon Holdings, LLC aka Crown Castle Fiber | Unimpaired. | Satisfied per Court approved settlement agreement. See Docket No. 371. |
| Class 9 | Equity Interests | Impaired. | Equity interests, including stock, options and warrants, are cancelled on the Effective Date. Equity Interest holders will not receive any distribution under the Medley/VDMS Plan. |
| Unclassified | Executory Leases and Contracts | Assumed/Rejected. | See Exhibit 5 hereto. |

**READ THIS MEDLEY/VDMS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

     (1)    WHO CAN VOTE OR OBJECT,

     (2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Medley/VDMS Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,

     (3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

     (4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE MEDLEY/VDMS PLAN,

interest in the Medley/VDMS Plan Trust.

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THE MEDLEY/VDMS PLAN IS FEASIBLE.**

This Medley/VDMS Disclosure Statement cannot tell you everything about your rights with respect to the Medley/VDMS Plan.  You should consider consulting your own lawyer to obtain more specific advice on how the Medley/VDMS Plan will affect you and what is the best course of action for you.

Be sure to read the Medley/VDMS Plan as well as this Medley/VDMS Disclosure Statement.    If there are any inconsistencies between the Medley/VDMS Plan and this Medley/VDMS Disclosure Statement, the Medley/VDMS Plan provisions will govern.

The Code requires a disclosure statement to contain "adequate information" concerning the Medley/VDMS Plan.  The Bankruptcy Court has approved this Medley/VDMS Disclosure Statement as containing adequate information within the meaning of Code section 1125 to enable parties affected by the Medley/VDMS Plan to make an informed judgment about the Medley/VDMS Plan.  Accordingly, votes may now be solicited for or against the Medley/VDMS Plan.

**B.    Deadlines for Voting and Objecting; Date of Medley/VDMS Plan Confirmation Hearing.**

THE COURT HAS NOT YET CONFIRMED THE MEDLEY/VDMS PLAN DESCRIBED IN THIS MEDLEY/VDMS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE MEDLEY/VDMS PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE MEDLEY/VDMS PLAN, THEN THE MEDLEY/VDMS PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.    Time and Place of the Confirmation Hearing.**

The hearing where the Court will determine whether or not to confirm the Medley/VDMS Plan (the "Medley/VDMS Plan Confirmation Hearing") will take place on _____, 2019 at _____.m., before the Honorable Julia W. Brand, United States Bankruptcy Judge for

the Central District of California, in Courtroom 1375, located at 255 E. Temple Street, Los Angeles, California.

**2.    Deadline for Voting For or Against the Medley/VDMS Plan.**

If you are entitled to vote on the Medley/VDMS Plan, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Justin R. Rawlins, Esq., Winston & Strawn, LLP, 333 S. Grand Avenue, 38th Floor, Los Angeles, California 90071-1543.

**Your ballot must be received by the date set forth in the accompanying notice or it will not be counted.**

**3.    Deadline for Objecting to the Confirmation of the Medley/VDMS Plan.**

Objections to confirmation of the Medley/VDMS Plan must be filed with the Court and served upon (i) Justin R. Rawlins, Esq., Winston & Strawn LLP, 333 S. Grand Avenue, 38th Floor, Los Angeles, California 90071-1543; (ii) Carey D. Schreiber, Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166-4193; and (iii) David S. Kupetz, Esq., SulmeyerKupetz, A Professional Corporation, 333 S. Grand Avenue, Suite 3400, Los Angeles, California 90071-1543, by the date set forth in the accompanying notice.

**4.    Identity of Persons to Contact for More Information Regarding the Medley/VDMS Plan.**

Any interested party desiring further information about the Medley/VDMS Plan should contact any of: (i) Justin R. Rawlins, Esq., Winston & Strawn LLP, 333 S. Grand Avenue, 38th Floor, Los Angeles, California 90071-1543; email: jrawlins@winston.com; voice: (213) 615-1839; (ii) Carey D. Schreiber, Winston & Strawn LLP, 200 Park Avenue, New York, New York 10166-4193; email: cschreiber@winston.com; voice: (212) 294-3547; or (iii) David S. Kupetz, Esq., SulmeyerKupetz, A Professional Corporation, 333 S. Grand Avenue, Suite 3400, Los Angeles, California 90071-1543; email: dkupetz@sulmeyerlaw.com; voice: (213) 626-2311.

**C.    Disclaimer.**

As represented by the Debtor, the financial data relied upon in formulating the Medley/VDMS Plan is based on the Debtor's books and records. The information contained in

1  this Medley/VDMS Disclosure Statement is provided by the Debtor. The Medley/VDMS Plan

2  Proponents represent that everything stated in this Medley/VDMS Disclosure Statement is true to

3  the best knowledge of the Medley/VDMS Plan Proponents, recognizing that Medley's ability to

4  investigate has been limited by the Debtor. The Bankruptcy Court has not yet determined

5  whether or not the Medley/VDMS Plan is confirmable and makes no recommendation as to

6  whether or not you should support or oppose the Medley/VDMS Plan.

7                                   **II.**

8                              **BACKGROUND**

9  **A.      Description and History of the Debtor's Business.[5]**

10          Point.360 is a California corporation, originally founded in 1990 to provide video

11  duplication and related services. The current California corporate entity was formed on April 16,

12  2007 as "New 360", a subsidiary of Point.360. Concurrent with a subsequent merger between the

13  Company and DG FastChannel, the Company contributed its post-production assets and

14  operations to New 360, at which time each Point.360 shareholder received one share of New 360

15  for each share held of the old Point.360. New 360's name was changed back to "Point.360"

16  immediately after the transaction on August 10, 2007.

17          The Company expanded its services using resources from internal growth and a 1997

18  initial public offering of its common stock to eventually include high definition and standard

19  definition digital mastering, data conversion, video and film asset management, distribution and

20  other services to owners, producers and distributors of entertainment and advertising content.

21  The Company provides the services necessary to edit, master, reformat, convert, archive and

22  ultimately distribute its clients' film and video content, including television programming feature

23  films and movie trailers. The Company's interconnected facilities provide service coverage to all

24  major U.S. media centers. Clients include major motion picture studios and independent

25  producers.

26

27

28  [5] The information set forth in this Section II.A. is as represented by the Debtor and approved by the Court as adequate disclosure pursuant to the Debtor's Disclosure Statement Approval Order.

1    As described in further detail in section II(D) herein, in July 2015, the Company

2    completed the purchase of assets formerly owned by Modern VideoFilm, Inc. ("MVF") by

3    issuing shares of its common stock and warrants to purchase MVF's assets. As the result of the

4    transaction, the Company added post-production service capabilities and expanded its client base

5    comprising major studios, broadcast networks, cable outlets, streaming media companies,

6    independent producers and others.

7    The Company currently operates from two post production and administrative office

8    locations: (1) 2701 Media Center Drive, Los Angeles, California (the "Media Center Facility");

9    and (2) 1122 and 1133 North Hollywood Way, Burbank, California (the "HWAY Property").  A

10   facility formerly operating as of the Petition Date at 2300 Empire Avenue, Suite 100, Burbank,

11   California (the "Empire Facility") is now closed.  Each location is electronically tied to the other

12   and serves the same customer base.  Production equipment consists of tape duplication, editing,

13   encoding, standards conversion, and other machinery.   Skilled personnel are required to

14   efficiently run the equipment and handle customer requirements.  While the two locations are not

15   the same, an order received at one location may be fulfilled at the "sister" facility to use resources

16   in the most efficient manner.

17   Typically, a feature film or television show or related material will be submitted to a

18   facility by a motion picture studio, independent producer, advertising agency, or corporation for

19   processing and distribution.  A common sales force markets the Company's capabilities for both

20   facilities.  Once an order is received, the local customer service representative determines the

21   most cost-effective way to perform the services considering geographical logistics and facility

22   capabilities.

23   The Debtor is a public company with securities registered under the Securities Exchange

24   Act of 1934.  The Debtor has 12,704,506 shares of its common stock outstanding.

25

26

27

28

9

**B.    Principals/Affiliates of Debtor's Business.[6]**

The Debtor's principals and affiliates are as follows:

In August 2000, Haig Bagerdjian became an independent member of the Company's Board of Directors. Mr. Bagerdjian became Chairman of the Board in September 2001 and was appointed President and Chief Executive Officer in October 2002. Beginning in 2000, Mr. Bagerdjian purchased shares of the Company's common stock in public and private transactions, eventually becoming the majority shareholder of the Company.

In October 2016, the Company sold to HWAY LLC, a California limited liability company ("HWAY"), all of its right, title and interest in and to the HWAY Property. Concurrently, the Company leased the HWAY Property from HWAY. Mr. Bagerdjian holds a 99% membership interest in HWAY (in such capacity, the "HWAY Landlord"). Pursuant to the purchase agreement, the Company sold the HWAY Property to HWAY for a purchase price of $9.8 million in cash. The Company received approximately $4.8 million in cash after payment of approximately $4.6 million of mortgage indebtedness related to the HWAY Property, approximately $0.3 million paid to HWAY for a security deposit and rent under the lease agreement, and other closing costs.

The Company's lease agreement for the HWAY Property (the "HWAY Lease") is for an initial term of 11 years, commencing on October 11, 2016. The HWAY Lease may be extended for two five-year options; however, such options may not be exercised if (i) the Company is sold to another person, or (ii) if Mr. Bagerdjian and/or his affiliates cease to be a controlling shareholder of the Company. The term of the HWAY Lease expires on October 31, 2027, unless it is extended under the Company's option rights. The monthly base rent under the HWAY Lease was $65,644 which base rent is subject to an annual increase of 3%. The Company is responsible for paying utilities, operating expenses and real estate taxes.

In connection with the sale and leaseback, the Company's Board of Directors established a special committee (the "Special Committee") consisting of independent and disinterested

---

[6] The information set forth in this Section II.B. is as represented by the Debtor and approved by the Court as adequate disclosure pursuant to the Debtor's Disclosure Statement Approval Order.

1   directors. The Special Committee was granted the power and authority to (i) evaluate the terms

2   of the sale and leaseback, and (ii) negotiate the sale and leaseback documentation with Mr.

3   Bagerdjian. As part of that process, the Special Committee considered market information that

4   the Company obtained through the Company's efforts to sell the HWAY Property. The Special

5   Committee engaged independent legal counsel and advisors for purposes of evaluating and

6   negotiating the sale and leaseback with Mr. Bagerdjian. Prior to closing, the sale and leaseback

7   documentation was approved by both the Special Committee and the Board of Directors.

8   **C.     Management of the Debtor Before and After the Bankruptcy.[7]**

9           The Debtor's President and Chief Executive Officer is Haig S. Bagerdjian.    Mr.

10  Bagerdjian became Chairman of the Board in September 2001, was appointed President and

11  Chief Executive Officer in October 2002, and was appointed Chief Financial Officer in February

12  2017.  Mr. Bagerdjian was Executive Vice President of Syncor International Corporation, a

13  leading provider of radiopharmaceuticals, comprehensive nuclear pharmacy services and medical

14  imaging services, from 1991 to 2002.  From 1987 to 1991, he served in several executive level

15  positions at Calmark Holding Corporation.    He also was General Counsel for American

16  Adventure, Inc., which was a subsidiary of Calmark Holding.  Mr. Bagerdjian received a J.D.

17  from Harvard Law School and is admitted to the State Bar of California.  Mr. Bagerdjian is a

18  director of Innodata-Isogen, Inc.

19          The Debtor's other members of its board of directors are: Sam P. Bell, J.R. DeLang,

20  Gregory Hutchins and G. Samuel Oki.

21          The Debtor's management personnel are as follows:

22          **Brian Ehrlich EVP, Operations and Sales**

23          Brian Ehrlich started his career in the entertainment industry as an assistant recording

24  engineer at Capitol Records in Hollywood, California.  During his time at Capitol, he worked

25  with the likes of Frank Sinatra, B.B. King, Natalie Cole, The Brian Setzer Orchestra, Bono, Tony

26  Bennett, and many others. After his time in the music business, Brian migrated to the post-

27

28  [7] The information set forth in this Section II.C. is as represented by the Debtor and approved by
    the Court as adequate disclosure pursuant to the Debtor's Disclosure Statement Approval Order.

production industry as a Mixing Engineer at the first all-digital facility in the world called Pacific Ocean Post (POP). During his time at POP, Brian cut his post production teeth mixing and editing sound for commercials, documentaries, feature films, and television shows. It was at POP that Brian started restoring feature film sound for Paramount and MGM, working on such titles as Chinatown and Shane, amongst many others. Brian was recruited to start a sound restoration division for Todd-AO Sound (later Ascent Media/Deluxe). In his 5 years at Todd-AO, Brian restored hundreds of films for MGM, Paramount, Disney, and Sony. In 1999, Brian decided it was time to start his own company. He secured a five year contract with MGM to handle a large sound restoration project, and Sound Solution, LLC was born. Brian served as the CEO and Managing Partner at Sound Solutions from 1999 until 2005, where he oversaw the restoration and creation of sound for more than 500 feature films. In 2005, Point.360 acquired the company from Brian and his partners. Brian stayed on at Point.360 as the Executive Director of Audio Services until 2007, when he became the General Manager of the Burbank facility. During his tenure as GM, Brian was able to facilitate the development of accelerated file delivery with ABC Studios/Marvel, and, in the final season of the blockbuster TV show Lost, Point.360 successfully delivered localized files to over 65 countries within an hour of the domestic broadcast. In 2010, Brian was promoted to SVP of Operations, overseeing the operations for all Point.360 facilities. In his role overseeing operations, Brian successfully spearheaded the initiative to add Text Localization and Script Services as an offering. In 2012, revenue was added to the list of Brian's responsibilities as he was promoted to EVP of Operations and Sales. In 2015, Brian and his team were able to attain Netflix Preferred Vendor status for Master Quality Control, and have since been added as a Gold Tier Netflix Post-production Partner (NP3) for Creative Services Picture and Sound.

**John Schweizer, VP, Corporate Controller**

John Schweizer is the Company's Vice President and Corporate Controller, and has been with Point.360 since January 2001. Mr. Schweizer served at Sr. Financial Analyst at Above Commerce, Inc. from 1999 to 2000. From 1996 to 1999, Mr. Schweizer served a Business Manager and Director of Financial Reporting for El Camino Resources, Inc. Mr. Schweizer held

1    licenses with the Securities and Exchange Commission during his service at Merrill Lynch from

2    1995 to 1996, and holds a Bachelor of Arts Degree in Business Administration from the

3    University of California at Berkeley.

4          **Dave Weathers, EVP, Business Development**

5          Dave Weathers graduated from UCLA in 1985, where he majored in motion picture and

6    television. Dave started working at Marvel Productions as an assistant editor, and was promoted

7    to run that division two years later managing 30 editors. In 1989, Dave started at Glen Glenn

8    Sound as a Sound Supervisor, working with Steven Bochco, David Kelley, and Arron Spelling.

9    In 1994, Dave founded Miles o' Fun, a sound editorial company, and grew revenues to more than

10    13 million dollars. In 2001, Dave sold Miles o' Fun to Technicolor, where he stayed on as the

11    President of Sound Services. During his tenure, Dave participated in multiple acquisitions, and

12    was able to grow the business to 35 million dollars. In 2016, Dave went on to become EVP of all

13    Post-production Picture and Sound, in which he oversaw P/L responsibility of more than 180

14    million dollars. In 2013, Dave started 12 Stories Productions where he wrote and directed 10

15    short films, as well as developing 20 other feature films and broadcast pilots. In 2016, Dave

16    joined Point.360's senior management team to help develop and grow the post-production

17    finishing business, which has included the identification and recruiting of talent for several of the

18    growing post-production team's roster.

19          **David Tuszynski, General Manger – Point.360 Media Center**

20          In 1991, David Tuszynski joined VDI Inc. (a predecessor of Point.360). David was

21    promoted to an operations manager by 1994. Ultimately, VDI was acquired by Point.360, and, in

22    1999, David was promoted to General Manager of the Westside facility. David held that position

23    until his departure in 2002, where he joined Modern VideoFilm as a General Manager at its WSI

24    facility. In 2005, David returned to Point.360 as an Operations Manager, and, within 18 months,

25    was promoted to Director of Operations. In 2007, David was promoted to his current role as

26    General Manager, Media Center. Dave is responsible for the overall management and well-being

27    of the facility, and the 3 diverse profit centers that operate within that facility.

28

**Jeff Brink, General Manger – Point.360 Burbank**

Jeff Brink has spent the past twenty three years in post-production with his experience concentrated in technical operations and administrative management roles. Jeff started at Point.360's predecessor as a video tape operator, and has steadily risen through the ranks as an Operations Manager in nearly every discipline. In 2010, Jeff was promoted to General Manager of the Burbank facility, where he has successfully led a team of talented people. In his tenure as GM, Jeff has implemented a hiring and training program for entry-level employees.

**Walt Bigelow, VP, Engineering**

Walt Bigelow has more than 22 years of experience in post-production engineering. Walt started as a staff engineer at Varitel Video San Francisco in 1996, and continued with the company through its eventual acquisition by Modern VideoFilm. In 2016, Walt was promoted by Point.360 to VP, Engineering where he has successfully led a diverse team of engineers. Walt is an expert in network infrastructure & security, video systems, color science, and storage area networks.

**D.    Events Leading to the Debtor's Chapter 11 Filing.**

Here is a brief summary of the circumstances that purportedly led to the filing of this Chapter 11 case:

The Debtor had suffered pre-tax losses of $1.2 million in 2013, and $2.7 million in 2014, purportedly based upon substantially lesser sales than MVF. In December 2014, the Debtor's existing lender cancelled the availability of funds under the Debtor's revolving credit facility due to the Debtor's failure to meet its financial covenants. Additionally, due to the Debtor's failure to meet financial covenants in the past, and uncertainty regarding the Debtor's ability to meet new covenant requirements, the Debtor was purportedly required to classify the balance owed for its mortgage debt and capital leases as a current liability in its consolidated balance sheet as of December 31, 2014, and in its Form 10-Q for the quarterly period ended December 31, 2014.

The Debtor purportedly intended for the MVF acquisition to add two unique lines of business to augment the Debtor's existing businesses and strengthen and synergize the Debtor's existing business lines by combining operations and optimizing cost efficiencies.

On July 8, 2015, the Debtor purchased certain assets (the "MVF Assets") of MVF from MCC, in its capacity as agent and Seller (in that capacity, the "MVF Agent" or the "MVF Seller") on behalf of a syndicate of four Lenders (as defined in MVF's loan documents and in the UCC Sale Agreement) to MVF: (a) MCC, in its capacity as a lender to MVF; (b) MOF; (c) Congruent Credit Opportunities Fund II, LP ("Congruent"); and (d) Main Street Equity Interests, Inc. ("Main Street" and, together with MCC, MOF and Congruent, in their capacities as lenders to MVF, the "MVF Lenders") pursuant to that certain *Sale Agreement Pursuant to Article 9 of the Uniform Commercial Code* (the "UCC Sale Agreement") among the Debtor, Haig Bagerdjian (who, as the Court is aware, is the Debtor's Chief Executive Officer and majority, controlling shareholder[8]), the MVF Agent as MVF Seller and the MVF Lenders.

Pursuant to the UCC Sale Agreement, the Debtor paid no cash. Rather, the MVF Lenders obtained 2,000,000 shares and 800,000 warrants in the Debtor. Pursuant to the UCC Sale Agreement, the Debtor granted the MVF Lenders two (2) seats on the Debtor's expanded seven-person board. Additionally, pursuant to the Sale Agreement, the Debtor agreed to make employment offers to *all* existing employees of MVF in substantially similar roles and with the same annual salary, and to pay certain PTO, sparing potential state and federal WARN Act liability. As a result of closing on the transaction, the Debtor's bi-weekly employee payroll increased from $485,532 ($12,623,832 annually) to $1,276,272 ($33,183,072 annually), a nearly three-fold increase.

The Debtor's acquisition of the MVF Assets through the UCC Sale Agreement enabled the Debtor to obtain financing in a separate transaction (the "Term Loan Financing") from MCC and MOF in their capacity as new money secured lenders (in that capacity, collectively, the "Point.360 Secured Lenders").[9] The Debtor and the Point.360 Secured Lenders entered into, among other things, (a) a *Term Loan Agreement*, dated as of July 8, 2015 (as modified from time

---

[8] *See Debtor's Summary of Assets and Liabilities for Non-Individuals, Statement of Financial Affairs for Non- Individuals Filing for Bankruptcy* [Docket No. 45] (showing Bagerdjian as owning 53.8% of the Debtor's equity).

[9] On one hand, it was important to the Debtor and Bagerdjian that they have financing should they purchase the MVF Assets. On the other hand, it was important to the Point.360 Secured Lenders that their new $6 million loan be secured by collateral (including the MVF Assets and their proceeds) until repaid.

15

1    to time, the "Term Loan Agreement"), (b) a *Security Agreement*, dated as of July 8, 2015 (as

2    modified from time to time, the "Security Agreement"), (c) a *Promissory Note*, dated as of July 8,

3    2015, issued by the Debtor to MCC, (d) a *Promissory Note*, dated as of July 8, 2015, issued by

4    the Debtor to MOF and (e) a *Perfection Certificate of Point.360*, dated as of July 8, 2015,

5    delivered to MCC and MOF.  Section 6(b) of the Term Loan Agreement defines these five

6    documents as the "Loan Documents."[10]

7       Under the Term Loan Agreement, among other things, (a) the Point.360 Secured Lenders

8    agreed to extend $6 million in Term Loans (as defined in the Term Loan Agreement) to the

9    Debtor and (b) the Debtor issued to the Point.360 Secured Lenders a five-year Warrant to

10    purchase an aggregate 500,000 Warrant Shares (as defined in the Term Loan Agreement).[11]

11    Pursuant to the Security Agreement, the Debtor granted the Point.360 Secured Lenders a security

12    interest in all of its assets and the proceeds thereof, other than its accounts receivable, real estate

13    and the direct proceeds thereof (the "Point.360 Secured Lender Collateral"), to secure the

14    Debtor's obligations under the Term Loan Agreement.

15       The Debtor borrowed all of the Term Loans, totaling $6,000,000, from the Point.360

16    Secured Lenders in a series of six million-dollar draws over the next ten months, with the last

17    Delayed Draw Term Loan drawn in April 2016.  The Debtor failed to pay interest on the Term

18    Loans from and after June 30, 2016 (i.e., both prior to the Petition Date and during the pendency

19    of the Debtor's chapter 11 case) without ever providing written notice of an election for "PIK

20    Interest" under the Term Loan Agreement.[12]

---

[10] By definition, the "Loan Documents" do *not* include the UCC Sale Agreement or the other UCC Sale Transaction Documents.  The Term Loan Financing also includes the following documents: (a) a *Warrant to Purchase Shares of Common Stock of Point.360*, dated as of July 2015, by and between the Debtor and MCC (in its capacity as a lender to Point.360); (b) a *Warrant to Purchase Shares of Common Stock of Point.360*, dated as of July 2015, by and between the Debtor and MOF (in its capacity as a lender to Point.360); (c) a Legal Opinion of TroyGould, dated as of July 8, 2015, delivered to MCC (in its capacity as a lender to Point.360); and (d) UCC-1 Financing Statements filed against the Debtor in favor of MCC and MOF (in their capacities as lenders to Point.360).  *See* Adv. Case No. 18-01435 at Docket No. 10, Burton Decl. at 3:10-25-4:1-2.

[11] The warrants issued to the Point.360 Secured Lenders under the Term Loan Financing are not the same as the warrants issued to the MVF Lenders in connection with the sale of the MVF Assets under the UCC Sale Agreement.

[12] Section 2 of the Term Loan Agreement gave the Debtor the right to elect to have interest otherwise payable in cash capitalized and added to the principal of the Term Loans on each

As of the closing date of the UCC Sale Agreement on July 8, 2015, the Debtor's total unsecured debt (excluding its capital leases, term loans and line of credit – which were secured by the Debtor's fixed assets and/or accounts receivable -- and including accrued vacation for the Debtor's employees) was less than $745,000. As detailed in the Debtor's Disclosure Statement, on the Petition Date, that figure had increased nearly six-fold to $4,235,547.

On March 31, 2016, less than nine months after the closing on the UCC Sale Agreement, Term Loan Agreement and Security Agreement, the MVF Lender designees on the Debtor's Board of Directors resigned. On the Effective Date, any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities whether direct, derivative, or otherwise, of the Debtor and the Debtor's estate against Medley, and all standing of the Debtor and the Debtor's estate to pursue any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities against Medley and any of its successors, assigns, and representatives whether directly, derivatively, or otherwise, will be irrevocably assigned to VDMS and will be automatically released by VDMS without further action of any party. Medley does not believe that the Debtor or the Debtor's estate have any meritorious Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities against Medley and any of its successors, assigns, and representatives whether directly, derivatively, or otherwise or that any alleged Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities against Medley and any of its successors, assigns, and representatives whether directly, derivatively, or otherwise have any value to the Debtor or the Debtor's estate.

While the Debtor was purportedly working toward profitability in 2017, the Debtor received a 3-day notice to pay rent or quit for the Media Center Facility on October 6, 2017. The Debtor also settled an unlawful detainer filed by REEP related to the Empire facility resulting in

---

payment date ("PIK Interest"). It included a process for electing PIK Interest: "the Borrower shall inform the Lenders, by written notice delivered not less than three business days prior to any Payment Date, that interest shall be payable as PIK Interest on such Payment Date. If the Borrower fails to timely deliver a written notice as per above, the Borrower shall be deemed irrevocably to have elected to pay interest for the relevant month in cash." *See* Term Loan Agreement § 2.

REEP's claim for $915,996.90. *See* Proof of Claim No. 55. Consequently, the Debtor filed its chapter 11 petition on October 10, 2017 to purportedly maintain its core operating facilities and attempt to implement its reorganization plan through the chapter 11 process.

**E.    Significant Events During the Bankruptcy.[13]**

   **1.    Bankruptcy Proceedings.**

The following is a history of significant events which have occurred in the case:

From a business operations standpoint, the Debtor's post-petition period was dominated by the need to preserve and maintain customer and employee relationships impacted by the chapter 11 filing and concurrently fully close and transition operations from its Empire facility without disrupting workflow. The transition out of Empire required substantial technical service work regarding computer network and server equipment. The Debtor completed its transition out of the Empire facility as needed to preserve its opportunity to resolve the REEP claim.

In addition to business burdens, the Debtor duly addressed all legal issues arising from filing its chapter 11 case. After filing its voluntary chapter 11 petition on October 10, 2017, the Debtor filed first day motions to facilitate continued operations, including a motion to use Austin Financial Service, Inc's ("Austin") cash collateral and pay prepetition payroll to approximately 250 employees. The cash collateral motion was granted on an interim basis and prepetition payroll authorized per orders entered October 12, 2017. *See* Docket Nos. 13 and 14. The Debtor continued authorized use of cash collateral through a final order entered December 19, 2017. *See* Docket No. 94.

During the period of cash collateral usage, the Debtor negotiated a debtor in possession financing facility ("DIP Financing") with Austin. DIP Financing was critical to support and strengthen the Debtor's continuing operations through October 2018 and convey confidence in the Debtor's business operations to customers, vendors and employees. On November 22, 2017, the Debtor moved to approve the DIP Financing. The DIP Financing was approved per order entered December 22, 2017. *See* Docket No. 101. The DIP Financing matures on October 31, 2018 and a six (6) month extension of the DIP Financing facility is anticipated.

---

[13] The information set forth in this Section II.E. is as represented by the Debtor and approved by the Court as adequate disclosure pursuant to the Debtor's Disclosure Statement Approval Order.

Medley moved for adequate protection with an initial hearing set for January 11, 2018. The matter was continued to February 7, 2018. The Bankruptcy Court entered its order on the Medley adequate protection motion on April 30, 2018.

A claims bar date was set for January 31, 2018, and 79 claims have been filed to date, with certain claims withdrawn or amended. The Debtor's significant liabilities, disputed and undisputed, are summarized as follows:

1. Medley: not less than $6,572,764.28, plus allowed post-petition accruals.

2. Austin: $2,475,676.48.

3. REEP: $915,996.90 (settled as of 10/4/18 and reduced to $15,996.90).

4. General unsecured creditors: approximately $1.66 million [with disputed; see Exhibit 1].

5. HWAY, LLC: $803,923.13.

The Debtor has also retained the following professionals: Lewis R. Landau as general bankruptcy counsel. *See* Docket No. 58. TroyGould, LLP as special transactional counsel. *See* Docket No. 148. McCabe & Hogan, P.C. as special litigation counsel. GlassRatner Advisory & Capital Group, LLP as financial consultant and expert witness. *See* Docket No. 170. *See* Docket No. 171. Holthouse Carlin & Van Trigt LLP as accountants for tax returns. *See* Docket No. 209. MICOR Analytics as appraiser. *See* Docket No. 218.

Finally, the Debtor negotiated resolution of various executory contract issues with creditors. The Debtor obtained approval of motions to assume insurance premium finance and payroll services contracts with AFCO Acceptance Corporation ("AFCO") [Docket No. 40] and ADP, LLC ("ADP") [Docket No. 100], respectively. The Debtor also obtained stipulations for 90-day extensions of time to assume or reject real property leases pursuant to Code section 365(d)(4) with lessors LEAFS Properties, L.P. (the "Media Center Landlord") regarding the Media Center Facility and the HWAY Landlord (an affiliate of Mr. Bagerdjian) for the Hollywood Way Property. *See* Docket Nos. 131, 172. *See* Debtor's Disclosure Statement, Exhibit 6 and Exhibit 5 hereto.

1    The Debtor has also completed two plan related settlements. The first is with REEP-OFC

2  2300 Empire CA, LLC ("REEP") concerning REEP's $915,996.90 claim, the approval of which

3  reduced that claim to $15,996.90 in exchange for the Debtor's sale to REEP of various PPE that

4  remained at the Empire site after the Debtor vacated. *See* Docket No. 365.

5    The second is with Wilcon Operations, LLC ("Wilcon") concerning Wilcon's prepetition

6  contracts for datacenter, fiber and colocation professional services and Wilcon's claims for

7  unpaid administrative expenses. The closure of the REEP Empire facility resulted in substantially

8  reduced demand for services under the Wilcon contracts. Consequently, the Debtor and Wilcon

9  negotiated changes to the Wilcon contracts that reduce the services provided to reflect market rate

10  for comparable services. The Debtor's monthly service charge is reduced from $51,299.34 to

11  $26,500 (plus taxes) as of February 1, 2018 provided the Debtor extended the term of the Wilcon

12  contracts to 36 months from February 1, 2018. The Debtor wired $353,026.97 to Wilcon on

13  September 6, 2018 to cure post-petition amounts due through September 30, 2018, which reduced

14  the Debtor's post-petition contract rate accrual for Wilcon services from a claim of $545,710.92

15  to $353,026.76, a savings of $192,683.95. Moreover, the settlement with Wilcon provided terms

16  for the repayment of the Wilcon claim for prepetition amounts due of $124,644.01 that are set

17  forth as Wilcon's class 8 plan treatment. The Wilcon settlement maintains continuity for a

18  critical service provided to maintain connectivity among the Debtor's facilities.

19    In the interim time between filing the Debtor's original Disclosure Statement and Plan on

20  May 8, 2018, Medley and Deloitte Corporate Finance LLC and Deloitte Transactions and

21  Business Analytics, LLP (collectively, "Deloitte") entered into a Court approved stipulation to

22  standstill on their disputes within the case and in related adversary proceeding number 2:18-ap-

23  01141 WB in favor of a voluntary mediation conference. Judge Kwan mediated the parties'

24  disputes on August 15, 2018 but the disputes were not settled and the mediation ended on that

25  date.

26    The Debtor moved for and obtained extensions of the Debtor's plan proposal and

27  acceptance exclusivity periods. The Debtor's plan exclusivity periods thereafter expired.

28

1    The Debtor contends that it is in full compliance with all of its duties under Code section

2    521, 1106 and 1107 and all applicable guidelines of the Office of the United States Trustee,

3    including the filing of all Monthly Operating Reports.

4    **2.    Other Legal Proceedings.**

5    The Debtor's other legal proceedings are as follows:

6    The Debtor's only prepetition litigation matters pending as of the chapter 11 filing date

7    were the REEP unlawful detainer action and a collection action by ACCO Engineering Systems,

8    Inc. ("ACCO").    The REEP action was resolved through stipulated judgment and the ACCO

9    matter is stayed and the subject of ACCO's claim # 46 filed in the bankruptcy case.    The Debtor

10   disputes ACCO's claim.

11   The Debtor has also claimed an interest in approximately $4 million in settlement

12   proceeds of certain commercial tort claims against Deloitte and Managease, Inc. that are subject

13   to dispute in MVF's chapter 11 case pending in the United States Bankruptcy Court, Central

14   District of California – Santa Ana Division (Case Number 8:18-bk-11792-MW).    MVF moved for

15   relief from stay in this Bankruptcy Court to continue pursuing matters related to the proceeds.

16   *See Motion for Order Clarifying Scope of Automatic Stay* [Docket No. 324].    The Debtor filed an

17   objection to MVF's motion [Docket No. 351], asserting, among other things, that such claims and

18   proceeds were assigned to the Debtor pursuant to the UCC Sale Agreement.    MVF and Medley

19   filed responses disputing the Debtor's claim.    *See* Docket Nos. 358 and 359.    The MVF

20   Commercial Tort Claim Matter[14] is currently *sub judice* (under judicial consideration).    On the

21   Effective Date, all of the Debtor's rights, title and interest in the MVF Commercial Tort Claim

22   Matter shall be irrevocably assigned to the Medley/VDMS Plan Trust which shall be administered

---

24   [14] **"MVF Commercial Tort Claim Matter"** means the Debtor's alleged interest in
     approximately $4 million in settlement proceeds of certain commercial tort claims against

25   Deloitte and Managease, Inc. that are subject to dispute in MVF's chapter 11 case pending in the
     United States Bankruptcy Court, Central District of California – Santa Ana Division (Case

26   Number 8:18-bk-11792-MW). MVF sought relief from the automatic stay in the Chapter 11 Case
     to continue pursuing matters related to the proceeds.  The Debtor filed an objection to MVF's

27   motion [Docket No. 351], asserting, among other things, that such claims and proceeds were
     assigned to the Debtor pursuant to the UCC Sale Agreement.  MVF and Medley filed responses

28   disputing the Debtor's claim. *See* Docket Nos. 358 and 359.  The matter is currently *sub judice*
     (under judicial consideration).

by Medley or its designee and standing to assert such MVF Commercial Tort Claim Matter shall be granted thereto. In the event there is a Final Order of the Court sustaining the Debtor's objection and finding that such claims and proceeds were assigned to the Debtor pursuant to the UCC Sale Agreement, the proceeds of the MVF Commercial Tort Claim Matter, if any, upon receipt by the Medley/VDMS Plan Trust will be distributed in the following order: (i) first, to Medley on account of the Medley Deficiency Claim (as defined below) until Medley receives the same percentage recovery on account of the Medley Deficiency Claim that holders of allowed class 6 claims recover from the Medley/VDMS Plan Fund; and (ii) second, shared ratably among (A) holders of allowed class 6 claims on account of the remaining unpaid portion of such claims and (B) Medley on account of the remaining unpaid portion of the Medley Deficiency Claim. In the event there is a Final Order of the Court in favor of MVF holding that such claims and proceeds were **not** assigned to the Debtor pursuant to the UCC Sale Agreement and that such claims and proceeds belong to MVF, the Medley Deficiency Claim will be deemed to be waived.

      **3.**    **Actual and Projected Recovery of Preferential or Fraudulent Transfers.**

Per the Debtor's Statement of Financial Affairs, the Debtor has identified prepetition transfers as set forth in Exhibit 5 to the Debtor's Disclosure Statement and attached hereto as Exhibit 5. Gross prepetition transfers on account of antecedent debt in the 90-days preceding the petition date total $923,303, excluding Austin Financial Services, Inc., United Healthcare and Leafs Properties, LP. (The Debtor does not believe the foregoing entities are subject to preference recovery). The Debtor's position on these transfers is as follows:

      1.    The Debtor analyzed the accounts of creditors receiving transfers totaling over $15,000 during the 90-day period. The Debtor does not believe it is cost effective to pursue preference recoveries for transfers not exceeding $15,000 due to the cost versus benefit of doing so.

      2.    There were 15 creditors receiving transfers exceeding $15,000 during the 90-day preference period. Of these 15 transferees, three (3) clearly received payments within ordinary business terms, leaving 12 creditors receiving transfers totaling $394,979 during the preference period. The Debtor believes that the 12 creditors receiving transfers totaling $394,979 would

assert ordinary course and new value defenses to recovery. Assuming a 50% recovery rate and $100,000 in litigation expenses, the Debtor may net approximately $100,000 from the pursuit of such actions.

3.    While the Debtor did not analyze transfers less than $15,000, based on the foregoing, the Debtor will not pursue Avoidance Actions against prepetition creditors under the Debtor's Plan in that range. All Avoidance Actions will be deemed assigned to VDMS on the Effective Date of the Medley/VDMS Plan, and, following the Effective Date, VDMS will be the sole party with standing to pursue any such Avoidance Actions. The Bankruptcy Court shall retain jurisdiction to adjudicate any such Avoidance Actions brought by VDMS. All other causes of action belonging to the Debtor and the Debtor's estate that are not released on the Effective Date will also be deemed assigned to VDMS on the Effective Date, and, following the Effective Date, VDMS will be the sole party with standing to pursue any such actions. The Bankruptcy Court shall retain jurisdiction to adjudicate any such actions brought by VDMS. As of this time, VDMS does not anticipate bringing any Avoidance Action and, accordingly, has not included any recovery in any Avoidance Action as part of its funding to make payments under the Medley/VDMS Plan.

**4.    Procedures Purportedly Implemented to Resolve Financial Problems.**

After the initial disappointing results of the MVF acquisition, the Debtor purportedly initiated a business plan to reduce expenses and reestablish profitability. The Debtor asserts that the significant changes to the Debtor's operations were as follows:

a.    The Debtor eliminated approximately 100,000 square feet of rental space by vacating its Santa Monica, Glendale and Empire (second floor) facilities in 2015.

b.    The Debtor further reduced rent and associated expenses by closing its 37,930-foot Empire facility (first floor). The monthly rent and CAM charges at this facility were approximately $200,000. The Debtor entered a prepetition stipulation with REEP to vacate the facility by December 4, 2017 and did not incur post-petition rent during the period prior to December 4, 2017 if the Debtor vacated by that date. The Debtor met the vacate deadline but continued to store certain equipment at the facility per agreement with REEP. The Debtor has

23

now fully vacated the Empire facility and concluded a settlement with REEP reducing REEP's claim to $15,996.90.

c.      A Reduction in Force (RIF) has been completed reducing the Debtor's employee headcount from 261 to 196. The RIF will result in annual cost savings of $3.3 million in salary and benefits. The reduction represents 17.5% of the Debtor's total salaries and benefits.

d.      Additional information regarding recent changes in financial performance is contained in notes to the Exhibit 2 pro forma projections.

**5.      Current and Historical Financial Conditions.**

Financial statements reflecting the Debtor's pre-petition and post-petition operations were attached to the Debtor's Disclosure Statement as Exhibit 3 and are attached hereto as Exhibit 3. Exhibit 3 includes prepetition and post-petition balance sheets and statements of operations through September 30, 2018.

**III.**

**SUMMARY OF THE MEDLEY/VDMS PLAN**

**A.      What Creditors and Interest Holders Will Receive Under the Medley/VDMS Plan.**

As required by the Code, the Medley/VDMS Plan classifies claims and interests in various classes according to their right to priority. The Medley/VDMS Plan states whether each class of claims or interests is impaired or unimpaired. The Medley/VDMS Plan provides the treatment each class will receive.

**B.      Unclassified Claims.**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Medley/VDMS Plan because they are automatically entitled to specific treatment provided for them in the Code. As such, the Medley/VDMS Plan Proponents have not placed the following claims in a class.

1    **1.    Administrative Expenses.**[15]

2    Administrative expenses are claims for costs or expenses of administering the Debtor's

3    Chapter 11 case which are allowed under Code section 507(a)(2). The Code requires that all

4    administrative claims be paid on the Effective Date of the Medley/VDMS Plan, unless a

5    particular claimant agrees to a different treatment. The following chart lists all of the Debtor's

6    anticipated unpaid 507(a)(2) administrative claims for chapter 11 professionals, the Bankruptcy

7    Court clerk's office and the Office of the United States Trustee and their treatment under the

8    Medley/VDMS Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Lewis R. Landau Attorney at Law; Debtor's Counsel | $TBD ($150,000 estimated unpaid as of 11/1/18) | Paid in full in cash from the Medley/VDMS Plan Fund on the later of the Effective Date and the date of entry of a Court order allowing such fees and expenses to the extent such fees and expenses have not been paid pursuant to any Final Order of the Bankruptcy Court (including, but not limited to, any fees of a Professional held back) from the Medley/VDMS Plan Fund. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses (whether or not paid pursuant to an order granting interim allowance), then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim. |
| Brinkman Portillo Ronk, APC; Committee Counsel | $TBD ($150,000 estimated unpaid as of 11/1/18) | |
| GlassRatner Advisory & Capital Group; Financial Advisor | $TBD ($50,000 estimated unpaid as of 11/1/18) | |
| Daniel P. Hogan Attorney at Law; Special Litigation Counsel to the Debtor | $TBD ($19,000 estimated unpaid as of 11/1/18) | |
| TroyGould, P.C.; Special Transactional Counsel to the Debtor | $TBD ($6,000 estimated unpaid as of 11/1/18) | |
| Clerk's Office Fees | $TBD | Paid in full in cash on the Effective Date from the Medley/VDMS Plan Fund. |
| Office of the U.S. Trustee Fees | Current | Paid in full in cash on the Effective Date from the Medley/VDMS Plan Fund |

---

[15] The estimates set forth in this Section III.B.1. were estimated by the Debtor and approved by the Court as adequate disclosure pursuant to the Debtor's Disclosure Statement Approval Order.

| | | and, thereafter, pending the entry of a final decree closing this case, additional U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in full from the Medley/VDMS Plan Fund. The additional amount to be paid following distribution to creditors is estimated at $90,000 (this amount is not included in the total estimated Effective Date obligations since it will be paid later). |
|---|---|---|
| | TOTAL TBD ($375,000 estimated) | |

Court Approval of Fees Required:

The Bankruptcy Court must rule on all fees listed in this chart before the fees will be owed.   For all Professional Fees except Clerk's Office fees and U.S. Trustee's fees, the Professional in question must file and serve a properly noticed fee application, and the Court must rule on the application.   Only the amount of Professional Fees allowed by the Court on a final basis pursuant to a Final Order will be owed and required to be paid under the Medley/VDMS Plan.

As indicated above, the Debtor will need to pay certain claims on the Effective Date of the Medley/VDMS Plan in cash in amounts to be determined.   On the Effective Date, the Medley/VDMS Plan Fund will be funded by VDMS with cash in the amount of $2,401,591, an amount that VDMS determined, based upon the Debtor's projections, is sufficient to provide creditors with the recoveries described herein.   Based upon the Debtor's projections, the Medley/VDMS Plan Fund will have a sufficient amount of cash on hand on the Effective Date of the Medley/VDMS Plan to pay the allowed Professional Fees in full in cash.   The Medley/VDMS Plan Proponents reserve all rights to object to the allowance of any such Professional Fees.

**2.    Priority Tax Claims.**

Priority tax claims are certain unsecured income, employment and other taxes described by Code section 507(a)(8).   The Code requires that each holder of such a Code section 507(a)(8)

priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the petition date with interest at the most favorable rate offered to other creditors in the Medley/VDMS Plan.  The following chart lists all of the Debtor's Code section 507(a)(8) priority tax claims and their treatment under the Medley/VDMS Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| • Name= | | • Pymt interval:  Single |
| • Los Angeles County TTC | $148,219.54 (Proof of Claim No. 7-2) | • Pymt amt/interval:  Paid in full in cash from the Medley/VDMS Plan Fund. |
| • Type of tax = Property | | • Begin date:  Effective Date |
| | | • End date:  Effective Date |
| • Date tax assessed= 10/27/17 | | • Interest Rate % = N/A |
| | | • Total Payout Amount = 100% |

| Description | Amount Owed | Treatment |
|---|---|---|
| • Names = | | • Pymt interval:  = Single |
| • IRS<br>• FTB<br>• County of Orange | $1,000<br>$800<br>$1,802.80 | • Pymt amt/interval:   Paid in full in cash from the Medley/VDMS Plan Fund. |
| • Type of tax = Misc. | | • Begin date: Effective Date |
| | | • End date: Effective Date |
| • Date tax assessed= Misc. | | • Interest Rate % = N/A |
| | | • Total Payout Amount = 100% |

**3.    Creditors' Administrative Expense Claims**

Creditors may assert administrative priority expense claims arising from, e.g., their post-petition services provided to the Debtor under Code section 503(b).  Such expenses may include rent, utilities, and insurance, among other items.

Medley asserts Administrative Claims against the Debtor including, without limitation: (a) an Administrative Claim against the Debtor as a result of the failure of adequate protection under the Medley Adequate Protection Order; and (b) an Administrative Claim against the Debtor for Obligations (as defined in the Term Loan Agreement) owing under the Term Loan Agreement, including accrued and unpaid interest, fees and expenses (including legal fees and expenses) and indemnification obligations.  As set forth herein, Medley has agreed to release its Administrative Claims in connection with confirmation of the Medley/VDMS Plan.

**Administrative Claims Bar Date:** The last day to file a request for payment of Administrative Claims, other than those set forth in section III(B)(1) above, is set forth in the notice of the Medley/VDMS Plan Confirmation Hearing accompanying this Medley/VDMS Disclosure Statement. The Code requires that all administrative claims be paid in full in cash on the Effective Date of the Medley/VDMS Plan, unless a particular claimant agrees to a different treatment. All allowed Administrative Expense Claims will be paid in full in cash on the Effective Date from the Medley/VDMS Plan Fund. The Medley/VDMS Plan Proponents reserve all rights to object to the allowance of any such Administrative Expense Claims.

**C.    Classified Claims and Interests.**

    **1.    Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the estate. The Debtor's secured creditors are identified below, other than purported equipment leases that may constitute financing transactions with nominal lease end purchase options. These purported equipment lease claims are listed on Exhibit 6 to the Debtor's Disclosure Statement and are listed on Exhibit 5 hereto. VDMS shall assume the purported equipment leases through the confirmation process, while reserving the right to seek recharacterization of such purported equipment leases in the event of any dispute concerning the Debtor's title to the assets subject to such purported equipment leases. *See,* § III(F)(1).

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1 | Secured claim of: Austin Financial Services, Inc. | No | A.  Pymt interval = Paid in full in cash by VDMS on the Effective Date unless the class 1 claim holder and VDMS agree to the contrary. |
| | • Name= Austin Financial Services, Inc. | | |
| | • Collateral description = All Assets | | |
| | • Collateral value = Varies per operations; fully secured. | | |
| | • Priority of security int. = 1. | | |
| | • Principal owed = $2,475,676.48 per Proof of Claim No. 34. | | |

28

| | • Pre-pet. Arrearage amount = $0 | | • Total payout = Per contract. |
|---|---|---|---|
| | • Post-pet. Arrearage amount = $0 | | • Treatment of Lien = Unimpaired per Code section 1124(1) and (2). |
| | • Total claim amount = $2,475,676.48 per Proof of Claim No. 34, subject to post-petition changes in account status. | | |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 2 | Secured claims of: Medley Capital Corporation Medley Opportunity Fund II, LP | Yes | A. In full settlement and satisfaction of all of Medley's claims against the Debtor, including all of Medley's class 2 claims and otherwise, Medley shall receive the following from VDMS on the Effective Date: <br> i. $3.5 million of cash to be paid by VDMS on the Effective Date; <br> ii. Up to $100,000 to pay for the fees incurred by Medley's counsel related to confirmation of the Medley/VDMS Plan; <br> iii. Warrants to acquire up to 10% of the equity of VDMS in form and substance acceptable to both Medley and VDMS; and <br> iv. Medley (together with all of its successors, assigns, and representatives) will receive a release from VDMS of any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities whether direct, derivative, or otherwise, of the Debtor and the Debtor's estate against Medley (all of which Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities whether direct, derivative, or otherwise, of the Debtor and the Debtor's estate against Medley are being acquired by VDMS from the Debtor on the Effective Date under the Medley/VDMS Plan). <br> B. An allowed unsecured deficiency claim as of the Effective Date calculated as follows: $2,500,000 (made up of $6,000,000 minus $3,500,000 payment), plus |

29

| | | | prepetition and postpetition accrued and unpaid interest, plus accrued and unpaid legal fees to date (as same will be calculated on the Effective Date, the "Medley Deficiency Claim"). As set forth below, Medley will have an interest on account of such claim in the Medley/VDMS Plan Trust which shall be administered by Medley or its designee. |
| | • Principal owed = $6,000,000 per Proof of Claim Nos. 72-2, 73-2 | | |
| | • Pre-pet. Arrearage amount = $572,764.28 per Proof of Claim Nos. 72-2, 73-2 | | |
| | • Post-pet. Arrearage amount = not less than $949,366.10 (estimated through February 28, 2019, at the contractual default rate, using a 3-month LIBOR forward curve from Bloomberg as of September 28, 2018 to determine the 3-month LIBOR rates beyond December, 31, 2018). | | |
| | • Total secured claim amount = not less than $6,572,764.28 plus post-petition accruals. | | |

**2.    Classes of Priority Unsecured Claims.**

Certain priority claims that are referred to in Code sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim unless such creditor agrees to alternate treatment. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims. The Debtor's priority unsecured claims are listed on Exhibit 1 to the Debtor's Disclosure Statement and on Exhibit 1 hereto.

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | Priority Wages, Commissions, Salary Claims Per § 507(a)(4) | No | Payment Interval = All allowed priority claims per Code section |

|  |  |  | 507(a)(4) shall be paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
|  | Total amount of claims = $92,685.13 See Debtor's Disclosure Statement Ex 1 and Ex 1 hereto. |  | Begin Date =  Effective Date. End date =    Effective Date. Interest Rate:  None Total Payout = 100%. |

| Class | Description | Impaired (Y/N) | Treatment |
| --- | --- | --- | --- |
| 4 | UnitedHealth Insurance Company; Priority Employee Benefit Plan Per § 507(a)(5) | No | Payment Interval = All allowed priority claims per Code section 507(a)(5) shall be paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
|  | Total amount of claims = $142,152.77 per Proof of Claim No. 33-2 |  | Begin Date =  Effective Date. End date =    Effective Date. Interest Rate:  None Total Payout = 100%. |

| Class | Description | Impaired (Y/N) | Treatment |
| --- | --- | --- | --- |
| 5 | SAG-AFTRA and SAG-AFTRA Health Fund and AFTRA Retirement Fund Priority Claims Per § 507(a)(5) | No | Payment Interval = All allowed priority claims per Code section 507(a)(5) shall be paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
|  | Total amount of claims = $37,466.75 per Proof of Claim Nos. 57-1 and 58-1 |  | Begin Date =  Effective Date. End date =    Effective Date. Interest Rate:  None Total Payout = 100%. |

### 3.    Classes of General Unsecured Claims.

General unsecured claims are unsecured claims not entitled to priority under Code section 507(a).    The following chart identifies the Medley/VDMS Plan's treatment of the classes containing all of Debtor's general unsecured claims:

| Class | Description | Impaired (Y/N) | Treatment |
| --- | --- | --- | --- |
| 6 | Allowed General Unsecured Claims identified in Debtor's Disclosure Statement Exhibit 1 and Exhibit 1 hereto plus the allowed rejection damage claim of the HWAY Landlord. | Yes | Payment Interval = In full settlement and satisfaction of their class 6 claims, each holder of an allowed class 6 claim will receive (A) a pro rata cash distribution from the funds remaining in the Medley/VDMS Plan Fund after |

payment in full of all (i) allowed administrative claims, (ii) allowed priority tax claims, (iii) allowed class 3, 4, 5 and 7 claims and (iv) U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) incurred through the date of distribution to holders of allowed class 6 claims. This pro rata distribution will be made to the holders of allowed class 6 claims after the deadline to file rejection damage claims from Rejected Contracts has passed and all disputed class 6 claims have been resolved to Final Order and (B) their share of the Medley/VDMS Plan Trust. Based upon the information provided by the Debtor, the Medley/VDMS Plan Proponents estimate that the distributions to holders of allowed class 6 claims from the Medley/VDMS Plan Fund will result in the payment of cash to each holder of an allowed class 6 claim equal to approximately 50% of the amount of each allowed class 6 claim.[16] Holders of allowed class 6 claims will not receive any other distribution under the Medley/VDMS Plan. If any money is left in the Medley/VDMS Plan Fund after each holder of an allowed class 6 claim has received 50% of the amount of its allowed class 6 claim, such excess funds shall be returned to VDMS given that the Medley/VDMS Plan provides for a recovery of up to 50%. The payment to the holders of allowed class 6 claims from the Medley/VDMS Plan Fund will be made as soon as practicable following the Effective Date. VDMS believes that this payment will most likely be made less than ninety (90) days following the Effective Date.

---

[16] Given the procedural posture of the MVF Commercial Tort Claim Matter, the Medley/VDMS Plan Proponents do not project that such creditors will receive any recovery on account of their interest in the Medley/VDMS Plan Trust.

| | | | |
|---|---|---|---|
| | Total estimated amount of class 6 claims: $3,117,075 which includes $163,506.24 disputed per the Debtor's Disclosure Statement plus an estimated total rejection damage claim in favor of the HWAY Landlord of approximately $1,417,380[17] (recognizing that the HWAY Landlord has a state law requirement to attempt to mitigate its damage claim by attempting to find a replacement tenant and the HWAY Landlord's security deposit of approximately $197,902 will be retained by the HWAY Landlord as an offset against the HWAY Landlord's rejection damage claim). | | End date = N/A Interest rate: None. Total payout = Estimated 50% based upon the information provided by the Debtor.[18] |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 7 | Convenience Class of unsecured claims less than or reducing to $2,500. | No | Payment Interval = All allowed class 7 claims shall be paid in full in cash from the Medley/VDMS Plan Fund on the Effective Date. |
| | Total amount of claims = Approx. $52,467 [excluding voluntarily reduced claims.] | | |

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 8 | Wilcon Holdings, LLC aka Crown Castle Fiber | No | Payment Interval = Satisfied per Court approved settlement agreement. |
| | Total amount of claims = $124,274.69 per Settlement | | |

**4.    Class(es) of Interest Holders.**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and

---

[17] See discussion at page 40 below regarding the calculation of this estimated amount.
[18] Given the procedural posture of the MVF Commercial Tort Claim Matter, the Medley/VDMS Plan Proponents do not project that such creditors will receive any recovery on account of their interest in the Medley/VDMS Plan Trust.

limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following chart identifies the Medley/VDMS Plan's treatment of the class of interest holders:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 9 | Equity Security Holders | Yes | All equity security interests, including stock, options and warrants, are cancelled on the Effective Date. Equity Interest holders will not receive any distribution under the Medley/VDMS Plan. |

**D.    Means of Effectuating the Medley/VDMS Plan.**

> **1.    Funding for the Medley/VDMS Plan and Transfer of Title to the Debtor's Assets.**

All creditor payments under the Medley/VDMS Plan will be funded directly by VDMS (including through amounts VDMS is funding into the Medley/VDMS Plan Fund) coupled with the Debtor's cash on hand which will become the property of VDMS on the Effective Date.  In exchange for VDMS funding such payments and all other obligations undertaken by VDMS under the Medley/VDMS Plan, on the Effective Date, title to all assets of the Debtor and the Debtor's estate shall be deemed irrevocably sold, assigned and transferred to VDMS in accordance with Code section 1123(b)(4) free and clear of all liens, claims, interests and encumbrances against the Debtor, the Debtor's estate and assets of the Debtor and the Debtor's estate.  VDMS will make all payments it is required to make by the Medley/VDMS Plan on the Effective Date directly to the various creditors and thereafter will administer the Medley/VDMS Plan Fund and make all payments required by the Medley/VDMS Plan from the Medley/VDMS Plan Fund directly to the various creditors.  As a result, VDMS will be serving as the disbursing agent under the Medley/VDMS Plan.  VDMS reserves the right to retain a third-party disbursing agent to make such Medley/VDMS Plan disbursements, with VDMS to pay for the costs of any such third-party disbursing agent.

VDMS has entered into a confidential term sheet with a third party lender who will provide VDMS with the funding for the Medley/VDMS Plan.  VDMS is highly confident that this financing will be available for its use to fund the Medley/VDMS Plan and that the loan

commitment and the loan documents will be available substantially prior to the anticipated hearing on confirmation of the Medley/VDMS Plan.

**2.    General Medley/VDMS Plan Matters.**

1.    On the Effective Date, any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities whether direct, derivative, or otherwise, of the Debtor and the Debtor's estate against Medley and any of its successors, assigns, and representatives, and all standing of the Debtor and the Debtor's estate to pursue any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities against Medley and any of its successors, assigns, and representatives whether directly, derivatively, or otherwise, will be irrevocably assigned to VDMS, and, pursuant to its agreement with Medley, will be automatically released without further action by any party.

2.    On the Effective Date, all of the Debtor's rights, title and interest in the MVF Commercial Tort Claim Matter shall be irrevocably assigned to the Medley/VDMS Plan Trust, which shall be administered by Medley or its designee. In the event there is a Final Order of the Court sustaining the Debtor's objection and finding that such claims and proceeds were assigned to the Debtor pursuant to the UCC Sale Agreement, the proceeds of the MVF Commercial Tort Claim Matter, if any, upon receipt by the Medley/VDMS Plan Trust will be distributed in the following order:  (i) <u>first</u>, to Medley on account of the Medley Deficiency Claim until Medley receives the same percentage recovery on account of the Medley Deficiency Claim that holders of allowed class 6 claims recover from the Medley/VDMS Plan Fund; and (ii) <u>second</u>, shared ratably among (A) holders of allowed class 6 claims on account of the remaining unpaid portion of such claims and (B) Medley on account of the remaining unpaid portion of the Medley Deficiency Claim. In the event there is a Final Order of the Court in favor of MVF holding that such claims and proceeds were ***not*** assigned to the Debtor pursuant to the UCC Sale Agreement and that such claims and proceeds belong to MVF, the Medley Deficiency Claim will be deemed to be waived.

3.    On the Effective Date, all Avoidance Actions will be deemed irrevocably assigned to VDMS, and, following the Effective Date, VDMS will be the sole party with standing to pursue any such Avoidance Actions.

4.     The Creditors' Committee will terminate on the Effective Date.

5.     On the Effective Date, all outstanding equity securities, including stock, options and warrants, shall be deemed cancelled.

6.     On the Effective Date, all causes of action against Mr. Haig Bagerdjian and HWAY will be deemed irrevocably assigned to VDMS, and, following the Effective Date, VDMS will be the sole party with standing to pursue any such causes of action. If the HWAY Landlord does not object to the four-month vacate schedule proposed by VDMS below, on the Effective Date, the HWAY Landlord and Mr. Bagerdjian will be deemed released from any and all claims the Debtor and the Debtor's estate may have against them.

7.     Any distribution made by VDMS, either directly or from the Medley/VDMS Plan Fund, that remains unclaimed and outstanding for more than ninety (90) days after issuance shall be cancelled, and any such property shall be retained by VDMS.

8.     Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims under the Medley/VDMS Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

9.     The Debtor will not issue, nor will there be, any shares of non-voting securities of the Debtor, in accordance with Code section 1123(a)(6).

10.     Objections to claims against the Debtor shall be filed no later than thirty (30) days following the Effective Date.

11.     VDMS currently anticipates employing all or substantially all of the Debtor's employees following the Effective Date, with the exception of the Debtor's CEO. Accordingly, VDMS does not believe there will be any basis for the assertion of a WARN claim. Further, VDMS does not anticipate that any material claims for paid time off will be asserted.

12.     VDMS has determined that it desires to fund a recovery to general unsecured creditors as part of the Medley/VDMS Plan. However, VDMS is unwilling to fund more than a 50% recovery to general unsecured creditors. Accordingly, Medley, as part of its treatment under the Medley/VDMS Plan, has agreed not to seek to recover from the Medley/VDMS Plan Fund on

account of the Medley Deficiency Claim which results in a materially larger recovery for holders of allowed class 6 general unsecured claims.

13.     The Bankruptcy Court will retain jurisdiction over the post-confirmation estate until such estate is fully administered and a final decree is entered.

**3.     VDMS.**

VDMS is a leading global entertainment media and technology services business based in Los Angeles, which began operations in 1995 and is organized as a California S Corporation. Services provided by VDMS include:

Digital Media Services (i.e., Transcoding, encoding, data management, data transfer)

Editing

Language Services (i.e., Subtitling and voice dubbing)

Closed Captioning

Quality Control, and

Audio/ Foley Stages

VDMS has locations around the world, including: Burbank, CA (HQ); London, UK; and Bangalore, India.

Customers of VDMS include global leaders in: Cable TV, Broadcast TV, and Online Streaming.

**4.     Post-Confirmation Board and Management.**

The Board and Management of VDMS will remain unchanged following the Effective Date. The sole member of the VDMS Board of Directors is John Trautman, who is also the CEO of VDMS. Below is a summary of the VDMS management team:

- **John Trautman, CEO** - For 33 years as an Executive, John has honed his technical and creative skills to cultivate and internationally expand Visual Data into a premier content localization and digital distribution company. With a strong background in post-production and an acute knowledge in finance, technology and executive level management, he has been able to grow the company to $35 million dollars in revenue.

John also operates as the company's CFO and continues to advance Visual Data into the future, managing offices in Burbank, London and Bangalore.

- **Symon Roue, Managing Director -** Seasoned Media Services Entrepreneur for over 15 years. Created two media services starts ups and eventually acquired a media services company in London. Led the search, finance and acquisition of the company. Has doubled revenues and tripled profits in 6 years. Led our company to a majority acquisition by Visual Data Media Services. Skilled at Higher level strategic vision for the company, manage finance and cash flow with Finance Director. Goals are to continue growing the company globally and create shareholder value.

- **Kim Lawrence, EVP-Client Operations -** A seasoned industry executive with extensive practical knowledge of media transformation and post production processes. Kim began her career in the industry in 1994 at Vidfilm in London, before moving to the States to head up Global Account Management of the Walt Disney Account for Technicolor in Los Angeles. Kim joined Visual Data as VP of Client Services, in 2011, and spent 2 years developing and training the Client Services Team. Kim took over the running of Sales Team in 2013, and currently leads the organization's customer facing departments as EVP of Client Operations.

- **Steve Spear, SVP-Operations -** 20-year Post Production professional specializing in technical operations, workflow management, systems technology and organizational leadership. He joined Visual Data in May of 2011 after nearly an 11- year stint at Ascent Media, where he managed a $23 million global Disney account, served as a New Technology advisor to the executive team and spent his final 2 years as VP. Operations. Steve's primary role today is to ensure Visual Data's Operations departments are profitable, manufactures a high-quality product and delivers on time. and building and analyzing metrics to provide better visibility over Visual Data's profitability and productivity and developing strategies for facility systems integration.

- **Simon Constable, SVP-Language Services -** An operations executive with over 20 years of media industry experience. He has experience of working in global posts based in

Europe, Asia and the US. Responsibilities have ranged from broadcast channel playout, feature and television post production and media services. He is currently working to grow worldwide access service such as subtitling, captioning and audio description.

- **Robin Phelps, VP-Finance** - Responsible for the Accounting and Finance functions of the company, she has been working in the entertainment industry for 10 years. Her previous experience includes audit and tax accounting for a public firm, as well as various corporate accounting positions at Lexmark International, a global technology company.

### 5.    Disbursing Agent.

As explained above, VDMS shall act as the disbursing agent under the Medley/VDMS Plan for the purpose of making all distributions provided for under the Medley/VDMS Plan. VDMS shall serve as the disbursing agent under the Medley/VDMS Plan without bond and shall receive no additional compensation for distribution services rendered pursuant to the Medley/VDMS Plan. As further explained above, VDMS reserves the right to retain a third-party disbursing agent to make such Medley/VDMS Plan disbursements, with VDMS to pay for the costs of any such third-party disbursing agent.

### E.    Risk Factors.

The payments to the Debtor's creditors under the Medley/VDMS Plan will be funded with cash on the Effective Date. Accordingly, the Debtor's creditors are not incurring any risk regarding the sale of any assets or the future financial performance of VDMS to fund payments to them. There is a risk that the Debtor and the Committee, or their respective professionals, unreasonably incur fees and expenses and unnecessarily prolong the Debtor's chapter 11 case, which may increase administrative expenses. In such event, recoveries to general unsecured creditors may be lower than the Medley/VDMS Plan Proponents envision. Further, although there is a possible risk that VDMS will not have all funds necessary to implement the Medley/VDMS Plan on the Effective Date, VDMS believes it will have all necessary funds committed prior to the hearing on confirmation of the Medley/VDMS Plan and that no material risk exists regarding funding. Post-Effective Date U.S. Trustee fees are estimated at $90,000, which is to be paid subsequent to payment to creditors. If this amount is substantially greater,

1    recoveries to general unsecured creditors may be lower than the Medley/VDMS Plan Proponents

2    envision.

3          There is a risk that the total rejection damage claim of the HWAY Landlord may exceed

4    the amount estimated by VDMS.  If the amount is greater than estimated, it may reduce the

5    recovery of other general unsecured creditors.  VDMS calculated the estimated amount by

6    starting with the prepetition claim of the HWAY Landlord in the amount of $803,926, adding to

7    that amount 12 months' rent at the approximate amount of $67,613 per month ($67,613 x 12 =

8    $811,356), for a total of $1,615,282, and then subtracting the security deposit held by the HWAY

9    Landlord in the sum of $197,902, for the estimated total lease rejection damage claim of

10   $1,417,380.  There is a risk that the amount of the HWAY Landlord claim could be greater than

11   estimated.  It may also be less than estimated.  The HWAY Landlord is subject to an obligation to

12   mitigate damages under applicable state law.

13         Another risk that could potentially reduce the amount paid to the holders of allowed class

14   6 claims is that material rejection damage claims could be asserted by holders of executory

15   contracts other than the HWAY Landlord.  However, based on a review of the list of executory

16   contracts contained in Schedule G of the Debtor's bankruptcy schedules, VDMS does not believe

17   that any such claims will be material.  VDMS has requested that the Debtor provide VDMS with

18   copies of its executory contracts, but as of this time, the Debtor has not complied with this

19   request.

20   **F.    Other Provisions of the Medley/VDMS Plan.**

21         **1.    Executory Contracts and Unexpired Leases.**

22               **a.    Assumptions.**

23         On the Effective Date, the Debtor's unexpired real property lease for the Media Center

24   Facility (the "Media Center Lease") shall be deemed assumed by the Debtor and assigned to

25   VDMS.  VDMS shall be obligated to perform all of the Debtor's remaining obligations under the

26   Media Center Lease, and VDMS shall receive all of the benefits and rights of the Debtor under

27   the Media Center Lease.   Pursuant to Code section 1123(b)(2), the Medley/VDMS Plan

28   constitutes a motion to assume and assign to VDMS the Media Center Lease pursuant to the

40

Case 2:17-bk-22432-WB    Doc 501    Filed 02/21/19    Entered 02/21/19 11:55:53    Desc
Main Document    Page 44 of 93

requirements of Code section 365. The Medley/VDMS Plan provides for payment in full in cash

of an estimated cure payment in the amount of $152,461.00. Any objection by the Media Center

Landlord to the Debtor's proposed cure payment for the Media Center Lease shall be filed as an

objection to the confirmation of the Medley/VDMS Plan. Confirmation of the Medley/VDMS

Plan shall constitute adequate assurance of future performance under the Media Center Lease.

The Confirmation Order will constitute an order approving the Debtor's assumption and

assignment to VDMS of the Media Center Lease. While VDMS does not currently intend to take

an assignment of any of the Debtor's other unexpired leases or executory contracts, VDMS

reserves the right to file with the Court not later than ten days prior to the Medley/VDMS Plan

Confirmation Hearing a schedule of any and all such additional unexpired leases and/or executory

contracts that VDMS elects to take an assignment of ("Additional Assumed Contracts"),

recognizing that VDMS will be required to pay any cure payments owing under any such

Additional Assumed Contracts.

        **b.**    **Rejections.**

On the Effective Date, all of the Debtor's unexpired leases and executory contracts other

than the Media Center Lease and any Additional Assumed Contracts (the "Rejected Contracts")

shall be deemed rejected effective as of the Effective Date. Pursuant to Code section 1123(b)(2),

the Medley/VDMS Plan constitutes a motion to reject all of the Rejected Contracts pursuant to

the requirements of Code section 365. All counter-parties to all such Rejected Contracts shall

have until the date that is thirty days following the Effective Date to file any rejection damage

claims that they wish to assert against the Debtor's estate. While the HWAY Lease will be

deemed rejected as of the Effective Date, notwithstanding anything herein to the contrary, VDMS

shall have until the date that is four months following the Effective Date to vacate the HWAY

Property, which VDMS estimates as a necessary period of time for VDMS to be able to remove

all of the property located at the HWAY Property. On the Effective Date, VDMS shall deliver to

the HWAY Landlord a cash payment equal to four months of rent so that there is no risk

whatsoever of the rent being paid. During this four-month period, VDMS shall provide the

HWAY Landlord with reasonable access to the HWAY Property during business hours on not

41

less than twenty-four hours' notice to VDMS so that the HWAY Landlord can show the HWAY Property to any new prospective tenants.

**2.      Changes in Rates Subject to Regulatory Commission Approval.**[19]

This Debtor is not subject to governmental regulatory commission approval of its rates.

**3.      Retention of Jurisdiction.**

The Bankruptcy Court will retain jurisdiction to the extent provided by law.

**G.      Tax Consequences of Plan.**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE MEDLEY/VDMS PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Medley/VDMS Plan may present to the Debtor. The Medley/VDMS Plan Proponents CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Medley/VDMS Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Medley/VDMS Plan will have on the Debtor's tax liability: None.

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THE MEDLEY/VDMS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing

---

[19] The information set forth in this Section is as represented by the Debtor and approved by the Court as adequate disclosure pursuant to the Debtor's Disclosure Statement Approval Order.

claims. The Medley/VDMS Plan Proponents CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before courts can confirm a plan. Some of the requirements include acceptance of the plan and that the plan must be proposed in good faith. Courts will also consider whether the plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation and whether the plan is feasible. These requirements are not the only requirements for confirmation.

**A.    Who May Vote or Object.**

**1.    Who May Object to Confirmation of the Medley/VDMS Plan.**

Any party in interest may object to the confirmation of the Medley/VDMS Plan, but as explained below not everyone is entitled to vote to accept or reject the Medley/VDMS Plan.

**2.    Who May Vote to Accept/Reject the Medley/VDMS Plan.**

A creditor or interest holder has a right to vote for or against the Medley/VDMS Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a.    What Is an Allowed Claim/Interest.**

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING PROOFS OF CLAIM WAS **JANUARY 31, 2018**. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or

interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.  All claims are specified in the classification section of this Medley/VDMS Disclosure Statement, Exhibit 1 to the Debtor's Disclosure Statement and Exhibit 1 hereto.  Any plan distribution that would otherwise be paid to a claimant holding a claim subject to objection as of the Effective Date of the Medley/VDMS Plan shall be reserved pending entry of a Final Order on such objection.

### b.    What Is an Impaired Claim/Interest.

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the plan.  A class is impaired if the plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the plan fails to pay the members of that class 100% of what they are owed.

The Medley/VDMS Plan Proponents believe that classes 2 and 6 are the only impaired classes of claims and are therefore the only creditors who are entitled to vote to accept or reject the Medley/VDMS Plan.  Class 9 is deemed not to have accepted the Medley/VDMS Plan pursuant to the provisions of Code section 1126(g).  Parties who dispute the Medley/VDMS Plan Proponents' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Medley/VDMS Plan contending that the Medley/VDMS Plan Proponents have incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote.

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code

44

sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the plan do not vote because such classes are deemed to have rejected the plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE MEDLEY/VDMS PLAN.

**4.    Who Can Vote in More Than One Class.**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**5.    Votes Necessary to Confirm the Medley/VDMS Plan.**

If impaired classes exist, the Court cannot confirm the Medley/VDMS Plan unless (1) at least one impaired class has accepted the Medley/VDMS Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Medley/VDMS Plan, unless the Medley/VDMS Plan is eligible to be confirmed by a cramdown on non-accepting classes, as discussed later in section IV(A)(8).

**6.    Votes Necessary for a Class to Accept the Medley/VDMS Plan.**

A class of claims is considered to have accepted a plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the plan. A class of interests is considered to have accepted a plan when at least two-

thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the plan.

### 7.    Treatment of Nonaccepting Classes.

As noted above, even if all impaired classes do not accept the Medley/VDMS Plan, the Court may nonetheless confirm the Medley/VDMS Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Medley/VDMS Plan is commonly referred to as a cramdown.  The Code allows the Medley/VDMS Plan to be crammed down on nonaccepting classes of claims or interests if the Medley/VDMS Plan meets all consensual requirements except the voting requirements of Code section 1129(a)(8) and if the Medley/VDMS Plan does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Medley/VDMS Plan as referred to in Code section 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es).

Class 2 (Medley) has agreed to vote to accept the Medley/VDMS Plan.  The Medley/VDMS Plan Proponents will ask the Court to confirm the Medley/VDMS Plan by cramdown on impaired classes 6 and/or 9 if class 6 does not vote to accept the Medley/VDMS Plan.

### B.    Liquidation Analysis.

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the plan, then that claimant or interest holder must receive or retain under the plan property of a value not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Medley/VDMS Plan, the Court must find that all impaired creditors and interest holders who do not accept the Medley/VDMS Plan will receive at least as much under the Medley/VDMS Plan as such holders would receive under a Chapter 7 liquidation. The Medley/VDMS Plan Proponents maintain that this requirement is met here. There are three impaired classes under the Medley/VDMS Plan. Class 2 (Medley) has agreed to vote to accept the Medley/VDMS Plan. Class 6 (general unsecured creditors) will, as described below, receive more (and dramatically more) under the Medley/VDMS Plan than they would receive in a Chapter 7 liquidation of the Debtor. In fact, class 6 creditors would receive nothing in a Chapter 7 liquidation of the Debtor, and, under the Medley/VDMS Plan, holders of allowed class 6 claims will receive cash upon resolution of such claims, as set forth herein, in an estimated amount of 50% of the amount of their allowed class 6 claims and an interest in the Medley/MVF Plan Trust.[20] Class 9 interest holders will receive nothing under the Medley/VDMS Plan and would receive nothing in a Chapter 7 liquidation of the Debtor – meaning that Class 9 interest holders are receiving not less than they would receive in a Chapter 7 liquidation of the Debtor.

Attached to the Debtor's Disclosure Statement as Exhibit 4, and attached as Exhibit 4 hereto, in balance sheet format, is the Debtor's liquidation analysis proving that all creditors and

---

[20] Given the procedural posture of the MVF Commercial Tort Claim Matter, the Medley/VDMS Plan Proponents do not project that such creditors will receive any recovery on account of their

interest holders will receive at least as much under the Medley/VDMS Plan as such creditor or interest holder would receive under a Chapter 7 liquidation of the Debtor.  This information is provided by the Debtor and modified by the Medley/VDMS Plan Proponents solely with respect to class 6 general unsecured creditors.  Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Medley/VDMS Plan as such creditor or interest holder would receive under a Chapter 7 liquidation of the Debtor.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE MEDLEY/VDMS PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION OF THE DEBTOR[21] |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax and Non-Tax Claims | 100% | 100% |
| Class 1 = AFS | 100% | 100% |
| Class 2 = Medley | Agreed to Accept Medley/VDMS Plan | 18.5%[22] |
| Class 3 = Priority Wage | 100% | 100% |
| Class 4 = UnitedHealth | 100% | 31% to 54% |
| Class 5 = SAG-AFTRA Etc. | 100% | 31% to 54% |
| Class 6 = General Unsecured | 50% Estimated | 0% to nominal |
| Class 7 = Convenience class | 100% | 0% to nominal |
| Class 8 = Wilcon | Per Settlement 100% | 0% to nominal |
| Class 9 = Equity Interests | 0% | 0% |

C.    **Feasibility.**

Another requirement for confirmation involves the feasibility of the plan, which means that confirmation of the Medley/VDMS Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Medley/VDMS Plan, unless such liquidation or reorganization is proposed in the Medley/VDMS Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether there will be enough cash on hand on the Effective Date of the Medley/VDMS

interest in the Medley/VDMS Plan Trust.
[21] Please refer to the Point.360 Liquidation Analysis.

Plan to pay all the claims and expenses which are entitled to be paid on such date. There is no risk to this aspect of feasibility of the Medley/VDMS Plan because VDMS will be funding all of the cash requirements under the Medley/VDMS Plan which are comprised of all of the payments being made to the Debtor's creditors under the Medley/VDMS Plan coupled with the Debtor's cash on hand. **As itemized below, the total cash requirement under the Medley/VDMS Plan is estimated to be approximately $8,766,578, and VDMS will have all of its cash requirements available at the time of confirmation of the Medley/VDMS Plan.**

**Administrative Claims - $375,000 Est.**
**LA County Tax - $148,219**
**IRS - $1,000**
**FTB - $800**
**County of Orange - $1,802**
**Class 1 (Austin) - $2,475,676**
**Class 2 (Medley) - $3,500,000**
**Class 3 (Priority 507(a)(4)) - $92,685**
**Class 4 (Priority 507(a)(5)) - $142,152**
**Class 5 (Priority 507(a)(5)) - $37,466**
**Class 6 (General Unsecured) - $1,500,000-$1,550,000 Est.[23]**
**Class 7 (Convenience) - $52,467**
**Class 8 (Wilcon) - $124,274**
**Four Months Prepaid Rent for HWAY Lease - $262,576**
**Media Center Lease Cure Payment - $152,461**
**Less Debtor's Projected Cash on Hand – ($100,000)**
**Total Cash Needed for Plan Confirmation – $8,816,578**

---

[22] Estimated as ((Liquidation Value of PP&E + Deposits)/(Total Medley Claims)).

[23] As explained above, the Medley/VDMS Plan Fund will be funded by VDMS with cash in the amount of $2,401,591. The funds in the Medley/VDMS Plan Fund will be used first to pay in full all (i) allowed administrative claims, (ii) allowed priority tax claims, (iii) allowed class 3, 4, 5 and 7 claims, and (iv) U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) through the entry of a final decree closing this case. The balance of the funds in the Medley/VDMS Plan Fund after all of the foregoing claims have been paid in full will be distributed on a pro rata basis to the holders of allowed class 6 claims after the deadline to file rejection damage claims from Rejected Contracts has passed and all disputed allowed class 6 claims have been resolved to Final Order. This estimated figure of $1,500,000-$1,550,000 is what is estimated to be available to be distributed to holders of allowed class 6 claims based upon the Debtor's information.

The second aspect considers whether the Medley/VDMS Plan Proponents will have enough cash over the life of the Medley/VDMS Plan to make the required Medley/VDMS Plan payments. This second aspect of feasibility is not applicable to the Medley/VDMS Plan because all payments being made to the Debtor's creditors under the Medley/VDMS Plan after the payments made by VDMS on the Effective Date will be made from the Medley/VDMS Plan Fund, which is being funded with cash by VDMS on the Effective Date rather than with payments made over time, and from the Medley/VDMS Plan Trust. As a result, the Debtor's creditors are not incurring any risk regarding the sale of any assets or the future financial performance of VDMS.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

V.

**EFFECT OF CONFIRMATION OF THE MEDLEY/VDMS PLAN**

**A.    Binding Effect.**

Except as otherwise provided in Code section 1141(d)(3), and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Medley/VDMS Plan shall bind every holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Medley/VDMS Plan and whether such holder has accepted the Medley/VDMS Plan.

**B.    Discharge.**

The Medley/VDMS Plan provides that the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Medley/VDMS Plan, as specified in Code

50

section 1141.  The terms of the Medley/VDMS Plan will bind all creditors and parties in interest to the provisions thereof.

**C.     Release of Liens.**

Except as otherwise specifically provided in the Medley/VDMS Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Medley/VDMS Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Medley/VDMS Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the secured claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the estate shall be fully released and discharged, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtor.

**D.     Waiver of Statutory Limitations on Releases.**

The releases contained in the Medley/VDMS Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

**E.     Injunction Related to Releases.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Medley/VDMS Plan, including the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities of the Debtor and the Debtor's estate against Medley and any of its successors, assigns, and representatives, whether direct, derivative, or otherwise, released on the Effective Date as set forth in the Medley/VDMS Plan.

51

**F.    Modification of the Medley/VDMS Plan.**

The Medley/VDMS Plan Proponents may modify the Medley/VDMS Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Medley/VDMS Plan.

The Medley/VDMS Plan Proponents may also seek to modify the Medley/VDMS Plan at any time after confirmation only if (1) the Medley/VDMS Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**G.    Post-Confirmation Status Report.**

Within 120 days of the entry of the Confirmation Order, the Medley/VDMS Plan Proponents shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Medley/VDMS Plan.  The status report shall be served on the United States Trustee, the Creditors' Committee, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities until a final decree is entered closing this case.  U.S. Trustee Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid from the Medley/VDMS Plan Fund pending the entry of a final decree closing this case.

**H.    Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss this case under Code section 1112(b), after the Medley/VDMS Plan is confirmed, if there is a default in performing the Medley/VDMS Plan.  If the Court orders this case converted to Chapter 7 after the Medley/VDMS Plan is confirmed, then all of the proceeds from the sale, transfer and assignment of the assets of this estate to VDMS under the Medley/VDMS Plan that has not been disbursed pursuant to the Medley/VDMS Plan, will revest in the Chapter 7 estate.  The automatic stay will

be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Confirmation Order if the Confirmation Order was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation of the Medley/VDMS Plan within 180 days after the entry of the Confirmation Order.

## I.    Final Decree.

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Debtor shall file a motion with the Court to obtain a final decree to close this case.

**Respectfully submitted:**

Dated: February 21, 2019            **WINSTON & STRAWN LLP**

By:  /s/ Justin E. Rawlins
Justin E. Rawlins
Counsel for Medley Capital Corporation
and Medley Opportunity Fund II LP

Dated: February 21, 2019            **MEDLEY CAPITAL CORPORATION**
a Delaware corporation

By: MCC Advisors LLC,
a Delaware limited liability company
its investment manager

By: _Richard Allorto_
Name: Richard T. Allorto, Jr.
Title: Chief Financial Officer

Dated: February 21, 2019            **MEDLEY OPPORTUNITY FUND II LP**
a Delaware limited partnership

By: MOF II Management LLC,
a Delaware limited liability company,
its investment manager

By: _Richard Allorto_
Name: Richard T. Allorto, Jr.
Title: Chief Financial Officer

1    Dated: February 21, 2019

2

3

4

5    Dated: February 21, 2019

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz
A Professional Corporation

By: _/s/ David S. Kupetz_
      David S. Kupetz
      Counsel for Visual Data Media Services, Inc.

**VISUAL DATA MEDIA SERVICES, INC.**

By: _____

Its: ___CEO_____

# EXHIBIT 1

EXHIBIT 1                                    000055

| | Summary of Agreed to Claims by Class | | Priority | | Unsecured |
|---|---|---|---|---|---|
| Secured (austin and Medley) | $ | 9,007,267.11 | | | |
| Priority Other Claimed on POC | $ | 142,152.77 | $ | 142,152.77 | |
| Priority Wage | $ | 92,685.13 | $ | 92,685.13 | |
| Sag/Aftra retirement fund-Priority | $ | 37,468.75 | $ | 37,468.75 | |
| Priority Tax | $ | 151,822.34 | $ | 151,822.34 | |
| Unsecured Tax | $ | - | | $ | - |
| General Unsecured | $ | 1,669,695.01 | | $ | 1,669,695.01 |
| Wilcon | | 124274.69 | | | |
| Unsecured Directors/insiders | $ | 803,926.13 | | $ | 803,926.13 |
| Leases | $ | 185,902.65 | | | |
| total | $ | 12,215,194.58 | $ | 424,128.99 | $ | 2,473,621.14 |

| | | | | | |
|---|---|---|---|---|---|
| General Unsecured - Disputed, included above) | $ | (163,506.24) | | $ | (163,506.24) |

EXHIBIT 1

000056

## Priority Employee Claims

| Name | priority | Claim paid at 100% |
|------|---------:|-------------------:|
| Employee-name redacted for privacy | $ 2,729.80 | $ 2,729.80 |
| Employee-name redacted for privacy | $ 1,496.21 | $ 1,496.21 |
| Employee-name redacted for privacy | $ 586.43 | $ 586.43 |
| Employee-name redacted for privacy | $ 12,665.13 | $ 12,665.13 |
| Employee-name redacted for privacy | $ 689.85 | $ 689.85 |
| Employee-name redacted for privacy | $ 209.16 | $ 209.16 |
| Employee-name redacted for privacy | $ 12,850.00 | $ 12,850.00 |
| Employee-name redacted for privacy | $ 2,327.79 | $ 2,327.79 |
| Employee-name redacted for privacy | $ 8,670.88 | $ 8,670.88 |
| Employee-name redacted for privacy | $ 564.38 | $ 564.38 |
| Employee-name redacted for privacy | $ 359.04 | $ 359.04 |
| Employee-name redacted for privacy | $ 2,091.48 | $ 2,091.48 |
| Employee-name redacted for privacy | $ 3,110.02 | $ 3,110.02 |
| Employee-name redacted for privacy | $ 430.95 | $ 430.95 |
| Employee-name redacted for privacy | $ 344.22 | $ 344.22 |
| Employee-name redacted for privacy | $ 1,164.29 | $ 1,164.29 |
| Employee-name redacted for privacy | $ 1,006.16 | $ 1,006.16 |
| Employee-name redacted for privacy | $ 411.45 | $ 411.45 |
| Employee-name redacted for privacy | $ 8,149.81 | $ 8,149.81 |
| Employee-name redacted for privacy | $ 722.16 | $ 722.16 |
| Employee-name redacted for privacy | $ 1,173.15 | $ 1,173.15 |
| Employee-name redacted for privacy | $ 203.40 | $ 203.40 |
| Employee-name redacted for privacy | $ 2,388.00 | $ 2,388.00 |
| Employee-name redacted for privacy | $ 332.88 | $ 332.88 |
| Employee-name redacted for privacy | $ 1,590.72 | $ 1,590.72 |
| Employee-name redacted for privacy | $ 4,678.75 | $ 4,678.75 |
| Employee-name redacted for privacy | $ 784.10 | $ 784.10 |
| Employee-name redacted for privacy | $ 6,070.26 | $ 6,070.26 |
| Employee-name redacted for privacy | $ 1,179.23 | $ 1,179.23 |
| Employee-name redacted for privacy | $ 284.85 | $ 284.85 |
| Employee-name redacted for privacy | $ 523.60 | $ 523.60 |
| Employee-name redacted for privacy | $ 332.64 | $ 332.64 |
| Employee-name redacted for privacy | $ 1,761.38 | $ 1,761.38 |
| Employee-name redacted for privacy | $ 4,067.61 | $ 4,067.61 |
| Employee-name redacted for privacy | $ 1,220.40 | $ 1,220.40 |
| Employee-name redacted for privacy | $ 190.50 | $ 190.50 |
| Employee-name redacted for privacy | $ 3,864.00 | $ 3,864.00 |
| Employee-name redacted for privacy | $ 16.32 | $ 16.32 |
| Employee-name redacted for privacy | $ 602.35 | $ 602.35 |
| Employee-name redacted for privacy | $ 841.78 | $ 841.78 |
| | $ 92,685.13 | $ 92,685.13 |

EXHIBIT 1                                                    000057

### General Unsecured Creditors

| UNSECURED CREDITOR | Disputed | Claim |
|---|---|---|
| ACCO ENGINEERED SYSTEMS | Disputed | $ 40,467.68 |
| ADP, INC. | | $ 13,469.88 |
| ADVANCED DIGITAL TECH., INC | | $ 8,668.90 |
| AFCO | | $ 38,877.64 |
| ALT SYSTEMS | Disputed | $ 56,102.80 |
| AMERICAN EXPRESS | | $ 47,376.70 |
| AMERICAN STOCK TRANSFER & TRUST CO., INC | | $ 3,920.00 |
| APPLEONE EMPLOYMENT SERVICES | | $ 7,080.06 |
| AT&T MOBILITY | | $ 3,119.64 |
| ATSBAHA, DAVID | | $ 5,247.00 |
| AUDIO INTERVISUAL DESIGN, INC. | | $ 23,536.04 |
| BAUMANN, JOHN S. | | $ 4,700.00 |
| BELL, SAM P. | | $ 30,375.00 |
| BLUE SHIELD OF CALIFORNIA(Calif.Physicians Service) | | $ 186,141.94 |
| BURBANK WATER AND POWER | | $ 20,189.12 |
| CABRAL,STELLA MARIE | | $ 2,960.00 |
| CDW DIRECT, LLC | | $ 2,636.58 |
| CIGNA | Disputed | $ 23,354.72 |
| DAYSTROM TECHNOLOGY GROUP | | $ 4,938.50 |
| DELANG, J. R. | | $ 28,250.00 |
| DELL MARKETING L.P. | | $ 5,790.16 |
| DIGITAL MEDIA SERVICES, INC. | | $ 4,498.82 |
| DIGITAL RIVER, INC. | | $ 4,198.92 |
| FEDERAL EXPRESS | | $ 3,350.14 |
| FRONTLINE, LLC | | $ 9,600.00 |
| HARBOR CENTER PARTNERS | | $ 14,558.62 |
| HEMAR, ROUSSO & HEALD, LLP | | $ 4,075.00 |
| HKG, LLP | | $ 8,300.00 |
| HUTCHINS, GREGORY | | $ 18,250.00 |
| IBM | | $ 15,425.00 |
| INGRAM ENTERTAINMENT, INC. | | $ 2,633.57 |
| INTERLINE BRANDS INC. | | $ 4,812.09 |
| INTERNAL REVENUE SERVICE | | $ 32,451.90 |
| IVB MEDIA SERVICES, INC. | | $ 13,047.80 |
| LA MEDIA TECH CENTER OWNERS ASSOC. | | $ 34,794.56 |
| LAW OFFICES OF SAM CHANDRA, APC | | $ 14,705.95 |
| LDP ASSOCIATES, INC. | | $ 4,700.00 |
| LINCOLN FINANCIAL GROUP | | $ 8,187.25 |
| LIU & LIU LLP | | $ 4,600.00 |
| MCCABE & HOGAN, PC | | $ 2,593.50 |
| MEDIA DISTRIBUTORS | | $ 3,994.10 |
| MEDIA STORAGE GROUP | | $ 96,776.30 |
| MERIT PROFILES | | $ 2,708.00 |
| MESSENGERS & DISTRIBUTION | | $ 16,532.70 |
| METLIFE - GROUP BENEFITS | | $ 18,641.65 |
| NETCENTRA, INC. | | $ 6,055.10 |
| OFFICE SOLUTIONS | | $ 2,829.10 |
| OKI, G. SAMUEL | | $ 24,750.00 |
| OZ LAW GROUP, INC. | | $ 3,253.00 |
| PARKING NETWORK | | $ 21,447.00 |
| PEDROZA GROUP, INC. | | $ 2,661.80 |
| PRASAD GLOBAL MEDIA SERVICES LLC | | $ 18,000.00 |

EXHIBIT 1                                                          000058

## General Unsecured Creditors

| UNSECURED CREDITOR | Disputed | Claim |
|---|---|---|
| REEP-2300 EMPIIRE CA LLC | $ | 15,996.90 |
| RHYS TILLEY'S UNOCAL 76 | $ | 7,875.26 |
| SAMY'S CAMERA | $ | 11,400.00 |
| SCENIC EXPRESSIONS, INC. | $ | 18,900.00 |
| SCRIPTZ | $ | 4,786.00 |
| SFERA LAB LLC | $ | 96,295.72 |
| SIGNIANT, INC. | $ | 60,000.00 |
| SINGER LEWAK LLP | $ | 22,875.00 |
| SOHONET, INC. | $ | 48,062.80 |
| SONY ELECTRONICS INC (P360) | $ | 51,987.36 |
| SUB-TECHS LOCALIZATION SERVICES | $ | 88,007.05 |
| SUPPLYWORKS | $ | 4,557.08 |
| SWITCH, THE (beer Enterprises) | $ | 26,887.31 |
| TELEPACIFIC COMMUNICATIONS | $ | 9,632.77 |
| TROY GOULD PC | $ | 74,020.38 |
| ULINE | $ | 6,258.46 |
| UNIVERSAL CITY STUDIOS LLC | $ | 6,360.50 |
| VISION SERVICE PLAN | $ | 5,643.06 |
| WRI WEST GATE SOUTH LP | $ | 14,644.85 |
| ZAUN GLASS COMPANY, INC. | $ | 2,922.00 |
| ZAYO GROUP | $ | 67,964.28 |
| ZENITH INSURANCE COMPANY | $ | 10,017.00 |

EXHIBIT 1

**Convenience Class of Creditors**

| | Agreed Claim | 75% |
|---|---|---|
| RAB PRINTING SOLUTIONS | $ 2,386.75 | $ 1,790.06 |
| TALX CORPORATION | $ 2,370.60 | $ 1,777.95 |
| GOLDEN STATE LOCK & SAFE SERVICE | $ 2,145.06 | $ 1,608.80 |
| PITNEY BOWES, INC | $ 1,961.04 | $ 1,470.78 |
| NAGADOI, MASHASHI | $ 1,789.50 | $ 1,342.13 |
| WASTE MANAGEMENT - SUN VALLEY | $ 1,764.47 | $ 1,323.35 |
| RED HAWK FIRE & SECURITY LLC | $ 1,745.00 | $ 1,308.75 |
| MONTANEZ ELECTRIC INC | $ 1,736.00 | $ 1,302.00 |
| ALLIED ROOFING & WATERPROOFING | $ 1,475.00 | $ 1,106.25 |
| WEATHERITE CORPORATION | $ 1,475.00 | $ 1,106.25 |
| PR NEWSWIRE, INC. | $ 1,457.25 | $ 1,092.94 |
| BRUCE'S ENTERTAINMENT & MEDIA SOLUTIONS | $ 1,420.25 | $ 1,065.19 |
| FAIR, AUDREY | $ 1,406.25 | $ 1,054.69 |
| MILLS, HANS PETER | $ 1,346.25 | $ 1,009.69 |
| TUNGSTEN NETWORK, INC. | $ 1,290.00 | $ 967.50 |
| FIRST CHOICE SERVICES | $ 1,223.57 | $ 917.68 |
| ATLAS SPECIALTY LIGHTING | $ 1,208.00 | $ 906.00 |
| GREEN, VIRGINIA FAYE | $ 1,192.00 | $ 894.00 |
| STERNS, NAOMI | $ 1,176.00 | $ 882.00 |
| PRADEEP, ABHIJIT | $ 1,082.00 | $ 811.50 |
| TESWARE & BRYAN DEVINE & CO. | $ 1,041.74 | $ 781.31 |
| HYLMO, KAREN ANNIKA | $ 950.25 | $ 712.69 |
| WAGEWORKS, INC. | $ 927.50 | $ 695.63 |
| SOUTH COAST AIR QUALITY MANAGEMENT DISTRIC | $ 884.02 | $ 663.02 |
| MONOPRICE | $ 882.57 | $ 661.93 |
| SMART & FINAL, INC | $ 829.06 | $ 621.80 |
| ITD PRINT SOLUTIONS | $ 792.07 | $ 594.05 |
| GRAY, KARYN ANDREA | $ 748.75 | $ 561.56 |
| PUMPMAN | $ 735.00 | $ 551.25 |
| STORINO, SABRINA | $ 700.00 | $ 525.00 |
| STORAGECONTAINER.COM | $ 693.00 | $ 519.75 |
| PARADISO SUBTITLING, INC. | $ 690.75 | $ 518.06 |
| DUN & BRADSTREET | $ 666.66 | $ 500.00 |
| SHRED-IT USA | $ 647.22 | $ 485.42 |
| ANTONIO FARRE PRODUCTIONS LLC | $ 625.00 | $ 468.75 |
| THYSSEN KRUPP ELEVATOR CORP. | $ 598.94 | $ 449.21 |
| RAM AIR ENGINEERING, INC. | $ 565.64 | $ 424.23 |
| MILLS TECHNIQUE, INC. | $ 517.56 | $ 388.17 |
| ZOYSTER OFFICE PRODUCTS | $ 511.33 | $ 383.50 |
| HULA POST PRODUCTION | $ 500.00 | $ 375.00 |
| KIM, SUN MIN | $ 468.00 | $ 351.00 |
| TEAC AMERICA, INC. | $ 463.79 | $ 347.84 |
| HOME DEPOT/GECF | $ 443.39 | $ 332.54 |
| ROY, SANDRINE | $ 429.25 | $ 321.94 |
| ARKENA INC | $ 400.00 | $ 300.00 |
| LEGEND | $ 378.49 | $ 283.87 |
| CINTAS CORPORATION | $ 368.06 | $ 276.05 |
| SDC CONSULTING, INC. | $ 300.00 | $ 225.00 |
| ROOSE, PATRICK | $ 294.50 | $ 220.88 |
| CANON SOLUTIONS AMERICA, INC. | $ 287.86 | $ 215.90 |
| UNITED PARCEL SERVICE | $ 273.98 | $ 205.49 |
| PCM SALES | $ 252.71 | $ 189.53 |
| CATALINA PAINT | $ 247.27 | $ 185.45 |

EXHIBIT 1

## Convenience Class of Creditors

| | Agreed Claim | | 75% |
|---|---|---|---|
| BITTREE, INC | $ | 150.90 | $ | 113.18 |
| DIRECTV | $ | 131.98 | $ | 98.99 |
| WESTERN BAGEL BAKING CORP. | $ | 127.28 | $ | 95.46 |
| SPECTRUM BUSINESS | $ | 119.41 | $ | 89.56 |
| DONNELLAN, KRISTINA | $ | 108.75 | $ | 81.56 |
| McCALLA COMPANY | $ | 103.48 | $ | 77.61 |
| ARBOL, EUGENIA | $ | 103.00 | $ | 77.25 |
| AGENTS AND CORPORATIONS, INC. | $ | 99.00 | $ | 74.25 |
| SECURITY SIGNAL DEVICES | $ | 93.90 | $ | 70.43 |
| KELLY, SIMON RICHARD | $ | 88.00 | $ | 66.00 |
| PONTICELLI, LIUBOV | $ | 69.00 | $ | 51.75 |
| EBERHARDT, DIANE | $ | 67.50 | $ | 50.63 |
| GRAY, JOHN THOMAS | $ | 63.00 | $ | 47.25 |
| GONZALEZ, MARIA A. | $ | 60.00 | $ | 45.00 |
| GAS COMPANY, THE | $ | 54.73 | $ | 41.05 |
| EMILIEN, EDDY | $ | 53.75 | $ | 40.31 |
| TURNER, NICOLE | $ | 46.68 | $ | 35.01 |
| FRAISSINET, KEITH | $ | 44.00 | $ | 33.00 |
| PROTECTION ONE ALARM MONITORING | $ | 36.04 | $ | 27.03 |
| CONNEX INTERNATIONAL, INC. | $ | 35.00 | $ | 26.25 |
| BELL, ERIC ANDREW | $ | 33.00 | $ | 24.75 |
| TOLME, AINO | $ | 7.50 | $ | 5.63 |
| KNAI, TORBJORN | $ | 3.75 | $ | 2.81 |
| MARTIN, ERENDIRA TORRES | $ | 3.00 | $ | 2.25 |
| Total | $ | 52,467.00 | $ | 39,350.25 |

EXHIBIT 1

000061

# EXHIBIT 2

EXHIBIT 2                                        000062

**Point.360**
Historical P&Ls 2012-2017

| | FYE 2012 | % | FYE 2013 | % | FYE 2014 | % | FYE 2015 | % | FYE 2016 | % | FYE 2017 | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUE | 34,969,514 | 100.0 | 30,936,633 | 100.0 | 26,733,013 | 100.0 | 21,560,683 | 100.0 | 37,870,428 | 100.0 | 27,507,076 | 100.0 |
| | | | | | | | | | | | | |
| COST OF GOODS SOLD: | | | | | | | | | | | | |
| Material Cost | 1,941,216 | 5.6 | 1,510,181 | 4.9 | 1,254,181 | 4.9 | 867,293 | 4.0 | 1,023,517 | 2.7 | 620,945 | 2.2 |
| Wages & Benefits | 13,104,765 | 37.5 | 13,159,338 | 42.5 | 10,746,642 | 41.8 | 9,051,715 | 42.0 | 19,665,375 | 52.9 | 14,453,028 | 52.0 |
| Production Equipment | 661,537 | 2.5 | 712,241 | 2.3 | 623,292 | 2.4 | 451,044 | 2.1 | 1,390,493 | 3.7 | 678,156 | 2.4 |
| Delivery Costs | 717,929 | 2.1 | 563,694 | 1.9 | 473,777 | 1.8 | 280,945 | 1.3 | 485,352 | 1.3 | 244,677 | 0.9 |
| Outside Services | 416,937 | 1.2 | 660,785 | 2.2 | 926,671 | 3.6 | 656,763 | 4.0 | 1,413,346 | 3.8 | 1,564,914 | 5.7 |
| Facility Costs | 2,799,763 | 8.0 | 2,050,176 | 6.6 | 2,140,353 | 8.3 | 1,932,752 | 9.0 | 3,859,822 | 10.3 | 4,248,339 | 15.3 |
| Allocations (non-corporate) | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Depreciation | 2,221,594 | 6.4 | 1,722,149 | 5.6 | 1,181,979 | 4.6 | 743,659 | 3.4 | 1,179,360 | 3.1 | 1,141,024 | 4.1 |
| TOTAL COST OF SERVICES | 22,063,771 | 63.1 | 20,418,764 | 66.0 | 17,347,064 | 67.4 | 14,206,190 | 65.8 | 29,244,665 | 77.6 | 22,681,255 | 82.6 |
| GROSS MARGIN | 12,895,743 | 36.9 | 10,517,669 | 34.0 | 9,385,919 | 32.6 | 7,374,493 | 34.2 | 8,325,864 | 22.2 | 4,825,791 | 17.4 |
| | | | | | | | | | | | | |
| SELLING EXPENSES: | | | | | | | | | | | | |
| Sales Personnel Costs | 732,192 | 2.1 | 687,373 | 2.2 | 779,956 | 3.0 | 603,168 | 2.8 | 1,461,342 | 3.9 | 876,905 | 3.2 |
| Travel & Entertainment | 63,671 | 0.2 | 105,973 | 0.3 | 108,097 | 0.4 | 89,056 | 0.4 | 122,299 | 0.3 | 70,028 | 0.3 |
| Advertising & Promo | 71,381 | 0.2 | 43,187 | 0.1 | 38,708 | 0.2 | 64,314 | 0.3 | 10,658 | 0.0 | 9,584 | 0.0 |
| Bad Debt Expense | 38,351 | 0.1 | 34,651 | 0.1 | (95,522) | (0.4) | 24,168 | 0.1 | 42,540 | 0.1 | 37,191 | 0.1 |
| Allocations (sales pools) | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| | | | | | | | | | | | | |
| GENERAL & ADMIN COSTS: | | | | | | | | | | | | |
| Admin Personnel Costs | 5,778,504 | 16.5 | 5,676,969 | 19.0 | 5,544,331 | 21.5 | 5,352,551 | 24.8 | 9,750,111 | 25.0 | 7,560,139 | 27.3 |
| Supplies | 530,907 | 1.5 | 794,085 | 2.6 | 519,603 | 2.0 | 233,690 | 1.1 | 323,161 | 0.9 | 271,546 | 1.0 |
| Professional Fees | 472,483 | 1.4 | 438,329 | 1.4 | 418,445 | 1.6 | 437,547 | 2.0 | 660,818 | 1.8 | 558,560 | 2.0 |
| Facility Costs | 2,074,401 | 5.9 | 1,787,684 | 5.8 | 1,828,112 | 7.1 | 1,522,090 | 7.1 | 1,678,158 | 5.0 | 2,047,796 | 7.4 |
| Other Indirect | 1,575,639 | 4.5 | 1,530,156 | 4.9 | 1,535,125 | 6.0 | 1,382,665 | 6.4 | 1,968,566 | 5.3 | 2,290,126 | 8.2 |
| Allocations (non-corporate) | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Depreciation | 712,338 | 2.0 | 662,914 | 2.2 | 659,120 | 2.6 | 619,766 | 2.9 | 934,493 | 2.5 | 952,221 | 3.4 |
| Amortization | 3,955 | 0.0 | 221 | 0.0 | 0 | 0.0 | 0 | 0.0 | 62,500 | 0.2 | 62,500 | 0.2 |
| DIRECT SELLING, GEN. & ADMIN | 12,073,822 | 34.6 | 11,881,763 | 38.7 | 11,336,976 | 44.1 | 10,329,056 | 47.9 | 17,334,664 | 45.0 | 14,766,846 | 53.4 |
| OP INC BEFORE CORP ALLOCATION | 821,921 | 2.4 | (1,463,894) | (4.7) | (2,950,057) | (11.5) | (2,954,663) | (13.7) | (9,909,000) | (23.7) | (9,930,653) | (35.7) |
| | | | | | | | | | | | | |
| Corp Allocation | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| OPERATING INCOME | 821,921 | 2.4 | (1,463,894) | (4.7) | (2,950,057) | (11.5) | (2,954,663) | (13.7) | (9,909,000) | (23.7) | (9,930,653) | (35.7) |
| | | | | | | | | | | | | |
| Interest (Income) | (19,990) | (0.1) | 0 | 0.0 | 47 | 0.0 | 0 | 0.0 | (13) | 0.0 | 0 | 0.0 |
| Interest Expense | 833,974 | 2.4 | 393,940 | 1.3 | 285,386 | 1.1 | 255,628 | 1.2 | 544,620 | 1.4 | 628,750 | 2.3 |
| Derivative Change | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Other (Income) Expense | (439,660) | (1.3) | (547,601) | (2.1) | (587,587) | (2.3) | (324,574) | (1.5) | (4,890,075) | (13.3) | (831,587) | (3.0) |
| Income Taxes | 0 | 0.0 | 23,253 | 0.1 | 2,446 | 0.0 | 0 | 0.0 | (2,709,280) | (7.2) | 0 | 0.0 |
| TOTAL OTHER (INCOME)/EXPENSE | 374,326 | 1.1 | (230,301) | (0.7) | (300,007) | (1.2) | (68,946) | (0.3) | (7,160,748) | (19.0) | (203,337) | (0.7) |
| NET INCOME (LOSS) | 447,596 | 1.3 | (1,233,593) | (4.0) | (2,650,050) | (10.3) | (2,885,617) | (13.4) | (1,768,262) | (4.7) | (9,727,417) | (35.0) |
| | | | | | | | | | | | | |
| EBITDA | 4,199,467 | 12.0 | 1,562,992 | 5.1 | (521,070) | (2.0) | (1,266,544) | (5.9) | (1,740,552) | (4.6) | (8,943,122) | (25.0) |

EXHIBIT 2

000063

**Point.360**

Historical Balance Sheets FYE 2015-2017

| | 12 mos ended Jun-15 | 12 mos ended Jun-16 | 12 mos ended Jun-17 |
|---|---|---|---|
| **Assets** | | | |
| Cash | $ 22,331 | $ - | $ 54,044 |
| Accounts Receivable | $ 3,316,092 | $ 5,022,398 | $ 4,391,976 |
| Allowance for Bad Debts | $ (248,795) | $ (293,133) | $ (305,577) |
| Accounts Receivable, Net | $ 3,067,297 | $ 4,729,266 | $ 4,086,400 |
| | | $ - | $ - |
| Other Receivables | $ 127,236 | $ 178,549 | $ 29,470 |
| Inventory | $ 135,263 | $ 127,101 | $ 112,194 |
| Prepaid Expenses | $ 187,080 | $ 318,994 | $ 173,556 |
| Prepaid Income Taxes | $ - | $ - | $ - |
| Deferred Income Taxes | $ - | $ - | $ - |
| Total Current Assets | $ 3,539,207 | $ 5,402,680 | $ 4,455,664 |
| | | $ - | $ - |
| Property, Plant & Equipment | $ 65,203,799 | $ 71,890,105 | $ 63,774,403 |
| Accumulated Depreciation | $ (55,977,752) | $ (57,965,744) | $ (59,113,750) |
| Property, Plant & Equipment, net | $ 9,226,048 | $ 13,924,361 | $ 4,660,653 |
| | | $ - | $ - |
| Deposits & Other | $ 614,466 | $ 927,314 | $ 1,046,185 |
| Deferred Income Taxes - LT | $ - | $ 419,043 | $ 419,043 |
| Goodwill, net | $ - | $ - | $ - |
| Other Intangibles, net | $ - | $ 287,500 | $ 225,000 |
| Investment in Acquisitions | $ - | $ - | $ - |
| Total Assets | $ 13,379,721 | $ 20,960,898 | $ 10,806,525 |
| | | $ - | $ - |
| **Liabilities and Shareholders' Equity** | | $ - | $ - |
| | | $ - | $ - |
| Accounts Payable | $ 713,668 | $ 837,356 | $ 2,305,495 |
| Accrued Wages & Benefits | $ 972,238 | $ 2,057,303 | $ 1,541,700 |
| Accrued Expenses - Other | $ 25,781 | $ 187,831 | $ 73,199 |
| Revolving Line of Credit | $ 123,527 | $ 425,423 | $ 2,145,650 |
| Curr. Portion of Notes Payable | $ 4,937,900 | $ 4,716,800 | |
| Curr. portion of cap. leases | $ 55,301 | $ 101,897 | $ 79,802 |
| Income Taxes Payables | $ - | $ 419,043 | $ 419,043 |
| Other Current Liabilities | $ 387,110 | $ 387,110 | $ 586,266 |
| Total Current Liabilities | $ 7,215,525 | $ 9,132,764 | $ 7,151,154 |
| | | | |
| Deferred Tax Liability | $ - | $ - | $ - |
| Long Term cap. leases | $ 87,820 | $ 78,780 | $ 114,043 |
| Derivative Valuation Liability | $ - | $ - | |
| Long term notes payable | $ - | $ 5,868,000 | $ 6,338,120 |
| Other Long Term Liabilities | $ 1,838,771 | $ 1,451,661 | $ 2,117,817 |
| Total Long Term Liabilities | $ 1,926,591 | $ 7,398,442 | $ 8,569,980 |
| Total Liabilities | $ 9,142,116 | $ 16,531,206 | $ 15,721,134 |
| | | $ - | $ - |
| **Stockholders' Equity** | | $ - | $ - |
| Capital Stock | $ 32,889,916 | $ 34,840,255 | $ 35,223,570 |
| Distributions | $ - | $ - | $ - |
| Retained Earnings | $ (25,766,694) | $ (28,652,311) | $ (30,410,563) |
| Current Earnings | $ (2,885,617) | $ (1,758,252) | $ (9,727,617) |
| Total Stockholders' Equity | $ 4,237,605 | $ 4,429,692 | $ (4,914,609) |
| Total Liabilities & Stockholders' Equity | $ 13,379,721 | $ 20,960,898 | $ 10,806,525 |

EXHIBIT 2

000064

# EXHIBIT 3

EXHIBIT 3                                                    000065

**Point.360**

**Liquidation Analysis**

At Feb. 28, 2019

**Assets**

| | 2/28/2019 Est. Book Value (Unaudited) | | Estimated Recovery % | | Estimated Proceeds $ | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Cash | $ 95,540 | [1] | 100% | 100% | $ 95,540 | $ 95,540 |
| **Accounts Receivable:** | | | | | | |
| Accounts Receivable Net of Doubtful Accounts | 3,763,414 | [2] | 70% | 80% | 2,634,390 | 3,010,731 |
| Austin Secured Note | 1,963,942 | | | | 1,963,942 | 1,963,942 |
| Accounts Receivable Equity | | | | | 670,448 | 1,046,789 |
| Other Receivables | 125,000 | [3] | 80% | 100% | 100,000 | 125,000 |
| Inventory | 50,000 | [4] | 50% | 70% | 25,000 | 35,000 |
| Prepaid Expenses | 238,268 | [5] | 0% | 20% | - | 47,654 |
| **Secured Claims** | | | | | | |
| Medley-Disputed | 6,500,000 | [15] | | | | |
| Property, Plant & Equipment-Medley collateral | 726,034 | [6] | 0% | 0% | - | - |
| Deposits-Medley Collateral | 200,000 | [7] | 0% | 0% | - | - |
| Deferred Income Taxes - LT | 419,043 | [8] | 0% | 0% | - | - |
| Intangible Assets | 120,833 | [9] | 0% | 20% | - | 24,167 |
| Total Proceeds Available for Distribution | | | | | $ 890,988 | $ 1,374,149 |

**Chapter 7 Administrative Claims**

| | | | | | Low | High |
|---|---|---|---|---|---|---|
| Trustee Fees | | [10] | | | 108,648 | 123,143 |
| Trustee's Counsel and Related | | [11] | | | 100,000 | 200,000 |
| Rent and Storage | | [12] | | | 400,000 | 500,000 |
| Wind-Down and Professional Fees | | | 5.00% | 10.00% | 44,549 | 137,415 |
| Contingency | | | 5.00% | 5.00% | 44,549 | 68,707 |
| Total Liquidation Costs | | | | | 697,747 | 1,029,265 |

| | | | | | Low | High |
|---|---|---|---|---|---|---|
| **Net Proceeds Available to Creditors** | | | | | $ 193,241 | $ 344,884 |

**Estimated Recovery to Creditors:**

| Priority Claims | | | | | | |
|---|---|---|---|---|---|---|
| Professional Fees | $ | 250,000 | | | | |
| Priority Wages | $ | 92,685 | | | | |
| Priority Taxes | $ | 151,822 | | | | |
| Capital Leases | $ | 52,000 | | | | |
| SAG AFTRA Retirement Fund | $ | 37,469 | | | | |
| United HealthCare | $ | 142,153 | | | | |
| **Total Priority Claims** | $ | 726,129 | | | 726,129 | 726,129 |

| | | | | | Low | High |
|---|---|---|---|---|---|---|
| **Net Proceeds to Unsecured Creditors** | | | | | $ (532,888) | $ (381,245) |

| Unsecured Claims | | | | | | |
|---|---|---|---|---|---|---|
| Unsecured Claims | $ | 1,669,695 | [7, 13] | | | |
| Medley Chapter 7 Deficiency Claim | $ | 5,573,986 | [15] | | | |
| **Total Unsecured Claims** | $ | 7,243,661 | [14] | | 0.0% | 0.0% |

[1] Cash reflected in Debtor's projections as of Feb. 28, 2019.
[2] These percentages are based upon a review of the detailed aging balances and management's assessment of the potential collectability.
[3] Other receivables consist of receivables not directly related to products sold, includes elevator sub-lease, Beachwood payroll receivable and Sony rebate receivable.
[4] Inventory consists of raw, work-in-progress and finished goods. The recovery range is based primarily on the Micor inventory appraisal report, with appropriate discounts.
[5] Prepaids are primarily prepaid service contracts and are believed to be only minimally recoverable.
[6] This analysis assumes that the PP&E secures Medley's note. It further assumes that no equity would flow from Medley's collateral to the other creditors in liquidation. The value shown is derived from an appraisal report dated Aug. 15, 2016
[7] This analysis assumes that the value of the Deposits in a liquidation scenario is sharply reduced based on the likelihood of landlord offsets for lease defaults.
[8] Deferred Tax asset is assumed to have no liquidation value in the absence of future taxable income.
[9] Intangible assets include customer lists and trademarks which are believed to have little or no value in liquidation.   Debtor owns art that may have some modest liquidation value.
[10] Trustee's fees based on value of assets to be liquidated and distributions to creditors.
[11] Trustee's legal counsel estimate.
[12] It is estimated that a Trustee would incur several months rent at the facilities prior to liquidating the various assets.
[13] The amount showing in this line does not include a Medley deficiency amount.
[14] This analysis does not take into account any Medley litigation claim.
[15] This analysis assumes that the Medley claims are not disallowed or subordinated.

EXHIBIT 3

## Point.360
### Class 6 General Unsecured

| | Estimated Proceeds $ | | Estimated Recovery % | |
|---|---|---|---|---|
| | **High** | **Low** | **High** | **Low** |
| **Total Claims from Class 6** | $1,617,228 | $1,617,228 | | |
| **Post Effective Date Payout from Debtor's Operating Cash Flow** | | | | |
| Payment of $25,000 a month for 36 months | $900,000 | $900,000 | 56% | 56% |
| **Net Proceeds of Sale from Certain Assets [1]** | | | | |
| Gross Value | $1,243,132 | $729,787 | | |
| Unrecoverable assets (20%) | $248,626 | $145,957 | • | |
| Liquidation Cost (8%) | $79,560 | $46,706 | | |
| Net Proceeds | $914,945 | $537,123 | 57% | 33% |
| **Total Recovery for Class 6** | $1,617,228 | $1,437,123 | 100% | 89% |

[1] Value obtained from James Minchella ASA appraisal

EXHIBIT 3                                         000067

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
<tr><td>Debtor name</td><td><b>Point.360 a Califonia corporation</b></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION</td></tr>
<tr><td>Case number (if known)</td><td><b>2:17-bk-22432-WB</b></td></tr>
</table>

☐ Check if this is an
amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

**Part 1:   Summary of Assets**

1.   *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   1a. Real property:
   Copy line 88 from *Schedule A/B* ............................................................................................   $   954,383.00

   1b. Total personal property:
   Copy line 91A from *Schedule A/B* ...........................................................................................   $   7,859,289.41

   1c. Total of all property:
   Copy line 92 from *Schedule A/B* .............................................................................................   $   8,813,672.41

**Part 2:   Summary of Liabilities**

2.   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A *Amount of claim,* from line 3 of *Schedule D* ...............   $   9,007,267.11

3.   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. Total claim amounts of priority unsecured claims:
   Copy the total claims from Part 1 from line 5a of *Schedule E/F* ......................................................   $   0.00

   3b. Total amount of claims of nonpriority amount of unsecured claims:
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* ...............................   +$   4,235,546.57

4.   Total liabilities ...................................................................................................................................   $   13,242,813.68
   Lines 2 + 3a + 3b

EXHIBIT 3                    000068

Fill in this information to identify the case:

Debtor name      **Point.360 a Califonia corporation**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

Case number (if known)    **2:17-bk-22432-WB**

☐ Check if this is an
amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:    Cash and cash equivalents

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
☑ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|
| 2.    Cash on hand | $129,209.88 |
| 2.    Cash on hand | $0.00 |
| 2.    Cash on hand | $100.00 |

3.    Checking, savings, money market, or financial brokerage accounts *(Identify all)*
Name of institution (bank or brokerage firm)        Type of account        Last 4 digits of account number

4.    Other cash equivalents *(Identify all)*

| 5.    Total of Part 1. | $129,309.88 |
|---|---|

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

### Part 2:    Deposits and Prepayments

6. Does the debtor have any deposits or prepayments?

☐ No. Go to Part 3.
☑ Yes Fill in the information below.

7.    Deposits, including security deposits and utility deposits
Description, including name of holder of deposit

| 7.1.    Various - See attached | $243,486.23 |
|---|---|
| 7.2.    see attached schedule | $597,342.30 |

EXHIBIT 3                                000069

Debtor   **Point.360 a Califonia corporation**                    Case number *(if known)*  **2:17-bk-22432-WB**
_____Name_____

8.    Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent
      Description, including name of holder of prepayment

9.    **Total of Part 2.**                                                          | $840,828.53 |
      Add lines 7 through 8. Copy the total to line 81.

**Part 3:   Accounts receivable**

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
☒ Yes Fill in the information below.

11.   Accounts receivable

      11a. 90 days old or less:    **2,986,628.00**    -    **80,919.00**    = ....    | $2,905,709.00 |
                                  ___face amount___        doubtful or uncollectible accounts

12.   **Total of Part 3.**                                                          | $2,905,709.00 |
      Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

**Part 4:   Investments**

**13. Does the debtor own any investments?**

☒ No. Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:   Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.
☒ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. Raw materials **Tape Stock** | 9/30/2017 | $110,164.00 | lower of cost or | $110,164.00 |
| 20. Work in progress **Work in progress estimated at Oct 10, 2017** | | $20,430.00 | pro-rata, cost p | $20,430.00 |

21.   Finished goods, including goods held for resale

22.   Other inventory or supplies

23.   **Total of Part 5.**                                                          | $130,594.00 |
      Add lines 19 through 22.  Copy the total to line 84.

24.   Is any of the property listed in Part 5 perishable?
      ☒ No
      ☐ Yes

Official Form 206A/B          Schedule A/B Assets - Real and Personal Property          page 2

EXHIBIT 3                                                          000070

Debtor    **Point.360 a California corporation**                              Case number *(if known)*  **2:17-bk-22432-WB**
          Name

25.   Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?
      ☒ No
      ☐ Yes. Book value _____   Valuation method _____   Current Value _____

26.   Has any of the property listed in Part 5 been appraised by a professional within the last year?
      ☒ No
      ☐ Yes

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**
27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?

      ☒ No. Go to Part 7.
      ☐ Yes Fill in the information below.

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**
38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?

      ☐ No. Go to Part 8.
      ☒ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39.  Office furniture<br>Office Furniture | $226,254.00 | net Book Value | $226,254.00 |
| 40.  Office fixtures | | | |
| 41.  Office equipment, including all computer equipment and communication systems equipment and software<br>Computer Hardware | $105,750.00 | net book value | $105,750.00 |
| Computer Software | $174,399.00 | net book value | $174,399.00 |
| 42.  Collectibles *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles<br>42.1.  Collectible artwork included in purchase of the Modern Video assets | $121,296.00 | GAAP cost alloca | $121,296.00 |

43.   Total of Part 7.
      Add lines 39 through 42.  Copy the total to line 86.                                      | $627,699.00 |

44.   Is a depreciation schedule available for any of the property listed in Part 7?
      ☐ No
      ☒ Yes

45.   Has any of the property listed in Part 7 been appraised by a professional within the last year?
      ☒ No
      ☐ Yes

**Part 8:    Machinery, equipment, and vehicles**
46. Does the debtor own or lease any machinery, equipment, or vehicles?

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 3

EXHIBIT 3                                                                    000071

Debtor   **Point.360 a Califonia corporation**                         Case number *(if known)*  **2:17-bk-22432-WB**
         _____
         Name

☐ No. Go to Part 9.
☒ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Not book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles | | | |
| 47.1.  Owned vehicles | $3,786.00 | net book value | $3,786.00 |

48.   Watercraft, trailers, motors, and related accessories *Examples* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

49.   Aircraft and accessories

| 50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment) | | | |
|---|---|---|---|
| Machinery and Equipment | $2,668,229.00 | net book value | $2,668,229.00 |
| various various<br>Machinery & Equipment - Software | $0.00 | net book value | $0.00 |
| HD Telecine  -  Hi-Def audi visuals systems | $0.00 | net book value | $0.00 |
| various various<br>Capitalized Leases - GAAP Cost | $135,585.00 | at GAAP calculat | $135,585.00 |

51.   **Total of Part 8.**
      Add lines 47 through 50.  Copy the total to line 87.                    | $2,807,600.00 |

52.   Is a depreciation schedule available for any of the property listed in Part 8?
      ☐ No
      ☒ Yes

53.   Has any of the property listed in Part 8 been appraised by a professional within the last year?
      ☒ No
      ☐ Yes

**Part 9:     Real property**

54. Does the debtor own or lease any real property?

☐ No.  Go to Part 10.
☒ Yes Fill in the information below.

55.   Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Not book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property                page 4

EXHIBIT 3

000072

Debtor   **Point.360 a Califonia corporation**                              Case number *(if known)*  **2:17-bk-22432-WB**
_____
Name

| | | | | |
|---|---|---|---|---|
| 55.1. | 2701 Media Center Dr, Los Angeles, CA 90065-1700 Leasehold Interest-Lease #1 | $0.00 | | $0.00 |
| 55.2. | 2300 W Empire Ave # 100, Burbank, CA 91504-3399 Leasehold Interest-Lease #2 | $0.00 | | $0.00 |
| 55.3. | 1133 N Hollywood Way, Burbank, CA 91505-2528 Leasehold Interest - Lease #3 | $0.00 | | $0.00 |
| 55.4. | Lease hold improvements in Leases 1, 2 and 3 | $954,383.00 | net book value | $954,383.00 |

**56.**   **Total of Part 9.**                                                                                            | $954,383.00 |

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

**57.**   Is a depreciation schedule available for any of the property listed in Part 9?
☐ No
☑ Yes

**58.**   Has any of the property listed in Part 9 been appraised by a professional within the last year?
☑ No
☐ Yes

**Part 10:**   **Intangibles and Intellectual property**

59. Does the debtor have any interests in intangibles or intellectual property?

☐ No.  Go to Part 11.
☑ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60.   Patents, copyrights, trademarks, and trade secrets | | | |
| 61.   Internet domain names and websites | | | |
| 62.   Licenses, franchises, and royalties | | | |
| 63.   Customer lists, mailing lists, or other compilations customer relationships | $143,750.00 | GAAP valuations | $143,750.00 |
| 64.   Other Intangibles, or intellectual property Trade Names | $65,625.00 | net book value | $65,625.00 |

Official Form 206A/B                        Schedule A/B Assets - Real and Personal Property                        page 5

EXHIBIT 3                                              000073

| Debtor | **Point.360 a Califonia corporation** | Case number *(if known)* | **2:17-bk-22432-WB** |
|---|---|---|---|
| | Name | | |

65.   Goodwill

66.   Total of Part 10.

   Add lines 60 through 65. Copy the total to line 89.            | $209,375.00 |

67.   Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C.§§ 101(41A) and 107?
   ■ No
   ☐ Yes

68.   Is there an amortization or other similar schedule available for any of the property listed in Part 10?
   ☐ No
   ■ Yes

69.   . Has any of the property listed in Part 10 been appraised by a professional within the last year?
   ■ No
   ☐ Yes

| Part 11: | All other assets |

70. Does the debtor own any other assets that have not yet been reported on this form?
   Include all interests in executory contracts and unexpired leases not previously reported on this form.

   ☐ No. Go to Part 12.
   ■ Yes Fill in the information below.

|  |  | Current value of debtor's interest |
|---|---|---|
| 71. | Notes receivable<br>Description (include name of obligor) | |
| 72. | Tax refunds and unused net operating losses (NOLs)<br>Description (for example, federal, state, local) | |
| 73. | Interests in insurance policies or annuities | Key Man Life Policy |
| 74. | Causes of action against third parties (whether or not a lawsuit has been filed) | 74 & 75 |
| 75. | Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims | See attachment.<br>Value undetermined. |
| 76. | Trusts, equitable or future interests in property | |
| 77. | Other property of any kind not already listed *Examples:* Season tickets, country club membership<br>See attached. | Undetermined |

78.   Total of Part 11.

   Add lines 71 through 77. Copy the total to line 90.            | $0.00 |

79.   Has any of the property listed in Part 11 been appraised by a professional within the last year?
   ■ No
   ☐ Yes

EXHIBIT 3                                    000074

Debtor   **Point.360 a California corporation**                Case number *(if known)*  **2:17-bk-22432-WB**
_____                       _____
Name

| Part 12: | Summary |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. Cash, cash equivalents, and financial assets. *Copy line 5, Part 1* | $129,309.88 | |
| 81. Deposits and prepayments. *Copy line 9, Part 2.* | $840,828.53 | |
| 82. Accounts receivable. *Copy line 12, Part 3.* | $2,905,709.00 | |
| 83. Investments. *Copy line 17, Part 4.* | $0.00 | |
| 84. Inventory. *Copy line 23, Part 5.* | $130,594.00 | |
| 85. Farming and fishing-related assets. *Copy line 33, Part 6.* | $0.00 | |
| 86. Office furniture, fixtures, and equipment; and collectibles. *Copy line 43, Part 7.* | $627,699.00 | |
| 87. Machinery, equipment, and vehicles. *Copy line 51, Part 8.* | $2,807,600.00 | |
| 88. Real property. *Copy line 56, Part 9.*....................................➤ | | $954,383.00 |
| 89. Intangibles and intellectual property. *Copy line 66, Part 10.* | $209,375.00 | |
| 90. All other assets. *Copy line 78, Part 11.* | + $0.00 | |
| 91. Total. Add lines 80 through 90 for each column | $7,651,115.41 | + 91b. $954,383.00 |
| 92. Total of all property on Schedule A/B. Add lines 91a+91b=92 | | $8,605,498.41 |

**Point.360**
**Summary of Deposits**
**at 10/10/2017**

| Description | Name of Deposit Holder | Value |
|---|---|---|
| Media Center Real Property Lease Deposit | Leafs Properties | 250,000.00 |
| HWAYLease Deposit | HWAY, LLC | 197,902.00 |
| UPS Security Deposit | UPS | 970.00 |
| Parking Security Deposit | Westside Medical Park | 2,000.00 |
| Security Deposit | Tate & Partners | 350.00 |
| Landlord Security Deposit - MovieQ | WRI West Gate South LP-Security deposit | 4,500.00 |
| Landlord Security Deposit - MovieQ | Harbor Center Partners | 7,960.49 |
| Landlord Security Deposit - MovieQ | Price Reit Inc. The | 4,000.00 |
| Empire Lease Deposit | REEP-OFC 2300 EMPIRE CA LLC | 113,790.00 |
| Capital Lease Deposits | Jules & Associates | 12,354.94 |
| Utility Deposit | DWP | 200.00 |
| Utility Deposit | Gas Company | 700.00 |
| Utility Deposit | Southern California Edison | 630.00 |
| Insurance Binder Deposit | Lincoln Financial Group | 1,984.87 |

**Total Deposits:**                                                                 **597,342.30**

EXHIBIT 3

000076

**Point.360**
**Prepaid Expenses**
**at 10/10/2017**

| Description | Category | Prepaid Balance At 9/30/2017 |
|---|---|---|
| Adobe | General Service Contract | 89.97 |
| CDW Direct | General Service Contract | 629.47 |
| Daystrom | General Service Contract | 1,451.19 |
| Digital Film Technology | General Service Contract | 2,390.63 |
| Digital River | General Service Contract | 3,499.10 |
| Dolby Lab | General Service Contract | 4,166.67 |
| Dunn & Bradstreet | General Service Contract | 1,722.23 |
| Eplus | General Service Contract | 42,545.36 |
| GenArts | General Service Contract | 70.79 |
| Infotrac | General Service Contract | 130.00 |
| Keycode Media | General Service Contract | 7,314.00 |
| LDP Associates | General Service Contract | 6,425.00 |
| Plixer International | General Service Contract | 439.75 |
| Signiant | General Service Contract | 31,875.01 |
| Softchoice | General Service Contract | 2,026.76 |
| Tungsten | General Service Contract | 1,075.00 |
| OTC Markets Group | General Service Contract | 5,000.00 |
| GENWORTH | PREPAID INSURANCE | 2,595.83 |
| Los Angeles County Tax Collector | PERSONAL PROPERTY TAX | 127,480.97 |
| CITY OF LOS ANGELES | PREPAID BUSINESS LICENSE | 2,558.50 |
| Total: | | 243,486.23 |

EXHIBIT 3                                    000077

Point .360.
Sch A /B part 8
Question 47

**MARSH**

**Point.360**
**Auto Listing**

| No. | Vehicle Description Year, Make and Model | Garaging City and State | VIN/Serial No. |
|---|---|---|---|
| 1 | 2008 Chevrolet E35C | Burbank, CA | 1GCHG35KX81181558 |
| 2 | 2011 Chevrolet E35C | Los Angeles, CA | 1GCZGUC4B1152296 |
| 3 | 2016 Toyota Highlander Limited | Los Angeles, CA | 5TDYKRFH3GS132577 |
| 4 | 2003 CHEVROLET SILVERADO TRUCK | Burbank, CA | 2GCEC19V131201299 |
| 5 | 2005 DODGE CARAVAN 2 | Burbank, CA | 1D46P25B95B429300 |
| 6 | 2007 MITSUBISHI FUSO FE140 | Burbank, CA | JL6BBG1S77K019887 |
| 7 | TOYOTA COROLLA 2009 NEW | Burbank, CA | JTDBL40E499092046 |
| 8 | 2010 FORD TRANSIT | Burbank, CA | NM0LS7DNXAT026639 |
| 9 | 2010 FORD TRANSIT | Burbank, CA | NM0LS7DN6AT026640 |
| 10 | 2005 FORD F150 SUPER CREW CAB | Burbank, CA | 1FTPW125X5KF07415 |

| No. | Vehicle Description Year, Make and Model | Loss Payee and/or Additional Insured | Address |
|---|---|---|---|
| 1 | 2011 Chevrolet E35C | Leased - Enterprise | 17210 South Main St., Unit LA693P Gardena, CA  90247 |
| 2 | 2016 Highlander Limited | Leased - Toyota of Orange | 1400 N. Tustin Ave., Orange, CA 92867 |
| | | | |

Sch A-Bpart 8-47.xls  Auto Listing  10/30/2017  12:35 PM

EXHIBIT 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Addendum**

**Part 11; Items 70, 74, 75**

**Other Assets:**

**70.1, 74.1, 75.1:**    Point.360 possesses a meritorious claim against: (1) an ex-project manager, Jeanette Lynn Zepeda, for breach of duty of loyalty, tortious interference with prospective economic relations, breach of contractual confidentiality obligations, (2) Zepeda's new employer, Roundabout Entertainment, Inc., for aiding and abetting Zepeda's breach of duty of loyalty, unfair business practices, unjust enrichment and conversion, and (3) other as yet unknown individuals for similar claims, arising out of Zepeda's and Roundabout's orchestration of the mass departure of Point.360's employees and accounts during the course of Zepeda's employment with Point.360. Zepeda and Roundabout's actions caused Point.360 to suffer hundreds of thousands of dollars in lost business and profits.

**70.2, 74.2, 75.2:**    Point.360 is investigating and fully reserves all rights, claims and defenses arising from its acquisition of the assets of Modern VideoFilm ("MVF") in 2015. On July 8, 2015, Point.360 acquired certain assets of MVF including, but not limited to, MVF's equipment, inventory, and accounts receivable. Point.360 concurrently entered into a Term Loan Agreement with Medley Capital Corporation and Medley Opportunity Fund II, LP (collectively "Medley"). The Medley Term Loan Agreement is comprised of a five-year term loan facility in the amount of $6,000,000, $1,000,000 of which was funded on the July 8, 2015 closing date. As of March 31, 2017, the Company had borrowed the $6,000,000 under the Medley Loan Agreement. Debtor has elected to pay interest as payment in kind ("PIK") as permitted by the Loan Agreement. The outstanding principal balance and all accrued and unpaid interest on the Term Loan are due and payable on July 8, 2020. As further consideration for the MVF sale purchase transaction, the Debtor issued 2,000,000 shares of common stock, and five-year warrants to purchase an aggregate of 800,000 shares of common stock at an exercise price of $0.75 per share. As consideration for the Medley Loan Agreement, the Debtor also issued warrants to Medley to purchase an aggregate of 500,000 shares of common stock.

The MVF transaction resulted in substantial and unanticipated operating losses requiring that Debtor reorganize its financial affairs. Point.360 entered into the MVF acquisition in reliance on misleading information concerning MVF's profitability. For example, Point.360 was given pro forma projections showing $29 million in sales and $4.1 million in EBITDA for the 2015 - 2016 period. Actual results after the MVF acquisition resulted in $15.6 million in sales and EBITDA of negative $6.3 million. This $10.4 million difference between projected and actual EBITDA for 2105 - 2016, which continued into the fiscal 2017 period, has resulted in Debtor's need for financial reorganization.

Claims by prior ownership related to the MVF sale were asserted in Los Angeles Superior Court case number BC583437 captioned, <u>Moshe Barkat and Modern VideoFilm Holdings, LLC vs. Medley Capital Corporation; Medley Opportunity Fund II LLP; MCC Advisors, LLC; Deloitte Transactions and Business Analytics, LLP A/K/A/ Deloitte CRG; Charles Sweet; Modern VideoFilm, Inc. and Does 1 through 10 inclusive</u>. The facts, circumstances and claims set forth in the <u>Barkat</u> complaint, among others, may give rise to claims held by Point.360 against some or all of the same parties.

EXHIBIT 3                                    000079

70.3, 74.3, 75.3:      Based, in part, upon Point.360's acquisition on Modern Video's claims and causes of action arising out of Modern Video's business operations, Point.360 possesses a meritorious claim against: (1) ex-Modern Video employees for misappropriation of trade secrets, breach of duty of loyalty and tortious interference with prospective economic relations, and (2) Visual Data for aiding and abetting the ex-employees' breach of duty of loyalty, unfair business practices, unjust enrichment and conversion.  The ex-employees and Visual Data's actions caused Modern Video and Point.360 to lose $8-10 million dollars in lost business.

EXHIBIT 3                                              000080

# EXHIBIT 4

EXHIBIT 4                                    000081

Debtor  **Point.360 a Califonia corporation**                     Case number *(if known)*  **2:17-bk-22432-WB**

3. **Certain payments or transfers to creditors within 90 days before filing this case**
List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.1. Various see attached schedule for total | See attached schedule for totals by creditor for the last 90 ddays. | $2,954,951.85 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other__ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. BELL, SAM P.<br>2701 Media Center Dr<br>Los Angeles, CA 90065-1700<br>director | 10/28/2016 | $12,125.00 | Director fees, and expense reimbursement |
| 4.2. DELANG, J.R.<br>2701 Media Center Dr<br>Los Angeles, CA 90065-1700<br>Directors | 10/19/2016 | $10,250.00 | director fees and expense reimbursement |
| 4.3. HUTCHINS, GREGORY<br>2701 Media Center Dr<br>Los Angeles, CA 90065-1700  Director | 10/19/2016 | $10,250.00 | director fees and expense reimbursement |
| 4.4. OKI, G. SAMUEL<br>2701 Media Center Dr<br>Los Angeles, CA 90065-1700<br>director | 10/19/2016 | $11,250.00 | Director fees and expense reimbursement |
| 4.5. HWAY LLC<br>14140 Ventura Blvd Ste 201<br>Sherman Oaks, CA 91423-2750<br>landlord related party | various | $241,401.00 | monthly rents for lease property |
| 4.6. Alan Steel<br>2701 Media Center Dr<br>Los Angeles, CA 90065-1700<br>former officer | various | $135,148.86 | Salary and health insurance benefits of former officer to resignation date |
| 4.7. Haig Bagerdjian<br>2701 Media Center Dr<br>Los Angeles, CA 90065-1700<br>CEO, Chairman, Shareholder | various | $359,280.36 | Salary Compensation, Health insurance benefits |

5. **Repossessions, foreclosures, and returns**
List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

Official Form 207        Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy        page 2

EXHIBIT 4        000082

Point.380
Sofa
Part 2 #3.

| Paid To Name | Pay. Amount | Reason | ADDRESS |
|---|---|---|---|
| AUSTIN FINANCIAL SERVICES, INC. | 1,623,010.66 | Secured Debt | 11111 Santa Monica Blvd. #1000 Los Angeles, CA 90025-9823 |
| United Healthcare of California | 154,674.81 | Suppliers& Services | DEPT. 6940 LOS ANGELES CA 90084-6940 |
| Leafs Properties LP | 142,155.35 | Suppliers& Services | 1333 CAMINO DEL RIO S., # 310 SAN DIEGO CA 92108 |
| MEDIA STORAGE GROUP | 93,373.40 | Suppliers& Services | 4804 LAUREL CANYON BLVD. PO BOX 703 VALLEY VILLAGE CA 91607-3717 |
| LA DWP | 71,323.44 | Suppliers& Services | PO BOX 30808 LOS ANGELES CA 90030-0808 |
| BURBANK WATER AND POWER | 62,144.52 | Suppliers& Services | P.O. BOX 631 BURBANK CA 91503-0631 |
| Zenith Insurance Company | 52,598.00 | Suppliers& Services | FILE 50004 LOS ANGELES CA 90074-0004 |
| Lewis R.Landau Attorney at Law | 65,000.00 | Suppliers& Services | 22287 MULHOLLAND HWY., #318 CALABASAS CA 91302 |
| SFERA STUDIOS LLC | 42,897.13 | Suppliers& Services | PO BOX 749663 LOS ANGELES CA 90074-9663 |
| AFCO | 41,754.16 | Suppliers& Services | DEPT LA 21315 PASADENA CA 91185-1315 |
| FPRS Depository Account | 39,095.12 | Suppliers& Services | 60 Wall St, Mailstop NYC 60-2710 |
| Marsh USA, Inc | 38,877.64 | Suppliers& Services | PO BOX 846015 DALLAS TX 75284-0615 |
| QUALITY SOUND WORKS, INC. | 36,932.00 | Suppliers& Services | 26948 GARRET DRIVE CALABASAS CA 91301 |
| JULES AND ASSOCIATES, INC. | 29,248.29 | Suppliers& Services | 515 S. FIGUEROA ST., SUITE 1900 LOS ANGELES CA 90071 |
| SCRIPTZ | 26,894.00 | Suppliers& Services | 20362 FAIRWEATHER STREET CANYON COUNTRY CA 91351 |
| CIGNA | 25,876.33 | Suppliers& Services | 400 N. BRAND BOULEVARD 5TH FLOOR GLENDALE CA 91203 |
| BANK OF THE WEST | 25,583.64 | Suppliers& Services | 15165 VENTURA BLVD., SUITE 220 SHERMAN OAKS CA 91403 |
| SUB-TECHS LOCALIZATION SERVICES | 25,000.00 | Suppliers& Services | 345 GULF STREAM WAY COSTA MESA CA 92627 |
| EMPLOYMENT DEVELOPMENT DEPT. | 23,238.54 | Suppliers& Services | PO BOX 989061 WEST SACRAMENTO CA 95798-9061 |
| MESSENGERS & DISTRIBUTION | 22,608.65 | Suppliers& Services | PO BOX 11794 BURBANK CA 91510 |
| IVB MEDIA SERVICES, INC. | 21,712.53 | Suppliers& Services | 5542 SATSUMA AVENUE NORTH HOLLYWOOD CA 91601 |
| AT&T MOBILITY | 17,460.05 | Suppliers& Services | P.O. BOX 6463 CAROL STREAM IL 60197-6463 |
| TELEPACIFIC COMMUNICATIONS | 17,164.63 | Suppliers& Services | P.O. BOX 509013 SAN DIEGO CA 92150-9013 |
| ALEBAHA, DAVID | 15,256.00 | Suppliers& Services | 1600 N. SAN FERNANDO BLVD, APT. 103 BURBANK CA 91504 |
| Tim Gould General Account | 15,000.00 | Suppliers& Services | 1801 CENTURY PARK EAST 16TH FL LOS ANGELES CA 90067-2367 |
| Neon | 15,000.00 | Suppliers& Services | 624 S. GRAND AVE., SUITE 2500 LOS ANGELES CA 90017 |
| CLICKWORK CAPTIONS | 14,441.50 | Suppliers& Services | G1706, PURVA HIGHLANDS BANGALORE INDIA |
| PARKING NETWORK | 13,830.00 | Suppliers& Services | 2300 EMPIRE AVE., SUITE 175 BURBANK CA 91504 |
| LINCOLN FINANCIAL GROUP | 13,713.35 | Suppliers& Services | 1333 N. CALIFORNIA BLVD., SUITE 345 WALNUT CREEK CA 94596 |
| SFERA LAB LLC | 13,581.88 | Suppliers& Services | PO BOX 749663 LOS ANGELES CA 90074-9663 |
| Castlepo Communications SA DE CV | 13,200.00 | Suppliers& Services | AV. INSURGENTES SUR 1160 201 COL. TLACOQUEMECATL DE VALLE 03200 BENITO MEXICO 03200 |
| SCENIC EXPRESSIONS, INC. | 13,069.35 | Suppliers& Services | 8238 LANKERSHIM BLVD. NORTH HOLLYWOOD CA 91605 |
| KEYCODE MEDIA | 10,971.00 | Suppliers& Services | 270 S. FLOWER STREET BURBANK CA 91502 |
| ADVANCED DIGITAL TECH, INC | 10,217.44 | Suppliers& Services | 1225 WEST 190TH ST., SUITE 480 GARDENA CA 90248 |
| FRONTLINE, LLC | 9,600.00 | Suppliers& Services | 1540 ARD EEVIN AVENUE GLENDALE CA 91202 |
| NexGuard Labs France S.A.S | 9,500.00 | Suppliers& Services | 10 SQUARE DU CHENE GERMAIN CESSON SEVIGNE FRANCE 35510 |
| EHRLICH, BRIAN | 9,265.13 | Suppliers& Services | 2701 Media Center Drive, Los Angeles, Ca 90065 |
| IVB Media Services, Inc. | 8,968.94 | Suppliers& Services | 5542 SATSUMA AVENUE NORTH HOLLYWOOD CA 91601 |
| VISION SERVICE PLAN | 8,472.63 | Suppliers& Services | 3333 QUALITY DRIVE RANCHO CORDOVA CA 95670 |
| FIRST CHOICE SERVICES | 7,939.59 | Suppliers& Services | 10907 PAINTER AVE SANTA FE SPRINGS CA 90670 |
| INTERNAL REVENUE SERVICE | 7,173.37 | Suppliers& Services | PO BOX 71052 PHILADELPHIA PA 19176-6052 |
| HALLING/MESA LLP | 7,125.00 | Suppliers& Services | 23586 CALABASAS ROAD, SUITE 200 CALABASAS CA 91302 |
| Análisis y Desarrollo en Sistemas | 6,975.70 | Suppliers& Services | International |
| HEMAR, ROUSSO & HEALD, LLP | 6,520.08 | Suppliers& Services | 15910 VENTURA BLVD., 12TH FLR ENCINO CA 91436 |
| DOLBY LABORATORIES, INC. | 6,500.00 | Suppliers& Services | 16841 COLLECTIONS CENTER DR. CHICAGO IL 60693 |
| | 2,954,991.65 | | |

> These are the totals compiled from numerous detail payments by
> creditor for the previous 90 days, in excess of $6,425.

000083

# EXHIBIT 5

EXHIBIT 5                        000084

## UNEXPIRED LEASES TO BE ASSUMED

| LEASES | ARREARS/DMGS | METHODS OF CURE |
|---|---|---|
| • Description = 2701 Media Center Drive, Los Angeles, CA 90065<br>• Lessor's name = LEAFS Properties, LP<br>• Lessee's name = Debtor<br>• Expiration date = 3/31/21 | • Default amt = $152,461.60 per POC 63-1<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring future performance = Plan confirmation |
| • Description = 1122 and 1133 North Hollywood Way, Burbank, CA 91505<br>• Lessor's name = HWAY, LLC<br>• Lessee's name = Debtor<br>• Expiration date = 10/31/27 | • Default amt = $803,926.13 per POC 48<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Satisfied by issuance of 5,000,000 shares constituting 100% of Debtor's new common stock on Effective Date.<br>• Means of assuring future performance = Plan confirmation |

EXHIBIT 5                                            000085

## EXECUTORY CONTRACTS TO BE ASSUMED

| CONTRACT | DEFAULT/DMGS | METHODS OF CURE |
|---|---|---|
| • Description = Toyota Lease Trust (operating lease)<br>• Lessor's name = Toyota Financial<br>• Lessee's name = Debtor<br>• Expiration date = 2/25/2019 | • Default amt = $5,435.92<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring Performance = Plan confirmation |
| • Description = Operating Lease (copiers)<br>• Lessor's name = De Lage Landen Financial Service<br>• Lessee's name = Debtor<br>• Expiration date = 11/29/2019 | • Default amt = $8,972.05<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring performance = Plan confirmation |
| • Contract description = Capital Leases<br>• Lessor's name = Jules & Associates<br>• Lessee's name = Debtor<br>• Expiration date = 11/2021 | • Default amt = $34,558.00<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring performance = Plan confirmation |
| • Contract description = Operating Lease<br>• Lessor's Name – Wells Fargo<br>• Lessee's name = Point.360<br>• Expiration date = 2/2019 | • Default amt = $13,064.93<br>• Actual pecuniary loss = N/A | • Method of curing default & loss = Paid on Effective Date<br>• Means of assuring performance = Plan confirmation |
| • Contract description: UnitedHealthcare Insurance Company Group Policy under Group No. 910300<br>• Counterparty names: UnitedHealthcare Insurance Company and Point.360<br>• Expiration date: Evergreen, subject to termination provisions in Article 5. | • $142,152.77 per Claim No. 33-2. | • Cure of pre-petition default per Plan Section II.C.2, and post-petition amounts to be paid in accordance with terms of contract. |

EXHIBIT 5                                                            000086

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **DISCLOSURE STATEMENT DESCRIBING PLAN OF REORGANIZATION JOINTLY PROPOSED BY MEDLEY CAPITAL CORPORATION, MEDLEY OPPORTUNITY FUND II LP AND VISUAL DATA MEDIA SERVICES, INC. [WITH MINOR MODIFICATIONS 2/21/19]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 21, 2019  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 21, 2019 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Julia W. Brand
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Bin outside of Suite 1382
Los Angeles, CA 90012

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 21, 2019 | Debbie A. Perez | /s/ Debbie A. Perez |
|---|---|---|
| Date | Printed Name | Signature |

DAP\ 2659590v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                     **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

David E Ahdoot on behalf of Creditor AFTRA Retirement Fund
dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com

David E Ahdoot on behalf of Creditor SAG-AFTRA
dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com

David E Ahdoot on behalf of Creditor SAG-AFTRA Health Fund
dahdoot@bushgottlieb.com, kprestegard@bushgottlieb.com

Ron Bender on behalf of Interested Party Courtesy NEF
rb@lnbyb.com

Ron Bender on behalf of Interested Party Visual Data Media Services, Inc.
rb@lnbyb.com

Daren Brinkman on behalf of Creditor Committee Official Committee Unsecured Creditors
office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

Daren Brinkman on behalf of Creditor Committee Official Committee of Unsecured Creditors of Point.360, A California Corporation
office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

William S Brody on behalf of Creditor Austin Financial Services, Inc.
wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com

Sara Chenetz on behalf of Interested Party Sara L. Chenetz
schenetz@perkinscoie.com, dlax@perkinscoie.com;cmallahi@perkinscoie.com

Peter A Davidson on behalf of Interested Party Courtesy NEF
pdavidson@ecjlaw.com, amatsuoka@ecjlaw.com

W. Jeffery Fulton on behalf of Creditor US Bank National Association
jeff@jefffultonlaw.com, Yvonne@jefffultonlaw.com

Jeffrey F Gersh on behalf of Interested Party Visual Data Media Services, Inc.
jgersh@gershlegal.com,
hnapier@gershlegal.com;jsedivy@gershlegal.com;hcory@stubbsalderton.com;jgersh@stubbsalderton.com;jsedivy@stubbsalderton.com

Brian T Harvey on behalf of Creditor Austin Financial Services, Inc.
bharvey@buchalter.com, IFS_filing@buchalter.com;dbodkin@buchalter.com

Daniel P Hogan on behalf of Debtor Point.360, a California Corporation
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Defendant Deloitte Corporate Finance, LLC
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Defendant Deloitte Transactions and Business Analytics, LLP
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Defendant Medley Capital Corporation
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Defendant Medley Opportunity Fund II LP
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Plaintiff Point.360, a California Corporation
dhogan@mccabehogan.com, dhogan460@gmail.com

Daniel P Hogan on behalf of Special Counsel Daniel P Hogan
dhogan@mccabehogan.com, dhogan460@gmail.com

DAP\ 2659590v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                      **F 9013-3.1.PROOF.SERVICE**

Garrick A Hollander on behalf of Interested Party Modern VideoFilm, Inc.
ghollander@wcghlaw.com, pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com

William W Huckins on behalf of Creditor REEP-OFC 2300 Empire CA LLC
whuckins@allenmatkins.com, clynch@allenmatkins.com

Robert A Julian on behalf of Defendant Deloitte Corporate Finance, LLC
rjulian@winston.com, hhammon@winston.com

Robert A Julian on behalf of Defendant Deloitte Transactions and Business Analytics, LLP
rjulian@winston.com, hhammon@winston.com

Robert A Julian on behalf of Defendant Medley Capital Corporation
rjulian@winston.com, hhammon@winston.com

Robert A Julian on behalf of Defendant Medley Opportunity Fund II LP
rjulian@winston.com, hhammon@winston.com

Robert A Julian on behalf of Plaintiff Point.360, a California Corporation
rjulian@winston.com, hhammon@winston.com

Lance N Jurich on behalf of Defendant Deloitte Corporate Finance, LLC
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

Lance N Jurich on behalf of Defendant Deloitte Transactions and Business Analytics, LLP
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

Lance N Jurich on behalf of Defendant Medley Capital Corporation
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

Lance N Jurich on behalf of Defendant Medley Opportunity Fund II LP
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

Lance N Jurich on behalf of Plaintiff Point.360, a California Corporation
ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com

David S Kupetz on behalf of Interested Party Visual Data Media Services, Inc.
dkupetz@sulmeyerlaw.com, dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com

Lewis R Landau on behalf of Debtor Point.360, a California Corporation
Lew@Landaunet.com

Lewis R Landau on behalf of Plaintiff Point.360, a California Corporation
Lew@Landaunet.com

Alvin Mar on behalf of U.S. Trustee United States Trustee (LA)
alvin.mar@usdoj.gov

David W. Meadows on behalf of Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Shane J Moses on behalf of Interested Party Courtesy NEF
sjm@moseslaw.co

Austin P Nagel on behalf of Creditor Toyota Motor Credit Corporation, servicing agent for Toyota Lease Trust
melissa@apnagellaw.com

Sean A OKeefe on behalf of Creditor HARBOR CENTER PARTNERS, L.P.
sokeefe@okeefelc.com, seanaokeefe@msn.com

Aleksandra Page on behalf of Creditor BB&T
apage@ecf.inforuptcy.com

Sayuj Panicker on behalf of Creditor Los Angeles County Treasurer and Tax Collector
spanicker@counsel.lacounty.gov

DAP\ 2659590v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

Sayuj Panicker on behalf of Interested Party Courtesy NEF
spanicker@counsel.lacounty.gov

Laura J Portillo on behalf of Creditor Committee Official Committee Unsecured Creditors
office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

Laura J Portillo on behalf of Creditor Committee Official Committee of Unsecured Creditors of Point.360, A California Corporation
office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

Justin E Rawlins on behalf of Creditor Medley Capital Corporation
jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com

Justin E Rawlins on behalf of Creditor Medley Opportunity Fund II LP
jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com

Justin E Rawlins on behalf of Defendant Medley Capital Corporation
jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com

Justin E Rawlins on behalf of Defendant Medley Opportunity Fund II LP
jrawlins@winston.com, docketla@winston.com;justin-rawlins-0284@ecf.pacerpro.com

Vincent Renda on behalf of Creditor Leafs Properties, LP
vr@rendalawoffices.com, ld@rendalawoffices.com

Michael B Reynolds on behalf of Creditor California Physicians' Service, dba Blue Shield of California
mreynolds@swlaw.com, kcollins@swlaw.com

Jason E Rios on behalf of Interested Party CVF Capital Partners, Inc., Central Valley Fund III (SIBC), LP and Central Valley Fund II, LP
jrios@ffwplaw.com, scisneros@ffwplaw.com

Kevin C Ronk on behalf of Creditor Committee Official Committee Unsecured Creditors
Kevin@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com

Andrea C Rosati on behalf of Creditor LEAFS LP
andrea@fsgjlaw.com, linh@fsgjlaw.com

Lisa Seabron on behalf of Creditor WRI West Gate South, L.P.
lseabron@weingarten.com

Ronald A Spinner on behalf of Creditor Softitler dba Deluxe Localization Sfera
spinner@millercanfield.com

Andrew Still on behalf of Creditor California Physicians' Service, dba Blue Shield of California
astill@swlaw.com, kcollins@swlaw.com

Arvin Tseng on behalf of Creditor TROY / GOULD PC
atseng@troygould.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Christopher B Wick on behalf of Creditor Crown Communication Inc.
cwick@hahnlaw.com, lmay@hahnlaw.com

Latonia Williams on behalf of Creditor UnitedHealthcare Insurance Company
lwilliams@goodwin.com, bankruptcy@goodwin.com

Gabe P Wright on behalf of Creditor Crown Communication Inc.
GWRIGHT@hahnlaw.COM, mkanamori@hahnlaw.com

DAP\2659590v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          **F 9013-3.1.PROOF.SERVICE**